IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE No. 9:16-cv-81871-KAM

LAN LI, an individual; et al.,

      Plaintiffs,

v.

JOSEPH WALSH, an individual; et al.,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO EVANS DEFENDANTS' MOTION TO DISMISS

Plaintiffs respond in opposition to the Motion to Dismiss filed by Defendants Leslie Robert Evans and Leslie Robert Evans & Associates, P.A. (together, the Evans Defendants), and in support state:

### INTRODUCTION

Plaintiffs are the victims of a $50,000,000 fraud, theft, and conspiracy, in which a web of individuals, primarily based in Palm Beach County, Florida, preyed on foreigners desirous of leaving their countries to provide their families with the opportunity for a better life in the United States through the EB-5 visa program. The bad actors conspired to fraudulently induce Plaintiffs to each invest $500,000, plus a $40,000 "administrative fee," into a purported Palm Beach real estate project known as the "Palm House Hotel" which, in reality, was nothing more than a façade pursuant to which Plaintiffs' funds were stolen and distributed among the conspirators.

Plaintiffs' funds were supposed to be held in an escrow account unless and until their I-526 immigration petitions were approved by the United States government. If and when Plaintiffs' I-526 petitions were approved, the funds were only supposed to be used to create at

least 10 full-time jobs for qualifying U.S. workers, per investor, through the completion of the renovation and development of the Palm House Hotel, an existing luxury hotel structure in Palm Beach.

However, Plaintiffs' funds were not held in the escrow account.  Instead, contrary to all of the written and oral representations, Plaintiffs' funds were improperly transferred from the escrow account to other accounts and pillaged for the personal pleasure of the conspirators. Virtually none of Plaintiffs' funds were used to develop the Palm House Hotel property, no jobs were created, and no EB-5 visas were issued to any of the Plaintiffs.  Accordingly, over 80 foreigners are now unable to leave their respective countries and many have lost their lifesavings.  Plaintiffs' funds were stolen and used to:

(a)     purchase multiple homes, investment properties, a 151 foot yacht that cost almost $6,000,000, luxury cars, vacations, and other accoutrements of a life of luxury;

(b)     payoff millions of dollars of personal debt (including more than $266,000 in personal back taxes); and

(c)     grease all the wheels that furthered the criminal scheme, including licensed attorneys that owed a fiduciary duty to the victims.

The Evans Defendants were at the center of this massive fraud.  A substantial portion of Plaintiffs' funds was stolen from PNC Bank and moved to accounts owned and/or controlled by the Evans Defendants.  Upon information and belief, approximately $15,000,000 of Plaintiff's funds was moved to the Evans Defendants' accounts through specific, identifiable transfers, at which point the money was distributed to the conspirators of the criminal activity.  Plaintiffs intend to obtain discovery relating to these transfers, and have moved the Court to undertake such discovery without further delay [DE 50].

In exchange for effectuating the transfers and providing the pay-offs to the conspirators in this massive criminal fraud, the Evans Defendants enriched themselves with Plaintiffs' money,

paying themselves thousands of dollars of purported compensation.  At no point in time have the Evans Defendants offered to return these stolen funds, causing Plaintiffs to sue them for their return.

More troublesome is the fact that Plaintiffs recently learned that the secret, unrecorded mortgage in the amount of $27,468,750 that was granted to the prior developer of the project in August 2013, and not recorded until March 28, 2014 -- seven (7) months later -- and after almost all Plaintiffs had undertaken their due diligence and wired their investments for the project, was in the possession of the Evans Defendants from the time of execution until it was recorded.  The Evans Defendants' current "story" is that they purportedly forgot or misplaced the $27,468,750 mortgage, causing the delay in recording.  In light of these new facts, Plaintiffs are widening their probe into the Evans Defendants' conduct and re-examining whether they had a deeper involvement in the criminal scheme than was previously believed.

Remarkably, despite enriching themselves with Plaintiffs' money, their involvement in the concealment of a $27,468,750 mortgage, and their continued possession and enjoyment of Plaintiffs' stolen funds, the Evans Defendants attempt to extricate themselves from all consequences of their conduct and seek the dismissal, with prejudice, of all claims against them. The Evans Defendants' apparent lack of remorse for their conduct in this massive criminal enterprise is not well taken and, more importantly, their legal positions lack merit.

## ARGUMENT

### The Evans Defendants Move for Dismissal Based on Lack of Diversity of Citizenship, but Plaintiffs Do Not Assert Diversity Jurisdiction

The Evans Defendants argue for dismissal based on a purported failure to establish the citizenship of each defendant and the resulting lack of subject matter jurisdiction.  Motion to Dismiss at 4.  However, Plaintiffs assert subject matter jurisdiction pursuant to 28 U.S.C. §1331,

3

Section 27 of the Exchange Act, 15 U.S.C. §78aa, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and supplemental state law jurisdiction.  Complaint ¶¶ 61-62.   As alleged in the Complaint, supplemental jurisdiction for claims against the Evans Defendants is appropriate because the claims are so related that they form part of the same case or controversy and arise from the same set of operative facts.  Plaintiffs do not base jurisdiction on diversity of citizenship, and the Evans Defendants' argument for dismissal lacks merit.

**The Evans Defendants Move for Dismissal Based on the Law of Escrow Agents, but Plaintiffs Do Not Assert Such Claims**

The general law of escrow agents is inapplicable to the claims Plaintiffs have asserted against the Evans Defendants.  The Evans Defendants spend several pages discussing the body of law relating to escrow agents, the fiduciary duties they owe their clients, and their claim that they owe no fiduciary duties to third-parties.  Motion to Dismiss at 5-9.   However, this is a red herring.  Plaintiffs are not parties to an escrow agreement with the Evans Defendants and are not suing them based on any alleged escrow relationship.

Plaintiffs simply want their property back.[1]  Plaintiffs' property was transferred to the Evans Defendants and they want whatever portion of that property remains in their possession, custody or control, including several thousand dollars the Evans Defendants paid themselves as "compensation."  The Evans Defendants' position that they owe "no legal duty whatsoever to Plaintiffs and cannot be held liable under any legal or equitable theory" is a gross overstatement. Motion to Dismiss at 5.  A party in possession of stolen property, regardless of what relationship they may occupy with the thief (e.g. their escrow agent), cannot refuse to return the property to its rightful owner.

---

[1] As noted above, Plaintiffs have widened their investigation into the Evans Defendants' involvement in the criminal scheme.  Depending on what the evidence reveals in discovery, Plaintiffs may assert additional claims against the Evans Defendants.

The Evans Defendants move for dismissal with prejudice as to Counts I (injunction based on theft), III (conversion), XII-XIV (fraudulent transfer), XVIII (unjust enrichment), and XIX (equitable accounting), for failure to state a cause of action upon which relief can be granted. Each claim is addressed below.

**Count I – Injunctive Relief Pursuant to Fla. Stat. §§812.035(1),(6)**

Plaintiffs seek injunctive relief pursuant to Florida Statutes §§812.035(1),(6), on the basis of Defendant Joseph Walsh's theft of Plaintiffs' money.   Plaintiffs seek an injunction "restraining Walsh, the other Bad Actors, and their agents, relatives, family members, servants, employees and attorneys (including the Evans Defendants) and those persons in active concert or participation with them or who have received or retained any of the proceeds of Walsh's actions who receive actual notice of the injunction" from disposing of or secreting any proceeds of Walsh's alleged illegal activity, among other things.  Complaint ¶¶ 56-57.  Pursuant to Florida Statutes §§812.035(1), the court has the power to enjoin violations of the theft statutes by issuing any appropriate orders, and the scope of the persons sought to be bound is appropriate.  See Fed. R. Civ. P. 65(d)(2).  To obtain an injunction against the Evans Defendants in connection with Plaintiffs' stolen property, it is not necessary to allege that the Evans Defendants committed unlawful conduct, contrary to their suggestion.  Motion to Dismiss at 10.

The Evans Defendants offer evidentiary arguments, claiming Plaintiffs have not established a substantial likelihood of success on the merits of the claim.  Motion to Dismiss at 9. This type of attack is improper in a motion to dismiss.  Plaintiffs will soon be filing a Motion for Preliminary Injunction, at which time they will provide the Court with evidentiary support for the entry of an injunction.  Plaintiffs have filed a Motion with the Court [DE 50] to obtain such

evidence, including evidence as to whether any portion of Plaintiffs' funds remain in the possession, custody, or control of the Evans Defendants.

**Count III - Conversion**

The Evans Defendants attempt to paint the picture that they were innocent escrow agents that simply took money in and sent it out, at the direction of their client, with no knowledge of the massive $50,000,000 fraud they were facilitating and with no personal benefit to themselves. To be clear, notwithstanding the recently discovered evidence that the Evans Defendants may have a deeper involvement in this criminal scheme, Plaintiffs are not (at this time) suing the Evans Defendants for every dollar that was sent to the Evans Defendants and then distributed to a bad actor. Rather, Plaintiffs are suing the Evans Defendants for the return of any of Plaintiffs' money that still remains in the Evans Defendants' possession, custody, or control. Such funds would include the "compensation" that the Evans Defendants paid themselves -- from Plaintiffs' stolen funds -- for helping to effectuate the criminal scheme. Those funds need to be returned to Plaintiffs and, to date, the Evans Defendants have failed to do so.

Through discovery, such funds will be traceable to and from the various accounts and will be specifically identifiable (e.g. $100,000 from PNC Bank transferred to Evans Defendants' account, from which $95,000 was paid to conspirators and $5,000 paid to Evans Defendants). Plaintiffs' stolen money was delivered to the Evans Defendants as a specifically identifiable sum, the Evans Defendants had an obligation to keep that money specifically identified, and it was clearly tracked and transferred into and out of their attorney trust account. The Evans Defendants' position that money transferred into their escrow account, for a specific purpose, is not specifically identifiable and thereby not subject to a claim for conversion is contrary to common sense, the workings of an attorney trust account, and even the case law they cite to the

6

Court.  Aero International Corp. v. Florida National Bank of Miami, 437 So. 2d 156 (Fla. 3d DCA 1983) (holding funds paid into escrow account were specific, identifiable funds properly subject to conversion claim).

Additional cases cited by the Evans Defendants further support Plaintiffs' conversion claim.  In Joseph v. Chanin, 940 So. 2d 483 (Fla. 4th DCA 2006), the court held that where a joint tenant in a bank account wrongfully transfers funds to a third party, the other joint tenant may maintain a cause of action for conversion against the third party who (1) holds the identifiable funds and (2) refuses a demand to restore the funds to the other joint tenant.  This case supports Plaintiffs' claim.  Defendant Joseph Walsh wrongfully transferred Plaintiffs' funds to the Evans Defendants, who hold continue to hold some portion of such identifiable funds and refuse to return them to Plaintiffs.

The Evans Defendants' claim that their purported lack of intent defeats a claim for conversion is inaccurate.  Motion to Dismiss at 11-12.  While there is a split of authority in the Florida courts as to whether intent to deprive is required to state a claim for conversion, the Fourth District Court of Appeal, which covers Palm Beach County and where the acts occurred, has repeatedly held that intent to deprive is not a necessary element to establish a claim of conversion.  "Liability for conversion does not require proof of knowledge or intent to deprive one of his property."  Eagle v. Benefield-Chappell, Inc., 476 So. 2d 716, 718 (Fla. 4th DCA 1985); Stearns v. Landmark First Nat'l Bank of Fort Lauderdale, 498 So. 2d 1001, 1002 (Fla. 4th DCA 1986) ("knowledge or intent is not a necessary element of a cause of action for conversion") (emphasis in original).  The only intent required to establish a claim for conversion is the intent to exercise dominion and control over the plaintiff's property. "The tort may be established despite evidence that the defendant took or retained property based upon the

mistaken belief that he had a right to possession, since malice is not an essential element of the action."  Seymour v. Adams, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1961).  Accordingly, "intent to deprive" is not a necessary element to prove a claim for conversion.  See also Florida Forms of Jury Instruction, § 61.25, Conversion (Intent) ("Generally, Defendant does not have to intend or know that [he/she] is wrongfully depriving Plaintiff of [his/her] property. Defendant must only intend to take or exercise authority over the property in question.").  Regardless, the Evans Defendants have knowledge that any such funds presently in their possession belong to Plaintiffs, and that they are wrongfully withholding them in defiance of Plaintiffs' rights.  While unnecessary to state a claim, there is prima facie intent.

Similarly, the Evans Defendants' complaint about a lack of demand lacks merit.  Motion to Dismiss at 12.  The Southern District of Florida has held that demand is not an element of conversion.  Matienzo v. Mirage Yacht, LLC, 2011 WL 1375684, *6 (S.D. Fla. April 12, 2011).  While demand and refusal "constitute evidence that a conversion has occurred," they do not have to be proved "where the conversion can be otherwise shown."  Id.  In Goodrich v. Malowney, 157 So. 2d 829, 832 (Fla. 2d DCA 1963), the court explained:

> The purpose of proving a demand for property by a plaintiff and a refusal by a defendant to return it in an action for conversion is to show the conversion. The generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made.

(emphasis added).  See also Florida Forms of Jury Instruction, § 61.25, Conversion (Intent) ("It is not necessary that Plaintiff specifically demanded that Defendant return the property or that, in response to that demand, Defendants refused to return it.").  Nevertheless, while demand is not required to state a claim for conversion, Plaintiffs did make numerous demands on Defendants prior to the filing of this lawsuit regarding the return of their funds.

8

Finally, the Evans Defendants make a timing argument that falls flat.  The Evans Defendants argue as follows: (i) to establish a prima facie case of conversion of money, the claimant must establish possession or an immediate right to possession of the converted property at the time of conversion, and (ii) because the conversion of Plaintiffs' funds happened when Defendant Joseph Walsh stole the funds from the PNC Bank escrow account, the Evans Defendants cannot commit conversion or be liable to Plaintiffs.  Motion to Dismiss at 14.  The Evans Defendants misunderstand the law of conversion.  Conversion is a continuing act, and subsequent possessors of stolen property are not absolved from liability solely because they are not the original thief.  See, e.g., Intercapital Funding Corp. v. Gisclair, 683 So. 2d 530, 532 (Fla. 4th DCA 1996); Lilly v. Bronson, 129 Fla. 675, 679, 177 So. 218, 219 (1937).

At this time, Plaintiffs are not suing the Evans Defendants for the approximately $15,000,000 of their stolen funds that were wired into the Evans Defendants' accounts and then distributed among the conspirators.  Plaintiffs are seeking the return of their funds that are still in the possession, custody or control of the Evans Defendants.  Plaintiffs state a claim for conversion, and the Evans Defendants' motion to dismiss should be denied.

**Counts XII-XIV – Fraudulent Transfer**

Plaintiffs assert fraudulent transfer claims against the Evans Defendants as subsequent transferees pursuant to Florida Statutes §726.105 (1)(a), §726.105 (1)(b), and §726.106 because they received some of Plaintiffs' stolen funds.  These claims are appropriate under Florida Statutes §726.108 and §726.109, which allow a creditor to seek relief from the first transferee and any subsequent transferee.

While Florida Statutes Section §726.109 provides protection to a transferee that took in good faith and for a reasonably equivalent value, the Evans Defendants' motion to dismiss based

9

on such a defense is premature.  Transferees bear the burden of proving that they took in good faith and for a reasonably equivalent value.  <u>Wiand v. Dewane</u>, 8:10-CV-246-T-17MAP, 2011 WL 4460095, at *7 (M.D. Fla. 2011), report and recommendation adopted, 8:10-CV-246-T-17MAP, 2011 WL 4459811 (M.D. Fla. 2011).  Plaintiffs are under no obligation to allege that the Evans Defendants lacked good faith or did not provide equivalent value, and it is premature to consider a good faith defense during the pleadings stage of a case.  <u>Id</u>. (denying defendants' motion to dismiss, which was based on the assertion that plaintiff could not recover because defendants were subsequent transferees).

The Evans Defendants' complaint about a lack of specificity in pleading also lacks merit. Motion to Dismiss at 15.  <u>See</u>, <u>e.g.</u>, <u>Wiand v. Dewane</u>, No. 8:10-CV-246-T-17MAP, 2011 WL 4459811, at *2 (M.D. Fla. Sept. 26, 2011) (holding heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure was inapplicable to Florida Uniform Fraudulent Transfer Act claims because unlike common law fraud claims, FUFTA claims are asserted against a person or entity that did not deal directly with the plaintiff and therefore the plaintiff generally possesses little information about the alleged transfer).

Finally, the Evans Defendants' attempt to convince the Court that Florida Statutes §726.109 (1) means that no subsequent transferee -- ever -- has liability for a fraudulent conveyance similarly falls flat. Motion to Dismiss at 16.  While the statute clearly contemplates that a transfer to a subsequent transferee -- after someone took in good faith and for value -- is not voidable, the Evans Defendants attempt to rewrite the provision and eliminate that requirement so that all subsequent transferees, regardless of whether anyone prior in the transfer chain was a good faith purchaser for value, are immune.  Such an interpretation goes against the

plan language of the provision, and the clear meaning of the provision when read in conjunction with Florida Statutes §726.109 (2).

Plaintiffs have brought fraudulent transfer claims against the Evans Defendants to obtain the return of their stolen funds that are still in the possession, custody or control of the Evans Defendants.  Plaintiffs state claims for fraudulent transfer, and the Evans Defendants' motion to dismiss should be denied.

**Count XVIII – Unjust Enrichment**

The Evans Defendants argue that Plaintiffs cannot state a claim for unjust enrichment because there was no "direct benefit."  However, the courts do not equate "direct benefit" with "direct contact."  In other words, unjust enrichment claims are not limited to circumstances where the money/property has gone from Person A directly to Person B.  Rather, the claim can be asserted against anyone who received a direct benefit, regardless of whether there were intermediaries between them and the true owner of the money/property, so long as the money/property originated with the plaintiff.  Here, the claim against the Evans Defendants seeks the return of stolen funds that clearly originated with Plaintiffs.  Plaintiffs state a proper claim for unjust enrichment and the Evans Defendants' motion to dismiss should be denied.

As Judge Marra stated in Aceto Corp. v. TherapeuticsMD, Inc., 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013), "there are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary, pointing out that direct *contact,* or privity, is not the equivalent of conferring a direct *benefit*."  In Williams v. Wells Fargo Bank N.A._,_ 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011), the court explained:

> just because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim. Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims. *See* 11 Fla. Jur.2d

> Contracts § 288 ("[I]f someone does enrich himself unjustly to the detriment of another, that person should be required to make restitution of all the benefits received, retained, or appropriated when it appears that to require it would be just and equitable."). It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the "benefit" passed through an intermediary before being conferred on a defendant.

Id. at *5. See also Romano v. Motorola, Inc., 07–CIV–60517, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) (allowing unjust enrichment claim where manufacturer marketed its product directly to consumers but sold its product through an intermediary); Ulbrich v. GMAC Mortgage, LLC, 11–62424–CIV, 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012) (allegations that Balboa charged Plaintiff inflated premiums for the forced placed coverage and "skimmed the excess for themselves" sufficient to show that Plaintiff, by paying the allegedly excessive premiums, conferred a direct benefit on Balboa); Hamilton v. Suntrust Mortg. Inc., 6 F. Supp. 3d 1312, 1317 (S.D. Fla. 2014).

In these cases, courts do not look for a direct and immediate conferral (or direct contact) of a benefit, but rather look to see whether the funds at issue *originated* with the plaintiff and arrived in the defendant's possession, regardless of whether the funds first passed through an intermediary. There is no question that the Evans Defendants' receipt of Plaintiffs' stolen money squarely falls within the scope of a permitted unjust enrichment claim.

In Solidda Grp., S.A. v. Sharp Elecs. Corp., No. 12-21411-CIV, 2014 WL 12513613 (S.D. Fla. Mar. 6, 2014), the Counterclaim Plaintiff alleged that a collection of individuals and entities, including the Counterclaim Defendants, participated in or benefited from a scheme to defraud the Counterclaim Plaintiff. Id. at *2. Counterclaim Plaintiff sued for unjust enrichment, claiming certain Counterclaim Defendants received kickbacks flowing from the overarching scheme. Id. The court found that the Counterclaim Plaintiff alleged a viable unjust enrichment claim, where it alleged "certain funds originated with [Counterclaim Plaintiff], passed through

third-parties involved in an overarching conspiracy, and arrived with each of the Counterclaim Defendants as kickback payments." Id. at *2. The court also noted its disagreement "with the argument that [Counterclaim Plaintiff] has failed to allege that the Counterclaim Defendants had knowledge of the conferred benefits, as required under the first element of an unjust enrichment claim. The allegations that the Counterclaim Defendants accepted and retained funds are sufficient to create a reasonable inference of the requisite knowledge." Id. at *4 n.5.

The cases that the Evans Defendants rely on are inapposite. In Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Florida, N.A., 667 So. 2d 876 (Fla. 3d DCA 1996), the conferred benefit originated from another defendant, not the plaintiff. In Virgilio v. Ryland Grp., Inc., 680 F.3d 1329 (11th Cir. 2012), the plaintiffs did not seek to recover a benefit that they had paid the defendant in question. Instead, they focused on money that another defendant had paid to its co-defendant "under an entirely separate services contract." 680 F.3d at 1337. And in Extraordinary Title Services, LLC v. Florida Power & Light Co., 1 So. 3d 400 (Fla. 3d DCA 2009), the plaintiff, a customer of a power company, sued that power company's parent for unjust enrichment based on excess tax payments that the power company had collected from plaintiff. Id. at 401. The unjust enrichment claim failed because there were no allegations that the subject payments made by plaintiff had been conferred to the parent. Id. at 404. Rather, the allegations reflected only that the plaintiff paid the subject funds to the power company which retained those funds. Id.

Plaintiffs have brought an unjust enrichment claim against the Evans Defendants to recover their stolen funds that remain in the possession, custody or control of the Evans Defendants. While there was an intermediary between Plaintiffs and the Evans Defendants, the

13

stolen funds originated with the Plaintiffs, were a direct benefit to the Evans Defendants, and are the proper basis for an unjust enrichment claim.

## Count XIX – Equitable Accounting

While the Evans Defendants purport to move for dismissal of the equitable accounting claim against them, they made no legal argument in support.  Motion to Dismiss at 1. Accordingly, no response is required.

## Conclusion

The Evans Defendants claim that they "were nothing more than escrow agents who innocently received money from persons other than Plaintiffs, from banks accounts not belonging to Plaintiffs, without any contractual or other relationship with Plaintiffs, and without knowledge of any adverse claim to the money by Plaintiffs."  Motion to Dismiss at 20.  The Evans Defendants conclude, therefore, that "there is simply no legal or equitable grounds to bring claims against the Evans Defendants."  However, the fact of the matter is that over $50,000,000 was stolen from Plaintiffs, about $15,000,000 of that was then transferred to the Evans Defendants, some of that money may still remain in accounts owned/controlled by the Evans Defendants, and the Evans Defendants enriched themselves by taking several thousand dollars of Plaintiffs' money for the "work" they did in facilitating this massive criminal theft. Plaintiffs have the legal right to recover whatever portion of their funds remain in the possession, custody or control of the Evans Defendants.

WHEREFORE, Plaintiffs request that this Court enter an Order denying the Evans Defendants' Motion to Dismiss, and granting Plaintiffs such other and further relief which may be appropriate under the circumstances.

Dated this 29th day of December, 2016.

*/s/ Keith E. Sonderling*
**G. JOSEPH CURLEY**
Florida Bar No. 571873
Email:  jcurley@gunster.com
**KEITH E. SONDERLING**
Florida Bar No. 57386
Email:  ksonderling@gunster.com
**DEVIN RADKAY**
Florida Bar No. 41976
Email:  dradkay@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401-6194
(561) 655-1980/Facsimile (561) 655-5677
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2016, I electronically filed the foregoing Notice with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Keith E. Sonderling*
**KEITH E. SONDERLING**

**SERVICE LIST**
**Lan Li, et al., v. Joseph Walsh, et al.**
**Case No. 1:16-cv-81871**

160 Royal Palm LLC
c/o Leslie R. Evans, Esq., Registered Agent
214 Brazilian Avenue, Suite 200
Palm Beach, FL 33480
Via U.S. Mail

Michael S. Olin, Esq.
Alaina Fotiu-Wojtowicz, Esq.
Michael S. Olin, P.A.
Alfred I. DuPont Building, Suite 1224
169 East Flagler Street
Miami, FL 33131
Email: molin@olinlawfirm.com;
afw@olinlawfirm.com
*Attorney for Ali Herischi, Herischi & Associates,*
*LLC and Washington Marketing, LLC*
Via EM/ECF

Ali Soltani
c/o Herischi & Associates LLC
7201 Wisconsin Ave, Suite 450
Bethesda, MD, 20814
Via U.S. Mail

Alibi LLC
The Company Corporation, Registered Agent
2711 Centerville Road, Suite 400
Wilmington, DE 19808
Via U.S. Mail

Alibi Ltd.
2nd Floor, Harbor Place, 103 South Church St.
P.O. Box 1163
George Town, Grand Cayman
Cayman Islands
Via U.S. Mail

Bonaventure 22, LLC
c/o Alan Burger, Esq., Registered Agent
c/o McDonald Hopkins LLC
505 South Flagler Drive, Suite 300
West Palm Beach, FL 33401
Via U.S. Mail

Botticelli Advisors, LLC
c/o Leslie Robert Evans, Esq., Reg. Agent
214 Brazilian Avenue, Suite 200
Palm Beach, FL 33480
Via U.S. Mail

David Derrico
5163 Deerhurst Crescent Circle
Boca Raton. FL 33486
*Pro Se*
Via U.S. Mail

David Levinson
1505 Canna Court
Mountain View, CA 94043
Via U.S. Mail

Adam T. Rabin, Esq.
Robert C. Glass, Esq.
McCabe Rabin, P.A.
1601 Forum Place, Suite 505
West Palm Beach, FL 33401
Email:  arabin@mccaberabin.com
*Attorney for Gerry Matthews*
Via EM/ECF

C. Brooks Ricca, Jr., Esq.
C. Brooks Ricca, Jr. & Associates, P.A.
The Barristers Building
1615 Forum Place, Suite 200
West Palm Beach, FL 33401
Email: bricca@riccalawyers.com
*Attorney for Ryan Black*
Via EM/ECF

J. Marcus Payne
9250 Belvedere Road, Unit 101
Royal Palm Beach, FL 33411
Via U.S. Mail

| | |
|---|---|
| JJW Consultancy, Ltd.<br>9200 Belvedere Road<br>Suite 202<br>Royal Palm Beach, FL 33411<br>Via U.S. Mail | Joseph Walsh<br>197 South Federal Highway, Suite 200<br>Boca Raton, FL 33432<br>Via U.S. Mail |
| Joseph Walsh, Jr.<br>197 South Federal Highway, Suite 200<br>Boca Raton, FL 33432<br>Via U.S. Mail | William P. Ziegelmueller, Esq.<br>Stetler, Duffy & Rotert Ltd.<br>10 South LaSalle St., Suite 2800<br>Chicago, IL  60603<br>Email: bziegel@sdrlegal.com<br>*Attorney for Kevin Wright*<br>Via U.S. Mail |
| Larry A. Zink, Esq.<br>Zink, Zink & Zink Co., L.P.A.<br>Florida Office:<br>    1198 Hillsboro Mile – Suite 244<br>    Hillsboro Beach, FL 33062<br>Ohio Office:<br>    3711 Whipple Avenue, N.W.<br>    Canton, OH 44718-2933<br>Email:  zinklaw3711@yahoo.com<br>*Attorney for KK-PB Financial, LLC*<br>Via EM/ECF | Maria a/k/a Mia Matthews<br>101 Casa Bendita<br>Palm Beach, FL 33480<br>Via U.S. Mail |
| Gregory R. Elder, Esq.<br>Law Offices of Gregory R. Elder, LLC<br>108 SE 8th Avenue, Suite 114<br>Fort Lauderdale, FL 33301<br>Email:  gelderlaw@gmail.com<br>*Attorney for Leslie Robert Evans and Leslie Robert Evans & Associates, P.A.*<br>Via EM/ECF | Robert Matthews<br>101 Casa Bendita<br>Palm Beach, FL 33480<br>Via U.S. Mail |
| Mirabia, LLC<br>The Company Corporation, Registered Agent<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br>Via U.S. Mail | New Haven Contracting South, Inc.<br>c/o Alan I. Armour, II, Esq., Registered Agent<br>1645 Palm Beach Lakes Blvd., Suite 1200<br>West Palm Beach, FL 33401<br>Via U.S. Mail |
| Nicholas Laudano<br>638 Shore Drive<br>Boynton Beach FL 33435<br>Via U.S. Mail | NJL Development Group LLC<br>The Corporation Trust Company, Reg. Agent<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19808<br>Via U.S. Mail |
| Henry B. Handler, Esq.<br>Email:  hbh@whcfla.com; jn@whcfla.com<br>David K. Friedman, Esq.<br>Email:  dkf@whcfla.com; jh@whcfla.com<br>Weiss Handler & Cornwell, P.A.<br>2255 Glades Road, Suite 218A<br>Boca Raton, FL 33431<br>*Attorney for Palm House Hotel, LLLP, South Atlantic Regional Center LLC and USREDA LLC*<br>Via EM/ECF | Palm House PB, LLC<br>c/o Leslie R. Evans, Esq., Registered Agent<br>214 Brazilian Avenue, Suite 200<br>Palm Beach, FL 33480<br>Via U.S. Mail |

17

Palm House, LLC
The Company Corporation, Registered Agent
2711 Centerville Road, Suite 400
Wilmington, DE 19808
Via U.S. Mail

WPB_ACTIVE 7543404.1