IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:16-cv-81871-KAM

LAN LI, *et al.*,

      Plaintiffs,

v.

JOSEPH WALSH, *et al.*,

      Defendants.

_____/

## DEFENDANTS PALM HOUSE HOTEL, LLLP, SOUTH ATLANTIC REGIONAL CENTER, LLC, AND USREDA, LLC's MOTION TO DISMISS COMPLAINT

Defendants, SOUTH ATLANTIC REGIONAL CENTER, LLC ("SARC"), and USREDA, LLC (collectively, the "Defendants") and Defendant, PALM HOUSE HOTEL, LLLP ("Palm House") through counsel, file this Motion to Dismiss Complaint and state:[1]

## INTRODUCTION

As set forth in the Complaint, Plaintiffs filed this action against these Defendants with complete knowledge that Palm House had previously filed suits in Florida State Circuit Court against the responsible parties to recover loan funds that were misappropriated by third parties related to the development of the subject EB-5 hotel project. Plaintiffs simply re-characterize those state lawsuits as "pretend litigation." Complaint, ¶ 262. Aside from the fact that these claims are most likely barred by the litigation privilege, it is without debate that Palm House has already recovered in one such allegedly pretend litigation over $2 million in real dollars (representing the

---

[1] Palm House Hotel, LLLP is only named in Count II of the Complaint (which seeks its dissolution) and, therefore, only seeks dismissal of this one count. Unless otherwise indicated, all emphasis has been supplied.

net proceeds generated from the admiralty court ordered sale of a yacht)[2] and that the Plaintiffs' true purpose in mischaracterizing the pending state court litigation is to wrest control of same. *See*, Complaint, ¶ 292 ("Walsh, Payne and SARC should be removed from the wind up of Palm House and the prosecution of legal claims on behalf of Palm House.").[3]

Distilled to its essence, Plaintiffs' suit essentially seeks a refund of the investments they made in a limited partnership in the face of numerous and explicit disclosures of the very risks about which they now complain.   In fact, the possibility of a complete loss of funds or, alternatively, lack of access to these funds for an extended amount of time was prominently disclosed to Plaintiffs in the Private Placement Memorandum and Subscription Agreement.   These documents also clearly disclosed that Plaintiffs' investments were being used to make a loan to the Developer of a Hotel to fund an ongoing construction renovation project.

As discussed below, the Complaint should be dismissed because:

- The central claim that the investor funds could not be released prior to approval of their I-526 Petitions is negated by the terms of the Escrow Agreement.

- Various other fraud claims, including claims to the effect that the investments presented no risks, were guaranteed, *etc.*, are negated by the terms of the PPM and Subscription Agreement.

---

[2] Attached hereto as Composite "Exhibit A" are the following documents relating to this litigation. Defendants will be filing a Request for Judicial Notice of same.
1.   *Ex-Parte Order Granting Plaintiff's Motion for Emergency Relief to Prevent Fraudulent Transfer of Assets Pursuant to section 726.108*;
2.   *Order on Joint Stipulation for the Release of Fund to State Court Appointed Receiver, Cary Glickstein*;
3.   *Agreed Order Granting Plaintiff's Motion for Appointment of Receiver to Take Custody of Funds in the Federal Registry*; and
4.   *Receiver's Notice of Filing Proof of Deposit.*

[3] However, it should be noted Defendants dispute that Payne has any control or involvement in the pending State Court litigation.

- Plaintiffs' securities fraud and common law fraud claims improperly combine numerous defendants together without differentiating the conduct of each specific Defendant and are not pled with the particularity required by Rule 9(b).

- The securities and fraud claims fail to specify the time and place of each allegedly fraudulent representation.

- The conversion claims are negated by the Escrow Agreement which permitted release of the funds upon the filing of each investor's I-526 Petition and the investors acknowledged in their Subscription Agreement that their funds were going to be used to finance a loan for the development of the subject hotel project and were at risk.

- The security fraud claims are barred by the "bespeaks caution" doctrine.

- The limited partnership units do not qualify as "securities" as the primary motivating factor for the investment was to obtain an immigration visa, not economic profit from the investment.

- No securities fraud claim has been pled as to USREDA as no facts have been pled to show that it acted as a seller or agent of the seller in preparing the petitions and performing legal services.

- The claims for injunctive relief and constructive trust fail to state a cause of action and Plaintiffs impermissibly seek injunctive relief under the Florida RICO statute but only plead a purported claim under the federal RICO statute, which statute only permits the Attorney General to seek injunctive relief.

- The claim for dissolution of the limited partnership is contrary to the terms of the limited partnership agreement attached to the Complaint which prohibits the partnership from being dissolved prior to five years after the admission of the last EB-5 partner.

- The count for breach of fiduciary duty against SARC as a purported general partner is fatally inconsistent with Plaintiffs' claims in the same count that SARC was not a general partner.

- The fraudulent transfer claims fail because they do not to identify any specific fraudulent transfer of assets.

- The claim for an equitable accounting against SARC fails to state a cause of action because it incorporates an allegation that SARC was not a general partner and fails to allege any facts showing a fiduciary duty or that SARC was involved in any complicated transactions for which it has a duty to account.

- The claims for unjust enrichment fail as this count alleges the existence of an express contract between SARC and each investor in the form of a limited partnership agreement.

- The FDUPTA claim fails in whole or in part as the allegedly fraudulent misrepresentations relied are at variance with the terms of the PPM and Escrow Agreement and, as a matter of law, cannot apply to transactions outside of Florida.

- The conspiracy claims fail because the underlying tort allegedly fails to state a cause of action.

- The constructive fraud claim fails as to SARC because it incorporates an allegation that SARC was not a general partner and fails to allege any facts showing a fiduciary duty owed by SARC.

- The piercing the corporate veil claim fails because it does not identify the alleged stockholders against whom liability is sought to be asserted and is completely conclusory in nature.

- The Chinese and Iranian Plaintiffs lack standing to assert a RICO claim based on the recent decision of the U.S. Supreme Court in *RJR Nabisco*[4] and because such claims have not been pled with the particularity required under Rule 9b.

## The Plaintiffs' Complaint

The Complaint consists of ninety-nine (99) pages, twenty-eight (28) counts, fifty-eight (58) Plaintiffs, and thirty-three (33) defendants. Thirty (30) of the Defendants are alleged to be part of a large group lumped together as the "Bad Actors," which Plaintiffs allege to include SARC and USREDA. With respect to most of the causes of action, including the fraud claims, the Complaint lumps the Defendants together without differentiating the conduct of each specific Defendant. Furthermore, Plaintiffs compound this error by re-alleging in each count all 271 preliminary allegations. For example, the same factual allegations supporting the Plaintiffs' Federal RICO claim have been re-alleged in the common law conversion claim. Each of these claims have different standards and require different elements. By re-alleging all "general allegations" in each

---

[4] *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016).

of the six counts, Plaintiffs have incorporated superfluous and irrelevant factual allegations in each

of the counts.

The following counts of the Complaint are directed to one or more of these Defendants:

Counts I –Injunction and Constructive Trust

Count II – Dissolution of Palm House

Count III- Conversion

Count IV – Fraud in the Inducement (Chinese investors)

Count V-   Fraud in the Inducement (Iranian investors)

Count VI – Fraud (Chinese investors)

Count VII – Fraud (Iranian investors)

Count IX – Breach of Fiduciary Duty

Count XIII – Avoidance of Fraudulent Transfers Pursuant to Fla. Stat. §726.105 (l)(a)

Count XIV -- Avoidance of Fraudulent Transfers Pursuant to Fla. Stat. §726.106

Count XV – Violation of Florida Securities Investor Protection Act (Chinese investors)

Count XVI-- Violation of Florida Securities Investor Protection Act (Iranian investors)

Count XVII – Unjust Enrichment

Count XVIII – Violation of FDUPTA

Count XIX – Equitable Accounting

Count XX – Conspiracy

Count XXI – Constructive Fraud

Count XXII – Piercing the Corporate Veil

Count XXV -- Violations of Section l0(b) of the Exchange Act and Rule lOb-5

Count XXVI - Violations of Section 20(a) of the Exchange Act (Control Person Liability)

Count XXVII – Violation of RJCO, 18 U.S.C. 1962(c)

Count XXVIII – Violation of RICO 18 U.S.C. 1962(d) (Conspiracy)

As set forth below, none of these Counts state a cause of action against the moving Defendants who seek dismissal of each and every count for the reasons set forth below.

## **ARGUMENT**

**I.    Plaintiffs' Core Claim that Palm House Hotel, LLLP Had No Right to Release Funds From Escrow Prior to Plaintiffs' I-526 Petitions Being Approved is Contradicted by the Terms of the Private Placement Memorandum, Escrow Agreement Attached Thereto and Subscription Agreement**

The allegations that form the primary basis for the claims against Defendants are Plaintiffs' claims that: (1) Defendants repeatedly misrepresented that the investment each Plaintiff made in the limited partnership would be held in escrow and only released at such time as their I-526 petitions were approved; and (2) "[i]nstead of holding Plaintiffs' funds in escrow until their Form 1-526 immigration petitions were approved, the funds were immediately stolen, distributed among the conspirators, and used for their self-indulgences." Complaint, ¶ 15.  Plaintiffs also allege that:

(1)    Defendants represented that their funds were also to be held in escrow because they "were not yet needed, because the developer's investment in excess of $22,000,000 and a bank loan in excess of $29,000,000 was being used for construction and renovation[.]" Complaint, ¶¶ 3 and 12(c)(viii);

(2)    Defendants represented that Plaintiffs' funds would not be taken from the escrow account, and would not be used, unless and until the developer's investment in excess of $22,000,000 and the bank funds in excess of $29,000,000 had been used at the project. Complaint ¶ 12(c)(viii);

(3)    There was a 100% guaranty for the return of Plaintiffs' investment and fees in the event their 1-526 petition is denied. Complaint ¶ 14; and

(4)     "USREDA guaranteed the approval of any I-526 application it completed

and the return of all service fees in the event of denial[.]" Complaint ¶ 101(d).[5]

As discussed below these allegations are either flatly contradicted by the terms of the

Private Placement Memorandum attached as "Exhibit G" to Plaintiffs' Complaint, by the terms of

the Subscription Agreement executed by each Plaintiff or by the terms of the Escrow Agreement

referenced in the PPM.

**A.     Where an inconsistency exists between an attached document and any
allegation in the pleading based on the document, the document controls.**

"... [A] written exhibit attached to a pleading becomes part of the pleading." Fed. R. Civ.

P. 10(c); *Taylor v. Appleton*. 30 F.3d 1365, 1368 (11th Cir. 1994); *see*, *generally*, *Grossman v.

Nationsbank. N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000).  'In the event of conflict between the

bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) ... the exhibit

prevails.' *Favetteville Investors v. Commercial Builders, Inc*., 936 F.2d 1462, 1465 (4th Cir. 1991)

(citing 2A Moore's Federal Practice, ¶10.06, p. 10-24).  Furthermore, where a plaintiff refers to

certain documents in the complaint and those documents are central to plaintiff's claims, then the

Court may consider the documents part of the pleadings for the purpose of Rule 12(b)(6) dismissal

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005); *De Leon v. Bank of Am., N.A. (USA)*, 6:09-CV-

1251ORL28KRS, 2009 WL 3822392, at *2 (M.D. Fla. Nov. 16, 2009).

Notably, Plaintiffs, like the Plaintiffs in *De Leon,* have failed to attach a complete copy of

the Subscription Agreements they executed (only 3 of its pages were attached) and have failed to

attach the Escrow Agreement which is one of the designated exhibits to the PPM. *See*, Complaint,

Ex. E and Ex. G at p. 4.  These omitted documents directly undermine their claims due to the

---

[5] Significantly, this appears to be the only misrepresentation allegedly made by USREDA.

language contained therein.  Specifically, the Escrow Agreement, a copy of which is attached hereto as "Exhibit B," provides that disbursement of funds received into escrow should occur as follows:

> **At such time as the Escrow Agent has received written notice from the LP and the Subscriber Representative that a Subscriber's Form I-526 Immigration Petition has been filed** with the USCIS, the Escrow Agent shall, subject to the receipt of such funds, **disburse the Subscriber's Subscription Proceeds to the account of the LP in accordance with written directions provided by the LP and Subscriber Representative.**

Escrow Agreement, p. 2 (emphasis added).  Thus, contrary to Plaintiffs' allegation in Paragraph 27, the Escrow Agreement provides that the investment funds can be disbursed as soon as the investor's I-526 application is filed with USCIS as opposed to the date the application is approved by USCIS.  Furthermore, the PPM is consistent with the Escrow Agreement:

> To maintain complete security in the payment process for the investor and the partnership, subscription funds will be wired into the Escrow Bank and **held in Escrow under the terms set forth in the Escrow Agreement**.  Separately, the $40,000 administration fee is also wired to the Escrow Bank.  The Escrow Account will be released to the Partnership at such time as (a) the Investor's 1-526 application is approved by the USCIS, **or** (b) **as defined in the Escrow Agreement**.

PPM, p. 15 (emphasis added).

Likewise, the Subscription Agreement executed by the Plaintiffs also negate their claims. While Plaintiffs have only attached an incomplete copy of the Subscription Agreement, the full Subscription Agreement[6], states that:

- She was provided with the Private Placement Memorandum. (¶ 1)

- "**No oral representations have been made or oral information furnished to the undersigned or his advisor(s)** in connection with the offering of this investment which were **in any way inconsistent with the Memorandum**." ¶ 1.

---

[6] A full and complete copy of the Subscription Agreement executed by lead Plaintiff in this action, Li Lan, is attached hereto as "Exhibit C."

- "I understand, acknowledge and agree **that the proceeds to be received by the Partnership from my investment will be used for development of the Project that is described in the Memorandum** and that I am relying on the abilities of the management of General Partner with respect to such investment." ¶ 2.

- "I am aware of and understand that the Investment is a speculative investment which involves a **high degree of risk** by me of my entire investment." ¶ 9.

- "I understand the **risks associates with the EB-5 immigration program. These risks include, but are not limited to:  (1) my immigration status is not guaranteed by the** Partnership or any other entity, and is wholly reliant on a determination by the USCIS, (2) **my entire investment is "at risk" and is not guaranteed by any party** …" ¶ 12.

- That she has read, understands and accepts the Partnership LP Agreement and executed the Agreement. ¶ 19.

Accordingly, Plaintiffs' reliance on any representation inconsistent with the plain terms of the Escrow Agreement, PPM and Subscription Agreement is unreasonable as a matter of law. *Garcia v. Santa Maria Resort, Inc*., 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007) (dismissing fraud claims where plaintiff's reliance upon statements which were at variance with the written documents were not reasonable as a matter of law).

Other PPM provisions negating the alleged representations concerning the safety of Plaintiffs' investments in the limited partnership include:

THESE ARE SPECULATIVE UNITS WHICH INVOLVE A HIGH DEGREE OF RISK.  **ONLY THOSE INVESTORS WHO CAN BEAR THE LOSS OF THEIR ENTIRE INVESTMENT SHOULD INVEST IN THESE UNITS.**

PPM, p. 3.

There will be no secondary market for the Units subsequent to this Offering. See "RISK FACTORS".  For the foregoing and other reasons, a purchase of Units is suitable only for Investors of substantial net worth who (i) are willing to purchase a high risk investment, (ii) **can afford to hold their Units for an indefinite period and do not anticipate that they will be required to sell their Units in the foreseeable future, and (iii) have sufficient net worth to sustain a total loss of their investment in the Partnership in the event that such loss should occur**.

PPM, p. 19.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ENTITY CREATING THE UNITS OFFERED AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS OF AN INVESTMENT IN THE UNITS. **THE UNITS OFFERED HEREBY HAVE NOT BEEN RECOMMENDED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION, ANY STATE SECURITIES COMMISSION OR ANY OTHER SECURITIES COMMISSION OR REGULATORY AUTHORITY OF ANY JURISDICTION IN ANY COUNTRY**. FURTHERMORE. THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PPM, p. 5.

NO PERSON HAS BEEN AUTHORIZED IN CONNECTION WITH THIS OFFERING TO GIVE ANY INFORMATION OTHER THAN AS CONTAINED IN THIS MEMORANDUM. NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

AN INVESTOR GENERALLY WILL NOT BE PERMITTED TO RESIGN OR OTHERWISE WITHDRAW, IN WHOLE OR IN PART, FROM THE PARTNERSHIP. INVESTORS SHOULD **BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF AN INVESTMENT IN THE UNITS FOR AN EXTENDED PERIOD OF TIME**.

PPM, p. 6.

THE PARTNERSHIP MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND CONCERNING WHETHER AN INVESTMENT IN THE PARTNERSHIP WILL MEET THE REQUIREMENTS OF THE EB-5 PROGRAM OR OTHER U.S. IMMIGRATION REQUIREMENTS. **NO ASSURANCES CAN BE GIVEN THAT AN INVESTMENT IN THE PARTNERSHIP Will RESULT IN AN IMMIGRANT INVESTOR RECEIVING AN EB-5 VISA OR CONDITIONAL OR PERMANENT RESIDENT STATUS**.

PPM, p. 30.

*AT-RISK INVESTMENT*

AN INVESTOR'S INVESTMENT **MUST BE AT RISK TO QUALIFY FOR THE EB-5 PROGRAM**. AS PART OF THE GREEN CARD APPLICATION,

AN INVESTOR **MUST SHOW EVIDENCE THAT HE OR SHE HAS PLACED THE REQUIRED AMOUNT OF CAPITAL AT RISK FOR THE PURPOSE OF GENERATING A RETURN ON THE CAPITAL PLACED AT RISK. THE PARTNERSHIP BELIEVES THAT AN INVESTMENT IN THE UNITS WILL PLACE AN INVESTOR'S INVESTMENT IN THE PARTNERSHIP AT RISK BECAUSE THERE IS NO ASSURANCE THAT THE BUSINESS OF THE PARTNERSHIP WILL BE ABLE TO RETURN ANY INVESTOR'S INVESTMENTS IN THE UNITS AT ANY TIME, OR *EVER*.** PURCHASE OF A UNIT DOES NOT GUARANTEE CONDITIONAL OR PERMANENT RESIDENCY IN THE UNITED STATES. FURTHERMORE, NO ASSURANCE CAN BE GIVEN THAT CONDITIONS TO RESIDENCY UNDER THE EB-5 PROGRAM WILL BE REMOVED.

PPM, p. 32.

**THE PARTNERSHIP IS A NEW BUSINESS WITH NO OPERATING HISTORY** UPON WHICH INVESTORS MAY BASE AN EVALUATION OF ITS POTENTIAL FUTURE PERFORMANCE. AS A RESULT, THERE CAN BE NO ASSURANCE THAT IT WILL BE ABLE TO DEVELOP CONSISTENT REVENUE SOURCES, OR THAT ITS OPERATIONS WILL BECOME PROFITABLE EVEN IF IT IS ABLE TO ALLOCATE THE FUNDS RAISED IN THIS OFFERING IN ACCORDANCE WITH ITS BUSINESS PLAN.

PPM, p. 33.

As set forth above, material allegations in the Complaint are directly contradicted by other allegations in the Complaint, as well as the PPM and Escrow Agreement.  Furthermore, each investor was expressly warned in the PPM that: "**NO PERSON HAS BEEN AUTHORIZED IN CONNECTION WITH THIS OFFERING TO GIVE ANY INFORMATION OTHER THAN AS CONTAINED IN THIS MEMORANDUM.**"  These inconsistencies are irreconcilable and, consequently, the Complaint should be dismissed.

Finally, the allegation contained in paragraph 36 of the Complaint that Walsh, Walsh Jr., and Payne represented to Plaintiffs that SARC was the "purported general partner of Palm House (it was not)" is directly contradicted by the Limited Partnership Agreement attached as an exhibit to the Complaint which shows that SARC was the general partner. *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1343 (S.D. Fla. 2010) (dismissing with prejudice fraud

claims premised on misrepresentation as to the identity of the developer; the developer was identified in the sales contract; this "plainly contradicts Plaintiff's alleged belief that some other entity was the developer.").

## II.     The Complaint Fails to State a Cause of Action for Conversion

### A.     The documents upon which Plaintiffs bring suit negate any claim of conversion against Defendants.

In Count IV, Plaintiffs seek damages for conversion.  Plaintiffs allege that they wired their money into an Escrow Account at PNC Bank. Complaint, ¶ 245.  Plaintiffs allege at paragraph 297 that the Bad Actors (which term is defined as including these Defendants), without *authorization*, exercised dominion and control over the funds owned by Plaintiffs.  In fact, the Complaint characterizes the funds as having been "stolen from the escrow account at PNC Bank." Complaint, ¶ 55.

However, the transaction, as structured, provided that the Plaintiffs were purchasing limited partnership interests in a partnership that would be loaning funds for the renovation and development of a hotel.  This is also set forth in the Subscription Agreement as discussed above.  More importantly, the terms of the Escrow Agreement (which actually sets forth the conditions to the release of funds from escrow) provides that:

> **At such time as the Escrow Agent has received written notice from the LP and the Subscriber Representative that a Subscriber's Form I-526 Immigration Petition has been filed** with the USCIS, the Escrow Agent shall, subject to the receipt of such funds, **disburse the Subscriber's Subscription Proceeds to the account of the LP in accordance with written directions provided by the LP and Subscriber Representative.**

Escrow Agreement, p. 2.

Thus the Escrow Agreement makes clear that the triggering event for release of funds is the <u>filing</u> of an I-526 Immigration Petition.  Significantly, the Complaint admits that I-526

Petitions were filed. Complaint, ¶ 166.  Rather, Plaintiffs simply attempt to re-write the terms of the Escrow Agreement to prohibit release of the funds prior to <u>approval</u> of the I-526 Petitions. Accordingly, absent such allegations, Plaintiffs' claims that they continued to have a possessory interest in the Escrow Funds sufficient to support a conversion action fails.

III.     **Plaintiffs' Fraud Claims Fails to State a Cause of Action**

      A.     **Plaintiffs' fraud claims are not pled with sufficient particularity.**

Plaintiffs have asserted four common law fraud claims in Counts IV, V, VI and VII.  "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Rule 9(b) is satisfied if the complaint sets forth:

(i)      precisely what statements were made in what documents or oral representations or what omissions were made,

(ii)     the **time and place** of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(iii)    the content of such statements and the manner in which they misled the plaintiff, and

(iv)    what the defendants **obtained** as a consequence of the fraud.

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted).

Plaintiffs group, indiscriminately, thirty (30) of the Defendants as alleged "Bad Actors" in the preliminary allegations that are incorporated by reference into each count of the Complaint. Paragraph 2 alleges the Bad Actors fraudulently induced Plaintiffs, but fails to plead the who,

what, when, where and how of the allegedly false statements and makes no attempt to differentiate the conduct of each specific Defendant.

Furthermore, in each of the fraud counts the Plaintiffs aggregate anywhere from seven to ten of the Defendants without differentiating the conduct of each specific Defendant.  To satisfy the heightened pleading requirements of fraud, the Plaintiffs must allege the who, what, when, where and how of the alleged false statements and not allege generally that those statements were made with the required intent. *Mizzaro vs. Home Depot, Inc.,* 544 F.3d 1230, 1237 (111h Cir. 2008).  Additionally, in most cases, Plaintiffs have not set forth the time and place where the false statements were made or what statements were specifically made by USREDA and SARC as opposed to statements by other Defendants.  In the interests of brevity, further deficiencies in Plaintiffs' pleading of its fraud based claims are contained in the section of this Motion that addresses Plaintiffs' security fraud claims.  Such argument applies with equal force to Plaintiffs' common law fraud claims.

**IV.     Plaintiffs' Florida and Federal Securities Fraud Claims Fail to State a Cause of Action**

Plaintiffs have asserted state or federal securities fraud claims against SARC and/or USREDA in the following counts of the Complaint: Counts XV, XVI, XXV and XXVI.

As all of these counts purport to allege securities fraud, Plaintiffs are required to satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 9(b) provides, in relevant part: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake…" Fed.R.Civ.P. 9(b).  Additionally, a complaint must present facts from which a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference

one could draw from the facts alleged. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

**A.      Plaintiffs' have not pled securities fraud claims with particularity.**

Plaintiffs do not meet the pleading requirements of Rule 9(b).   Rather than making particularized allegations against Defendants, the Complaint improperly lumps all Defendants together stating that they (the "Bad Actors"), as a group, made false representations to Plaintiffs. As this court held in *Kolmat Do Brasil, LDTA v. Evergreen United Inv., LLC*, 14-81320-CIV, 2015 WL 3606277, at *4 (S.D. Fla.  2015):

> With respect to all claims, the SAC does not meet the pleading requirements of Rule 9(b).[3]  Rather than making particularized allegations against Mariani, the SAC **improperly lumps all Defendants together, stating that they, as a group, made "assurances" to Plaintiffs**. *See Bruhl v. Price Waterhousecoopers Intern.*, No. 03-23044-Civ-2007 WL 997362, at * 3 (S.D.Fla. Mar.27, 2007) ("**Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud**.'")

By way of example, and without limitation, Plaintiffs' Complaint alleges that they were fraudulently induced to invest in the limited partnership units by the Bad Actors as a group:

- The Bad Actors materially, indeed crucially, represented, among other things, that: [followed by a list of 12 separate representations]. ¶ 12(c)

- No investor's 1-526 immigration petition for the Palm House Hotel project was ever approved by the United States government.  While the Bad Actors had provided a written notice of approval for the project, the notice was fraudulent and did not relate to the Palm House Hotel project. ¶ 22.

- There was no insurance policy that guaranteed the completion of construction of the Palm House Hotel project.  The Bad Actors had fraudulently represented that certain documentation was an American surety bond guaranteeing performance when, in reality, it was not. ¶ 23.

- In their solicitations to the Chinese Victims, SARC, USREDA, Walsh, Walsh Jr., JJW Consultancy, Ltd., Cheng, Wright, and Levinson stated that: [followed by a list of 22 allegedly false representations]. ¶ 108.

- The Bad Actors made representations to the Chinese Victims' immigration agents [whose identity is not disclosed in the Complaint] with the understanding and intent that they would relay the representations to the Chinese Victims and that the Chinese Victims would rely upon those representations. ¶ 109.

- In their solicitations to the Iranian Victims, Walsh, Ali Herischi, Herischi & Associates LLC, Ali Soltani, and Washington Marketing LLC stated that: [followed by a list 20 allegedly false representations]. ¶ 124.

- The Bad Actors represented to Plaintiffs that the only loan on the project was a bank loan, which was being used to create jobs and continue the construction. ¶ 485. [7]

Such form of pleading fails to meet the requirement of this Court that Plaintiffs "differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Bruhl v. Price Waterhousecoopers Intern.,* No. 03-23044-Civ-MARRA, 2007 WL 997362, at * 3 (S.D.Fla. Mar. 27, 2007); *See also*, *Liva v. Mendolia*, 2014 WL 2118814, at *3 (S.D. Fla. May 21, 2014) (Rule (b) not met where "the allegations contain no particular statements made by Defendant Forhan.").

Finally, such allegations fail to meet this Court's requirement that the time and place of the misrepresentations be pleaded. This principle is particularly applicable given that the Complaint alleges that the Bad Actors reside in a variety of different locations including Canada (¶ 34), Hong Kong (¶ 39), California (¶ 41), Maryland (¶ 42), Washington, D.C. (¶ 43), Connecticut (¶ 48), and Florida (¶ 64).

**B.    Securities fraud claims are barred by the "bespeaks caution doctrine."**

The "bespeaks caution doctrine," which has been accepted by the Southern District of Florida as a valid basis to grant a motion to dismiss, applies when an offering document contains

---

[7] The Complaint misleading defines the term "Offering Documents" as the "FAQ, Sales Brochure, and Signature Booklet." But, no matter how Plaintiffs characterize such documents, the only Offering Document for purposes of the securities law was the Private Placement Memorandum.

meaningful cautionary statements and specific warnings of the risk involved, such that the language may be sufficient to render the alleged omissions or misrepresentations immaterial as a matter of law. *Rhodes v. Omega Research, Inc.*, 38 F. Supp. 2d 1353 (S.D. Fla. 1999) (motion to dismiss granted as the prospectus contained numerous cautionary statements regarding the high degree of risk involved in the decision to invest).

Even a cursory glance at this PPM and Subscription Agreement would put any reasonable investor on notice that this was a highly risky investment and that the alleged representations concerning the safety and security of the investment could not be relied upon. These documents are replete with statements emphasizing the speculative nature of the investment. Anyone reading these documents would have been alerted to the many risks and uncertainties inherent in the investment.

In *In re Donald Trump Casino Sec. Litig.*, 7 F.3d 357, 372 (3d Cir.1993), *cert. denied*, 510 U.S. 1178 (1994), the court affirmed dismissal of the plaintiffs' complaint, which included a 10(b) action, for failure to state a claim. *Id.* at 377. The court found that the cautionary language in the prospectus rendered the alleged misrepresentation immaterial by negating any potential misleading effect. *Id.* at 373. The plaintiffs claimed that the defendants' statement in their prospectus, that the partnership believed that funds generated from a Vegas hotel/casino would be sufficient to cover its debt, was misleading. *Id.* at 365. However, because the prospectus contained both general and specific cautionary language – such as "The Casino business in Atlantic City, New Jersey has a seasonal nature," "the Partnership has no history of earnings and its operations will be subject to all of the risks inherent in the establishment of a new business enterprise" and "no assurance can be given that, once opened, the Taj Majal will be profitable" – the alleged misrepresentation was rendered immaterial as a matter of law. *Id.* at 370.

## C.      The limited partnership units do not qualify as securities.

Plaintiffs' cause of action for securities fraud further fails because the investments in question do not involve "securities" as that term is defined by state and federal securities laws. Under the seminal Supreme Court case of *Securities and Exchange Commision v. W.J. Howey Co.*, 328 U.S. 293 (1946), courts are instructed to determine "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* at 301.[8]   Additionally, *Howey* requires that investors show that "profits [are sought] on their investment" and not just from "the scheme in which they invest." *SEC v. Edwards*, 540 U.S. 389, 394 (2004).   In other words, if the primary motivating factor for the investment is something other than a direct economic profit from the investment, then the transaction does not involve a "security." *See, United Housing Fund, Inc. v. Forman*, 421 U.S. 837, 852-53 (1975) (finding that the transaction was not a security where the primary motivating factor for the investment was a desire to obtain a place to live rather than the seeking of any direct economic profit from the investment).

Here, very clearly, the primary motivating factor for Plaintiffs to subscribe to the Limited Partnership Units and contribute capital was their desire to obtain conditional residency status in the United States through the EB-5 Program.   Indeed, the PPM states that: "[t]he Units will be offered to prospective investors by the Partnership.   Prospective investors <u>are limited to qualified non-U.S. citizens seeking permanent residence in the United States through the EB-5 Program</u> who are Accredited Investors." PPM, p. 40.   Any return to be earned, which at best was estimated to be a 0.25% annual return (PPM, p. 12) was miniscule and was not the motivating factor for the

---

[8] The *Howey* test for determining whether an investment is a security also applies to state law security fraud claims under Chapter 517. *Kligfeld v. State, Office of Fin. Regulation,* 876 So. 2d 36, 38 (Fla. 4th DCA 2004).

investment.  Since Plaintiffs' primary motivating factor for the investment was their desire to obtain a visa to enter the United States, their contribution into the Fund did not involve the purchase of a security.  Accordingly, all of Plaintiffs' claims for securities fraud should be dismissed as a matter of law.  *See also, Teague v. Bakker*, 139 F.3d 892 (4th Cir. 1998).

      **D.**        **No securities fraud claims have been pled as to USREDA.**

Plaintiffs allege that: "USREDA acted as a law firm and contracted to provide legal immigration services to the Chinese Victims regarding the EB-5 Visa program.  USREDA guaranteed the approval of any I-526 application it completed and the return of all service fees in the event of denial." Complaint, ¶ 37.  While the Complaint does not indicate the basis on which USREDA is named as a Defendant to the Florida Securities fraud claim, it appears that Plaintiffs' Complaint relies upon § 517.211(2), Fla. Stat., which provides that "any person purchasing or selling a security in violation of Section 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, is jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for rescission." Complaint, ¶ 397.  However, no facts are alleged in the Complaint that USREDA **personally participated** or **aided** in the making of the **sale of securities**.

In *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825 (S.D. Fla. 1996), investors in securities brought an action against the law firm claiming that the law firm made false statements of fact and omitted material facts in connection with the sale of securities.  The court held that the "only basis of liability would be a finding that Defendant was an agent of [the Seller] with respect to the sale of securities to Plaintiffs" *and* that it "personally participated or aided in making the sale." *Id*. at 828 (internal citation omitted).  The court noted

that liability for securities fraud could not be based merely on the basis of substantial participation in the transaction. *Id.* The court concluded that the defendant must be shown to have provided more than standard legal services in order to impose liability as an agent under § 517.211. *See also, Bennett v. Durham*, 683 F.3d 734 (6th Cir. 2012) (holding that attorney who provided legal advice in connection with issuance and sale of oil-and-gas-exploration securities did not "offer or sell a security" as required to impose liability under Kentucky Securities Act; attorney drafted and distributed investment documents, made himself available to answer questions from prospective investors and represented clients in an enforcement proceeding).

While the Complaint contains conclusory allegations that various individual defendants served as agents of USREDA[9] and that those agents allegedly made false representations to investors, the PPM given to the investors clearly states that: "[n]o person has been authorized in connection with this Offering to give any information other than as contained in this Memorandum." PPM, p. 7. Nor do the allegations contained at paragraphs 502-505 that USREDA is a controlling person contain any facts showing how an entity such as USREDA, charged with performing "legal services,"[10] allegedly personally participated or aided in the making of the sale of securities.

Accordingly, as the Complaint is devoid of allegations as to how USREDA personally participated or aided in making the sale of the securities, the Florida securities fraud claim fails.

### E.   Count I seeking injunctive relief and a constructive trust should be dismissed.

Count I should be dismissed against Defendants. Plaintiffs have combined these Defendants together with the group of thirty (30) alleged "Bad Actors," failed to plead the claim

---

[9] The court need not accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[10] *See*, Complaint ¶ 32.

against Defendants with the specificity required and failed to plead the elements of the claim as they relate to the specific conduct of each Defendant.  Plaintiffs fail to specifically set forth facts showing a substantial threat of irreparable injury caused by Defendants, and have failed to show that their remedy at law for damages is not adequate.

Furthermore, as discussed below in addressing the merits of Plaintiffs' RICO claim, the U.S. Supreme Court has recently held that RICO does not have extraterritorial application to injuries sustained by citizens of other nations.  If Plaintiffs cannot plead a federal RICO claim, then any Florida RICO claim likewise fails since they have similar pleading requirements. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1364 (M.D. Fla. 2007) ("… because Bray's federal RICO claim is insufficient, Bray's Florida RICO claim is also insufficient.").

Count I seeks a preliminary and permanent injunction restraining the Bad Actors, and their agents:

> from disposing of or secreting any assets that may reasonably contain or be proceeds of Walsh's alleged illegal activity, from disposing of or secreting any property or real property that **may** reasonably have been purchased with proceeds of Walsh's alleged illegal activity and, further, from impairing, transferring, disposing, or otherwise diminishing the value of any such property, or from stripping the equity of such property via mortgages or otherwise.  Plaintiffs further **request that the Court freeze any accounts in which the Bad Actors and/or any entity they own and/or control has an interest,** and impose by temporary and permanent injunctive relief **a constructive trust upon the proceeds of Walsh's illegal conduct and grant Plaintiffs such other and further relief**.

It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity and "the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *In re Fredeman Litig.*, 843 F.2d 821, 824 (5th

Cir. 1988).  Alternatively, even if injunctive relief were available, there is no authority to support Plaintiffs' request that the Court freeze *any* accounts "in which the Bad Actors and/or any entity they own and/or control has an interest."

  **F.**  **The injunctive relief provisions of the Florida RICO Statute are inapplicable.**

  In support of their injunction claim, Plaintiffs rely on §§ 812.035 (1) and (6), Fla. Stat., relating to Florida's RICO statute which requires a "showing of immediate danger of significant loss or damage," if the injunction is not granted.  However, this Count does not purport to allege a cause of action for violation of the civil theft statute nor does it contain allegations of a pattern of racketeering activity and an enterprise within the meaning of the **Florida** RICO statute.

  Rather, the only RICO claim that Plaintiffs have purported to plead to date is a Federal RICO claim in Counts XXVII and XXVIII.  But the federal RICO statute does not provide for a private remedy of injunctive relief.  *See, Religious Technology Center v. Wollersheim*, 796 F.2d 1076, 1980-89 (9th Cir. 1986) *cert. denied*, 479 U.S. 1103 (1987) (reading legislative history of RICO as foreclosing injunctions for private plaintiffs).  Instead, the only party authorized to seek injunctive relief under the federal RICO statutes is the Attorney General.[11]

  Finally, the claim for constructive trust fails to state a claim because Plaintiffs have not identified any specific trust *res* that is allegedly being held by SARC or USREDA as constructive trustees.  Instead, Plaintiffs appear to be seeking the imposition of a constructive trust on all assets owned by the Defendants. *See*, *Bender v. Centrust Mortgage Corp.,* 51 F.3d 1027, 1030 (11th Cir.

---

[11] 18 U.S.C.A. § 1964 (b) states: "The Attorney General may institute proceedings under this section.  Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper."

1995) (court may impress property with a constructive trust only if trust *res* is specific, identifiable property; it may not impose such a trust on general assets of the defendant).

**VI.    Count II Fails to State a Cause of Action for Judicial Dissolution of Palm House Hotel, LLLP**

Section 7.6 of the Limited Partnership Agreement attached to the Complaint provides:

The following actions shall require the approval of Limited Partners holding a majority of the then outstanding Units held by Limited Partners: … (ii) **dissolution of the Company prior to the end of the fifth year after admission of the last EB-5 Limited Partner**.

Less than five years have elapsed since the admission of the last EB-5 Partner.  This is self-evident from the allegation of the Complaint that it was not until the beginning of 2013 that Walsh and various other Defendants went to China to solicit Chinese investors for the EB-5 program at the Palm House Hotel. Complaint, ¶ 81.  Accordingly, Count II fails to state a cause of action for dissolution as it fails to plead that the required approval of Limited Partners holding a majority of the outstanding Units has been obtained.[12]

**VII.    Count IX is Fatally Inconsistent in its Allegations and Thus Fails to State a Cause of Action for Breach of Fiduciary Duty**

Plaintiffs seek compensatory and *punitive damages* against Walsh and Payne in Count IX for ***breach of fiduciary duty*** alleging that they were General Partners in Palm House Hotel, LLLP and owed the limited partners a fiduciary duties. Complaint, ¶ 340.

Plaintiffs also seek compensatory and *punitive damages* against SARC for breach of fiduciary duty and allege that: "SARC also owed Plaintiffs a fiduciary duty and other implied

---

[12] Plaintiffs alternatively plead that dissolution is appropriate under Article X of the Limited Partnership Agreement, but fail to plead any facts to show that any of the three conditions to termination have occurred.

duties, including the duties of loyalty and care, as it **purported** to act as the general partner on behalf of Palm House."(Emphasis added). Complaint, ¶ 341.[13]

However, the Complaint incorporates by reference the allegations of paragraph 36 that: Walsh, Walsh Jr., and Payne represented to Plaintiffs **that SARC was the general partner** of Palm House (**it was not**)." (Emphasis added.)

In sum, Plaintiffs seek to hold the individuals it claims were the actual general partners liable for breach of fiduciary duties owed as general partners *and* the entity they claim was never a general partner.

Either SARC was a general partner owing fiduciary duties to the Plaintiffs or it was not. Plaintiffs cannot reject SARC's authority under the Limited Partnership Agreement to manage or control the Partnership and sue who it claims are the actual general partners while simultaneously affirming SARC's position as general partner by alleging that it violated its duties as General Partner.  The discrepancy is particularly troublesome given that Plaintiffs seek punitive damages against all three defendants for breach of their alleged duties as general partners.

This inconsistency in allegations is fatal to the breach of fiduciary duty claim and, therefore, Count IX should be dismissed.

**VIII.   Counts XII, XIII and XIV Containing Plaintiffs § 726.105, *et. seq*. Fraudulent Conveyance Claims Fail to State Claims Against Defendant USREDA and SARC**

Counts XII, XIII and XIV should be dismissed against Defendants USREDA and SARC as they impermissibly lump together the Defendants and fail to identify any specific transfer of

---

[13]SARC respectfully submits that there is no authority for holding an entity that Plaintiffs claim was never a general partner liable for breach of fiduciary duties owed by a general partner. Furthermore, the Limited Partnership Agreement attached to the Complaint shows that SARC was the sole general partner.  There is no reason why Plaintiffs need to attempt to sue it as the *purported* general partner of the Partnership other than that Plaintiffs seek to manufacture claims for breach of fiduciary duty against other defendants.

assets, funds or property of the alleged debtor (Joseph Walsh) that was allegedly transferred to these Defendants. *In re Stewart*, 280 B.R. 268, 286 (Bktcy. M.D. Fla. 2001) (finding complaint failed to state a claim sufficient to support a default judgment under the UFTA where: "Nowhere in the Complaint does Barbara Stewart allege that an identifiable asset was transferred on a specific date pursuant to a specific transfer").

As in *Stewart*, the fraudulent transfer counts consist of little more than a recitation of the language of Chapter 726 regarding the elements of actual and constructive fraud. Plaintiffs should be required to amend these counts to identify the dates and specific amounts of investor funds or other assets allegedly fraudulently transferred by Walsh to USREDA and SARC.

**IX.     Count XIX Fails to State A Claim for Equitable Accounting**

This claim for equitable accounting against SARC fails for the same reason that the breach of fiduciary duty claim fails. This count expressly incorporates paragraph 36 that alleges that SARC was **not** a general partner. Yet the sole basis alleged in the Complaint for claiming that SARC owed a fiduciary duty is the claim that it acted as a purported general partner of the Partnership. Complaint, ¶ 341. At the same time, there are insufficient facts pled to show that USREDA owed any fiduciary duty to Plaintiffs to support an accounting. Additionally, the conclusory allegations of numerous transfers traceable to Plaintiffs' funds after the initial release of funds from escrow relate to defendants *other than* SARC and USREDA do not support the conclusion that the transactions were "complicated" as they pertain to the movants.

**X.     Count XVII Fails to State a Claim for Unjust Enrichment**

The claim for unjust enrichment fails to state a cause of action as the Complaint affirmatively shows that an express contract exists between SARC and the Plaintiffs. Specifically, the unjust enrichment count incorporates paragraphs 1 through 271 of the Complaint, including

the allegation that the Plaintiffs entered into a Limited Partnership Agreement with SARC.

It is true that a plaintiff may plead an unjust enrichment claim in the alternative to a contractual claim when the existence of the contract is in dispute, *See, PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*, 2013 WL 12172912, at *7 (M.D. Fla. Aug. 28, 2013). However, Plaintiffs have not pled the claim in the alternative and have not challenged the validity or existence of the limited partnership agreement. In fact, Plaintiffs' causes of action expressly include a claim to enforce an alleged right to dissolve the Partnership and representations allegedly contained in the Limited Partnership Agreement. Complaint, ¶¶ 88, 98, 288 and 295. Finally, the claim for constructive trust in this count fails because no claim is stated for unjust enrichment and for all of the same reasons that the claim for constructive trust fails in Count I.

Accordingly, the unjust enrichment claim contained in Count XVII should be dismissed for failure to state a claim.

## XI.   The FDUPTA Claims Fail to State a Cause of Action

### A.   The claims are negated by the terms of the escrow agreement.

As discussed above, the Escrow Agreement provides that the investment funds can be disbursed as soon as the investor's I-526 application is filed with USCIS as opposed to the date the application is approved by USCIS. The PPM also provides for the funds to be disbursed as provided in the Escrow Agreement. Accordingly, the conduct in subparagraphs (a)-(c) of this paragraph concerning unauthorized disbursement of investor funds cannot constitute "deceptive practices" since no conduct alleged in these paragraphs contravenes the terms of Escrow Agreement. *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007) (dismissing FDUPTA claim where plaintiff's reliance upon statements which were at variance with the written documents were not reasonable as a matter of law).

**B.** **Count XVII should be dismissed as to all conduct outside of Florida.**

FDUTPA applies only to actions that occurred within the state of Florida.  Consequently,

Plaintiffs' claim that Defendants violated FDUTPA must be based entirely on actions that occurred

within Florida, and Plaintiffs cannot proceed on this claim based on actions that occurred outside

of the state of *Florida. Carnival Corp. v. Rolls-Royce PLC*, Case No. 08-23318-CIV-SEITZ, 2009

2009 WL 3861450 (S.D. Fla. Nov. 17, 2009) (citing *Millennium Communications & Fulfillment,*

*Inc. v. Office of Attorney General,* 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000) (stating that purpose

of FDUTPA is to prohibit unfair and deceptive practices which have transpired within the

territorial boundaries of the state of Florida)).

In this case one of the key "deceptive acts" alleged is:

> Continually lulling and lying to Plaintiffs about the status of the Palm House Hotel
> project, the status and character of the litigation relating to the project, the status of
> the I-526 petition approvals, and such other frauds and falsehoods that were told to
> Plaintiffs while their funds were stolen and dissipated, in an effort to prevent
> Plaintiffs from bringing a lawsuit, alerting law enforcement or otherwise interfering
> with the Bad Actors' scheme.

Complaint at ¶ 431(f)

The Complaint fails to specify the *location* of the conduct alleged in this paragraph,

although it does appear that the Plaintiffs are all located in either China or Iran.  Accordingly, the

FDUTPA claim should be dismissed "with leave to re-plead to specify the location of the conduct

to make certain it occurred within the territorial boundaries of Florida." *See*, *Five for Entm't S.A.*

*v. Rodriguez,* 877 F. Supp. 2d 1321, 1330-31 (S.D. Fla. 2012).

**XII.   Count XX Fails to State a Claim for Civil Conspiracy Against Defendants**

Count XX should be dismissed because the alleged underlying torts that form the

underlying claims for the conspiracy claim fail to state a claim.  Specifically, as set forth above,

the Escrow Agreement and Subscription Agreement negate Plaintiffs' claim that their funds were

improperly released from Escrow and the fraud claims have not been pled with particularity or otherwise fails to state a cause of action for all of the reasons set forth above.  Furthermore, the specific allegations of conspiracy contained in this count are nothing more than conclusions of law.

## XIII.   Count XXI Fails to State a Claim for Constructive Fraud Against Defendants

This claim fails as to SARC and USREDA because constructive fraud requires that a fiduciary relationship exist between the parties.  Under Florida law, constructive fraud will not lie where parties are dealing at arms-length. *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla. 2005).  No facts have been pled to show that USREDA, which was allegedly responsible for preparing the EB-5 paperwork, acted other than in an arms-length capacity.  But, even if a fiduciary duty has been pled, the fraud claims upon which this count are based have not been adequately pled due to the lumping of Defendants and other deficiencies cited above.

Furthermore, as to SARC, this count incorporates by reference the allegation that SARC was not a general partner, thereby negating any claim that SARC owed a fiduciary duty to the limited partners/Plaintiffs.

## XIV.   Count XVII Fails to State a Cause of Action for Piercing the Corporate Veil

Plaintiffs make no allegations, with any specificity or detail, as to what level of control over SARC and USREDA the unidentified "stockholders" allegedly exerted over these entities and, does not even identify who the stockholders are.  Furthermore, the allegation regarding corporate formalities not being followed is pled on "information and belief." Complaint, ¶ 460. Additionally, the allegations of improper conduct in the form of alleged "lies, fraudulent representations, and other criminal acts" are not identified.  To the extent that the alleged improper

conduct is intended to be limited to the facts set forth in the preliminary allegations, then such claims of fraud fail for all of the reasons argued in this Motion.  However, there is nothing in this count that purports to limit such alleged improper conduct to such preliminary allegations.

In *Traffic Jam Events, LLC v. Cortes*, 2009 WL 2175640 (M.D. Fla. 2009), defendants filed a Rule 12(b)(6) motion to dismiss on the basis that, *inter alia*, the claims against the individuals failed because the plaintiff's allegations failed to pierce the corporate veil.  The allegations in the operative complaint against the individual defendant Cortes were that "Defendant Cortes used Overdrive and Cortes Enterprises in such a manner that he dominated and controlled the corporation to such an extent that the corporations' independent existences, were in fact nonexistent and the shareholders were in fact alter egos of the corporation" and that "Defendant Cortes further used the corporate form for an improper purpose causing injury to Traffic Jam." *Id*. at *3.

The court found this language – which provided more specificity as to why the individual defendant's behavior supported piercing the corporate veil than do the allegations in the instant pleading – to be insufficient to pierce the corporate veil.

## XV.   Counts XXXVII and XXXVIII Fail to State Claims for Violation of RICO

### A.   The RICO claims are not pled with sufficient particularity.

The federal RICO statute, 18 U.S.C.A. § 1964, contains an important exception as to the conduct that it encompasses and provides that "… **that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962**."  Apparently cognizant of this exception, Plaintiffs rely on events allegedly occurring after the alleged securities fraud occurred. Complaint, ¶ 509.  However, Plaintiffs fail to plead with particularity **as to these Defendants** the specific acts constituting the

RICO violations.  Nor are there adequate allegations to establish that SARC and USREDA personally participated in the post-security fraud RICO violations alleged in Count XXVII.

As this court stated in *Associated Indus. Ins. Co., Inc. v. Advanced Mgmt. Services, Inc.*, 12-80393-CIV, 2014 WL 1237685, at *5 (S.D. Fla. Mar. 26, 2014)(Marra):

> To survive a motion to dismiss, RICO claims based solely on fraud-related predicate acts, such as mail and wire fraud, must be plead with particularity.  To plead fraud with particularity, as stated above, a civil RICO plaintiff must allege, **as to each defendant**: (1) the precise statements, documents or misrepresentations made; (2) the time, place and person responsible for the statements; (3) the content and manner in which these statements misled the plaintiffs, and (4) what the defendants gained by the alleged fraud. Fed.R.Civ.P. 9(b).

In this case, the RICO claims are alleged against a large group of thirty (30) Defendants labelled as "Bad Actors."  The RICO claims allege that the Bad Actors engaged in a "pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to execute a scheme to defraud …"  However, the illegal activity allegedly engaged in by USREDA and SARC is not set forth in Count XXVII.  Nor is it discernable as the RICO counts incorporate by reference all 271 allegations contained in the Preliminary Allegations of the Complaint, particularly since most of those allegations involve facts relevant to securities fraud which is not the type of conduct that can support a RICO claim.  Nor should the Court be put to the burden of having to sift through all 271 allegations to determine what allegations are relevant to the RICO count *See*, *Lynn v. Dickman*, 2015 WL 102916, at *2 (M.D. Fla. 2015).

Finally, the absence of specificity is particularly troublesome as to the claims against USREDA which the Complaint alleges provided legal services to the investors in connection with their immigration petitions.  As the court noted in *Bailey*, it has been previously found that a law firm's drafting of documents sent to prospective investors based on information provided by the client company did not establish RICO liability even though the court found a massive fraud had

been committed, and that investors had relied on the documents prepared by the law firm. *Bailey*, 938 F. Supp. at 831.

> **B.  Plaintiffs lack standing to assert RICO claims as the RICO statute does not have extraterritorial reach.**

To establish RICO liability a plaintiff must prove "conduct" of an "enterprise" through a "pattern" of "racketeering" activity. *Sedima, S.P.R.L. v. Imrex Co., Inc*. 473 U.S. 479, 496 (1985). The RICO statute, however, does not have extraterritorial reach. *RJR Nabisco*, 136 S. Ct. at 2105-06 ("We conclude that § 1964(c) does not overcome the presumption against extraterritoriality.  A private RICO plaintiff therefore must allege and prove a *domestic* injury to its business or property.").  Thus, a court need not reach the elements of RICO if the injury occurred outside of the United States. *Id.* [14]

The injury allegedly suffered by Plaintiffs was "the loss of their investments." Complaint ¶ 518.  Significantly, Plaintiffs do not allege that they ever stepped foot in the United States.  Rather, the gist of their claims is that while in their native countries they received false information and representations (and relied upon documents translated into their native languages), relied on such representations and were fraudulently induced to part with their monies and are now unable to leave their respective countries.[15]

---

[14] "The question is instead whether the court has authority to recognize a cause of action *under U.S. law*" for injury suffered overseas. *RJR Nabisco,* 136 S. Ct at 2109 (internal citation omitted) (emphasis added). As to that question, the relevant background principle is the presumption against extraterritoriality, not the "traditional rule" respondents cite." *Id.*

[15] In order to satisfy the first statutory standing requirement, an injury to business or property, a plaintiff must allege a concrete financial loss.  Accordingly, even if Plaintiffs could allege that they have some "right" to obtain immigration visas, the loss of such "right" is not a concrete financial injury, but rather purely speculative in nature. *Keeton v. Gynecare Worldwide*, 15-20442-CIV, 2016 WL 2753866, at *3 (S.D. Fla. Jan. 29, 2016), report and recommendation adopted sub nom. *Keeton v. Johnson & Johnson*, 15-20442-CIV, 2016 WL 2753667 (S.D. Fla. Mar. 31, 2016).

For example, paragraph 6 of the Complaint alleges that as a result of the alleged fraudulent representations "… over 80 foreigners are now unable to leave their respective countries and have lost their entire lifesavings." Thus, any injury clearly occurred when each Plaintiff was allegedly fraudulently induced to give up his/her savings by wiring monies from his/her accounts in China and Iran. The injury clearly occurred in China (or Iran) the moment that each foreign investor acted on the alleged representations by wiring out their funds and allegedly parting with his/her life savings.[16] No claim has been made that any of the funds for the investments came from any US bank accounts or from the liquidation of any US owned assets.[17] Finally, Plaintiffs do not allege that they had any separate business or property in the United States that was harmed as a result of any RICO violation.

*RJR Nabisco* was recently applied by a district court in *Union Commercial Services Ltd. v. FCA Int'l Operations LLC*, RICO Bus. Disp. Guide 12797 (E.D. Mich. 2016):

> Applying this test, **plaintiff has not adequately pleaded a domestic injury. Plaintiff is an entity organized in the Cayman Islands or Republic of Angola**, has its principal place of business in the Republic of Angola, and is owned by Angolan citizens. Under its Agreement with defendants, plaintiff was permitted to distribute Chrysler, Dodge, and Jeep products only in the Republic of Angola. (Dkt. 1-1 at 5, 32.) **Thus, the only specific injury of which plaintiff complains – lost sales and lost profits – occurred entirely outside of the United States**. And, assuming it is true that defendants intended to obtain an improper advantage in the market at plaintiff's expense, the intention was directed solely at the Angolan auto market. **In sum, defendants' alleged conduct was directed at, and any effects were felt by, plaintiff's business or property interests outside of the United States.**

(Emphasis added.)

---

[16] It is difficult to believe the claim that $500,000 represented each Plaintiffs' life savings given that Plaintiffs alleged they were accredited investors at Paragraph 164 of the Complaint (*i.e.*, they each had a net worth in excess of $1,000,000). *See*, PPM, p.

[17] Even if a US Bank account owned by a Plaintiff was used (and there is no allegation that this occurred), the Supreme Court further noted that: "peripheral contacts with the United States – up to and including the use of a domestic bank account – do not bring an otherwise foreign scheme within the reach of the RICO statutes."

Any claim that RICO injury allegedly occurred when Defendants allegedly converted funds in the U.S. based escrow account is unavailing.  Aside from the fact that any claim of conversion is negated by the terms of the Escrow Agreement and Subscription Agreement, the gist of Plaintiffs' RICO claim is that Defendants executed "a scheme to *defraud*."  Emails and letters evidencing wire and mail fraud might be examples of predicate acts, engaging in common law conversion is not.

By reason of the foregoing, the Complaint should be dismissed as to Defendants SOUTH ATLANTIC REGIONAL CENTER, LLC, USREDA, LLC and PALM HOUSE HOTEL, LLLP.

Dated: January 13, 2017          Respectfully submitted,

WEISS HANDLER & CORNWELL, P.A.
2255 Glades Road, Suite 218A
Boca Raton, FL 33431
Telephone:    (561) 997-9995
Facsimile:    (561) 997-9995
*Attorneys for Defendants South Atlantic regional Center, LLC, USREDA, LLC and Palm House Hotel, LLLP*


s/ Henry B. Handler
HENRY B. HANDLER
Florida Bar No. 259284
hbh@whcfla.com
jn@whcfla.com
filings@whcfla.com
DAVID K. FRIEDMAN
Florida Bar No. 307378
dkf@whcfla.com
jh@whcfla.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on the 13th day of January, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record listed in the Service List below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Henry B. Handler_____
HENRY B. HANDLER