UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-cv-81871 MARRA/

LAN LI, an individual; YING TAN, an individual;
TAO XIONG, an individual; et al.

      Plaintiffs,

vs.

JOSEPH WALSH, et al.,

      Defendants.
_____/

**DEFENDANTS' ALI HERISCHI AND HERISCHI & ASSOCIATES, LLC'S
MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY,
<u>MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT</u>**[1]

Defendants Ali Herischi and Herischi & Associates, LLC (collectively the "Herischi Defendants"), move to compel arbitration pursuant to the arbitration clause contained in the Engagement Agreements between the parties and to dismiss the Complaint because its allegations are directly contradicted, and therefore precluded, by the terms of the Engagement Agreements between the parties. Alternatively the Herischi Defendants move to dismiss the Complaint filed against them for failure to state a claim, or, in the alternative, for a more definite statement.

The Plaintiffs in this case are investors from Iran and China who invested $500,000 in the Palm House Hotel project through the Immigrant Investor Program, more commonly known as the EB-5 program, through the South Atlantic Regional Center, LLC ("SARC"). The Iranian investors hired the Herischi Defendants to prepare the necessary legal

---

[1] As permitted by Local Rule 5.1(a) and (b), this Motion has been submitted with 1.5 line spacing in order to comply with the page limitations imposed by Local Rule 7.1(c)(2). A substantively identical copy with 2.0 line spacing is attached as Exhibit 1 hereto for the Court's convenience.

CASE NO. 16-cv-81871 MARRA/

documents to facilitate their investment and apply for the EB-5 Visa.  When the Iranian investors' applications were denied and their investment was not returned by the Palm House Hotel Project, as the Offering Documents stated that it would be, in an effort to find *some* way to recover their investments, the Plaintiffs have brought suit against thirty-three separate Defendants, including the Herischi Defendants.

The Iranian investors pursue claims against the Herischi Defendants despite the fact that the allegations of the Complaint directly conflict with the plain terms of their Engagement Agreements with the Herischi Defendants, and the fact that the Engagement Agreements require that any such claims be brought in arbitration.  Moreover, as set out in detail herein, *even if* the Plaintiffs' claims against the Herischi Defendants were not barred by the express terms of the Engagement Agreements, the Plaintiffs' Complaint fails on its own terms.  The Complaint contains no specific allegations against the Herischi Defendants, but rather it lumps them together with numerous other Defendants.  In addition to these pleading deficiencies, each of the Plaintiffs' individual claims fails on substantive grounds as well.

## I.  BRIEF FACTUAL BACKGROUND

1. The Plaintiffs filed their Complaint on November 14, 2016.  (ECF No. 1.)  The Complaint is ninety-nine pages long, and consists of twenty-eight separate counts, against thirty-three Defendants.  (*Id.*)  Thirty of the Defendants, including the Herischi Defendants, Ali Soltani, and Washington Marketing, LLC, are lumped together and referred to collectively throughout the Complaint as the "Bad Actors."  (*Id.* at p. 4.)

2. The five Plaintiffs from Iran, Mohammad Zargar, Shahriar Ebrahimian, Reza

2

CASE NO. 16-cv-81871 MARRA/

Simak Nia, Sarah Salehin and Sanaz Salehin (hereinafter the "Iranian Plaintiffs"), hired the Herischi Defendants to provide specifically enumerated legal services,[2] pursuant to an Engagement Agreement.  The Engagement Agreement defined the legal services to be provided as follows:

> 1 -   If required, apply to acquire a license from Office of Foreign Asset Control (OFAC) for an Iranian to invest in a Regional Center.
>
> 2 -   Open necessary bank accounts to accommodate the money transfer, including an escrow account.
>
> 3 -   File applicable USCIS forms for the applicant and his/her family in regards to the EB-5 application.  Client has chosen South Atlantic Regional Center for his investment.
>
> 4 -   Facilitate the return of the investment to the investor upon the distribution by the Regional Center.
>                                        . . .
> Note.  This Engagement letter **does not** cover the removal of condition after two years of residency.

(Engagement Agreement, ECF No. 1-39, at pp. 26-27.)

3.   While the Plaintiffs have attached an unexecuted version of the Engagement Agreement as part of Exhibit F to the Complaint, they have not attached the executed versions, although they exist.  Executed copies of four of the five Engagement Agreements

---

[2]   There is no allegation in the Complaint that the Herischi Defendants, Ali Soltani, or Washington Marketing, LLC had any interactions with, or made any representations to, the Chinese Defendants.  Indeed, it is hard to imagine how fifty-three (53) Plaintiffs with whom the Herischi Defendants have never had any contact can have claims against the Herischi Defendants.  Indeed, this is not a Class Action and each individual Plaintiff must have his own, separate basis for each claim against these particular Defendants.

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

are attached hereto as Composite Exhibit 2.  The Herischi Defendants do not have in their possession the executed version of the Engagement Agreement for Reza Simak Nia, although it was executed in Ali Herischi's presence.  (*See* Herischi Declaration, attached as Exhibit 3.)

4. The Engagement Agreement with each of the Iranian Plaintiffs specifically precludes the key allegation in the Complaint that the Iranian Plaintiffs invested in the project "in reliance on the Offering Documents and the oral representations [made by the Herischi Defendants]." (*See e.g.* Compl., ECF No. 1, ¶ 128.)  Indeed, the Engagement Agreement provides, specifically:

> The firm is not retained to provide investment advice.  We are working with Client to evaluate the Regional Center business opportunity, but limited to the Immigration laws governing the EB-5 application.  Our scope of engagement does not cover any investment advice or evaluation of an investment opportunity.   We are not responsible for client's business decision.  The firm does not and never have guaranteed any investment outcome.   In addition, the Eb-5 application's approval is also not guaranteed by our firm.

(ECF No. 1-39, Ex. F, at p. 27) (*see also* Ex. 2, at p. 2.)

5. Not only do the express terms of the Engagement Agreement bar the substantive causes of action raised in the Plaintiffs' Complaint against the Herischi Defendants, but they also bar litigation in this forum.  Indeed, the Engagement Agreement has an express, and expansive, arbitration clause as follows:

> Any dispute or claim relating to our fees, charges, legal services, obligations reflected in this letter, or any other aspect of our representation shall be resolved through a confidential, binding arbitration, in the state of Maryland, before a single arbitrator under Commercial Rules then in effect of American Arbitration Association, and judgment on the award rendered

4

CASE NO. 16-cv-81871 MARRA/

> may be entered in any court having jurisdiction.  You agree
> that commitment here to arbitrate any and all disputes
> relinquishes any right to bring an action in court and that you
> are waiving right to a jury trial.

(*Id.* at p. 4.)

6.     Nevertheless, the Iranian Plaintiffs bring numerous claims here in Federal Court against the Herischi Defendants as a result of the allegedly false and misleading investment advice that the Herischi Defendants expressly told the Plaintiffs that they were not engaged to give.  Moreover, with respect to the Herischi Defendants, there are few allegations specific to them, and as set out in detail below, the Complaint simply attempts to impute the conduct of each Defendant to all of the remaining Defendants.  This is not permissible.  *Each* of the Plaintiffs must allege with respect to *each* of the Defendants what actions that particular Defendant took that caused it an actionable injury under state or Federal law.  As set out in detail below, the Plaintiffs' Complaint comes nowhere near meeting this burden.  For this, and other reasons discussed below, the entire Complaint must be dismissed with respect to the Herischi Defendants.

## II.  MEMORANDUM OF LAW

### A.     Motion to Compel Arbitration.

Contractual arbitration provisions are favored, and are regularly and routinely enforced.  Section 2 of the Federal Arbitration Act provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. The United States Supreme Court has found that this Act evidences a strong and liberal

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

policy favoring the enforcement of arbitration provisions.  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 2, 24 (1983).  Thus, any doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration.  *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

Arbitration provisions are contractual in nature, and thus construction of such provisions and the contracts that contain them "remains a matter of contract interpretation." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 637 (Fla. 1999)(citing *Seaboard Coast Line R.R. v. Trailer Train Co.*, 690 F.2d 1343, 1352 (11th Cir.1982)).  Courts have found that where, as here, the parties agree to a broad arbitration clause that clause should be enforced broadly.  For example, in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967), the Court determined that an arbitration clause providing for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement" was broad enough to encompass even claims of fraud in the inducement of the entire contract. Similarly here, the Engagement Agreements' arbitration clause states that it applies broadly to "[a]ny dispute or claim *relating to* our fees, charges, legal services, obligations reflected in this letter, *or any other aspect of our representation.*"   (ECF No. 1-39, Ex. F, at p. 29) (*see also* Ex. 2 at p. 4) (emphasis supplied).   The Engagement Agreement goes on to provide that the Iranian Plaintiffs agree that their commitment to arbitrate "relinquishes any right to bring an action in court and that you are waiving right to a jury trial." (*Id.*)

The Engagement Agreements' arbitration provision should be enforced and this entire action against the Herischi Defendants should be dismissed in favor of "a biding

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

arbitration, in the state of Maryland, before a single arbitrator under Commercial Rules then in effect of American Arbitration Association."  (*Id.*)

**B.     The Express Terms of the Iranian Plaintiffs' Engagement Letter Preclude the Claims Raised against Herischi and Herischi & Associates.**

*Even if* the Court declines to enforce the broad Arbitration provision contained in the Engagement Agreements, the Plaintiffs' claims are barred by the express, written terms of the Engagement Agreements themselves.   "[A] written exhibit attached to a pleading becomes part of the pleadings."  Fed. R. Civ. P. 10(c); *Taylor v. Appleton*, 30 F.3d 1365, 1368 (11th Cir. 1994); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  Where the terms of the attached document conflict with the allegations of the Complaint, "the exhibit prevails."  *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)(citing 2A Moore's Federal Practice ¶ 10.06, p. 10-24). Moreover, where a plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claims, then the Court may consider those documents as part of the pleadings for the purpose of a Rule 12(b)(6) dismissal without converting the Motion into one for summary judgment.  *Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005).  Here, the Iranian Plaintiffs rely upon the fiduciary relationship they allege exists between themselves and the Herischi Defendants.  (*See, e.g.,* Compl., ECF No. 1, ¶ 269, referring to Herischi's "fiduciary duty to be a neutral attorney to the Iranian [Plaintiffs]"; *id.*, ¶¶ 349-50 referring to the Herischi Defendants as "attorneys and advisors" and pointing to the "fiduciary relationship" between the Herischi Defendants and the Iranian Plaintiffs.) This fiduciary relationship is created and defined in the Engagement Agreement.  Indeed,

7

CASE NO. 16-cv-81871 MARRA/

the Engagement Agreement is so central to the Iranian Plaintiffs' claims that they attach an unexecuted copy of it to the Complaint.  The Iranian Plaintiffs cannot avoid the implications of the binding agreement they signed by simply attaching the unexecuted, rather than the executed version.

Because the Court may consider the Engagement Agreements, the Iranian Plaintiffs' reliance on any representation inconsistent with the plain terms of the Engagement Agreement is unreasonable as a matter of law.  *Garcia v. Santa Rmaria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007) (dismissing fraud claims where plaintiff's reliance upon statements which were at variance with the written documents were not reasonable as a matter of law).  As set out above the Engagement Agreements specifically disclaim the Herischi Defendants' knowledge of or responsibility for providing any information or advice related to the Iranian Plaintiffs' investment in the Palm House Project.  (ECF No. 1-39, Ex. F, at p. 31) (*see also* Ex. 2.)  In light of the Herischi Defendants' and the Iranian Plaintiffs' explicit agreement that the Herischi Defendants were to take no role in advising the Plaintiffs on their investments, the Iranian Plaintiffs cannot now sue the Herischi Defendants based upon the advice that the Herischi Defendants allegedly gave to the Iranian Defendants on their investments.  This fundamental allegation underlies each and every claim brought against the Herischi Defendants and, thus, the entire Complaint should be dismissed out of hand for failure to state a claim based upon the express contradiction between the allegations of the Plaintiffs' Complaint and the documents attached thereto.

**C.     Motion to Dismiss for Failure to State a Claim.**

The purpose of Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

facial sufficiency of the Complaint. *Vernon v. Med. Mgmt. Assocs. of Margatge, Inc.*, 912 F. Supp. 1549, 1553 (S.D. Fla. 1996). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that, to be facially sufficient, a pleading contain "a short and plain statement of the claim showing the pleader is entitled to relief." While detailed factual allegations supporting a plaintiff's claim is not required, a complaint must contain enough factual matter that the claim stated is "plausible" on its face. *Ashcroft v. Igbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (1986)). Indeed, Rule 8 demands more than an "unadorned" accusation that a defendant has unlawfully harmed the plaintiff. *Id.*

"Indiscriminately lumping defendants together" violates the pleading requirements contained in Rule 8. *See George & Co. LLC v. Alibaba.com, Inc.*, No. 2:10-cv-719-Ftm-29DNF, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011); *see also Kolmat Do Brasil, LDTA v. Evergreen United Invs., LLC*, No. 14-81320-CIV, 2015 WL 3606277, at * 4 (S.D. Fla. Jun. 8, 2015) (Marra, J.) ("The [complaint] has failed to allege a specific misrepresentation (or omission) made by Mariani as distinct from a misrepresentation made by another Defendant."); *Bruhl v. Price Waterhousecoopers Int'l*, No. 03-23044-Civ-MARRA, 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) ("Because Plaintiffs fail to differentiate between CGL and CFS, and do not expressly allege any of the necessary elements of a securities fraud claim listed above as being committed by CGL, the [complaint] does not comply with Federal Rules of Civil Procedure 8(a), 9(b), and the Private Securities Litigation Reform Act and therefore fails on its face to state a primary violation of 10(b) against CGL."); *Lane v. Capital Acquisitions & Mgmt., Co.*, No. 04-60602, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

in each claim and providing no factual basis to distinguish their conduct, the [ ] complaint fails to satisfy the minimum standard of Rule 8.")   Failure to identify the conduct complained of by *each* Defendant, fails to give *each* Defendant the required "fair notice" of the nature of the claim and the "grounds" on which the claim rests.  *George & Co.*, 2011 WL 6181940, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007)). Indeed, such pleading does not allow the individual defendants to "determine from the face of the Complaint [the] acts or omissions [for which] the Plaintiffs seek to hold each of them liable." *Lane*, 2006 WL 4590705, at *5.

Dismissal is the appropriate remedy for a violation of Rule 8.  *Pro Image Installers, Inc. v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan 15, 2009) (citing *Atuahene v. Hartford*, 10 F. App'x 22, 34 (2d Cir. 2001)).   Indeed, dismissal is "especially" appropriate where, "the plaintiff attempts to hold one defendant liable for the acts of other defendants . . . ."  *Id.* The Complaint lumps thirty of the thirty-three Defendants together and refers to them collectively as the so-called "Bad Actors" and lumps them together for nearly all intents and purposes throughout the Complaint.  Indeed the overall description of the scheme set out in the Complaint's introductory paragraphs does not mention either of the Herischi Defendants once.  This fatal pleading deficiency infects the entire Complaint and each and every count against these Defendants should be dismissed as a result.  Additionally, as set out in detail below, each individual Count raised by the Plaintiffs against these Defendants is substantively deficient as well.[3]

---

[3]     Counts II, IV, VI, VIII, IX, XI, XV, XXII, XXIII, XXIV are not brought against the Herischi Defendants and are, therefore, not addressed herein.

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

1.    *Counts I and Count XIX - Plaintiffs' Claims for Equitable Relief in the Form of Injunctive Relief and an Equitable Accounting.*

The flaws associated with lumping Defendants are particularly egregious in Counts I and XIX.  While Count I is brought against "All Defendants," the allegations in Count I focus on Defendant Walsh.  Indeed, Defendant Walsh's name is mentioned repeatedly in Count I and Defendants Herischi and Ali Soltani are mentioned once where the Complaint alleges, with no specifics, "Walsh Stole Plaintiffs' property from the Escrow Account and transferred it to the Second PNC Account and the Evans Account for distribution among his conspirators, the Bad Actors, which include . . . . Ali Herischi, Ali Soltani . . . and entities they own and/or control."  (Compl., ECF No. 1, at ¶ 276.)  There are no specific allegations as to what was allegedly transferred to these Defendants. Even more strikingly, the Herischi Defendants are not even mentioned at all in the Equitable Accounting claim contained in Count XIX.

Of course, equitable relief, such as that requested in Counts I[4] and XIX, is only available where there is no adequate remedy at law and irreparable harm will occur absent the injunction. *Weaver v. Fla. Power & Light Co.,* 172 F.3d 771, 773 (11th Cir. 1999)(citing *Rosen v. Cascade Int'l Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994)).[5]  Cases, such as this,

---

[4]    A party seeking a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) that an irreparable injury will be suffered absent an injunction; (3) that the threatened injury to the movant outweighs the damage the injunction will cause to the opposing party; and (4) that the injunction would not be adverse to the public interest.  *Pine v. City of West Palm Beach, Fla.*, 762 F.3d 1262, 1268 (11th Cir. 2014) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

[5]    Indeed, where an equitable accounting is sought along with damages "a claim for equitable accounting should be dismissed where the evidentiary facts alleged in a complaint show neither complexity nor inadequacy of legal remedy."  *See e.g. Managed*

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

where the remedy sought is money damages, fall within the general rule - "that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *In re Fredeman Litig.*, 843 F.2d 821, 824 (5th Cir 1988). Here, as demonstrated by the numerous legal claims brought, the Plaintiffs seek money damages and thus have an adequate remedy at law.

Because the Plaintiffs cannot demonstrate the irreparable harm required for injunctive relief, they attempt to rely upon Florida Statute § 812.035(1) and (6) – Florida's RICO statute. The Plaintiffs rely upon the section in § 812.035 (6) that allows for injunctive relief upon a "showing of immediate danger of significant loss or damage" if the injunctive relief is not granted. However, nowhere in this Count, or elsewhere in the Complaint, do the Plaintiffs even attempt to plead a cause of action under Florida's civil theft or RICO statutes. While the Plaintiffs have attempted to plead a cause of action under the Federal RICO statute in Counts XXVII and XXVIII, the *Federal* RICO statute does not provide for the private remedy of injunctive relief. *See Religious Tech. Ctr. v. Wollersheim*, 796 Fo.2d 1076, 1980-89 (9th Cir. 1986) (interpreting the legislative history of the federal RICO statute as foreclosing injunctions for private plaintiffs); *see also In re Fredeman Litig.*, 843 F.2d 821, 830 (5th Cir.1988) ("We find the analysis contained in the *Wollersheim* opinion persuasive . . . . We need not decide, however, whether all forms of injunctive or other equitable relief are foreclosed to private plaintiffs under RICO."); *but see Nat'l Org. for*

---

*Care Solutions, Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1279-80 (S.D. Fla. 2010) (citing *Fla. Software Sys. Inc. v. Receivable Dynamics Inc.*, 46 F. Supp. 2d 1276, 1285-86 (M.D. Fla. 1999); *Chiron v. Isram Wholesale Tours & Travel Ltd.*, 519 So. 2d 1102, 1103 (Fla. 3d DCA 1988)).

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

*Women, Inc. v. Scheidler*, 267 F.3d 687, 695 (7th Cir. 2001) ("We are persuaded instead that the text of the RICO statute, understood in the proper light, itself authorizes private parties to seek injunctive relief.") *rev'd Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 397 (2003) (reversing the injunction "without reaching the question of the availability of private injunctive relief under 1964(c) of RICO.").[6]

Count I seeks dramatic relief, beyond anything permitted by the law the Plaintiffs cite.  For example, the Plaintiffs request "that the Court freeze any accounts in which the Bad Actors and/or any entity they own and/or control has an interest, and impose by temporary and permanent injunctive relief a constructive trust upon the proceeds of Walsh's illegal conduct . . ." (Compl., ECF No. 1, at p. 57.)  There simply is no authority for the incredibly broad request that the Court enjoin *any* accounts "in which the Bad Actors and/or any entity they own and/or control has an interest."  (Compl. ECF No. 1, at p. 57.)

Finally, to the extent that the Plaintiffs seek a constructive trust, their claim fails because Plaintiffs have not identified any specific *res* that can be held by the Herischi Defendants - indeed the Plaintiffs have not identified any specific transfer of funds to the Herischi Defendants.  Rather than identifying a specific *res*, the Plaintiffs seem to seek the imposition of a constructive trust on *all* assets owned by *all* Defendants, as well as all assets held by entities that these Defendants own or control.  This the law does not permit. *Trend Setter Villas of Deer Creek v. Villas on the Green, Inc.*, 569 So. 2d 766, 768 (Fla.

---

[6]    18 U.S.C. § 1964(b) reads: "The Attorney General may institute proceedings under this section.  Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper."

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

4th DCA 1990) ("A constructive trust may only be imposed where the res is specific identifiable property or can be clearly traced in assets of the defendant which are claimed by the party seeking relief.").

2.    <em>Count III - Plaintiffs' Conversion Claim.</em>

Conversion is the wrongful deprivation of an owner's property, either permanently or for an indefinite period of time. *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984). A conversion cannot occur until there is a "present intent on the part of the wrongdoer to deprive the person entitled to possession of the property." *Id.* This present intent is often, but not always, shown by "demand and refusal" to return the property, because "[w]here a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred." *Id.* The Plaintiffs have not alleged how the Herischi Defendants intentionally converted each of the Plaintiffs' property to their own use. The Plaintiffs claim that "[m]any of the Plaintiffs have made a demand for the return of their property." (Compl., ECF No. 1, ¶ 300.) However, the Plaintiffs fail to identify which Plaintiffs made the demand and to which Defendants the demands were made. It is impossible, therefore, to determine the Herischi Defendants' alleged liability as this Count is plead.

Moreover, the documents attached to the Complaint are inconsistent with the allegations of demand. The letter attached as Exhibit N to the Complaint demonstrates Mr. Herischi's intent to return the entirety of the $40,000 per application that he received as a benefit from this project. (ECF No. 1-47.) Indeed, Mr. Herischi states as follows:

> I want to return to you and other clients the finder's fee I
> received from the Palm ($40,000). I have borrowed funds from

14

> my family to make a first installment of $20,000 and have enclosed a check in that amount.  I hope to pay the balance of $20,000 soon and am working to borrow additional funds for that purpose.

(*Id.*)[7]  As set out in detail above, where the documents attached to the Complaint conflict with the Plaintiffs' allegations, the documents control.  *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)(citing 2A Moore's Federal Practice ¶ 10.06, pp. 10-24).  Here, there has been no specific allegation of demand and refusal as to the Herischi Defendants, and any such allegation, or allegation that a demand would be futile, is precluded by the documents attached to the Complaint.

> 3.    *Counts V and VII - Plaintiffs' Fraud Claims.*

As set out above, the allegations raised in these fraud counts are specifically precluded by the terms of the Iranian Plaintiffs' Engagement Agreements.  *See supra* §II(B).  *Even if* they were not, however, the allegations raised in the fraud Counts herein fall woefully short of the pleading requirements for such claims under the Federal Rules of Civil Procedure.  Indeed, Rule 9(b) requires that all actions for fraud be pleaded with "particularity."  Fed. R. Civ. P. 9(b).  "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"  *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Rule 9(b) is only satisfied if the Complaint sets forth all of the following:

> (i)    precisely what statements were made in what document

---

[7]    Mr. Herischi has since made the second, $20,000 payment to each of the five Iranian Plaintiffs.

CASE NO. 16-cv-81871 MARRA/

or oral representations or what omissions were made;

    (ii)    the time and place of each representation or omission and the person responsible for making (or, in the case of omissions, not making) same;

    (iii)   the content of such statements and the manner in which they misled the plaintiff; and

    (iv)   what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Here, the Plaintiffs indiscriminately lump thirty (30) of the Defendants, including the Herischi Defendants, together as alleged "Bad Actors" in the preliminary allegations, which are then incorporated by reference into each count of the Complaint.

In the Counts themselves, the Plaintiffs allegations are almost as vague. For example Count V alleges that the Herischi Defendants, along with Ali Soltani and Washington Marketing, LLC, "adopted and sold the representations in the Offering Documents when selling the Palm House Hotel project to the Iranian [Plaintiffs]," (Compl., ECF No. 1, ¶ 313), and that they "made knowingly false oral statements concerning material facts when they sold the Palm House Hotel project to the Iranian [Plaintiffs] (*id.* ¶ 314). Similarly, in Count VII the Plaintiffs refer to various allegedly false statements that "SARC, USREDA, Walsh, Walsh Jr., Payne" and the Herischi Defendants collectively made to the Iranian Plaintiffs. (*Id.* ¶ 327-28.)

The allegations of the Complaint fall woefully short of the heightened pleading requirements for fraud under the Federal Rules. Indeed, under Rule 9(b) the Plaintiffs must allege the who, what, when, where, and how of the alleged false statements and not

simply allege generally that those statements were made.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).   There is simply no separation throughout the Complaint as to who made any particular statement, who the statement was made to, and when such statement was made.  As a result, these claims fail and must be dismissed.

4.   *XVI, XXV, and XXVI - Plaintiffs' Claims for Violation of the Federal and State Securities Laws.*

Again, *even if* the Plaintiffs' claims were not barred by the explicit terms of the Engagement Agreements, and *even if* those claims did not fail for failure to plead securities fraud with particularity as required by Rule 9(b),[8] Plaintiffs' cause of action for securities fraud still fails because the Herischi Defendants cannot be held responsible for their role in providing traditional legal services in the transactions.

In *Bailey v. Trenam Simmons, Kemker, Scharf, Barkins Freye & O'Neill, P.A.* 938 F. Supp. 825 (S.D. Fla. 1996), securities investors brought an action against a law firm claiming that the law firm made false statements of fact and omitted material facts in connection with the sale of securities.   The court held that the "only basis of liability would be a finding that Defendant was an agent of [the Seller] with respect to the sale of securities to Plaintiffs" *and* that it "personally participated or aided in making the sale," *Id.* at 828. (internal citations omitted).   The court noted that liability for securities fraud could

---

[8]      The allegations here are even more deficient.   While Rule 9(b) allows allegations of scienter to be made generally, the Federal Securities laws require more. Indeed, here the Plaintiffs have the burden of pleading facts from which a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).   Here, the allegations of knowledge and intent do not come close to meeting this burden.

CASE NO. 16-cv-81871 MARRA/

not be based merely on the basis of substantial participation in the transaction. *Id.* The court concluded that the defendant must be shown to have provided more than standard legal services in order to impose liability as an agent under Fla. Stat. § 517.211. *Id. See also Bennett v. Durham*, 683 F.3d 734 (6th Cir. 2012) (holding that the attorney who provided legal advice in connection with issuance and sale of oil-and-gas-exploration securities did not "offer or sell a security" as required to impose liability under Kentucky Securities Act; attorney drafted and distributed investment documents, made himself available to answer questions from prospective investors and represented clients in enforcement proceedings).

The allegations of the Complaint fail to provide any information as to how the Herischi Defendants, who provided legal services to the Plaintiffs, *personally* participated or aided in the making of the sale of securities. As such, the Counts XVI, XXV, and XXVI should be dismissed.

> 5.    *Counts XII, XIII, and XIV - Plaintiffs' Fraudulent Transfer Claims.*

The Plaintiffs' three separate claims for Avoidance of Alleged Fraudulent Transfers, contained in Counts XII, XIII and XIV should be dismissed because they fail to identify a single specific transfer made to the Herischi Defendants and do not allege that the Herischi Defendants are insiders. Here, again, the Plaintiffs do not even mention the Herischi Defendants individually, but rather they impermissible lump these Defendants together with the remaining Defendants. Failure to allege a specific transfer that was allegedly fraudulent is fatal to the Plaintiffs' claims. *In re Stewart*, 280 B.R. 268, 286 (Bktcy, M.D. Fla. 2001) (complaint failed to state a claim where "[n]owhere in the Complaint does [the

CASE NO. 16-cv-81871 MARRA/

plaintiff] allege that an identifiable asset was transferred on a specific date pursuant to a specific transfer.")  As a result, the fraudulent transfer claims should be dismissed.

> 6.    *Counts X and XXI - Plaintiffs' Claims for Breach of Fiduciary Duty and Constructive Fraud.*

The Iranian Plaintiffs' Claims for breach of fiduciary duty, contained in Count X, and constructive fraud (or abuse of a fiduciary relationship), contained in Count XXI, must be dismissed pursuant to the express terms of the Engagement Agreements between the parties.  Indeed, under Maryland law, which governs the relationship between the Herischi Defendants an the Plaintiffs, fiduciary duties can be modified and defined by contract.  *See e.g. Clancy v. King,* 954 A.2d 1092, 1100 (Md. 2008).  Here, the scope of the Engagement Agreement, which defined the rights and duties between the parties, specifically sets out the scope of the engagement and provides "The firm is not retained to provide investment advice. . . . We are not responsible for the Client's business decision."  (ECF No. 1-39, Ex. F, at p. 31) (*see also* Ex. 2.)  Thus here, the Plaintiffs' claims to recover for breach of fiduciary duty based on investment advice are barred because the fiduciary relationship between the parties was expressly limited to exclude a fiduciary relationship with respect to advice relating to the Plaintiffs' business investment.[9]

> 7.    *Count VII - Plaintiffs' Unjust Enrichment Claim.*

The elements of a cause of action for unjust enrichment are: "(1) [the] plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant

---

[9]    To the extent that Count XXI is brought by the Chinese Plaintiffs against the Herischi Defendants, no fiduciary relationship between the Chinese Plaintiffs and the Herischi Defendants has been alleged at all, nor could it be.

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Extraordinary Title Servs., LLC v. Fla. Power & Light, Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009). In Count XVII, the Plaintiffs have not alleged any of these elements specifically against either of the Herischi Defendants.   Indeed, the Herischi Defendants have had *no contact* at all with the vast majority of these Plaintiffs.  Count XVII should be dismissed for failure to comply with the pleading requirements imposed by the Federal Rules of Civil Procedure.

        8.    *Count XVIII - Plaintiffs' FDUTPA Claim.*

Not only does the Plaintiffs' claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") fail to separate the actions taken by the individual Defendants, in violation of Federal Rule of Civil Procedure 8(a), it also fails to allege conduct occurring in Florida.   FDUTPA applies only to actions that occurred within the state of Florida. Consequently, Plaintiffs' claim that Defendants violated FDUTPA must be based entirely on actions that occurred within Florida, and Plaintiffs cannot proceed on this claim based on actions that occurred outside of the state of Florida.  *Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318-CIV-SEITZ, 2009 WL 3861450 (S.D. Fla. Nov.17, 2009)(citing *Millennium Comms. & Fulfillment, Inc. v. Offices of Attorney Gen.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000) (stating that purpose of FDUTPA is to prohibit unfair and deceptive practices which have transpired within the territorial boundaries of the state of Florida)).

The Plaintiffs in this case are foreign nationals who reside in either Iran or China. (Compl., ECF No. 1, ¶ 30.)  The Herischi Defendants are residents of Maryland.  (*Id.* ¶ 42.)

20

CASE NO. 16-cv-81871 MARRA/

There are no allegations of any conduct taken by the Herischi Defendants in the State of Florida.  Accordingly, the Plaintiffs' FDUTPA claim should be dismissed "with leave to re-plead to specify the location of the conduct to make certain it occurred within the territorial boundaries of Florida." *Five for Entertainment S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330-31 (S.D. Fla. 2012).[10]  Given the respective residencies of the parties, it is likely, however, that no such amendment is possible.

9.    *Count XX - Plaintiffs' Claim for Civil Conspiracy.*

To prevail on a claim for civil conspiracy, the Plaintiffs must show that: (1) two or more defendants conspired; (2) to do an unlawful act, that at least one of the defendants did some overt act in pursuit of the conspiracy; and (4) that the plaintiff was damaged as a result of the acts performed pursuant to the conspiracy.  *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157 (Fla. 3d DCA 2008).  The Plaintiffs' claim for Civil Conspiracy contained in Count XX should be dismissed because the underlying torts the Plaintiffs plead to support the Civil Conspiracy claim fail to state a cause of action, as set forth in detail herein.  *Estate of Scutieri v. Chambers*, 386 Fed. Appx. 951, 954 (11th Cir. 2010) (quoting *Liappas v. Augoustis*, 47 So. 2d 582, 582-83 (Fla. 1950)) ("it is generally held that an act which constitutes no ground of action against one person cannot be made

---

[10]    It appears that the Plaintiffs also seek to recover damages that are not recoverable under FDUTPA.  *Even if* the Plaintiffs were able to state a claim under FDUTPA – they are not – they would only be entitled to recover "the difference in the market value of the product or service in the condition it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Smith v. 2001 S. Dixie Highway, Inc.,* 872 So. 2d 992, 994 (Fla. 4th DCA 2004) (internal quotations and citations omitted).  Damages in the form of a refund of the Plaintiffs' investment is not recoverable under FDUTPA.  *See id.*

CASE NO. 16-cv-81871 MARRA/

the basis of a civil action for conspiracy.") If there is no underlying tort, there can be no conspiracy to commit the tort.  *Id.*

          10.    *Counts XXVI and XXVIII - Plaintiffs' Civil RICO Claims.*

To recover on a Federal RICO claim, the plaintiff must allege that a Defendant: (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts."  *Ray v. Spirit Airlines*, 836 F.3d 1340, 1348 (11th Cir. 2016).  A RICO plaintiff must also show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation."  *Id.* (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006)).  Under RICO, the connection between racketeering activity and the injury cannot be remote, purely contingent, or indirect.  *Id.* at 1350.  There must be some direct relation between the conduct and the injury to sustain a claim.  *Id.*  The fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action - the injury must be direct.  *Id.*  Plaintiffs do not adequately plead a RICO claim here.  Indeed, as was the case in *Ray,* the Plaintiffs simply allege that they were harmed and recite a "'[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements' which is plainly insufficient to support a cause of action."  *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The allegations in the Complaint, none of which are specific to the Herischi Defendants, fall far short of the pleading requirements of rule 9(b), which likewise apply to a RICO claim, such as this one, predicated on fraud.  *Ray*, 836 F. 3d at 1347 n.1.  As this Court stated in *Associated Industries Ins. Co., Inc. v. Advanced Management Services,*

CASE NO. 16-cv-81871 MARRA/

*Inc.*, 12-80393-CIV, 2014 WL 1237685, at *5 (S.D. Fla. Mar. 26, 2014) (Marra):

> To survive a motion to dismiss, RICO claims based solely on fraud-related predicate acts, such as mail and wire fraud, must be plead with particularity. To plead fraud with particularity, as stated above, a civil RICO plaintiff must allege as to each defendant: (1) the precise statements, documents or misrepresentations made; (2) the time, place and person responsible for the statements; (3) the content and manner in which these statements misled the plaintiffs, and (4) what the defendants gained by the alleged fraud. Fed. R. Civ. P. 9(b).

In this case, the RICO claims, like the fraud claims, are alleged against a large group of thirty (30) Defendants collectively referred to throughout the Complaint as the "Bad Actors." The RICO claims allege that the Bad Actors engaged in a "pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to execute a scheme to defraud . . . ." (Compl., ECF No. 1, ¶ 510.) However, the illegal activity allegedly engaged in by these Defendants is not set forth in Counts XXVII or XXVIII.[11] The absence of specificity is particularly troublesome as to the claims against the Herischi Defendants where the Complaint alleges simply the provision of legal services to the inventors in connection with their immigration petitions. As the court noted in *Bailey*, a law firm's drafting of documents sent to prospective investors based on information provided by the client company did not establish RICO liability even though the court found a massive fraud had been committed, and that investors had relied on the documents

---

[11]    Nor is it discernable from allegations made elsewhere in the Complaint as the RICO counts incorporate by reference all 271 allegations contained in the Preliminary Allegations of the Complaint. It should not be the Defendants' burden to sift through all 271 general allegations in order to determine which allegations are relevant to the RICO count. *Lynn v. Dickman*, No. 8:14-cv-2063-T-36AEP, 2015 WL 102916, at *2 (M.D. Fla. Jan. 7, 2015). Such shotgun pleading is not permitted in the Eleventh Circuit. *Id.*

23

CASE NO. 16-cv-81871 MARRA/

prepared by the law firm.  *Bailey*, 938 F. Supp. at 831.

Even if the Plaintiffs could overcome these pleading deficiencies, however, the RICO statute does not have extraterritorial reach.  *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2105-06 (2016) ("[w]e conclude that § 1964(c) does not overcome the presumption against extraterritoriality.  A private RICO plaintiff must therefore allege and prove a *domestic* injury to its business or property.  Thus a court need not reach the elements of RICO if the injury occurred outside of the United States.")

Here, the injury alleged was the "loss of their investments." (Compl., ECF No. 1, ¶ 518.)  The Plaintiffs do not allege that they ever stepped foot in the United States.  Indeed, their claim is that they are not able to leave their respective countries to come to the United States because of the false information and representations that they allegedly received and relied upon while they were in their respective countries. (*See e.g.,* Compl, ECF No. 1, ¶ "over 80 foreigners are now unable to leave their respective countries and have lost their entire life savings.") The injuries alleged here occurred in Iran (or in China) when the foreign investor acted on the alleged misrepresentations by wiring out their investment funds.  No claim has been made that any of the funds for the investments came from any US bank accounts or other US related investment.  As a result, the Plaintiffs' RICO claims fail to state a cause of action and must be dismissed.

### E.    Alternative Motion for More Definite Statement.

Alternatively, Rule 12(e) of the Federal Rules of Civil Procedure provides that "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

a response."  As set out in detail above, because the Complaint contains no specific allegations with respect to the Herischi Defendants, it is impossible for these Defendants to formulate a responsive pleading to the Complaint as to the allegations made against each of them individually.  At the very least, therefore, the Herischi Defendants are entitled to a more definite statement.

## III.  CONCLUSION

WHEREFORE for the foregoing reasons Defendants Ali Herischi and Herischi & Associates, LLC respectfully request that the Court enter an Order: (1) compelling arbitration in this case pursuant to the terms of the Engagement Agreement, or, alternatively enter an Order (2) dismissing the Plaintiffs' Complaint for failure to state a claim, or (3) requiring a more definite statement; and (4) granting such additional relief as the Court deems just and proper.

Respectfully submitted,

**MICHAEL S. OLIN, P.A.**
Alfred I. DuPont Building, Suite 1224
169 East Flagler Street
Miami, Florida  33131
(305) 677-5088 / Fax (305) 677-5089

By:    s/Alaina Fotiu-Wojtowicz
       ALAINA FOTIU-WOJTOWICZ
       Florida Bar No. 0084179
       afw@olinlawfirm.com
       sasion@olinlawfirm.com
       igarcia@olinlawfirm.com

CASE NO. 16-cv-81871 MARRA/

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 23rd day of January, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Alaina Fotiu-Wojtowicz
ALAINA FOTIU-WOJTOWICZ

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

**<u>SERVICE LIST</u>**

G. Joseph Curley, Esq.
jcurley@gunster.com
Keith E. Sonderling, Esq.
ksonderling@gunster.com
Devin Radkay, Esq.
dradkay@gunster.com
Gunster, Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401-6194
*Attorneys for Plaintiffs*

John F. Mariani, Esq.
jmariani@kammerermariani.com
Christopher W. Kammerer, Esq.
ckammerer@kammerermariani.com
Kammerer Mariani PLLC
1601 Forum Place, Suite 500
West Palm Beach, FL 33401
*Attorneys for Defendants, Robert*
*Matthews, Maria Matthews, Bonaventure*
*22, LLC, Mirabia LLC, Alibi, LLC, Palm*
*House, LLC, 160 Royal Palm, LLC and*
*Palm House PB, LLC*

Larry A. Zink, Esq.
zinklaw3711@yahoo.com
kim.zinklaw@yahoo.com
Zink, Zink & Zink Co., LPA
1198 Hillsboro Mile, Suite 244
Hillsboro Beach, FL 33062
*Attorneys for Defendant*
*KK-PB Financial, LLC*

C. Brooks Ricca, Jr, Esq.
bricca@riccalawyers.com
C. Brooks Ricca, Jr. & Associates, P.A.
The Barristers Building
1615 Forum Place, Suite 200
West Palm Beach, FL 33401
bricca@riccalawyers.com
*Attorneys for Defendant, Ryan Black*

Gregory R. Elder, Esq.
gelderlaw@gmail.com
Law Offices of Gregory R. Elder, LLC
108 SE 8th Avenue, Suite 114
Fort Lauderdale, Florida 33301
*Attorneys for Defendants Leslie Robert*
*Evans and Leslie Robert Evans &*
*Associates, P.A.*

Adam T. Rabin, Esq.
arabin@mccaberabin.com
Robert C. Glass, Esq.
rglass@mccaberabin.com
e-filing@mccaberabin.com
McCabe Rabin, P.A.
1601 Forum Place, Suite 505
West Palm Beach, FL 33401
*Attorneys for Defendant Gerry Matthews*

Henry B. Handler, Esq.
hbh@whcfla.com
jn@whcfla.com
David K. Friedman, Esq.
dkf@whcfla.com
jh@whcfla.com
filings@whcfla.com
2255 Glades Road, Suite 218A
Boca Raton, FL 33431
*Attorneys for Defendants South Atlantic*
*Regional Center, LLC, USREDA, LLC*
*and Palm House Hotel, LLLP*

Mr. Nicholas J. Laudano
17 Hoadley Road
Branford, CT 06405
*Via U.S. Mail*

27

---

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131

CASE NO. 16-cv-81871 MARRA/

Mr. Joseph Walsh
99 Queens Road, Penthouse
Suite 7902 79 F
The Central
99 Queen's Road Central
Hong Kong

Mr. Joseph Walsh, Jr.
99 Queens Road, Penthouse
Suite 7902 79 F
The Central
99 Queen's Road Central
Hong Kong

JJW Consultancy, Ltd.
99 Queens Road, Penthouse
Suite 7902 79 F
The Central
99 Queen's Road Central
Hong Kong

Botticelli Advisors, LLC
c/o Leslie Robert Evans, Esq.,
 Registered Agent
214 Brazilian Avenue, Suite 200
Palm Beach, FL 33480
*Via U.S. Mail*

Mr. David Derrico
5163 Deerhurst Crescent Circle
Boca Raton. FL 33486
*Via U.S. Mail*

Mr. Kevin Wright
101 Clematis Street, Suite 503
West Palm Beach, FL 33401
*Via U.S. Mail*

MICHAEL S. OLIN, P.A.
Alfred I. DuPont Building, Suite 1224, 169 East Flagler Street, Miami, Florida 33131