UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81871-CIV-MARRA

LAN LI, an individual, et al,

Plaintiffs,

vs.

JOSEPH WALSH, an individual, et al,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Leslie Robert Evans and Leslie Robert Evans & Associates, P.A.'s Motion to Dismiss Plaintiff's Complaint (DE 55). The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

According to the Complaint, Plaintiffs are the victims of a $50 million fraud, theft, and conspiracy, in which a web of individuals, primarily based in Palm Beach County, Florida, preyed on foreign nationals desirous of leaving foreign countries, such as China and Iran, to provide their families with the opportunity for a better life in the United States through the EB-5 program. (Compl. ¶ 1.) The "Bad Actors"[1] conspired to fraudulently induce each Plaintiff to each invest $500,000, plus a $40,000 "administrative fee," into a purported Palm Beach real estate project, known as the "Palm House Hotel" which was simply a mechanism to steal

---

[1] The Complaint uses the term "Bad Actors" to identify Defendants who were part of fraud. The Complaint does not include the Evans Defendants as part of this group.

Plaintiffs' funds and distribute them among the conspirators. (Compl. ¶ 2.) Plaintiffs' funds were supposed to be held in an escrow account unless and until their I-526 immigration petitions[2] were approved by the United States government. (Compl. ¶ 3.)  If and when Plaintiffs' I-526 petitions were approved, the invested funds were supposed to be used to create at least 10 full-time jobs for qualifying U.S. workers, in this case by:

> (a) finishing the renovation and development of an existing luxury hotel structure in Palm Beach;
> (b) serving Palm Beach County by seeking to create jobs and increase U.S. exports by developing an upscale resort hotel; and
> (c) creating at least 790 direct and indirect jobs to support the EB-5 guidelines and the number of investors sought.

(Compl. ¶ 4.)

However, Plaintiffs' funds were not held in the escrow account. Instead, Plaintiffs' funds were transferred from the escrow account at PNC Bank to other accounts for the benefit of the conspirators, including a second account at PNC Bank. (Compl. ¶¶ 5, 246.)

Defendant Leslie Roberts Evans is an attorney in Palm Beach County.  Mr. Evans and his law firm, Leslie Robert Evans & Associates, P.A. (the "Evans Defendants") accepted a transfer of Plaintiffs' funds into their trust account after they were stolen from the escrow account at PNC Bank.  Specifically, from the second PNC account, the Bad Actors conspired and moved about $35 million of Plaintiffs' money to accounts belonging to the Evans Defendants. (Compl. ¶ 249.)  The Bad Actors also conspired and moved about $15 million from the second PNC account to an account in the name of Palm House LLC controlled by Mr. Evans and the Evans law firm. (Compl. ¶ 250.)  Once moved to the Evans account, several of the Bad Actors quickly

---

[2] Under the EB-5 program, an immigrant investor applies for an immigrant visa by submitting a Form I-526. (Compl. ¶ 71.)

transferred funds to other accounts and used them for personal expenses and investments and to pay off other participants in the scheme. (Compl. ¶¶ 251-52.) The Evans Defendants also distributed Plaintiffs' funds to persons and accounts selected by the conspirators. (Compl. ¶55.) Mr. Evans and his law firm paid themselves compensation from these funds while they assisted the Bad Actors in their theft and dissipation of the funds. (Compl. ¶ 258.)

The Complaint seeks injunctive relief against the Evans Defendants [3] under Florida Statute 8812.035(1), (6) (count one); conversion (count three); avoidance of fraudulent transfers pursuant to Florida Statute 726.105(1)(a) (counts twelve-fourteen); unjust enrichment (counts seventeen) and equitable accounting (count nineteen).

The Evans Defendants move to dismiss the Complaint on the following grounds: (1) the Complaint fails to satisfy pleading requirements to establish diversity jurisdiction; (2) the Evans Defendants owed no legal duty to Plaintiffs; (3) Plaintiffs have no entitlement to injunctive relief against the Evans Defendants; (4) the conversion claim must be dismissed due to lack of any wrongful dominion and control or knowledge of any adverse right to the money; (5) the fraudulent transfer claims fail to state a cause of action and (6) the unjust enrichment claim fails because Plaintiffs did not confer a direct benefit to the Evans Defendants.

II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

---

[3] The Court excludes counts not brought against the Evans Defendants

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion

A.  Subject Matter Jurisdiction

The Court begins, as it must, by addressing subject matter jurisdiction.  University of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).  The Evans Defendants contend that there is no diversity jurisdiction because Plaintiffs have not brought any federal law claims against them, and diversity jurisdiction is not properly alleged in the Complaint.  Plaintiffs respond that there is subject matter jurisdiction over these Defendants on the basis of supplemental jurisdiction, as Plaintiffs have alleged federal claims against other Defendants. (Compl. 61-62.)

The Supplemental Jurisdiction statute, 28 U.S.C. § 1367, provides in pertinent part:

... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

In determining whether state law claims "are so related" to a federal claim, a court should examine "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir.1996); see Lucero v. Trosch, 121 F.3d 591, 598 (11th Cir.1997) (finding state and federal claims derive from common nucleus of operative facts because the claims rely on identical actions of defendants); Palmer v. Hospital Auth. of Randolph County, 22 F.3d 1559,1563-64 (11th Cir.1994) (standard met when federal and state claims involve same witnesses, presentation of same evidence, determination of same facts); L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 427 (11th Cir.1984) (acts by same witnesses were basis for both federal and state claims).

After careful review of the Complaint, the Court finds that the state claims against the Evans Defendants arise from a common nucleus of facts as the federal claims lodged against other Defendants. Thus, there is no basis to find subject matter jurisdiction lacking.

B.  Injunctive Relief Pursuant to Florida Statute §§812.035(1), (6)

The Complaint alleges that Defendant Joseph Walsh stole Plaintiffs money and seeks to restrain the Evans Defendants (as well as other Defendants) who have received these proceeds from disposing of these funds. The Complaint does not appear to allege that the money remains in the escrow account. The Court will, however, permit Plaintiffs to amend the Complaint to allege that the money remains in the escrow account, which would allow Plaintiffs to seek that

5

the funds not be dissipated under Florida Statute § 812.035(6).

### C.  Conversion

Under Florida law, the elements of conversion are "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." Special Purpose v. Prime One, 125 F. Supp .2d 1093, 1099–1100 (S.D. Fla.2000) (citing Warshall v. Price, 629 So.2d 903, 904 (Fla. 1993)).  A defendant must possess the property in order to convert the property.  Medinis v. Swan, 955 So. 2d 595, 597 (Fla. Dist. Ct. App. 2007).

The Evans Defendants seek dismissal of the conversion count because the Complaint does not identify these Defendants as wrongdoers and there are no allegations that the Evans Defendants had any knowledge of adverse claims to the money.  Second, the Evans Defendants argue that the Complaint does not allege that they had any obligation to keep intact the money received because the Complaint does not allege they knew Plaintiffs had any adverse claim to the money.  Lastly, the Evans Defendants state that the Complaint does not allege they possessed the money at the time of conversion because the conversion had already taken place before the money was transferred into the Evans' account.

The Court rejects the Evans Defendants' arguments on the basis that the Complaint adequately identifies them as wrongdoers.  Indeed, the Complaint alleges that Mr. Evans and his law firm paid themselves compensation from these funds *while they assisted* the Bad Actors in their theft and dissipation of the funds. (Compl. ¶ 258) (emphasis added).  As for the Evans Defendants' argument that the conversion took place before they received the money, that assumes that there is no joint liability between the Bad Actors and the Evans Defendants, which is contradicted by the allegations of the Complaint.  Indeed, if the Evans Defendants and the Bad

6

Actors acted separately in such manner as to show that "the act of each was the exercise of the assumption of dominion over the property unauthorized by the rightful owner," a claim for conversion may proceed against the Evans Defendants. Wilson Cypress Co. v. Logan, 162 So. 489, 490-91 (1935).

### D.  Fraudulent Transfer

The Evans Defendants challenge these claims on the basis that they took the funds in good faith as subsequent transferees, they are not "debtors" liable on any legal claim, and the Complaint does not provide fair notice of the claims against them.

As in the argument pertaining to conversion, the Evans Defendants' arguments rest on their position that they acted simply as an escrow agent with no knowledge of the fraudulent scheme.  While that may be the case, the Court cannot make this assumption at the pleading stage. Instead, the Court must rely on the allegations of the Complaint which allege the Evans Defendants assisted the Bad Actors in their theft and dissipation of the funds.  (Compl. ¶ 258.) Nor does the Court agree that the Evans Defendants have not been placed on fair notice of these claims.  (See Compl. ¶ ¶ 55, 249-52, 258.)

For these reasons, the Court denies the motion to dismiss the fraudulent transfer counts against the Evans Defendants.

### E.  Unjust Enrichment

The Evans Defendants move to dismiss the unjust enrichment claim on the basis that the Complaint does not allege that a benefit was conferred directly onto them.  To state a claim for unjust enrichment, the following elements must be met: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's

acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." Vega v. T–Mobile USA, Inc., 564 F.3d 1256, 1274 (11th Cir. 2009) (citing Rollins, Inc. v. Butland, 951 So.2d 860, 876 (Fla. Dist. Ct. App. 2006)); Della Ratta v. Della Ratta, 927 So.2d 1055, 1059 (Fla. Dist. Ct. App.2006) (same).

This Court has recognized that an unjust enrichment claim may go forward where a benefit is conferred through an intermediary, finding that direct contact, or privity, is not the equivalent of conferring a direct benefit. Aceto Corp. v. TherapeuticsMD, Inc., 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013); see also Williams v. Wells Fargo Bank, N.A., No. No. 11–21233–CIV, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ("just because the benefit conferred by [the] [p]laintiffs on the [d]efendants did not pass directly from the [p]laintiffs to the [d]efendants—but instead passed through a third party—does not preclude an unjust-enrichment claim. Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims.")

The Evans Defendants contend they had no involvement in the transfer of money from one PNC Bank account to another and they merely acted as escrow agents. Again, as discussed supra, the Complaint adequately alleges that the Evans Defendants acted not as innocent escrow agents but were part of the fraudulent scheme. Thus, at the motion to dismiss stage, this claim must be allowed to proceed.[4]

---

[4] In their motion (DE 55), the Evans Defendants do not make any argument to dismiss the equitable accounting claim, although they do briefly address this claim in the reply memorandum. Nonetheless, the Court cannot consider it. Tallahassee Mem. Regional Med. Ctr. v. Bowen, 815 F.2d 1435, 1446 n. 16 (11th Cir. 1987) ("it is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief") (citing United States v. Oakley, 744 F.2d 1553, 1556 (11th Cir. 1984)).

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Evans Defendant's Motion to Dismiss Plaintiff's Complaint (DE 55) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of July, 2017.

_____
KENNETH A. MARRA
United States District Judge