UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81871-CIV-MARRA

LAN LI, an individual, et al,

Plaintiffs,

vs.

JOSEPH WALSH, an individual, et al,

Defendants.

_____/

**OPINION AND ORDER**

This cause is before the Court upon Palm House Hotel, LLLP, South Atlantic Regional

Center, LLC and USREDA, LLC's Motion to Dismiss Complaint (DE 92).  The Court has

carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

According to the Complaint, Plaintiffs are the victims of a $50 million fraud, theft, and

conspiracy, in which a web of individuals, primarily based in Palm Beach County, Florida,

preyed on foreign nationals desirous of leaving foreign countries, such as China and Iran, to

provide their families with the opportunity for a better life in the United States through the EB-5

program. (Compl. ¶ 1.)  The "Bad Actors"[1] conspired to fraudulently induce each Plaintiff to

invest $500,000, plus a $40,000 "administrative fee," into a purported Palm Beach real estate

project, known as the "Palm House Hotel" which was simply to steal Plaintiffs' funds and

distribute them among the conspirators. (Compl. ¶ 2.)

Plaintiffs' funds were supposed to be held in an escrow account unless and until their I-

_____

[1] The Complaint uses the term "Bad Actors"

526 immigration petitions[2] were approved by the United States government. (Compl. ¶ 3.) If and

when Plaintiffs' I-526 petitions were approved, the invested funds were supposed to be used to

create at least 10 full-time jobs for qualifying U.S. workers, in this case by:

> (a) finishing the renovation and development of an existing luxury hotel structure in
> Palm Beach;
> (b) serving Palm Beach County by seeking to create jobs and increase U.S. exports
> by developing an upscale resort hotel; and
> (c) creating at least 790 direct and indirect jobs to support the EB-5 guidelines and
> the number of investors sought.

(Compl. ¶ 4.)

However, Plaintiffs' funds were not held in the escrow account. Instead, Plaintiffs' funds

were transferred from the escrow account to other accounts for the benefit of the conspirators.

(Compl. ¶ 5.) Virtually none of Plaintiffs' funds were used to develop the property, no jobs

were created, and no EB-5 visas were issued to any of the Plaintiffs. (Compl. ¶ 6.)

The Bad Actors stole Plaintiffs' funds and used them to:

> (a) purchase multiple homes, investment properties, a 151 foot yacht that cost almost
> $6,000,000, payoff millions of dollars of personal debt (including more than
> $266,000 in personal back taxes), luxury cars, vacations, etc.;
>
> (b) pay others to further the criminal scheme, including using licensed
> attorneys who held a fiduciary duty to help fraudulently induce investments.

(Compl. ¶ 7.)

The fraudulent scheme operated as follows:

> (a) The Bad Actors preyed on Chinese and Iranian investors seeking a path to
> United States residency for themselves and their minor children.
> (b) The Bad Actors fraudulently obtained $500,000, plus $40,000 in
> administrative fees, from each foreign investor through the sale of alleged equity

---

[2] Under the EB-5 program, an immigrant investor applies for an immigrant visa by
submitting a Form I-526. (Compl. ¶ 71.)

interests in Palm House Hotel, LLLP, a Florida limited liability partnership that would be involved in the development of the Palm House Hotel, claiming that the investment would qualify them under the EB-5 program administered by United States Citizenship and Immigration Services.

(c) The Bad Actors represented, among other things, that:

(i) There was a 100% guaranty for the return of Plaintiffs' investment and fees in the event their I-526 petition was denied;

(ii) 100% of Plaintiffs' funds would be held in escrow until their Form I-526 immigration petitions were approved by the United States government;

(iii) A "limited number" of 79 equity interests would be sold in Palm House Hotel, LLLP at the price of $500,000 each, plus $40,000 in administrative fees;

(iv) Plaintiffs' funds would be exclusively invested in the Palm House Hotel to create jobs by helping to finish the renovation and development, which was near completion;

(v) The Palm House Hotel would be open for business by the "Season" of 2013/2014, and was 80-90% completed prior to Plaintiffs' investments;

(vi) The funds would create 930 jobs, more than the required 790 fulltime jobs for the offering;

(vii) Plaintiffs' funds would be the third and final source of funds. The EB5 funds were in addition to an equity investment by the developer in excess of $22,000,000 and a bank loan (by a bank that had done full due diligence justifying such a loan) in excess of $29,000,000. Accordingly, Plaintiffs' funds constituted less than 50% of the project funding;

(viii) Plaintiffs' funds would be held in escrow, and were not yet needed, because the developer's investment in excess of $22,000,000 and a bank loan in excess of $29,000,000 was being used for construction and renovation;

(ix) Plaintiffs' funds would not be taken from the escrow account, and would not be used, unless and until the developer's investment in excess of $22,000,000 and the bank funds in excess of $29,000,000 had been used at the project;

3

(x) The real property at issue was currently worth $110,000,000-$137,000,000 (the current value representation varied, depending on what the Bad Actors believed a particular Plaintiff wanted to hear) before completion, which made the investment "one of the safest EB-5 offerings from a Job Creation and Investment position."

(xi) I-526 immigration petitions for the Palm House Hotel project had already been approved by the United States government for the initial investors;

(xii) An insurance policy was purchased by the Developer that guaranteed that construction of the Palm House Hotel project would be completed;

(xiii) The local government guaranteed that construction of the Palm House Hotel project would be completed, and that this would be the last 5-star hotel property they would allow on Palm Beach;

(xiv) The developer, Robert Matthews, was a famous real estate developer in the United States;

(xv) Each investor's investment would be fully secured by the real property at issue and by the State of Florida pursuant to a UCC form. As there would be 79 rooms and 79 investors, each investor would be given a UCC security interest in an individual room; and

(xvi) Donald Trump and Bill Clinton would serve on the Palm House Hotel advisory board and would assist with any issues related to construction and also play a key role in recruiting celebrities and dignitaries to the club. Celebrities such as Tony Bennett, Celine Dion, Bill Koch, and Eric Schmidt were already members of the hotel club.

(d) The Bad Actors targeted investors with children between the ages of 18 and 21 because, under the EB-5 program, applicants have the right to apply for a green card for themselves, their spouse, and unmarried children under 21. Once the investor's funds were stolen and time continued to pass without the issuance of an I-526 petition approval, the Bad Actors would use the fact that the investor's child had "aged out" to silence the investor, perpetrate the continuing fraud, and prevent the investor from seeking redress or judicial assistance. The Bad Actors threatened the investors that, if the Palm House Hotel investment was interfered with or terminated, because the investor's child was no longer under 21, they would no longer be able to obtain a green card through their parent and would need to obtain their own EB-5 visa at an additional cost of $500,000.

(E) When any Plaintiff questioned or demanded the return of their investment, they were

4

told that all was well, that additional appeals of the application process were in place, that the country's foremost immigration attorney had been hired to prosecute the appeals, and that all was well with the construction of the hotel, thereby further lulling Plaintiffs and allowing the Bad Actors to deny any rights to reimbursement.

(Compl. ¶12.)

Plaintiffs' I-526 petitions were all denied, yet their funds were never returned and were not held in escrow until their Form I-526 immigration petitions were approved. (Compl. ¶¶ 14-15.) The Bad Actors did not sell 79 purported equity interests in Palm House Hotel, LLLP. Despite registering this offering for only 79 units, they perpetrated this fraud on over 90 unsuspecting foreign investors. (Compl. ¶16.) Plaintiffs' funds were not exclusively used to help finish the renovation and development of the Palm House Hotel. Instead the funds were used for unlawful purposes. (Compl. ¶17.) The hotel was nowhere near completion, let alone anywhere close to capable of being open for business by the "Season" of 2013/2014. As of the filing of the Complaint, it is a construction site, accruing fines of $2,000 per day from the Town of Palm Beach. (Compl. ¶18.) Plaintiffs' funds were not used to create 10 full-time jobs for each $500,000 advanced, which was the only purpose for the funds to come to the United States. Further, the fact that at least 93, as opposed to 79 interests were sold, prevented that from occurring. (Compl. ¶19.)

Plaintiffs' funds were not in addition to an equity investment by the developer in excess of $22,000,000 and a bank loan in excess of $29,000,000, so that Plaintiffs' funds constituted less than 50% of the project funding. There was no bank loan, there was no developer's equity, and there was no other source of funds. (Compl. ¶20.) The real property was not worth $110,000,000-$137,000,000. Indeed, the property had been purchased out of foreclosure for $10,000,100. (Compl. ¶21.)

No investor's I-526 immigration petition for the Palm House Hotel project was ever approved by the United States government. While the Bad Actors had provided a written notice of approval for the project, the notice was fraudulent and did not relate to the Palm House Hotel project. (Compl. ¶22.)  There was no insurance policy that guaranteed the completion of construction of the Palm House Hotel project. The Bad Actors represented that certain documentation was an American surety bond guaranteeing performance when, in reality, it was not. (Compl. ¶23.)  The local government never guaranteed the completion of construction of the Palm House Hotel or certified it as a 5-star property. Instead, the local government was imposing significant fines against the property. (Compl. ¶24.)

Robert Matthews is not a famous real estate developer in the United States. (Compl. ¶25.) Each investor's investment was not fully secured by the real property or the State of Florida. In fact, a secret, unrecorded mortgage in the amount of $27,468,750 was granted to the prior developer of the project in August 2013, which was not recorded until March 28, 2014 -- seven (7) months after it was granted -- and after almost all Plaintiffs had undertaken their due diligence and wired their investments for the project. A mortgage to secure Plaintiffs' interest in the real property was not recorded until October 2014, after whatever equity existed in the project had been subsumed by the prior developer's secret mortgage. (Compl. ¶ 26.)  Bill Clinton and Donald Trump are not on the Palm House Hotel advisory board, and there is no such board. (Compl. ¶27.)

Defendant Palm House Hotel, LLLP is a Florida limited liability partnership. (Compl.¶

31.)  Defendant SARC is a regional center[3] approved by the United States Citizenship and Immigration Services ("USCIS"). (Compl. ¶ 36.)  USREDA, LLC, ("USREDA"). is a Delaware limited liability company, which acted as a law firm and contracted to provide legal immigration services to the Chinese Plaintiffs  regarding the EB-5 Visa program.  USREDA guaranteed the approval of any I-526 application it completed and the return of all service fees in the event of denial. (Compl. ¶ 37.)  Defendant Joseph Walsh served as general manager of Palm House until July of 2016 and owns/operates SARC and USREDA. (Compl. ¶ 32.)  Defendant Joseph Walsh Jr. is the son of Walsh and owns/operates SARC and USREDA. (Compl. ¶ 33.)  Defendants Walsh, Walsh Jr. and others misrepresented to Plaintiffs that SARC was the general partner of Palm House. (Compl. ¶ 36.)

As an EB-5 Regional Center, SARC claimed to specialize in investment-based immigration services. (Compl. ¶ 73.)  SARC was approved by USCIS to service a regional center, which allowed EB-5 investors to take credit for direct and indirect jobs. (Compl. ¶ 74.)  SARC was operated and controlled by Walsh, Walsh, Jr., and others. (Compl. ¶ 75.)   USREDA was an entity that claimed to specialize in providing legal immigration services regarding the EB-5 Visa program, held itself out as a law firm, and required clients to sign engagement letters for its services. It charged clients $15,000.00 USD to file a 526 petition and an additional $5,000.00 USD to file an 829 petition. (Compl. ¶76.)  USREDA was operated and controlled by Defendants Walsh, Walsh, Jr., and others. (Compl. ¶ 77.)  SARC, USREDA, Walsh and Walsh Jr. retained other Defendants to help them sell the Palm House Hotel investment to Plaintiffs.

_____

[3] A regional center is an entity that receive special designation from USCIS to administer EB-5 investments and create jobs. (Compl. ¶ 68.)

(Compl. ¶¶ 78-82.)    During the Palm House Hotel solicitations, Plaintiffs were provided with

three (3)

items:

> (a) Frequently Asked Questions (the "FAQ");
> (b) Sales Brochure (the "Sales Brochure"); and
> (c) Signature Booklet (the "Signature Booklet")

(Compl. ¶85; Ex. A, B, C, D, E, F, DE 1.)[4]

While the Signature Booklet contained signature pages for a Private Placement

Memorandum (the "PPM") and a Palm House limited partnership agreement (the "Palm House

Limited Partnership Agreement"), Plaintiffs were not provided with copies of the full documents

until after they made their investments, and after they demanded them when it was becoming

more and more clear that something was wrong. (Compl. ¶86; Ex. G and H, DE 1.)  The

representations in the Offering Documents, the PPM, the Palm House Limited Partnership

Agreement, and the USCIS Approval were originally made by Walsh, Walsh Jr. and others on

behalf of the companies, SARC and USREDA.  (Compl. ¶88.)

Each limited partnership unit in Palm House required a minimum investment of

$500,000, plus an administrative fee of $40,000. (Compl. ¶93.)  Any subscription funds received

from Plaintiffs were to be held in a special escrow account.  (Compl. ¶ 94.)  Among the many

misrepresentations, Plaintiffs were promised that their monies would be held in the Escrow

Account and released to Palm House, LLC only if and when their I- 526 applications were

approved by USCIS. (Compl. ¶ 95.)  The Escrow Representation was made to Plaintiffs several

---

[4] Collectively, the FAQ, Sales Brochure, and Signature Booklet will be referred to as the "Offering Documents."

times, and in several documents. (Compl. ¶ 96.)  The Escrow Representation was made to

Plaintiffs in the PPM and the Limited Partnership Agreement. (Compl. ¶ ¶ 97-98.) The Escrow

Representation was made in the loan agreement between Palm House and Palm House LLC

where Palm House, LLC, on the one hand, and Walsh, SARC, and Palm House, on the other

hand, agreed that the loan was dependent on USCIS' approval of Plaintiffs' I-526 petitions.

(Compl.  ¶ 99.)  If an investor's I-526 application was denied by USCIS, the investor was

promised that they would receive their money back within 90 days of the official denial notice.

(Compl. ¶ 100.)

There were many knowingly false representations in the Offering Documents. (Compl.

¶101.)  SARC, USREDA, Walsh, Walsh Jr. and others made presentations in China to the

Chinese Plaintiffs using the Offering Documents. (Compl. ¶104.)  These Defendants also used a

Powerpoint presentation that contained false representations to induce the Chinese Plaintiffs.

(Compl. ¶105.)  These Defendants also made other false representations to the Chinese Plaintiffs.

(Compl. ¶108.)

Also in 2013, SARC, USREDA, Walsh, Walsh Jr. and others fraudulently induced the

Iranian Plaintiffs to provide their investments. (Compl. ¶120.)  Walsh and others made

presentations to the Iranian Plaintiffs using the offering documents, presentation materials, and

oral statements and made false statements. (Compl. ¶ ¶ 121-24.)

Plaintiffs relied upon these false statements in providing their money. (Compl.  ¶¶127-

163.)  After Plaintiffs submitted their paperwork in support of their Form I-526 Petitions, USCIS

denied the petitions. (Compl. ¶166; Ex. M, DE 1.)  The USCIS cited the following deficiencies:

(1) inconsistencies in the documents from Palm House; (2) insufficient number of full-time

positions created by the project; (3) dispute over ownership of the project's property; and (4) insufficient evidence of bridge financing. (Compl. ¶168.)  Plaintiffs demanded the return of their funds, but no funds were returned to Plaintiffs. (Compl. ¶¶170-71.)  Walsh, Walsh Jr., USREDA, SARC and others made threats to investors if they sought to recoup their funds and made misrepresentations to lull the investors into a state of inactivity. (Compl. ¶¶172-200.)

Upon investigation, Plaintiffs discovered that Palm House was not a legitimate EB-5 project and that their funds were not held in the Escrow Account. (Compl. ¶¶202-04.)  Plaintiffs' funds were quickly transferred from the Escrow Account to other accounts used by Defendants. (Compl. ¶¶205, 207.)  Virtually none of Plaintiffs' funds were used at the project, and no jobs were created. (Compl. ¶ 206.)

Plaintiffs wired funds into an escrow account at PNC Bank and the Bad Actors moved these funds into a second account at PNC. (Compl. ¶246.)  Upon information and belief, SARC, USREDA, Walsh, Walsh Jr., and others transferred the funds to other accounts and used them for non-allowable purposes and moved them to accounts of other Defendants. (Compl. ¶¶247, 249-58.)

The Complaint [5] seeks injunctive relief against all Defendants under Florida Statute 8812.035(1), (6) (count one); dissolution of Palm House Hotel, LLLP (count two); conversion against all Defendants (excluding Palm House) (count three); fraud in the inducement against SARC, USREDA and others (count four); fraud in the inducement against SARC, USREDA and others (count five); fraud against SARC, USREDA and others (count six); fraud against SARC,

---

[5] The Court excludes counts not brought against the Defendants bringing the instant motion.

10

USREDA and others (count seven); breach of fiduciary duty against SARC and others (count nine); avoidance of fraudulent transfers pursuant to Florida Statute 726.105(1)(a) against all Defendants (excluding Palm House) (counts twelve-fourteen); a violation of Florida Securities and Investor Protection Act, Florida Statute 517.011 et seq. against SARC and USREDA and others (counts fifteen-sixteen); unjust enrichment against all Defendants (counts seventeen); a violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute 501.201 against all Defendants (count eighteen); equitable accounting against all Defendants (count nineteen); civil conspiracy against all Defendants (excluding Palm House and the Evans Defendants) (count twenty); constructive fraud against all Defendants (excluding Palm House and Evans Defendants) (count twenty-one); piercing the corporate veil against SARC, USREDA and others (count twenty-two); violations of the Section 10(b) of the Exchange Act and Rule 10b-5 against SARC, USREDA and others (count twenty-five); violations of Section 20(a) of the Exchange Act against SARC, USREDA and others (count twenty-six); violation of RICO, 18 U.S.C. 1962(c) against Bad Actors (count twenty-seven) and a violation of RICO, 18 U.S.C. 1962(d) against the Bad Actors (count twenty-eight).

Defendants Palm House Hotel, LLLP, SARC and USREDA move to dismiss on the following grounds: (1) the representations central to the fraud and the conversion claim are negated by the terms of the escrow agreement, the PPM and Subscription Agreement; (2) the fraud claims improperly lump together Defendants and are not pled with particularity required by Rule 9(b); (3) the security claims are barred by the "bespeaks caution" doctrine; (4) the limited partnership units do not qualify as "securities"; (5) no securities fraud claim has been pled as to USREDA; (6) the claims for injunctive relief, constructive trust and RICO claims fail

to state a cause of action; (7) the claim for dissolution of the partnership is contrary to the terms of partnership agreement; (8) the breach of fiduciary duty claim against SARC is inconsistent with the allegations of the Complaint; (9) the fraudulent transfer claims do not identify any specific fraudulent transfer of assets; (10) the claim for equitable accounting fails to allege any facts showing a fiduciary duty; (11) the unjust enrichment claim fails to allege the existence of an express contract; (12) the FDUPTA claim cannot apply to transactions outside of Florida; (13) the conspiracy claim fails because the underlying tort fails to state a cause of action; (14) the constructive fraud claim does not allege facts showing a fiduciary duty owed by SARC; (15) the piercing the corporate veil claims fails because it is conclusory in nature and (16) Plaintiffs lack standing for a RICO claim.

## II.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

    III. Discussion

    As for Defendants' argument for dismissal because the documents attached to the Complaint contradict some of the allegations in the Complaint regarding the alleged misrepresentations, the Court finds this argument unpersuasive, particularly at the pleading stage.  Even assuming arguendo that some of the alleged fraudulent statements are contradicted, the Complaint alleges numerous misrepresentations and material omissions that would remain unchallenged by these documents.  Furthermore, the documents attached to the Complaint are not complete documents.  (Compl. ¶ 86.)  Defendants have attached documents they claim are complete to their motion, however, if these documents were not given to Plaintiffs in their entirety, as Plaintiffs claim, they have limited import.  Thus, to the extent Defendants move to dismiss any claims on this basis, that argument is rejected.

    A. Common law and securities fraud claims (counts four-seven, fifteen-sixteen)

    Defendants contend that the allegations raised in the common law and securities fraud claims fall short of the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Specifically, Defendants demand that the Complaint must provide the date, time and place of the fraud.  While the Court recognizes these type of details satisfy the Rule 9(b)

pleading requirements, the Eleventh Circuit has acknowledged that alternative means are also available to satisfy the rule.  Durham v. Business Management Associates, 847 F.2d 1505, 1512 (11th Cir. 1988).  With respect to SARC and USREDA, the Court finds that the Complaint adequately alleges their actions as it relates to the alleged fraud.   While the actual count may not identify each action of each Defendant, the factual section of the Complaint makes adequate allegations as to these particular Defendants to support the fraud counts.

With respect to the securities fraud claims, Defendants argue that these claims are barred by the "bespeaks caution doctrine."[6] As stated supra, Plaintiffs allege that they did not receive the documents in their entirety. Therefore, if Plaintiffs never saw these documents, the bespeaks caution doctrine would not come into play.  Moreover, this doctrine applies to forward-looking statements and many of the allegations made about the Palm House Hotel investment opportunity concerned the present condition.  See HCM High Yield Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB, No. 99–1350–CIV, 2001 WL 36186526,  at * 17 (S.D. Fla. Dec. 14, 2001) (doctrine applies to forward-looking statements).

Lastly, Defendants argue that no securities fraud claims have been pled as to USREDA. In response, Plaintiffs have cited to several paragraphs of the Complaint they claim properly allege this claim against USREDA.  (DE 130 at 20.)  The Court has examined these paragraphs and they do not stand for the allegations Plaintiffs claim.  Thus, the Court will allow Plaintiffs

---

[6] This doctrine has been explained in the following manner: "When an offering document contains projections that are accompanied by meaningful cautionary statements and specific warnings of the risks involved, these statements and warnings may be sufficient to render any alleged misrepresentations or omissions immaterial as a matter of law under the 'bespeaks caution' doctrine." Saltzberg v. TM Sterling/Austin Assoc., Ltd., et al., 45 F.3d 399, 400 (11th Cir.1995).

leave to amend this count against USREDA.

### B.  Injunctive Relief (count one)

Defendants contend that equitable relief is only available when there is no adequate remedy at law available.  To the extent these Defendants possess the funds or have purchased items with these funds that can be traced, this claim is viable pursuant to Florida Statute § 812.035(6).

### C.  Dissolution of Palm House (count two)

Defendants point to section 7.6 of the Limited Partnership Agreement attached to the Complaint which provides that dissolution of the company cannot occur before the end of the fifth year after admission of the last EB-5 Limited Partner.  Defendants state that the five years have not passed.  The Court cannot resolve this issue on a motion to dismiss as it requires a factual inquiry not appropriate at this stage.

### D.  Breach of Fiduciary Duty (count nine)

Defendants contend that Plaintiffs cannot bring this claim against SARC as a "purported" general partner because either SARC is a general partner or it is not a general partner.  If SARC is not a general partner, then SARC had not fiduciary duty to Plaintiffs.  The Court cannot resolve this issue on a motion to dismiss as it requires a factual inquiry not appropriate at this stage.

### E.  Fraudulent Transfer claims (counts twelve-fourteen)

The Court agrees that these counts impermissibly lump Defendants together and does nothing more than provide a formulaic recitation of the elements. Given that many Defendants are referenced in these counts, the Complaint should identify what role each Defendant

possessed with respect to these claims.  Thus, these claims are dismissed with leave to amend.

### F. Equitable Accounting (count nineteen)

"To state a claim for an equitable accounting, the plaintiff must allege that the contract demands between litigants involve extensive or complicated accounts and it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity." Bankers Trust Realty, Inc. v. Kluger, 672 So. 2d 897, 898 (Fla. Dist. Ct. App. 1996).  The Court finds that this is adequately pled and the Court cannot determine the level of complexity of the account until a factual record is developed.

### G.  Unjust Enrichment (count seventeen)

Defendants move to dismiss this claim on several bases.  First, the Complaint alleges that there is an express contract with SARC and Plaintiffs, and Plaintiffs have not challenged the validity of the limited partnership agreement.  Plaintiffs disagree, stating that they were never provided with the limited partnership agreement and, even if they were, the agreement would just between SARC and Plaintiffs, not USREDA.  Plaintiffs also contend that the unjust enrichment claim seeks to recover funds that Defendant Walsh recovered from PNC bank and distributed to other Defendants and is outside the scope of the limited partnership agreement.

The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.  Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., 667 So. 2d 876, 879 (Fla. Dist. Ct.  App.

1996) (quoting <u>Hillman Constr. Corp. v. Wainer</u>, 636 So.2d 576, 577 (Fla. Dist. Ct. App. 1994) (citations omitted)).

As pled, this count seeks recovery for stolen funds taken unlawfully by Walsh and retained by Defendants.  As such, it has properly stated a claim for unjust enrichment against Defendants.

### H.  FDUPTA (count eighteen)

Defendants move to dismiss these claims on the basis that the claims are negated by the terms of the escrow agreement and the claim does not specify the location of the deceptive conduct which is required because FDUTPA only covers conduct in the state of Florida.

With respect to the first argument, the Court adopts the reasoning <u>supra</u>; namely, that the Complaint alleges Plaintiffs were not provided with complete copies of the agreement and therefore the language in the agreement cannot bind Plaintiffs.  With respect to the second argument, Plaintiffs do not dispute that a FDUTPA claim requires deceptive practices in Florida. <u>See</u>, <u>e.g.</u>, <u>Carnival Corp. v. Rolls-Royce PLC</u>, No. 08-23318-CIV, 2009 WL 3861450, at * (S.D. Fla. Nov. 17, 2009) (citing <u>Millennium Communications & Fulfillment, Inc. v. Office of Attorney General</u>, 761 So.2d 1256, 1262 (Fla. 3d DCA 2000) (stating that purpose of FDUTPA is to prohibit unfair and deceptive practices which have transpired within the territorial boundaries of the state of Florida)).  Instead, Plaintiffs claim that the Complaint adequately alleges conduct by Defendants in Florida.

A review of the citations provided by Plaintiffs as to Florida conduct by Defendants reference various new facts that are not contained in the Complaint.  The Court will Plaintiffs leave to amend this count to clarify Defendants' actions in Florida that give rise to liability under

FDUTPA.

I.  Civil Conspiracy (count twenty)

Defendants move to dismiss the civil conspiracy claim because such a claim relies upon an independent tort, and the Complaint fails to state claims for fraud and theft.

Under Florida law, in order to state a claim for civil conspiracy, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Phillip Morris USA, Inc. v. Russo, 175 So. 3d 681, 686 n.9 (Fla. 2015) (citing Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)).   A civil conspiracy derives from the underlying claim that forms the basis of the conspiracy, a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim. American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1067 (11th Cir. 2007); Behrman v. Allstate Ins. Co., 388 F. Supp. 2d 1346, 1353 (S.D. Fla. 2005) (citing Posner v. Essex Ins. Co., 178 F.3d 1209, 1217 (11th Cir. 1999)).

Here, Plaintiffs rely upon tort claims which the Court has found viable.  Hence, the Court denies Defendant's motion to dismiss this claim.

J.  Constructive Fraud (count twenty-one)

Defendants SARC and USREDA move to dismiss this count because there are no facts that they occupied any position of trust or confidence.

Constructive fraud exists where a duty under a confidential or fiduciary relationship has been abused, or where an unconscionable advantage has been taken.  Linville v. Ginn Real Estate Co., LLC, 697 F. Supp. 2d 1302, 1309 (M.D. Fla. 2010); Levy v. Levy, 862 So. 2d 48, 53 (Fla. Dist. Ct. App. 2003).

Here, the Complaint alleges that Plaintiffs are foreign nationals who desired to provide their families with an opportunity for a better life in the United States through the EB-5 program. While the vast majority of cases of constructive fraud involve a fiduciary relationship, the Florida Supreme Court has explained that "[c]onstructive fraud is simply a term applied to a great variety of transactions which equity regards as wrongful . . .It is not necessary that there should have been a fiduciary relation between the parties, nor that it be positively shown that the one was not left to act upon his own free will, in order to constitute constructive fraud; but inadequacy of consideration, coupled with such a degree of mental weakness as would justify the inference that advantage had been taken of that weakness, will furnish sufficient ground for equitable interference." Douglas v. Ogle, 85 So 243, 244 (Fla. 1920) (internal quotation marks and ellipses omitted).

Based on the allegations, the Court finds that the Complaint alleges that  an unconscionable advantage has been taken against Plaintiff by SARC and USREDA.

K.  Piercing the Corporate Veil (count twenty-two)

Defendants seek to dismiss this count.  The Court agrees and relies upon Regal v. Butler & Hosch, P.A., No. 15–CIV–61081, 2015 WL 11198248, at * 2 (S.D. Fla. Oct. 8, 2015) in support:

> [W]hile "Florida courts permit alter ego allegations to be pled as a distinct cause of action," federal courts are generally averse to the practice. See Oginsky v. Paragon Properties of Costa Rica LLC, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011) (citing Acadia Partners, L.P. v. Tompkins, 759 So. 2d 732, 740 (Fla. Dist. Ct. App. 2000); Tara Prods., Inc. v. Hollywood Gadgets, Inc., Case No. 09–CV–61436, 2010 WL 1531489, at *9 (S.D. Fla. April 16, 2010)). In federal practice, "[a]lter ego is not a separate cause of action for which relief can be granted; rather, alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity." Tara Productions at *9 (citing Acadia Partners at 740). While Plaintiffs may be able to utilize the doctrine to assert liability . . . it may not be plead as a distinct cause of

action. <u>See id.</u> (dismissing alter ego count with prejudice but allowing plaintiff to plead allegations regarding alter ego liability in the body of the complaint and connect the same to other claims); <u>Raimbeault v. Accurate Mach. & Tool, LLC</u>, No. 14–CIV–20136, 2014 WL 5795187, at *9 (S.D. Fla. Oct. 2, 2014) (same); <u>see also</u> <u>Peacock v. Thomas</u>, 516 U.S. 349, 354 (1996) ("Piercing the corporate veil is not itself an independent cause of action, but rather is a means of imposing liability on an underlying cause of action."

For this reason, the Court will dismiss this as a separate count, but permit Plaintiffs to plead allegations regarding alter ego liability in the body of the Complaint.

L.   RICO claims (counts twenty-seven and twenty-eight)

The Court adopts its reasoning set forth in the Court's Order on the Motion to Dismiss of Defendants Joseph Walsh, Joseph Walsh, Jr. and JJW Consultancy, Ltd. as the basis to dismiss these claims.  Thus, the RICO claims are dismissed without leave to amend because amendment would be futile.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Palm House Hotel, LLLP, South Atlantic Regional Center, LLC and USREDA, LLC's Motion to Dismiss Complaint (DE 92) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff is granted leave to amend consistent with the directives of this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of July, 2017.

KENNETH A. MARRA
United States District Judge