IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No: 9:16-CV-81871-KAM

LAN LI, et al.,

    Plaintiffs,
v.

JOSEPH WALSH, et al.,

    Defendants.

_____/

## EVANS DEFENDANTS' MOTION TO STAY

NOW COME Defendants, LESLIE ROBERT EVANS and LESLIE ROBERT EVANS & ASSOCIATES, P.A., (collectively referred to as "Evans Defendants"), by and through undersigned counsel, and hereby move this Court to stay this lawsuit pending the outcome of the parallel criminal proceeding against Leslie Evans and pending the outcome of the parallel state court proceeding, and in support hereof, states:

### STATEMENT OF FACTS

**A. Federal Court Lawsuit**

The instant lawsuit was filed on November 14, 2016, on behalf of Chinese and Iranian citizens, who allege to have been solicited by Defendant South Atlantic Regional Center LLC("SARC"), an alleged approved designated EB-5 Regional Center, to invest $500,000.00 each in Defendant Palm House Hotel LLLP ("LLLP"), a Florida limited liability partnership. In return,

-1-

they were to allegedly receive a limited partnership interest in LLLP and a green card as part of an EB-5 Program being offered by SARC.[1]

According to SARC's written offering, SARC was the general partner of LLLP, that would loan $39,500,000.00 in EB-5 money to Defendant Palm House LLC, which would use the EB-5 money and an additional sum of $51,500,000.00 from traditional financing and developer equity, to redevelop a historic hotel known as the "Palm House Hotel," located at 160 Royal Palm Way, Palm Beach, Florida.[2] The Palm House Hotel is owned by 160 Royal Palm LLC, which is owned by Palm House, LLC. Defendant Nicholas Laudano and his company, Defendant New Haven Contracting South, Inc., were the alleged general contractors who contracted to carry-out the redevelopment of the Palm House Hotel.

Plaintiffs allege that they invested money with SARC, and that some of their money was not used for the redevelopment of the Palm House Hotel, and was instead used by Robert Mathews and Joseph Walsh (and entities controlled by them) for other purposes. As a result, the Palm House Hotel redevelopment project allegedly has not been completed and Plaintiffs have not received green cards or a return of their money. Plaintiffs seek, *inter alia*, the return of their investments.

Plaintiffs have sued numerous other entities and individuals, including Defendant Joseph Walsh, the principal behind SARC and the creator of LLLP, Defendant Robert Mathews, the alleged principal behind the redevelopment of the Palm House Hotel, and his wife, Defendant Maria Mathews. Plaintiffs have also sued the Evans Defendants, claiming that some of their money ended up in their escrow accounts and some was not disbursed for the redevelopment of the Palm

---

[1] Pursuant to an EB-5 federal program, foreign nationals are able to apply for lawful permanent residence status if they invest in development projects in the United States meeting certain criteria, including creation of jobs.
[2] The State Court action, discussed below, has an alleged executed note and mortgage between Palm House LLC and LLLP, attached as an exhibit.

House Hotel. However, the Evans Defendants had no escrow agreement or contact whatsoever with Plaintiffs. Evans Defendants deny the existence of any legal duty to Plaintiffs, deny that they knowingly received any money belonging to them, deny disbursing any money knowing that it belonged to anyone other than Joseph Walsh and Robert Mathews, and deny that they had any reason to believe that disbursing money according to the written instructions from Joseph Walsh and Robert Mathews was improper for any reason.

### B. Prior State Court Lawsuit

On 12/30/15, prior to the filing of the Federal Lawsuit, Joseph Walsh caused LLLP to bring a lawsuit in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 2015-CA-014480 ("State Lawsuit"), which is now traveling under a Fourth Amended Complaint. (See Fourth Amended Complaint, Exhibit A hereto). The State Lawsuit has nearly identical parties, including the same alleged key players, namely, SARC, LLLP, 160 Royal Palm LLC, Palm House, LLC, Nicholas Laudano, New Haven Contracting South, Inc., Robert Mathews, and Maria Mathews.

The Evans Defendants are also named defendants. The subject matter and factual premises of the State Court claims are also nearly identical to the Federal Court claims in that SARC alleges that Robert Mathews, individually and through entities controlled by him, misused the EB-5 money invested by Plaintiff for personal uses, and that Evans Defendants somehow share some responsibility because some money allegedly flowed through their escrow accounts.

However, Plaintiffs, who are the alleged intended limited partners in SARC, were not named in the lawsuit brought by the general partner, SARC. Thus, there are two competing lawsuits pending in different jurisdictions, both seeking to recover the "same pot of money" for

the same alleged failure to use the money for the alleged intended purpose of redeveloping the Palm house Hotel.

### C. Criminal Indictment of Leslie Evans

On March 14, 2018, Defendant Leslie Evans was criminally indicted in Connecticut, regarding certain alleged transactions relating to Plaintiffs' alleged EB-5 money invested in SARC. Robert Mathews was included in said indictment, and his brother, Gerry Mathews, and Nicholas Laudano, were charged in separate indictments. (See Indictment, Exhibit B hereto).

The Indictment charges Evans with eight counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of bank fraud, in violation of 18 U.S.C. § 1344; one count of conspiracy to commit wire fraud and bank fraud, in violation of 18 U.S.C. § 1349; and one count of illegal monetary transactions, in violation of 18 U.S.C. § 1957. Indictment, *United States v. Evans*, Dkt. No. 3:18-cr-00048-VAB, Doc. No. 1 (D. Conn. Mar. 14, 2018). According to the Indictment, these alleged crimes were committed in the course of obtaining investments from foreign nationals (Plaintiffs herein) through the EB-5 visa program. According to the Indictment, Evans's alleged co-conspirators solicited EB-5 investments for the Palm House Hotel in Palm Beach, Florida, but instead converted the money for their own use.

## ARGUMENT

### A. THIS COURT SHOULD STAY THIS ACTION PENDING OUTCOME OF THE PARALLEL CRIMINAL PROCEEDING.

This Court should grant the motion of Defendant Leslie Evans ("Evans") for a stay of this civil action pending the outcome of his parallel criminal proceeding for several reasons. First, there is significant overlap with respect to the two cases, creating a catch-22, forcing Evans to either incriminate himself or waive the privilege and have judgment entered against him in this case. Second, Evans, among others, has already been indicted creating an even greater risk and

harm that could result from potential incriminating statements.  Third, the Plaintiffs' interest in the expeditious resolution of this civil litigation is far outweighed by the prejudice Evans would suffer going forward with the parallel actions simultaneously.  Finally, granting a stay under the circumstances is in both the Court's interest and the public's interest.  For these reasons, which are expanded upon below, Evans respectfully requests that the Court grant his motion for a stay of this action pending the outcome of his criminal case.

      i.      **Standard for Granting a Stay**

It is settled that a district court has the inherent and discretionary power to stay a case.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").  "Thus, in determining whether a stay is appropriate in a particular case, the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side."  *Lay v. Hixon*, No. 09-0075-WS-M, 2009 WL 1357384, at *2 (S.D. Ala. May 12, 2009) (internal quotation marks omitted).

Federal courts in the Eleventh Circuit have recognized that the interests of justice may require a stay where parallel civil and criminal proceedings jeopardize a party's constitutional privilege against self-incrimination.  *See In re Grand Jury Proceedings*, 955 F.2d 1013, 1018 n.11 (11th Cir. 1993); *Young v. Peraza*, Case No. 15-60968-CIV, 2015 WL 4639736, at *1 (S.D. Fla. Aug. 4, 2015) ("A stay may be appropriate where a defendant faces parallel civil and criminal proceedings because the defendant may suffer prejudice in the civil case if he asserts his Fifth Amendment privilege against self-incrimination.").  "The [F]ifth [A]mendment privilege against

self-incrimination permits a person not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in the future criminal proceedings." *S.E.C. v. Wright*, 265 F. App'x 259, 262 (11th Cir. 2008) (internal quotation marks omitted). Of course, however, "the blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." *Id.*

Although, as indicated above, the decision to stay a case is discretionary in nature, the Eleventh Circuit has articulated a narrow set of circumstances *requiring* that a stay be granted. Courts will consider "whether a defendant in both a civil and criminal matter is 'forced to choose between waiving his privilege against self-incrimination or losing the civil case in summary proceedings.'" *Shell Oil Co. v. Altina Associates, Inc.*, 866 F. Supp. 536, 540 (M.D. Fla. 1994) (quoting *Pervis v. State Farm Fire & Cas. Co.*, 901 F.2d 944 (11th Cir. 1990)). Furthermore, "the mere possibility of disadvantage in a civil proceeding, such as that which might result from [an] adverse inference, is insufficient to justify a stay at [an early] point in the proceedings." *Pellegrino v. Wengert*, 147 F. Supp. 3d 1379, 1381 (S.D. Fla. 2015) (internal quotation marks omitted). "Nonetheless, district courts are vested with substantial discretion to stay civil proceedings in the face of a parallel criminal action where the interests of justice favor doing so." *Doe 1 v. City of Demopolis*, No. 09-0329-WS-N, 2009 WL 2059311, at *2 (S.D. Ala. July 10, 2009); *accord Lay*, 2009 WL 1357384, at *3.

Federal district courts in the Eleventh Circuit have enumerated several factors to consider in determining whether a stay of a civil action pending the outcome of a criminal proceeding is warranted:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the

> prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the court; and 6) the public interest.

*Lay*, 2009 WL 1357384, at *3; *see also Harris v. City of Boynton Beach*, No. 9:16-CV-80148, 2016 WL 374680, at *2 (S.D. Fla. July 13, 2016). "These factors cannot be mechanically applied. . . . Rather, the court must balance the competing considerations evinced by these factors in an individual inquiry, tailored to the unique circumstances of the case at hand." *Gunn v. City of Montgomery, Ala.*, No. 2:16-cv-557-WKW-WC, 2017 WL 4277548, at *2 (M.D. Ala. Feb. 17, 2017) (internal quotation marks and citations omitted).

### ii. The Equities Weigh in Favor of Granting a Stay

Applying each of the foregoing factors weighs heavily in favor of granting a stay of this civil action pending resolution of Evans's criminal case. As demonstrated below, there is a great risk of infringement upon Evans's Fifth Amendment privilege against self-incrimination because the criminal and civil proceedings arise out of the same conduct and Evans has already been indicted. Moreover, any inconvenience to the Plaintiffs caused by delaying this action is far outweighed by the risk of prejudice to Evans and the benefits to the Court and the public that would result from staying this action in favor of first resolving the criminal proceeding.

### iv. The Extent of Overlap

It is axiomatic that the most important factor in the decision to grant a stay in this context is the degree to which the issues presented in the civil action overlap with the criminal issues. *See City of Demopolis*, 2009 WL 2059311, at *3 ("Although many factors may be relevant, the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." (internal quotation marks omitted)); *accord*

*Gunn*, 2017 WL 4277548, at *2; *S.W. v. Clayton Cty. Pub. Sch.*, 185 F. Supp. 3d 1366, 1372 (N.D. Ga. 2016).

Here, the civil action and the criminal indictment involve the same subject matter and arise out of the same alleged conduct by Evans. The Federal Action accuses Defendants Leslie Evan and his law firm of being part of the misuse of Plaintiffs' EB-5 money invested in SARC. The criminal Indictment charges Leslie Evans with multiple counts relating to the alleged misuse of the same money allegedly invested by Plaintiffs in SARC.[3]

In light of the significant overlap between the pending civil and criminal proceedings, Evans is faced with a predicament with dire consequences. If he invokes his constitutional right against self-incrimination in the civil action, he will be unable to adequately defend himself. Plaintiffs will also likely request that an adverse inference be drawn against him for invoking his right. *See Shell Oil*, 866 F. Supp. at 540 ("the Fifth Amendment does not prohibit adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence"). Conversely, if Evans fails to invoke his Fifth Amendment privilege, he waives it and any evidence from this civil action can be used against him in the criminal proceeding. *See, e.g.*, *Dean v. Douglas*, No. 5:12-CV-120 (CAR), 2012 WL 6151137, at *3 (M.D. Ga. Dec. 11, 2012) (staying civil case upon observing that "participating fully in civil discovery could cause irreparable harm and prejudice to Defendants in their criminal defenses"). Either way, Evans's rights are severely compromised without a stay of this civil action.

District courts in the Eleventh Circuit have consistently stayed civil cases during the pendency of criminal prosecutions in order to avoid the predicament of a defendant's having to

---

[3] Evans pleaded not guilty to all of the charges in the indictment and plans to proceed to trial to vindicate himself.

choose between waiving his Fifth Amendment rights and forfeiting his right to defend himself in the civil litigation. *See Gonzalez v. Israel*, No. 15-60060, 2015 WL 4164772, at *4 (S.D. Fla. July 9, 2015) (staying civil action where there was "an overwhelming degree of overlap between Plaintiff's civil claims and the criminal informations filed against the [defendants]"); *accord Demopolis*, 2009 WL 2059311, at *3; *Lay*, 2009 WL 1357384, at *4; *United States v. Pinnacle Quest Int'l*, No. 3:08-cv-136-RV-EMT, 2008 WL 4274498, at *1–2 (N.D. Fla. Sept. 11, 2008); *Venture v. Brodsky*, No. 06-22026, 2006 WL 3392207, at *1–2 (S.D. Fla. Nov. 21, 2006).

Because the civil and criminal actions are premised on the same underlying allegations and therefore Evans's constitutional rights under the Fifth Amendment would be severely compromised if the actions are allowed to proceed simultaneously, this factor weighs heavily in favor of granting the stay.

    v.    **The Status of the Criminal Case**

Where, as here, Evans has been indicted, the argument for a stay is especially compelling. "Courts generally recognize that the case for a stay is strongest where the defendant has already been indicted. . . . The factor is given more weight if the defendant seeks the stay to avoid choosing between his Fifth Amendment privilege . . . and his defense in the civil case." *S.E.C. v. Rand*, No. 1:09-CV-01780-AJB, 2010 WL 11549601, at *6 (N.D. Ga. Dec. 14, 2010) (internal quotation marks and citation omitted); *see also Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations.").

There is no dispute that Evans was indicted in the United States District Court for the District of Connecticut on March 14, 2018.  A trial date has already been set for September 4, 2018.[4]  Consequently, the potential prejudice that Evans could suffer from proceeding with parallel civil and criminal proceedings is not hypothetical, but real and imminent.  *See, e.g., Gonzalez*, 2015 WL 4164772, at *3 (staying civil action where the defendants had been charged and therefore "[t]heir exposure to criminal penalty is not merely hypothetical"); *Pinnacle Quest*, 2008 WL 4274498, at *2 (staying civil action where "[t]he criminal case is underway and arrests have already been made").  Accordingly, this factor weighs in favor of granting the stay.

### vi.     The Potential Prejudice to the Parties

Although the Plaintiffs have an interest in the expeditious resolution of this civil action, the potential consequences to Evans's defense in the criminal proceeding that would result from not staying this action far outweigh any prejudice to Plaintiffs from a delay.

First, the civil action, if not stayed, would expand the rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), creating the risk of abuse of discovery.[5] "The scope of civil discovery is broad and requires nearly total mutual disclosure of each party's evidence prior to trial," while "[c]riminal 'discovery' under the Federal Rules, in contrast, is highly restricted." *S.E.C. v. Zimmerman*, 854 F. Supp. 896, 899 (N.D. Ga. 1993).  As one federal appellate court noted,

> The broad scope of civil discovery may present to both the prosecution, and at times the criminal defendant, an irresistible temptation to use that discovery to one's advantage in the criminal case.  Such unconstitutional uses may begin with the surreptitious

---

[4] There is a possibility that the trial date will be rescheduled.

[5] In some cases, the government seeks postponement of a noncriminal proceeding to prevent the criminal defendant from broadening the rights of criminal discovery against the government.  *See generally Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), *cert. denied*, 371 U.S. 955, 83 S. Ct. 502, 9 L. Ed. 2d 502 (1963).

> planting of criminal investigators in civil depositions, as in the case at bar, and end with passive abuses, such as when the civil party, who asserts fifth amendment rights, is compelled to refuse to answer questions individually, revealing his weak points to the criminal prosecutor. This point-by-point review of the civil case may lead to a link in the chain of evidence that unconstitutionally contributes to the defendant's conviction.

*Afro-Lecon, Inc. v. U.S.*, 820 F.2d 1198, 1203 (Fed. Cir. 1987) (internal quotation marks omitted); *see also Zimmerman*, 854 F. Supp. at 899. Here, the potential for prejudice to Evans's defense is readily apparent as there is potential for revealing weak points in his case to the prosecution through broad civil discovery and exposing the basis of his defense in advance of his criminal trial.

Second, the parallel proceedings at issue are unique because several of the codefendants in the criminal proceeding are either party to or material witnesses in this civil action. Each codefendant has his or her own Fifth Amendment privilege against self-incrimination to assert, which will ultimately preclude Evans from calling them as defense witnesses in the civil action. This would doubtless destroy Evans's defense in the civil action and guarantee that judgment is entered against him. *See, e.g., Lay*, 2009 WL 1357384, at *4 (staying civil action where non-party codefendants in parallel criminal proceeding were likely to serve as key witnesses in the civil action and the Court anticipated that they would invoke their Fifth Amendment privilege); *Gonzalez*, 2015 WL 416772, at *3 (staying civil action where codefendants in parallel criminal proceeding were also defendants in civil action, and were "the only eye-witnesses to their interaction with Plaintiff potentially capable of providing exculpatory testimony in support of their defense").

Faced with this real potential for prejudice to Evans's defense of both the criminal and civil proceedings, it is worth discussing the prejudice (or lack thereof) that Plaintiff would face in the event of a stay. Because Evans's criminal trial is scheduled for June 4, 2018, issuing a stay will

not significantly postpone or delay this civil action. Moreover, Plaintiffs are not being asked to forego their claims, but merely to hold them in abeyance until the conclusion of the criminal case. Once the criminal case has been resolved, the parties will have had sufficient time to complete document discovery to proceed promptly with any testimonial discovery that still needs to be taken. Accordingly, this factor also weighs in favor of granting the stay.

### vii. The Interests of the Court and the Public

As to the last factors, granting the stay is in the interest of both the Court and the public. First and foremost, the public interest is served by preserving the integrity of the criminal case. As the Fifth Circuit has noted, when considering motions for a stay of a civil suit pending the disposition of a related criminal matter, a judge should give "substantial weight" to the public's interest in law enforcement over a civil litigant's right to the prompt determination of his civil claims or liabilities. *See Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962).[6]

Second, the resolution of the criminal proceeding could advance the civil litigation by narrowing the issues, streamlining discovery, or increasing the possibility of settlement, thereby avoiding potential waste of the Court's resources. *See Am. Gen. Life Ins. Co. v. Jones*, No. 08-0211-WS-B, 2008 WL 4949847, at *5 (S.D. Ala. Nov. 13, 2008) ("the interests of efficiency and conservation of scarce judicial resources weigh in favor of allowing the state criminal proceedings . . . to run their course before embarking on the time-consuming and expensive process of litigating these civil proceedings"). Relatedly, resolution of legal and factual issues raised in the criminal proceedings could be dispositive of claims alleged in the civil complaint, thereby increasing the possibility of eliminating factual issues and/or settlement. *See In re Fin. Federated Title & Trust,*

---

[6] *See Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Inc.*, 247 F.3d 880, 886 n.5 (11th Cir. 2003) (citing authorities for proposition that the "[c]oncept of collateral estoppel applied to prevent relitigation of issues subsequently brought in a civil suit to the related issues determined in the criminal proceedings"); *see also Lay*, 2009 WL 1357384, at *4 (granting stay of civil action, noting that criminal proceeding could have preclusive effect in civil action). Therefore, a limited stay of discovery will ensure the integrity of Evans's criminal proceeding while preserving this Court's valuable resources.

> **B.  THE COURT SHOULD ALSO STAY THIS PARALLEL FEDERAL ACTION UNDER THE COLORADO RIVER DOCTRINE PENDING THE OUTCOME OF THE STATE COURT ACTION**

"Colorado River addresses the circumstances in which federal courts should abstain from exercising their jurisdiction because a parallel lawsuit is proceeding in one or more state courts. Ambrosia Coal and Constr. Co. v. Pagés Morales, 368 F.3d 1320, 1327, 95 Fed. Appx. 1320 (11th Cir. 2004)." *Shands Jacksonville Med. Ctr., Inc. v. Nat'l Union Fire Ins. Co.*, 2015 U.S. Dist. LEXIS 126777, *13 (M.D. Fla. September 22, 2015), affirming Report and recommendation of Magistrate Judge. "As a threshold matter, the Colorado River analysis is applicable 'when federal and state proceedings involve substantially the same parties and substantially the same issues.' Ambrosia Coal, 368 F.3d at 1330." *Id*. at *14. "The Colorado River abstention doctrine does not require complete identity of the issues, rather, substantial similarity will suffice. See Ambrosia Coal, 368 F.3d at 1330; see also Day v. Union Mines Inc., 862 F.2d 652, 656 (7th Cir. 1988) (observing that the precise issues raised in federal court was not present in the state court action, but finding a stay warranted because 'we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case,' (internal quotation omitted) (emphasis added)); Bankers Ins. Co. v.

Countrywide Fin. Corp., No. 8:11-CV-01630-T-17, 2012 U.S. Dist. LEXIS 93212, 2012 WL 2594341, at *7 (M.D. Fla. July 5, 2012)." Id. at *16.

"Under Colorado River there are essentially two inquiries. The first is whether the state and federal proceedings can be considered parallel. See, e.g., Ambrosia Coal & Constr. Co. v. Pagés Morales, 368 F.3d 1320, 1329-30, 95 Fed. Appx. 1320 (11th Cir. 2004). Assuming the actions are parallel, the Court is required to weigh six factors in determining whether abstention is appropriate. These "factors [are] to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." Id. at 1330 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). As stated by the Eleventh Circuit in Ambrosia Coal, the factors are as follows: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights. 368 F.3d at 1331." Shands Jacksonville Med. Ctr., Inc. v. Nat'l Union Fire Ins. Co., 2015 U.S. Dist. LEXIS 126781, *3-6 (M.D. Fla. May 13, 2015). "Significantly, '[t]he weight of each factor varies on a case-by-case basis, depending on the particularities of that case. One factor alone can be the sole motivating reason for the abstention.' See Moorer, 374 F. 3d at 997. Under the circumstances of this case, the potential for piecemeal litigation and the progress of the case in each forum weigh heavily in favor of abstention." Shands, (M.D. Fla. September 22, 2015). Turning to the six Colorado River factors in the instant case:

**First Factor** - the first factor is inapplicable because neither court has assumed jurisdiction over property.

**Second Factor**- The second factor is neutral as both actions are in the same county in Florida.

**Third Factor** - The third factor, however, weighs heavily in favor of the Sate Action and abstention of the Federal Action. The State Action and Federal action both involve the same subject matter and the same primary parties. Both will require the adjudication of same critical issues regarding what were the rights and duties regarding the use of the EB-5 money, how the EB-5 money was ultimately used, and who, if anyone, bears legal responsibility for the use of the money. Moreover, in both cases, the plaintiffs are seeking to recover the same EB-5 money that was allegedly invested by Chinese/Iranian citizens in LLLP, which in turn allegedly loaned their EB-5 money to Palm House, LLC, with the plaintiff in the State Action being the general partnership and the plaintiffs in the Federal Action being the limited partners. Thus, because both actions are predicated on the same subject matter and same identical pivotal issues, with competing interests of the general partner verses the limited partners in the same money, there is a real and substantial likelihood of inconsistent results in piecemeal litigation.

**Fourth Factor** – The fourth factor completely favors the State Action. The State Action was filed and service obtained on the parties almost one year prior to the Federal Action. Further, substantial discovery has been completed in the State Action concerning both written discovery and depositions. The Federal Action, in contrast, has just practically begun, with Rule 26 Disclosures due in July 2018, and little discovery has been commenced.

**Fifth Factor** – the fifth factor is neutral as both state law and federal law will be applied in both cases.

**Sixth Factor** – Clearly, the Fifteenth Judicial Circuit in and for Palm Beach County, Florida is a forum that is more than adequate to protect the parties' rights. In summary, three

factors favor abstention, which include the progress of the case and the probability of piecemeal litigation, two are neutral and one is inapplicable. "Under the circumstances of this case, the potential for piecemeal litigation and the progress of the case in each forum weigh heavily in favor of abstention." *Shands*, (M.D. Fla. September 22, 2015). For these reasons, the Federal Action should be stayed pending the outcome of the State Action.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court grant their motion to stay discovery pending completion of the criminal case, and stay this action pending outcome of the State Action.

Respectfully submitted,

**LAW OFFICES OF GREGORY R. ELDER, LLC**

BY: */s/Gregory R. Elder*
Gregory R. Elder, Esq.
Florida Bar No. 54006
Law Offices of Gregory R. Elder, LLC
108 SE 8TH Avenue, Suite 114
  Fort Lauderdale, Florida 33301
Phone: (305) 546-1061
Email: gelderlaw@gmail.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of June, 2018, I electronically filed the forgoing with the Clerk of Court by using the CM/ECF system which I understand will serve a copy on all counsel of record, whose addresses are listed below.

BY: /s/Gregory R. Elder

# SERVICE LIST
Lan Li, et al., v. Joseph Walsh,
et al. Case No. 1:16-cv-81871

*/s/ G. Joseph Curley*
**G. JOSEPH CURLEY** Florida Bar No. 571873
 Email: jcurley@gunster.com
**DAVID J. GEORGE** Florida Bar No. 898570
Email:  dgeorge@gunster.com
**DEVIN S. RADKAY**
Florida Bar No. 41976
Email:  dradkay@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East West Palm Beach, FL 33401-6194
(561) 655-1980/Facsimile (561) 655-5677
*Counsel for* **Plaintiffs**

*/s/ Alaina Fotiu-Wojtowicz*
**ALAINA FOTIU-WOJTOWICZ**
Florida Bar No. 0084179
BRODSKY FOTIU-WOJTOWICZ, PLLC
Co-Counsel for Defendants
169 E. Flagler Street, Suite 1224
Miami, Florida 33131
Tel: 305-503-5054
Fax: 305-677-5089
alaina@bfwlegal.com docketing@bfwlegal.com
*Counsel for* **Ali Herischi and Herischi & Associates, LLC**


*/s/ Adam T. Rabin*
**ADAM T. RABIN**
Florida Bar No. 985635 arabin@mccaberabin.com **ROBERT C. GLASS**
Florida Bar No. 052133 rglass@mccaberabin.com McCABE RABIN, P.A
1601 Forum Place, Suite 505
West Palm Beach, FL 33401
Telephone: 561.659.7878
*Counsel for* **Gerry Matthews**

*/s/ Christopher W. Kammerer*
**CHRISTOPHER W. KAMMERER**
Florida Bar No. 0042862
Email: ckammerer@kammerermariani.com
**JOHN F. MARIANI**
Florida Bar No. 263524
Email: jmariani@kammerermariani.com KAMMERER MARIANI PLLC
1601 Forum Place, Suite 500 West Palm Beach, FL 33401 Telephone: (561)

990-1592
*Counsel for **Robert Matthews, Maria Matthews, Bonaventure 22, LLC, Mirabia LLC, Alibi, LLC, Palm House, LLC, 160 Royal Palm, LLC, and Palm House PB, LLC***

*/s/ C. Brooks Ricca, Jr.*
**C. BROOKS RICCA, JR.**
Florida Bar No. 265632
C.  BROOKS RICCA, JR. & ASSOCIATES, P.A.
The Barristers Building 1615 Forum Place, Suite 200 West Palm Beach, FL 33401
PHONE: 561-833-4544 / FAX: 561-833-4524
Email: bricca@riccalawyers.com
*Counsel for **Ryan Black***

*/s/ Larry A. Zink*
**LARRY A. ZINK**
Florida Bar No. 0109592 Zink, Zink & Zink Co., L.P.A.
FL Office: 1198 Hillsboro Mile – Suite 244 Hillsboro Beach, FL 33062
Ohio Office: 3711 Whipple Avenue, N.W. Canton, OH 44718-2933
Email:  zinklaw3711@yahoo.com
*Counsel for **KK-PB Financial, LLC***


*/s/ Henry B. Handler*
**HENRY B. HANDLER**
Florida Bar No. 259284
hbh@whcfla.com
 jn@whcfla.com
 filings@whcfla.com
**DAVID K. FRIEDMAN**
Florida Bar No. 307378
Email:  dkf@whcfla.com jh@whcfla.com
WEISS HANDLER & CORNWELL, P.A.
One Boca Place, Suite 218-A 2255 Glades Road
Boca Raton, FL 33431 Telephone: (561) 997-9995
Facsimile: (561) 997-9995
*Counsel for **Palm House Hotel, LLLP,***
***South Atlantic Regional Center LLC,***
***USREDA LLC, Joseph Walsh, Joseph Walsh, Jr.,***
***and JJW Consultancy, Ltd.***