# Composite Exhibit "C"



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*          *(203)821-3700*
*157 Church Street, 25th Floor*          *Fax (203) 773-5376*
*New Haven, Connecticut 06510*          *www.justice.gov/usao/ct*

April 26, 2019

David A. Ring, Esq.
Wiggin and Dana LLP
One Century Tower
265 Church Street
New Haven, Connecticut 06510

United States District Court
District of Connecticut
FILED AT   BRIDGEPORT
_____20__
Robin D. Tabora, Clerk
By _____
Deputy Clerk

Re:   United States v. Robert V. Matthews
       Criminal No. 3:18-cr-48-VAB

Dear Attorney Ring:

This letter confirms the plea agreement between your client, Robert V. Matthews (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

**THE PLEA AND OFFENSE**

In consideration for the benefits offered under this agreement, the defendant agrees to plead guilty to counts ten, twelve, and twenty-one of the indictment charging violations of 18 U.S.C. § 1349 (conspiracy), 18 U.S.C. § 1957 (illegal monetary transactions), and 26 U.S.C. § 7201 (tax evasion), respectively.

The defendant understands that, to be guilty of the offense of conspiracy charged in count ten of the indictment, the following essential elements must be satisfied:

1.   Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit bank fraud and wire fraud as charged in the indictment; and

2.   The defendant knew the unlawful purpose of the plan and willfully joined in it.

The defendant understands that, to be guilty of the offense of illegal monetary transactions charged in count twelve of the indictment, the following essential elements of the

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 2*

offense must be satisfied:

      1.  The defendant knowingly engaged in a monetary transaction in or affecting interstate commerce;

      2.  The monetary transaction involved criminally derived proceeds of a value greater than $10,000;

      3.  The monetary transaction involved criminally derived property, which was derived from specified unlawful activity;

      4.  The defendant knew that the monetary transaction involved criminally derived property; and

      5.  The monetary transaction took place within the United States.

The defendant understands that, to be guilty of the offense of tax evasion charged in count twenty-one of the indictment, the following essential elements must be satisfied:

      1.  The existence of a substantial tax liability;

      2.  The defendant committed an affirmative act constituting an evasion or attempted evasion of the tax; and

      3.  The defendant acted willfully.

## THE PENALTIES

### Imprisonment

The offense charged in count ten of the indictment carries a maximum penalty of 30 years of imprisonment.

The offense charged in count twelve of the indictment carries a maximum penalty of 10 years of imprisonment.

The offense charged in count twenty-one of the indictment carries a maximum penalty of 5 years of imprisonment.

### Supervised Release

In addition, for the offense charged in count ten of the indictment the Court may impose a term of supervised release of not more than five years to begin after any term of imprisonment. 18 U.S.C. § 3583. The defendant understands that, should he violate any condition of supervised release for the offense charged in count ten of the indictment, he may be required to serve a

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 3*

further term of imprisonment of up to three years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

For the offense charged in count twelve of the indictment the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583. The defendant understands that, should he violate any condition of supervised release for the offense charged in count twelve of the indictment, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

For the offense charged in count twenty-one of the indictment, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583. The defendant understands that, should he violate any condition of supervised release for the offense charged in count twenty-one of the indictment, he may be required to serve a further term of imprisonment of up to two years with no credit for time already spent on supervised release.

<u>Fine</u>

The offense charged in count ten of the indictment carries a maximum fine of $1,000,000. The offense charged in count twelve of the indictment carries a maximum fine of $250,000. The offense charged in count twenty-one of the indictment carries a maximum fine of $100,000.

The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; (3) $250,000; or (4) the amount specified in the section defining the offense, which is $1,000,000 for count ten and $100,000 for count twenty-one.

<u>Special Assessment</u>

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction, for a total of $300. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

<u>Restitution</u>

With regard to the non-tax offenses charged in counts ten and twelve of the indictment, in addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The parties further agree that the Court shall order the defendant to pay restitution for losses incurred by victims as a result of the non-tax related relevant conduct identified in paragraphs 1-6 of the attached

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 4*

"Stipulation of Offense Conduct and Relevant Conduct," pursuant to 18 U.S.C. § 3663A(a)(3), even if such victims and/or losses do not result from the counts of conviction.

The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

With regard to the defendant's conviction on count twenty-one of the indictment, in addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. § 3663, and the Government reserves its right to seek restitution on behalf of the IRS consistent with the provisions of § 3663. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees that his tax restitution is $2,885,234.59 plus accrued interest and that he will sign the IRS forms deemed necessary by the IRS to enable it to make assessment of the agreed-upon criminal restitution, including agreeing to sign IRS Form 8821, "Tax Information Authorization." The defendant further agrees to allow the contents of his IRS criminal file to be given to civil attorneys and support staff of the United States Attorney's Office and the IRS to enable them to investigate any taxes owed by the defendant, including, but not limited to, any civil penalties and interest. With respect to disclosure of the criminal file to the above-listed individuals and entities, the defendant waives any rights the defendant might hold under 26 U.S.C. §§ 6103, 7213, and Fed. R. Crim. P. 6(e). The defendant further waives any other rights he might have to non-disclosure of tax-related information. The defendant agrees as a special condition of probation or supervised release that he will cooperate with the IRS to pay all outstanding taxes, interest, and penalties.

If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of probation or supervised release, the IRS will use the restitution order as the basis for a civil assessment. 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

If the Court orders restitution to the IRS, the parties understand that the district court will ensure that all other victims receive full restitution before the United States receives any restitution. 18 U.S.C. § 3664(i).

Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 5*

and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C.
§ 3572(h), (*i*) and § 3612(g).

The defendant agrees that by virtue of his plea of guilty he waives any rights or cause of
action to claim that he is a "substantially prevailing party" for the purpose of recovery of
attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C.
§ 2465(b)(1).

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable
Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an
appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees
that the Sentencing Guideline determinations will be made by the Court, by a preponderance of
the evidence, based upon input from the defendant, the Government, and the United States
Probation Office. The defendant further understands that he has no right to withdraw his guilty
plea if his sentence or the Guideline application is other than he anticipated, including if the
sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels
the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on
the defendant's prompt recognition and affirmative acceptance of personal responsibility for the
offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense
level determined prior to the operation of subsection (a) is level 16 or greater, the Government
will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce
the defendant's Adjusted Offense Level by one additional level based on his prompt notification
of his intention to enter a plea of guilty. The defendant understands that the Court is not
obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative
demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising
the offense(s) of conviction and truthfully admitting or not falsely denying any additional
relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing
Guidelines, and (2) disclosing to the United States Attorney's Office and the United States
Probation Office a complete and truthful financial statement detailing the defendant's financial
condition. The defendant expressly authorizes the United States Attorney's Office to obtain a
credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment
for acceptance of responsibility if the defendant engages in any acts, unknown to the
Government at the time of the signing of this agreement, which (1) indicate that the defendant

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 6*

has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the
Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding
the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation
of any condition of release.  Moreover, the Government reserves the right to seek denial of the
adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or
takes a position at sentencing, or otherwise, which, in the Government's assessment, is
inconsistent with affirmative acceptance of personal responsibility.  The defendant understands
that he may not withdraw his plea of guilty if, for the reasons explained above, the Government
does not make one or both of the recommendations or seeks denial of the adjustment for
acceptance of responsibility.

> Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government
have entered into the attached stipulation, which is a part of this plea agreement.  The defendant
understands that this stipulation does not set forth all of the relevant conduct and characteristics
that may be considered by the Court for purposes of sentencing.  The defendant understands that
this stipulation is not binding on the Court.  The defendant also understands that the Government
and the United States Probation Office are obligated to advise the Court of any additional
relevant facts that subsequently come to their attention.

> Information to the Court

The Government reserves its right to address the Court with respect to an appropriate
sentence to be imposed in this case.  Moreover, the Government will discuss the facts of this
case, including information regarding the defendant's background and character, 18 U.S.C.
§ 3661, with the United States Probation Office and will provide the Probation Officer with
access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that he is knowingly, intelligently, and
voluntarily waiving the following rights:

> Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every
stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that
plea if it has already been made, the right to a public trial, the right to be tried by a jury with the
assistance of counsel, the right to confront and cross-examine the witnesses against him, the right
not to be compelled to incriminate himself, the right to testify and present evidence, and the right
to compel the attendance of witnesses to testify in his defense.  The defendant understands that

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 7*

by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 360 months of imprisonment, a five-year term of supervised release, a $300 special assessment, a $1,000,000 fine, and restitution in any amount to be determined by the Court, even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 8*

this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 9*

understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the misconduct that forms the basis of the indictment in this case as well the relevant conduct described in the "Stipulation of Offense and Relevant Conduct" attached to this plea agreement. After sentencing, the Government will move to dismiss counts one through nine, eleven, and thirteen through twenty of the indictment as to the defendant.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 10*

**NO OTHER PROMISES**

      The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

      This letter shall be presented to the Court, in open court, and filed in this case.

                    Very truly yours,

                    JOHN H. DURHAM
                    UNITED STATES ATTORNEY

                    JOHN T. PIERPONT, JR.
                    DAVID E. NOVICK
                    ASSISTANT UNITED STATES ATTORNEYS

      The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

ROBERT M. MATTHEWS           4/25/19
The Defendant                 Date

      I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

DAVID A. RING, ESQ.           4/25/19
Attorney for the Defendant          Date

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 11*

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to counts ten, twelve, and twenty-one of the indictment:

1. From in or around 2007 through in or around 2009, the defendant conspired with others in a scheme to defraud T.D. Banknorth, N.A., a bank whose deposits were insured by the Federal Deposit Insurance Company, out of the proceeds of a construction loan by making material misrepresentations to T.D. Banknorth, N.A. in connection with the development of the Point Breeze Hotel in Nantucket, Massachusetts.

2. In or around June 2010, the defendant conspired with others in a scheme to defraud T.D. Bank, N.A., a bank whose deposits were insured by the Federal Deposit Insurance Company, out of its ability to foreclose on a parcel of property owned by the defendant located in Nantucket, Massachusetts.

3. From in or around December 2010 through in or around January 2013, the defendant conspired with others in a scheme to defraud JP Morgan Chase Bank N.A. ("JPMC"), a bank whose deposits were insured by the Federal Deposit Insurance Company, by obtaining insurance proceeds through material misrepresentations to JPMC and misappropriating a significant portion of those insurance proceeds, which were intended to repair property located at 115 Lower Church Hill Road, Washington Depot, Connecticut.

4. From in or around 2012 and continuing through in or around January 2018, the defendant conspired with others to defraud EB-5 investors (that is, investors participating in the EB-5 visa program) out of money and property by means of material misrepresentations in connection with the Palm House Hotel located at 160 Royal Palm Way, Palm Beach, Florida ("PHH").

5. From in or around 2012 and continuing through in or around April 2016, the defendant conspired with others to deceive JPMC into selling the property located at 115 Lower Church Hill Road to the defendant through the use of a straw purchaser and misusing EB-5 funding earmarked for the development of the PHH to do so.

6. On or around April 30, 2014, the defendant knowingly caused a monetary transaction to take place in which $2,601,646.32 of fraudulently obtained proceeds derived from the wire fraud at the PHH moved from an account in the name of NJL Development LLC at First Bank of the Palm Beaches in Florida to an account at Webster Bank in Connecticut.

7. Since 2008, the defendant and his wife have had a substantial tax due and owing to the United States of America for the calendar years 2005 and 2007. At all relevant times, the defendant was aware of this tax liability. Notwithstanding this tax obligation, the defendant willfully took affirmative steps to avoid and evade paying the taxes due and

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 12*

owing. For example, in or around November 2014, the defendant caused his wife to execute documents to obtain a loan from an individual with the initials K.M., which was secured by real property located at 115 Lower Church Hill Road. At the time, the property was not in the name of the defendant, but instead in the name of a shell company called NJL Development Group, LLC. The proceeds of this loan were eventually disbursed into an account controlled by the defendant and his wife at Regions Bank in Florida in the name of Mirabia LLC. The defendant subsequently used the loan proceeds disbursed to the Mirabia LLC account for personal expenses without paying any of his outstanding tax liability.

The defendant agrees that the foregoing relevant conduct should be considered by the Court for purposes of calculating the defendant's sentencing guidelines range, and must be considered by the Court in assessing restitution.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

_____
ROBERT V. MATTHEWS
The Defendant

_____
JOHN T. PIERPONT, JR.
DAVID. E. NOVICK
ASSISTANT UNITED STATES ATTORNEYS

_____
DAVID A. RING, ESQ.
Attorney for the Defendant

*Letter to David A. Ring, Esq.*
*April 26, 2019*
*Page 14*

might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.

1                   UNITED STATES DISTRICT COURT

2                     DISTRICT OF CONNECTICUT

3    - - - - - - - - - - - - -  -  x
                                  :  Case No.
4    UNITED STATES OF AMERICA,    :  18CR48(VAB)
                                  :
5              Government,         :
          vs.                     :
6                                 :  915 Lafayette Blvd
     MARIA MATTHEWS,              :  Bridgeport, CT
7                                 :  April 25, 2019
               Defendant.         :
8    - - - - - - - - - - - - -  -  X

9
                     TRANSCRIPT OF PLEA HEARING
10
     BEFORE:  THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.
11


12
     APPEARANCES:
13   FOR THE GOVERNMENT:     JOHN TROWBRIDGE PIERPONT, ESQ.
                             DAVID E. NOVICK, ESQ.
14                           US Attorney's Office - CT
                             157 Church Street, 25th Floor
15                           New Haven, CT 06510

16

17   FOR THE DEFENDANT:      BRIAN SPEARS, ESQ.
                             JANNA EASTWOOD, ESQ.
18                           Spears, Manning & Martini
                             2425 Post Rd, Suite 203,
19                           Fairfield, CT 06824

20

21

22              Sharon Montini, RMR, FCRR
                     915 Lafayette Blvd
23                   Bridgeport, CT 06604
                   Official Court Reporter

24

25

```
 1              (Proceeding commenced: 11:22)

 2              THE COURT:  Good morning.  Please be

 3    seated.  We're here in United States v. Maria

 4    Matthews.  Will counsel please state their

 5    appearances for the record.

 6              MR. PIERPONT:  Good morning, your Honor.

 7    Assistant United States Attorney John Pierpont on

 8    behalf of the government.  I'm joined here at

 9    counsel table by AUSA David Novick, Special Agent

10    Sean Darling from the IRS, and Special Agent Stephen

11    West from the FBI.

12              THE COURT:  Good morning to all of you.

13              MR. SPEARS:  Good morning, your Honor.

14    Brian Spears and Janna Eastwood for the defendant,

15    Maria Matthews, who is seated to my left.

16              THE COURT:  All right.  Good morning to

17    all of you as well.

18              Mr. Pierpont, are there any issues with

19    the Crime Victims' Rights Act in this particular

20    case?

21              MR. PIERPONT:  Your Honor, the

22    government has identified -- there are victims that

23    are identifiable.  The government has identified

24    them and has given them notice of these proceedings

25    here today.  So those obligations have been
```

```
 1    satisfied, your Honor.

 2              THE COURT:  Thank you very much.  I

 3    appreciate it.

 4              And I also understand the purpose of

 5    today's proceeding is to accept a guilty plea.  Is

 6    that your understanding, Mr. Pierpont?

 7              MR. PIERPONT:  Yes, your Honor.

 8              THE COURT:  Ms. Matthews, I want to

 9    begin -- actually, she can be seated.  It's fine.

10              I want to begin by telling you to take

11    your time during this proceeding.  I'm in no hurry

12    and I want to make sure you completely understand

13    what you are doing today.  If at any time during

14    this proceeding you have any questions or problems,

15    or you need more time to speak to your lawyer, Mr.

16    Spears, please just let me know and I will give you

17    all the time you need.  Do you understand?

18              THE DEFENDANT:  Yes.  Thank you, your

19    Honor.

20              THE COURT:  Ms. Matthews, before

21    accepting your plea, there are a number of questions

22    I must ask you while you are oath to assure myself

23    it is a valid plea.  Do you understand?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  Ms. Perez, would you please
```

```
 1   swear in Ms. Matthews.

 2              (Oath administered)

 3              THE COURT:  Thank you.  You can be

 4   seated again.

 5              For the record, I'm going to advise you

 6   of your rights.  You have the right to remain

 7   silent.  You have the right not to continue with a

 8   statement.  Your statements can be used against you.

 9   You have the right to counsel at every stage of

10   these proceedings.  You have the right to have

11   counsel appointed if you cannot afford counsel.  And

12   there is an attorney-client privilege which allows

13   you to speak confidentially with your lawyer.  Do

14   you understand all of these rights, Ms. Matthews?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  All right.  And do you

17   understand that having been sworn you will be

18   subject to the penalties for perjury or for making a

19   false statement if you do not answer truthfully here

20   today?  Do you understand that?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  And do you understand that

23   if the government chooses to prosecute you for

24   perjury or for making a false statement it can use

25   against you any statement you give here today under
```

```
 1   oath?  Do you understand that?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  All right.  Would you please

 4   state your full name for the record, please.

 5              THE DEFENDANT:  Maria Sneden Matthews.

 6              THE COURT:  All right.  Have you ever

 7   used any other names?

 8              THE DEFENDANT:  Yes, Mia Matthews and

 9   Maria Diane Sneden.

10              THE COURT:  All right.  And what year

11   were you born?

12              THE DEFENDANT:  1967.

13              THE COURT:  And where were you born?

14              THE DEFENDANT:  In Cheverly, Maryland.

15              THE COURT:  What?  Maryland?

16              THE DEFENDANT:  Cheverly.

17              THE COURT:  Cheverly.  Okay.  And so you

18   are a United States citizen?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  Have you ever lived outside

21   of the United States?

22              THE DEFENDANT:  No, sir.

23              THE COURT:  How far did you go in

24   school?

25              THE DEFENDANT:  Bachelor's degree.
```

```
 1                    THE COURT:  Are you now or have you

 2      recently been under the care of a physician,

 3      psychiatrist, social worker, or counselor?

 4                    THE DEFENDANT:  Yes, sir.

 5                    THE COURT:  Which one of those?

 6                    THE DEFENDANT:  A psychiatrist back in

 7      March of 2018 for about ten months, a therapist for

 8      approximately the same time, and I met with a social

 9      worker two days ago.

10                    THE COURT:  All right.  Thank you.

11                    And in the past 48 hours, have you taken

12      any narcotic drugs, medicine, or pills?

13                    THE DEFENDANT:  No, sir.

14                    THE COURT:  Have you consumed any

15      alcoholic beverages?

16                    THE DEFENDANT:  I had a glass of wine

17      with dinner last night.

18                    THE COURT:  And that glass of wine has

19      no effects on you today, correct?

20                    THE DEFENDANT:  Yes, sir.  It does not,

21      sir.

22                    THE COURT:  Good.  Have you ever been

23      hospitalized or treated for alcoholism or narcotics

24      addiction?

25                    THE DEFENDANT:  No, sir.
```

```
 1                THE COURT:  And today, as you are here
 2   before me, is your mind clear?
 3                THE DEFENDANT:  Yes, sir.
 4                THE COURT:  And you do have the capacity
 5   to understand what is going on today?
 6                THE DEFENDANT:  Yes, sir.
 7                THE COURT:  All right.  Mr. Spears, are
 8   you sure Ms. Matthews understands the nature of
 9   these proceedings?
10                MR. SPEARS:  Yes, your Honor.
11                THE COURT:  And have you had any
12   difficulty communicating with her?
13                MR. SPEARS:  No, your Honor.
14                THE COURT:  And you have discussed this
15   case with her?
16                MR. SPEARS:  I have.
17                THE COURT:  And do you believe she
18   understands the rights she will be waiving by
19   pleading guilty?
20                MR. SPEARS:  I do, your Honor.
21                THE COURT:  Do you have any doubt as to
22   her competence to plead guilty at this time, sir?
23                MR. SPEARS:  No, your Honor.
24                THE COURT:  Thank you.
25                Ms. Matthews, have you had an
```

```
 1   opportunity to discuss your case with Mr. Spears?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  And are you satisfied with

 4   the representation you have been provided?

 5              THE DEFENDANT:  Yes, your Honor.

 6              THE COURT:  Mr. Pierpont, what's the

 7   nature of the charge against Ms. Matthews and the

 8   maximum sentence to which she could be exposed and

 9   any mandatory minimum sentence that may apply?

10              MR. PIERPONT:  Yes, your Honor.  Ms.

11   Matthews is charged in Count Twenty-One of the

12   superseding indictment in this matter.  It charges a

13   count of 26 U.S.C. 7201, tax evasion.  The maximum

14   penalty is five years of imprisonment.  There is no

15   minimum term of imprisonment.  There is a term of

16   supervised release of up to three years as well,

17   your Honor.

18              THE COURT:  All right.  Do I have -- I

19   have a superseding indictment.  You mentioned a

20   second superseding indictment.  Is that correct?

21              MR. PIERPONT:  Just a superseding

22   indictment, your Honor.

23              THE COURT:  Just superseding indictment.

24   Okay, it's not second superseding indictment.  I am

25   just adding things to it unnecessarily.
```

```
 1                 All right.  Thank you very much.

 2                 Ms. Matthews, do you understand the

 3      charge against you?

 4                 THE DEFENDANT:  Yes, sir.

 5                 THE COURT:  And do you understand the

 6      penalties you may face as a result of this charge?

 7                 THE DEFENDANT:  Yes, your Honor.

 8                 THE COURT:  And have you had enough

 9      opportunity and information to discuss your case

10      with Mr. Spears?

11                 THE DEFENDANT:  Yes, your Honor.

12                 THE COURT:  And do you believe he has

13      answered your questions well enough and given you

14      enough advice and guidance for you to make a

15      decision about pleading guilty today?

16                 THE DEFENDANT:  Yes, your Honor.

17                 THE COURT:  And do you have any concerns

18      about whether he has done a good job for you?

19                 THE DEFENDANT:  I do not, sir.

20                 THE COURT:  What I'm going to do at this

21      time, I'm going to review with you, Ms. Matthews,

22      the various rights that you would be giving up if

23      you decide to plead guilty today.  I'm going to go

24      through each of them to make sure that you are aware

25      of them before you enter your plea of guilty.
```

```
 1    Please listen carefully because at the end of this

 2    review I'm going to ask you if you understand them

 3    and you know that you are waiving every one of these

 4    rights by entering a plea of guilty.

 5            The first and most important thing you

 6    must understand is that you do not have to plead

 7    guilty even if you think you are guilty.  Instead,

 8    you can require the government to prove its case at

 9    trial.  Under our system of law, the prosecutor has

10    the burden of proving the guilt of a defendant

11    beyond a reasonable doubt, and if the prosecutor is

12    unable to meet this burden, the jury has the duty to

13    find the defendant not guilty.

14            It sometimes happens in American

15    courtrooms that a jury returns a verdict of not

16    guilty, and what the jury was saying in those cases

17    is not necessarily that the defendant was innocent,

18    but rather that the government failed to meet its

19    burden of proving beyond a reasonable doubt that a

20    defendant was guilty.  Do you understand that?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  So even if you believe that

23    you are guilty, you do have a choice.  You may plead

24    guilty, as you apparently now wish to do, or you can

25    change your mind and say to the government "meet
```

11

```
 1    your burden of proving my guilt beyond a reasonable
 2    doubt."  And the way you exercise that option is by
 3    saying "not guilty" when I ask you how you wish to
 4    plead.
 5              You have a right to plead not guilty,
 6    and once you plead not guilty, or if you have
 7    already pled not guilty, you have a right to persist
 8    in that plea of not guilty.  Do you understand,
 9    ma'am?
10              THE DEFENDANT:  Yes, sir.
11              THE COURT:  So if you plead not guilty,
12    the Constitution and federal laws entitle you to a
13    speedy, public trial by a jury with the assistance
14    of a lawyer at every stage of the proceedings on the
15    charge in the indictment.  If you could not afford
16    counsel, you'd have the right to have counsel
17    appointed to represent you.
18              At the trial, you would be presumed
19    innocent and the government would have to overcome
20    that presumption by proving you guilty of each and
21    every element of the crimes charged by competent
22    evidence and beyond a reasonable doubt.  You would
23    not have to prove that you were innocent.  If the
24    government were to fail to prove each and every
25    element of the crimes charged, the jury would have
```

```
 1    the duty to find you not guilty.  Do you understand
 2    that?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  In the course of a trial the
 5    witnesses for the government would have to come to
 6    court and testify in your presence and your counsel
 7    would have the right to cross-examine the witnesses
 8    for the government, to object to evidence offered by
 9    the government, to offer evidence on your behalf, as
10    well as to use a subpoena to obtain the attendance
11    of witnesses to testify at trial on your behalf.
12              At trial, while you would have the right
13    to testify if you chose to do so, you also could not
14    be required to testify.  You have a constitutional
15    right not to be compelled to take the stand at a
16    criminal trial against yourself.  If you decide not
17    to testify, the Court would instruct the jury that
18    you were exercising your right and that it could not
19    hold that against you.
20              If you decide to plead guilty, however,
21    I will have to ask you questions about what you did
22    in order to satisfy myself that you are, in fact,
23    guilty, and you'll have to answer my questions and
24    admit your guilt.
25              If you plead guilty and I accept your
```

```
 1    plea as valid, you will be giving up your
 2    constitutional right to a trial and all the other
 3    rights I have just discussed.  There will be no
 4    trial of any kind and no right to appeal the
 5    conviction, although under some circumstances you or
 6    the government may have the right to appeal any
 7    sentence I impose.  So I would -- if you decide to
 8    plead guilty and I accept your plea as valid, I
 9    would simply enter a finding of guilty on the basis
10    of your guilty plea.  Do you understand that?
11              THE DEFENDANT:  Yes, your Honor.
12              THE COURT:  Do you understand all of the
13    rights I have just reviewed with you?
14              THE DEFENDANT:  Yes, I do, your Honor.
15              THE COURT:  Do you have any questions
16    about what I have said so far?
17              THE DEFENDANT:  No, sir.
18              THE COURT:  Ms. Matthews, are you
19    willing to give up your right to a trial?
20              THE DEFENDANT:  Yes, your Honor.
21              THE COURT:  And are you willing to give
22    up the other rights I also have discussed?
23              THE DEFENDANT:  Yes, your Honor.
24              THE COURT:  The offense to which you
25    intend to plead guilty is a felony offense, and, if
```

 1   your plea is accepted, you will be found guilty of

 2   this offense.  You will be subject to sentencing, as

 3   I will describe to you in detail in a few minutes,

 4   but you also will be subject to other collateral

 5   consequences and demands.  You will be deprived of

 6   valuable civil rights, such as the right to vote,

 7   the right to hold public office, the right to serve

 8   on a jury, and the right to possess any kind of

 9   firearm.  A DNA sample will be collected from you to

10   be used by the Bureau of Prisons or the probation

11   office for analysis and indexing and inclusion in a

12   federal database.

13             I understand you are a United States

14   citizen, but if for some reason you were not, you

15   could be deported or removed from the United States,

16   denied citizenship, and denied admission to the

17   United States in the future.

18             Finally, your guilty plea today may work

19   to your disadvantage if in the future you are found

20   guilty of another crime because there is a

21   possibility you could receive a more severe penalty

22   at that time as a result of this guilty plea and

23   conviction.

24             Ms. Matthews, do you understand the

25   additional consequences of pleading guilty?

```
 1              THE DEFENDANT:  Yes, your Honor.

 2              THE COURT:  Are you willing to accept

 3    all of those consequences and still willing to give

 4    up your right to a trial and the other rights I have

 5    just discussed?

 6              THE DEFENDANT:  Yes, your Honor.

 7              THE COURT:  Is anyone threatening you or

 8    forcing you to enter a plea of guilty today, ma'am?

 9              THE DEFENDANT:  No, sir.

10              THE COURT:  Do you want more time to

11    talk to Mr. Spears about giving up your right to

12    trial and pleading guilty?

13              THE DEFENDANT:  No, sir.

14              THE COURT:  Mr. Spears, are you sure Ms.

15    Matthews has had enough time and received enough

16    information and guidance from you about the strength

17    of the government's case and the strength of any

18    defense case such that she's able to make a knowing,

19    intelligent, and voluntary choice to plead guilty

20    here today?

21              MR. SPEARS:  Yes, your Honor.

22              THE COURT:  Are you convinced she

23    understands the rights she will be waiving by

24    pleading guilty?

25              MR. SPEARS:  Yes, your Honor.
```

```
 1                    THE COURT:  And are you convinced she

 2       understands the minimum and maximum sentence

 3       involved here?

 4                    MR. SPEARS:  Yes, your Honor.

 5                    THE COURT:  Thank you very much.

 6                    Mr. Pierpont, I understand there is a

 7       written plea agreement.  Is that correct?

 8                    MR. PIERPONT:  That is correct, your

 9       Honor.

10                    THE COURT:  All right.  You have

11       provided an opportunity for Ms. Matthews and her

12       counsel to review it?

13                    MR. PIERPONT:  Yes, your Honor.

14                    THE COURT:  Ms. Matthews, have you had

15       an opportunity to read the plea agreement carefully?

16                    THE DEFENDANT:  Yes, your Honor.

17                    THE COURT:  Would you like a recess or

18       more time to review the plea agreement or talk to

19       Mr. Spears about whether this is an agreement you

20       really wish to enter into?

21                    THE DEFENDANT:  No, thank you, sir.

22                    THE COURT:  Mr. Pierpont, would you go

23       ahead and outline the terms of the plea agreement.

24                    MR. PIERPONT:  Yes, your Honor.  The

25       plea agreement is a letter that is addressed to
```

1    Attorney Spears from our office dated today,

2    April 25, 2019.  It has a number of different

3    sections.

4              The first section, which begins on page

5    1, is entitled The Plea and Offense.  It outlines,

6    in consideration for the benefits under this

7    agreement, Ms. Matthews agrees to plead guilty to

8    Count Twenty-One of the indictment charging her with

9    tax evasion, a violation of 26 U.S.C. 7201.

10             It also lists the elements the

11   government would be required to prove beyond a

12   reasonable doubt at trial, and that includes:  One,

13   the existence of a substantial tax liability; two,

14   that the defendant committed an affirmative act

15   constituting an evasion or attempted evasion of the

16   tax liability; and three, that the defendant acted

17   willfully.

18             Page 2, your Honor, lists the penalties

19   associated with this statute.  First, and I know I

20   went over those, your Honor, but the offense carries

21   a maximum penalty of five years' imprisonment.  With

22   respect to supervised release, the Court may impose

23   a term of supervised release of not more than three

24   years.  Next, the offense carries a maximum fine of

25   $100,000.  In addition, the defendant agrees to pay

Case 9:16-cv-81871-KAM   Document 492-4   Entered on FLSD Docket 08/03/2019   Page 32 of 55
Case 3:18-cr-00048-VAB   Document 102   Filed 05/03/19   Page 18 of 41

18

```
 1    $100 on -- as a special assessment on the count of

 2    conviction.

 3              There is also a section, your Honor,

 4    entitled Restitution.  Restitution will be made to

 5    the IRS in this case, and the parties agree that

 6    restitution is in the amount of $2,885,243.59 plus

 7    interest -- plus accrued interest, your Honor.

 8              There is a section -- the next main

 9    section beginning on page 3, your Honor, is entitled

10    Sentencing Guidelines.  I believe your Honor will go

11    over that with Ms. Matthews in a moment, but the

12    first subsection is the applicability, which is that

13    the sentencing guidelines are applicable here.

14              After that, there is a section entitled

15    Acceptance of Responsibility, the details of which

16    Ms. Matthews, I know, has reviewed with her

17    attorney, but in essence, assuming that Ms. Matthews

18    lives up to her obligations under the plea

19    agreement, she could be entitled to up to a

20    three-point reduction of the total offense level

21    that your Honor ultimately calculates.

22              There is a section that makes reference

23    to the stipulation of facts that is appended to this

24    plea agreement.  The parties' reserve their right to

25    provide information to the Court.
```

1          Continuing on page 5, your Honor, there

2     begins a list of rights that the defendant agrees to

3     waive.  Your Honor went over a lot of these with Ms.

4     Matthews, but first the waiver of trial rights and

5     the consequences of a guilty plea.  There is also a

6     section about the waiver of the statute -- of any

7     claim of a defense of statute of limitations.  The

8     waiver of right to challenge conviction, Ms.

9     Matthews is agreeing to waive her right to challenge

10    the conviction except under limited circumstances.

11    And then with respect to the waiver of right to

12    appeal or collaterally attack her sentence, Ms.

13    Matthews waives those rights if the sentence does

14    not exceed 60 months of imprisonment, a three-year

15    term of supervised release, a $100 special

16    assessment, and restitution in any amount.

17          After that there is a section entitled

18    Acknowledgement of Guilt and Voluntariness of Plea.

19          Page 7 has three sections, the scope of

20    the agreement, the collateral consequences, and the

21    satisfaction of federal criminal liability and

22    breach.

23          Page 8, your Honor, is the signature

24    page.

25          Page 9 is the stipulation of offense

 1    conduct, which I believe your Honor will do in a

 2    little bit.

 3                And then, finally, pages 10 and 11 are a

 4    rider concerning restitution.

 5                THE COURT:  Thank you, Mr. Pierpont.  I

 6    noticed in my review of the plea agreement there

 7    wasn't a -- the parties I guess have not sort of

 8    discussed the criminal history category or a

 9    possible guideline range for Ms. Matthews.  I don't

10    know if that's left open or what you intended.

11                MR. PIERPONT:  That is correct, your

12    Honor.  Although I am sure the parties would agree

13    on Ms. Matthews' criminal history, I think with

14    respect to the guidelines the parties are in

15    agreement that we'll put that forward when we enter

16    the sentencing phase.

17                MR. SPEARS:  That is correct, your

18    Honor.

19                THE COURT:  Thank you very much, Mr.

20    Spears.

21                Ms. Matthews, what I want to do now is

22    highlight certain provisions of the plea agreement.

23    First, I want to describe to you how sentencing

24    works.  As to any possible term of imprisonment,

25    supervised release, criminal fine, and other parts

1   of a sentence, there are several things you must

2   know.   The first thing is that I cannot impose a

3   sentence above what the statutory maximum is or

4   below any mandatory minimum, but I have discretion

5   to determine where within that minimum and maximum

6   the sentence should be, and that exercise of

7   discretion will be based in large part on the

8   arguments and facts set forth by the government and

9   by you, through your defense counsel, Mr. Spears, as

10  well as the advice I receive from the United States

11  Probation Office, which will prepare a presentence

12  investigation report.

13          Second, in deciding what sentence to

14  impose, I must consider the factors set forth in the

15  principal federal sentencing statute 18 U.S.C.

16  Section 3553.   Under that statute, the relevant

17  factors include the nature and circumstances of the

18  crimes, as well as your personal history and

19  character.   I have to decide upon a sentence that

20  reflects the seriousness of the crime, that promotes

21  respect for the law, and that provides just

22  punishment.

23          I also must consider what sentence is

24  needed to protect the public and to deter others

25  from engaging in crimes, in addition to what

```
 1    sentence may serve rehabilitation goals such as to
 2    provide you with educational or vocational training
 3    and with medical care if needed.
 4              And the statute commands me to consider
 5    the need to provide restitution and the need to
 6    avoid unwarranted sentence disparities among
 7    defendants who have similar backgrounds and who have
 8    been convicted of similar criminal conduct.
 9              Third, I have to consider what sentence
10    is recommended by the United States sentencing
11    guidelines.  I do not have to follow what the
12    guidelines say, and I may depart or vary upward or
13    downward from those guidelines, but that
14    recommendation must be considered.
15              Based principally on the seriousness of
16    the crime and on a defendant's past criminal
17    behavior, the guidelines provide a presumptive
18    sentencing range, a maximum and minimum sentence
19    within the statute's permissible range, but there
20    may be factors present that would allow a departure
21    from this presumptive guideline range.  So there
22    might be facts about your case that would cause me
23    to sentence you to a longer or shorter term of
24    imprisonment than the guidelines calculations.
25              Until you are sentenced, which will be
```

 1  after I receive a presentence report and hear from

 2  you, your lawyer, and from the government, you

 3  cannot know with certainty what the guidelines

 4  recommendation will be, whether there will be

 5  grounds to depart from the guidelines, and what the

 6  ultimate sentence actually will be.

 7           Moreover, in deciding what sentence to

 8  impose, I will very strongly consider, but I'm not

 9  bound by, what you and the government have agreed to

10  regarding sentence in your plea agreement.

11           Therefore, you won't know the sentence

12  -- your sentence until the day of sentencing.  And

13  if I calculate your sentence differently from what

14  the sentencing guidelines suggest or from what you

15  and the government agreed to, or from what you hoped

16  for, this does not allow you to have the sentence

17  cancelled or to withdraw your guilty plea and to

18  have the case go to trial.

19           Do you understand all that?

20           THE DEFENDANT:  Yes, I do, your Honor.

21           THE COURT:  And do you understand that I

22  can impose a sentence more severe than you may

23  expect?

24           THE DEFENDANT:  Yes, I do, your Honor.

25           THE COURT:  Ms. Matthews, do you have

1   any questions about what I have explained about how

2   your sentence will be determined?

3                THE DEFENDANT:  No, sir.

4                THE COURT:  I understand it is your wish

5   to plead guilty to Count Twenty-One of the

6   indictment for tax evasion under 26 U.S.C. Section

7   7201.  I do want to discuss with you the penalties

8   and sentencing scheme that are applicable in your

9   case if you do plead guilty.

10               If you plead guilty, you may be

11  sentenced as follows:  A maximum term of

12  imprisonment of five years; that you face a maximum

13  supervised release term of up to three years, and if

14  you were to violate any condition of supervised

15  release I could then sentence you to additional time

16  in prison for as much as two years with no credit

17  for the time already spent on supervised release;

18  that you may be assessed a fine of as much as

19  $250,000; that I must impose a mandatory special

20  assessment of $100 -- actually, there is -- actually

21  I got the fine thing wrong because there is a fine,

22  and it is also the alternative fine provision.

23               Correct?

24               MR. PIERPONT:  Yes.

25               THE COURT:  Sorry, there is also the

```
 1    alternative fine provision, which means that in
 2    addition to the fine of $250,000, you're subject to
 3    the alternative fine provision of 18 U.S.C. Section
 4    3571, which means the maximum fine that may be
 5    imposed is the greatest of the following:  Twice the
 6    gross gain resulting -- to the defendant resulting
 7    from the offense, twice the gross loss resulting
 8    from the offense, $250,000, or the amount specified
 9    in the law setting forth the offense.
10              Then I must impose a mandatory special
11    assessment of $100.
12              You should know that within the federal
13    system parole has been abolished.  So if you are
14    sentenced to prison, you will not be released on
15    parole.
16              And, finally, that your sentence may be
17    enhanced depending on the findings of the
18    presentence report.
19              So do you understand that your sentence
20    could be increased for a variety of reasons, for
21    example if it is determined you have a more serious
22    criminal history than we're aware of now?  Do you
23    understand that?
24              THE DEFENDANT:  Yes, your Honor.
25              THE COURT:  And you have discussed this
```

Case 9:16-cv-81871-KAM   Document 492-4   Entered on FLSD Docket 08/03/2019   Page 40 of
55
Case 3:18-cr-00048-VAB   Document 102   Filed 05/03/19   Page 26 of 41

26

```
 1    possibility with Mr. Spears?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  And do you understand if

 4    such matters are brought to my attention and I

 5    decide to increase your sentence because of them you

 6    may not withdraw your guilty plea?  Do you

 7    understand?

 8              THE DEFENDANT:  Yes, your Honor.

 9              THE COURT:  All right.  And there are

10    also within this plea agreement provisions regarding

11    waiver of appeal rights.

12              Mr. Pierpont, I assume the government

13    has disclosed any and all provisions concerning

14    waiver of appeal rights in the plea agreement?

15              MR. PIERPONT:  Yes, your Honor.

16              THE COURT:  Ms. Matthews, have the

17    provisions concerning waiver of appeal rights been

18    fully explained you to?

19              THE DEFENDANT:  Yes, your Honor.

20              THE COURT:  And you do understand them?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  So in the plea agreement you

23    voluntarily, knowingly, and intelligently waive your

24    right to appeal or to attack the conviction or

25    sentence of imprisonment imposed collaterally by the
```

1    Court if that sentence does not exceed the

2    following:   60 months of imprisonment, a period of

3    three years of supervised release, a $100 special

4    assessment, and restitution in any amount, even if

5    the Court imposes such a sentence based on an

6    analysis different from that set forth in your plea

7    agreement.   And you should know that such waivers

8    are generally enforceable.   Do you understand all of

9    this, ma'am?

10              THE DEFENDANT:   Yes, your Honor.

11              THE COURT:   And, Mr. Spears, are there

12   any sentencing issues that you believe would survive

13   the waiver in the plea agreement?

14              MR. SPEARS:   I'm not aware of any at

15   this time, your Honor.

16              THE COURT:   Thank you very much, Mr.

17   Spears.

18              Ms. Matthews, if despite the waiver you

19   wish to appeal some issue that is claimed to survive

20   it, you must file a notice of appeal within 14 days

21   of sentencing.   Do you understand the deadline,

22   ma'am?

23              THE DEFENDANT:   Yes, sir.

24              THE COURT:   And are you willing to waive

25   the appeal rights just described?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  All right.  Now, turning to

3    the elements of the offense, again you have

4    expressed an interest in pleading guilty to Count

5    Twenty-One of the indictment, which is under 26

6    U.S.C. Section 7201, for tax evasion.  Mr. Pierpont

7    actually did sort of discuss the elements and

8    referenced the elements when he went over the plea

9    agreement, but I will ask him just to reiterate them

10   again because they are important, it's important for

11   you to understand the elements.

12           I talked earlier about those facts that

13   the government would have to find before you could

14   be convicted.  Those are the elements.  So those

15   facts are what they would have to prove beyond a

16   reasonable doubt before you could be convicted were

17   you to decide not to plead guilty and proceeded to

18   trial.  And I want you to bear in mind the

19   government would have to prove each of those facts

20   by persuading a jury of 12 persons that those facts

21   were true beyond a reasonable doubt.  Do you

22   understand that, ma'am.

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Mr. Pierpont?

25           MR. PIERPONT:  Yes, your Honor.  So as

```
 1    your Honor indicated, the charge 26 U.S.C. Section
 2    7201, there are three elements that the government
 3    would have to prove beyond a reasonable doubt at
 4    trial, which is:  First, that there was an existence
 5    of a substantial tax liability; second, that the
 6    defendant committed an affirmative act constituting
 7    an evasion or an attempted evasion of that tax
 8    liability; and third, that the defendant, when she
 9    did so, acted willfully.
10              THE COURT:  Thank you very much, Mr.
11    Pierpont.
12              So, Ms. Matthews, do you understand the
13    elements as he has described them?
14              THE DEFENDANT:  Yes, I do, your Honor.
15              THE COURT:  Do you have any questions
16    about the elements of the offense to which --
17              THE DEFENDANT:  No, sir.
18              THE COURT:  All right.  We're now going
19    to turn to the conduct that brings us here today.
20              Ms. Matthews, I will ask you to tell me
21    in your own words what you did that shows that you
22    are in fact guilty of the charge to which you are
23    now offering to plead guilty.
24              THE DEFENDANT:  My husband I and had a
25    substantial outstanding tax liability from 2005 and
```

```
 1    2007.   In the fall of 2014, I was aware of the tax

 2    liability when I became involved in obtaining a

 3    loan.   In November of 2014, I signed documents that

 4    related to the loan.   The loan went through, and the

 5    results of the proceeds were transferred into an

 6    account in the name of Mirabia.

 7              I used those funds -- some of those

 8    funds to pay personal expenses when my husband and I

 9    should have been paying down the tax liability.

10              I know that what I did was wrong, and I

11    apologize to the Court for my actions.

12              THE COURT:  All right.   Okay.   I am now

13    going to ask Mr. Pierpont to summarize what you did

14    that makes you guilty of the charges to which you

15    intend to plead guilty and to summarize the

16    government's evidence as to the charge against you.

17              Please listen carefully, Ms. Matthews,

18    because when Mr. Pierpont is finished.   I will ask

19    you whether you agree with his summary of what you

20    did.

21              Mr. Pierpont?

22              MR. PIERPONT:  Yes, your Honor.   So the

23    evidence that the government would present at trial

24    to prove the three elements that we talked about

25    beyond a reasonable doubt is as follows:   First of
```

1    all, since 2008, Ms. Matthews and her husband have

2    had a substantial tax due and owing to the IRS for

3    the calendar years 2005 and 2007. We have those

4    filed tax returns that were signed -- or we'd be

5    able to prove were signed by Ms. Matthews.

6             We would also be able to show that

7    during the time frame as charged in the indictment,

8    Ms. Matthews was aware of those tax liabilities. We

9    would be able to do that through various witness

10   statements. So, for instance, the IRS made

11   collection attempts across the years. There were

12   IRS agents who spoke to her in which she talked

13   about and acknowledged her tax liability. I believe

14   there are other times as well. There were wages

15   that were garnished as well. Ms. Matthews certainly

16   would have been aware of that.

17            What brings us to this specific -- and,

18   your Honor, the superseding indictment I believe

19   charged eight affirmative acts, but the one

20   affirmative act that we're talking about here today

21   does involve a loan transaction in November of 2014.

22   At the time Ms. Matthews executed documents to

23   obtain a loan from an individual with the initials

24   K.M. That loan was secured by property located at

25   115 Lower Church Hill Road. At the time that

1    property was not owned in the name of Ms. Matthews

2    or Mr. Matthews, but a shell entity called NJL

3    Development.  That's important because also at the

4    time the IRS had filed liens in Washington Depot, so

5    any sort of transaction like this the IRS would be

6    the first to collect.

7           Those proceeds of the loan were paid

8    out, as Ms. Matthews said, into an account that she

9    and her husband controlled, and then were used for

10   personal reasons from there.

11           THE COURT:  All right.  Thank you very

12   much, Mr. Pierpont.

13           Ms. Matthews, do you agree with Mr.

14   Pierpont's summary of what you did?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Is there anything that he

17   said with which you disagree?

18           THE DEFENDANT:  No, sir, there isn't.

19           THE COURT:  Is there anything else you

20   wish to say about his summary?

21           THE DEFENDANT:  I'm sorry?

22           THE COURT:  Is there anything else you

23   wish to say about his summary?

24           THE DEFENDANT:  No, sir.

25           THE COURT:  Now, returning back to the

1    plea agreement itself, does the written agreement

2    and the other matters we have discussed today as

3    outlined by Assistant U.S. Attorney Mr. Pierpont

4    fully and accurately reflect your understanding of

5    the agreement you have entered into with the

6    government?

7                THE DEFENDANT:  Yes, your Honor.

8                THE COURT:  Are you aware that your

9    attorney, Mr. Spears, and the prosecutor, Mr.

10   Pierpont, have discussed your agreement to plead

11   guilty?

12               THE DEFENDANT:  Yes, your Honor.

13               THE COURT:  And is your willingness to

14   plead guilty today based on the prior discussions

15   between Mr. Spears and Assistant U.S. Attorney

16   Pierpont that have resulted in this plea agreement?

17               THE DEFENDANT:  Yes, your Honor.

18               THE COURT:  And other than the promises

19   contained in the written agreement, has anyone made

20   any promises that are causing you to plead guilty?

21               THE DEFENDANT:  No, sir.

22               THE COURT:  Has anyone made any threats

23   against you or is anyone in any way forcing you to

24   plead guilty or otherwise coercing you to plead

25   guilty, ma'am?

```
 1              THE DEFENDANT:  No, your Honor.

 2              THE COURT:  Are you pleading guilty

 3    today of your own free will and because you are, in

 4    fact, guilty?

 5              THE DEFENDANT:  Yes, your Honor.

 6              THE COURT:  All right.  If you are ready

 7    to sign the plea agreement and stipulation of

 8    offense conduct, why don't you go ahead and do so.

 9              MR. SPEARS:  Your Honor, Ms. Matthews

10    and I have signed the plea agreement and stipulation

11    of offense conduct, which I will hand to Attorney

12    Pierpont.

13              THE COURT:  All right.

14              MR. PIERPONT:  Your Honor, I signed the

15    documents.  May I approach?

16              THE COURT:  Yes, please.

17              Ms. Matthews, at this time I will ask

18    the clerk of court to ask you how you wish to plead.

19    This is your last opportunity to decide whether you

20    wish to go through with this and enter a plea of

21    guilty.  Are you ready to be put to plea at this

22    time?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  All right.  Please stand.

25              I will have the charge read to you
```

1    unless you waive a reading of the charge.  Do you

2    waive a reading of the charge?

3               MR. SPEARS:  Yes, your Honor, we'll

4    waive the reading.

5               THE COURT:  All right.  Ms. Perez.

6               THE CLERK:  In the case of United States

7    of America v. Maria Matthews, Criminal No.

8    3:18CR48(VAB), as to Count One -- I'm sorry, as to

9    Count Twenty-One of the superseding indictment,

10    charging you with a violation of Title 26, United

11    States Code, Section 7201, what is your plea?

12               THE DEFENDANT:  Guilty, your Honor.

13               THE CLERK:  Your Honor, the defendant

14    pleads guilty as to Count Twenty-One of the

15    superseding indictment.

16               THE COURT:  All right.  Thank you very

17    much, Ms. Perez.

18               On the basis of the plea agreement and

19    the stipulation of offense conduct attached to it,

20    and the other matters discussed today; the answers

21    given by the defendant, Ms. Matthews, under oath, on

22    the record, and in the presence of her counsel, Mr.

23    Spears, to the questions of the Court; the remarks

24    of Mr. Spears and the remarks of Assistant U.S.

25    Attorney Pierpont, it is the finding of the Court in

```
 1    the case of the United States v. Maria Matthews,

 2    that the defendant is fully competent and capable of

 3    entering an informed plea, that the defendant is

 4    aware of the nature of the charge and the

 5    consequences of the plea, and that the plea of

 6    guilty is a knowing and voluntary plea supported by

 7    an independent basis in fact containing each of the

 8    essential elements of the offense.

 9              The Court finds that the defendant knows

10    of her right to plead not guilty and to a trial and

11    related rights, and that she's giving up these

12    rights by her plea of guilty; that she knows the

13    maximum possible sentence and any minimum required

14    sentence in terms of imprisonment, supervised

15    release, monetary fine, forfeiture, restitution, and

16    payment of a special assessment; that she knows of

17    the Court's obligation to consider the sentencing

18    statute and the sentencing guidelines; and that she

19    knows of and accepts the terms of any plea agreement

20    provision waiving her right to appeal or to attack

21    her sentence collaterally.

22              The plea to Count Twenty-One of the

23    indictment, therefore, is accepted and Ms. Matthews

24    is now adjudged guilty of that offense.

25    Accordingly, a finding of guilty shall enter and
```

37

1   this case is referred to the United States Probation

2   Office for a presentence investigation.

3            Ms. Matthews, a United States probation

4   officer will prepare a presentence report on you,

5   and this report will be submitted to the Court to

6   assist it determining the appropriate sentence in

7   your case.  Please bear in mind the probation

8   officers work for the court, not the United States

9   attorney, so your cooperation and that of your

10  family and friends with the United States probation

11  officer generally will benefit you.

12           It is very important, however, that you

13  carefully discuss with your attorney what you say to

14  the probation office because the presentence report

15  is very important in the process of determining your

16  sentence under the sentencing guidelines.  In

17  addition, anything that you, your family or friends,

18  or anyone else, tells the probation officer could

19  have an impact on your sentence and other

20  consequences as well.  You also have the right to

21  have your attorney present during your discussions

22  with the probation officer.

23           Do you understand, ma'am?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  So please read and review

 1   the presentence report with your attorney.  At

 2   sentencing I'm going to ask if you have read the

 3   presentence report, understood it, and given any

 4   response you have to it to the probation officer or

 5   to your attorney.

 6               So I think she is currently on bond.  I

 7   assume that there -- the conditions in place will

 8   continue?

 9               MR. PIERPONT:  That's fine with the

10   government, your Honor.  Yes.

11               MR. SPEARS:  Yes, your Honor.  Thank

12   you.

13               THE COURT:  So what are the current

14   conditions?

15               MR. SPEARS:  Ms. Matthews' travel is

16   restricted to Connecticut, Florida, and New York.

17               THE COURT:  Okay.  So there is no

18   monetary bond or non-surety bond?

19               MR. PIERPONT:  There is a bond, your

20   Honor.  Just give me a minute.

21               THE CLERK:  100,000.

22               THE COURT:  I'm sorry, Ms. Perez is

23   correcting me.  All right.

24               So I will keep the -- I assume the

25   government has no objection to keeping the same

```
 1    conditions in place and no one believes that there

 2    is any likelihood of fleeing or she poses any danger

 3    to any other person or the community, right?

 4                 MR. PIERPONT:  No, your Honor.  The

 5    conditions I think would suffice to address any

 6    concerns that the government might have.

 7                 THE COURT:  All right.  The Court will

 8    continue the conditions of the bond.

 9                 MR. SPEARS:  Just to be clear, I think

10    there are a few other states, California, Maryland,

11    and New Hampshire.

12                 THE COURT:  Okay.

13                 MR. SPEARS:  We'd ask to continue the

14    bond as stated.

15                 THE COURT:  We'll continue the bond

16    under the same conditions, and the same travel

17    conditions will remain in place.

18                 MR. SPEARS:  Thank you, your Honor.

19                 THE COURT:  All right.  Under Local Rule

20    32(f), I will defer entering a scheduling order.

21    The parties should meet and confer, consult with

22    probation about mutually agreeable deadlines for

23    disclosure of memoranda and sentencing.  If you can

24    submit it on or before May 3rd -- I think that is

25    the magical date -- the proposed schedule.
```

```
 1                  Any concerns or questions regarding that

 2     date for proposed schedule?  Mr. Pierpont?

 3                  MR. PIERPONT:  No, your Honor, not from

 4     the government.

 5                  THE COURT:  Mr. Spears?

 6                  MR. SPEARS:  No, your Honor.  Thank you.

 7                  THE COURT:  Is there anything else we

 8     need to deal with today in this matter?

 9                  MR. PIERPONT:  No, your Honor.

10                  THE COURT:  Mr. Spears?

11                  MR. SPEARS:  Nothing further, your

12     Honor.

13                  THE COURT:  All right.  Then we're

14     adjourned.

15                  (Proceeding concluded 11:00.)

16

17

18

19

20

21

22

23

24

25
```

1

2          I certify that the foregoing is a correct

3     transcript from the record of proceedings in the

4     above-entitled matter.

5

6                              5/3/19

7                               Date

8

9                    /S/   Sharon Montini

10                      Official Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25