# Composite

# Exhibit

# "D"



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

Connecticut Financial Center          (203)821-3700
157 Church Street, 25ᵗʰ Floor          Fax (203) 773-5376
New Haven, Connecticut 06510          www.justice.gov/usao/ct

April 25, 2019

Brian E. Spears, Esq.
Spears Manning & Martini LLC
2425 Post Road, Suite 203
Southport, CT 06890

United States District Court
District of Connecticut
FILED AT  - BRIDGEPORT
_____ 20 19
Apri 25
Robin D. Tabora, Clerk
By _____
Deputy Clerk

  Re:  United States v. Maria Matthews
     Case No. 18-CR-48 (VAB)

Dear Attorney Spears:

   This letter confirms the plea agreement between your client, Maria Matthews (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

**THE PLEA AND OFFENSE**

   In consideration for the benefits offered under this agreement, the defendant agrees to plead guilty to count twenty-one of the indictment charging her with tax evasion, a violation of 26 U.S.C. § 7201.

   The defendant understands that, to be guilty of the offense of tax evasion charged in count twenty-one of the indictment, the following essential elements must be satisfied:

   1. The existence of a substantial tax liability;

   2. That the defendant committed an affirmative act constituting an evasion or attempted evasion of the tax liability; and

   3. That the defendant acted willfully.

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 2*

## THE PENALTIES

### Imprisonment

The offense carries a maximum penalty of 5 years of imprisonment.

### Supervised Release

In addition, the Court may impose a term of supervised release of not more than 3 years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should she violate any condition of supervised release, she may be required to serve a further term of imprisonment of up to 2 years with no credit for time already spent on supervised release.

### Fine

The offense carries a maximum fine of $100,000.  The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571.  Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; (3) $250,000; or (4) the amount specified in the section defining the offense, which is $100,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction.  The defendant agrees to pay the special assessment to the Clerk of the Court on or before the date of sentencing.

### Restitution

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. § 3663, and the Government reserves its right to seek restitution on behalf of the IRS consistent with the provisions of § 3663.  The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution.  Restitution is payable immediately unless otherwise ordered by the Court.

The defendant agrees that restitution is $2,885,243.59 plus accrued interest and that she will sign the IRS forms deemed necessary by the IRS to enable it to make assessment of the agreed-upon criminal restitution, including agreeing to sign IRS Form 8821, "Tax Information Authorization." The defendant further agrees to allow the contents of her IRS criminal file to be given to civil attorneys and support staff of the United States Attorney's Office and the IRS to enable them to investigate any taxes owed by the defendant, including, but not limited to, any civil penalties and interest.  With respect to disclosure of the criminal file to the above-listed individuals and entities, the defendant waives any rights the defendant might hold under 26

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 3*

U.S.C. §§ 6103, 7213, and Fed. R. Crim. P. 6(e). The defendant further waives any other rights she might have to non-disclosure of tax-related information. The defendant agrees as a special condition of probation or supervised release that she will cooperate with the IRS to pay all outstanding taxes, interest, and penalties.

If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of probation or supervised release, the IRS will use the restitution order as the basis for a civil assessment. 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (*i*) and § 3612(g).

The defendant agrees that by virtue of her plea of guilty she waives any rights or cause of action to claim that she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

**THE SENTENCING GUIDELINES**

Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that she has no right to withdraw her guilty plea if her sentence or the Guideline application is other than she anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 4*

offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and her offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on her prompt notification of her intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw her guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that she may not withdraw her plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

<u>Stipulation</u>

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

<u>Information to the Court</u>

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C.

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 5*

§ 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that she is knowingly, intelligently, and voluntarily waiving the following rights:

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her.

The defendant understands that she has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against her, the right not to be compelled to incriminate herself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in her defense. The defendant understands that by pleading guilty she waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if she pleads guilty, the Court may ask her questions about each offense to which she pleads guilty, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

### Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances she is entitled to challenge her conviction. By pleading guilty, the defendant waives her right to appeal or collaterally attack her conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims she might raise, the defendant waives her right to challenge hers conviction based on (1) any non-jurisdictional defects in the proceedings before

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 6*

entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

<u>Waiver of Right to Appeal or Collaterally Attack Sentence</u>

The defendant acknowledges that under certain circumstances, she is entitled to challenge her sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 60 months of imprisonment, a 3-year term of supervised release, a $100 special assessment, and restitution in any amount, even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that she is entering into this agreement and is pleading guilty freely and voluntarily because she is guilty. The defendant further acknowledges that she is entering into this agreement without reliance upon any discussions between the Government and her (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges her understanding of the nature of the offense to which she is pleading guilty, including the penalties provided by law. The defendant also acknowledges her complete satisfaction with the representation and advice received from her undersigned attorney. The defendant and her undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that she is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights she may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 7*

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to her with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving her.

## COLLATERAL CONSEQUENCES

The defendant understands that she will be adjudicated guilty of each offense to which she has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if she is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which she is licensed, or with which she does business, as well as any current or future employer of the fact of her conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut stemming from her tax evasion which forms the basis of count twenty-one of the indictment.

The defendant understands that if, before sentencing, she violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw her guilty plea.

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 8*

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

JOHN H. DURHAM
UNITED STATES ATTORNEY

JOHN T. PIERPONT, JR.
DAVID E. NOVICK
ASSISTANT UNITED STATES ATTORNEYS

The defendant certifies that she has read this plea agreement letter and its attachment(s) or has had it read or translated to her, that she has had ample time to discuss this agreement and its attachment(s) with counsel and that she fully understands and accepts its terms.

MARIA MATTHEWS                          4/25/19
The Defendant                           Date

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that she understands and accepts its terms.

BRIAN E. SPEARS, ESQ.                   4/25/19
Attorney for the Defendant              Date

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 9*

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to the Indictment:

Since 2008, the defendant and her husband have had a substantial tax due and owing to the United States of America for the calendar years 2005 and 2007. At all relevant times, the defendant was aware of this tax liability. Notwithstanding this tax obligation, the defendant willfully took affirmative steps to avoid and evade paying the taxes due and owing.

In particular, in or around November 2014, the defendant executed documents to obtain a loan from an individual with the initials K.M., which was secured by real property located at 115 Lower Church Hill Road in Washington Depot, Connecticut. At that time, the property was not in the name of the defendant or her husband, but instead in the name of a shell company called NJL Development Group, LLC. The proceeds of this loan were eventually disbursed into an account controlled by the defendant and her husband at Regions Bank in Florida in the name of Mirabia LLC—a shell company controlled by the defendant. The defendant subsequently used the loan proceeds disbursed to the Mirabia LLC account for personal expenses without paying any of her outstanding tax liability.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

MARIA MATTHEWS
The Defendant

JOHN T. PIERPONT, JR.
DAVID E. NOVICK
ASSISTANT UNITED STATES ATTORNEYS

BRIAN E. SPEARS, ESQ.
Attorney for the Defendant

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 10*

## RIDER CONCERNING RESTITUTION

The Court may order that the defendant make restitution under 18 U.S.C. § 3663 as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

    A. Return the property to the owner of the property or someone designated by the owner; or

    B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

    The greater of -
    (I) the value of the property on the date of the damage, loss, or destruction;  or

    (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

    A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

    B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

    C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant.  In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release.  Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. The Court

*Letter to Brian E. Spears, Esq.*
*April 25, 2019*
*Page 11*

may also order that the defendant give notice to any victim(s) of her offense under 18 U.S.C. § 3555.

1                      UNITED STATES DISTRICT COURT

2                        DISTRICT OF CONNECTICUT

3     - - - - - - - - - - - - -  - x
                                 : Case No.
4     UNITED STATES OF AMERICA,  : 18CR48(VAB)
                                 :
5                  Government,   :
             vs.                 :
6                                : 915 Lafayette Blvd
      ROBERT V. MATTHEWS,        : Bridgeport, CT
7                                : April 25, 2019
                  Defendant.     :
8     - - - - - - - - - - - - -  - X

9
                        TRANSCRIPT OF PLEA HEARING
10
      BEFORE:   THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.
11


12
      APPEARANCES:
13    FOR THE GOVERNMENT:      JOHN TROWBRIDGE PIERPONT, ESQ.
                               DAVID E. NOVICK, ESQ.
14                             US Attorney's Office - CT
                               157 Church Street, 25th Floor
15                             New Haven, CT 06510

16

17    FOR THE DEFENDANT:      DAVID A. RING, ESQ.
                              PAUL AARON TUCHMANN, ESQ.
18                            Wiggin and Dana LLP
                              265 Church St
19                            New Haven, CT 06510

20

21

22                   Sharon Montini, RMR, FCRR
                          915 Lafayette Blvd
23                       Bridgeport, CT 06604
                       Official Court Reporter
24

25

```
 1              (Proceeding commenced: 2:21).
 2              THE COURT:  Good afternoon.  Please be
 3    seated.  We're here in United States v. Robert
 4    Matthews.  Will counsel please state their
 5    appearances for the record.
 6              MR. PIERPONT:  Good afternoon, your
 7    Honor.  Assistant United States Attorney John
 8    Pierpont on behalf of the United States.  I'm joined
 9    here at counsel table by AUSA Dave Novick, Special
10    Agent Stephen West of the FBI, and Special Agent
11    Sean Darling of the IRS.
12              THE COURT:  Good afternoon to all of
13    you.
14              MR. RING:  Good afternoon, your Honor.
15    David Ring, with Paul Tuchmann, for Mr. Matthews.
16    And with me at counsel table, seated to my left, is
17    Mr. Matthews.
18              THE COURT:  All right.  Good afternoon
19    to you.
20              Mr. Pierpont, I understand the
21    government's obligations under the Crime Victims'
22    Rights Act been satisfied in this case, sir?
23              MR. PIERPONT:  They have, your Honor.
24    We've been in touch with all of the victims we've
25    been able to identify, and have been in touch with
```

```
 1    them as recently as yesterday about the proceedings

 2    here today.

 3                 THE COURT:  Thank you.  And I understand

 4    the purpose of today's proceeding is to accept a

 5    guilty plea.  Is that your understanding?

 6                 MR. PIERPONT:  That is correct, your

 7    Honor.

 8                 THE COURT:  Thank you.

 9                 Mr. Matthews, I want to begin, sir --

10    you can be seated.  It's fine.

11                 I want to begin, sir, by telling you to

12    take your time during this proceeding.  I'm in no

13    hurry, and I want to make sure you completely

14    understand what you are doing today.  If at any time

15    during this proceeding you have any questions or

16    problems, or you need more time to speak with your

17    lawyer, Mr. Ring, please just let me know and I will

18    give you all of the time you need.  Do you

19    understand, sir?

20                 THE DEFENDANT:  Yes, your Honor.

21                 THE COURT:  Before accepting your plea,

22    there are a number of questions I must ask you while

23    you are under oath to assure myself that it is a

24    valid plea.  Do you understand?

25                 THE DEFENDANT:  Yes, your Honor.
```

```
 1              THE COURT:  Ms. Perez, will swear you in
 2   Mr. Matthews.
 3              (Oath administered)
 4              THE COURT:  You can be seated again.
 5              So for the record, sir, I'm going to
 6   advise you of your rights.  You have the right to
 7   remain silent.  You have the right not to continue
 8   with a statement.  Your statements can be used
 9   against you.  You have the right to counsel at every
10   stage of these proceedings.  You have the right to
11   have counsel appointed if you cannot afford counsel.
12   And there is an attorney-client privilege which
13   allows you to speak confidentially with your lawyer.
14              Do you understand all of these rights,
15   sir?
16              THE DEFENDANT:  I do, your Honor.
17              THE COURT:  And do you understand that
18   having been sworn you will be subject to the
19   penalties for perjury or for making a false
20   statement if you do not answer truthfully here
21   today?
22              THE DEFENDANT:  I do, your Honor.
23              THE COURT:  And do you understand that
24   if the government chooses to prosecute you for
25   perjury or for making a false statement it could use
```

5

1    against you any statement that you give here under

2    oath today?  Do you understand that?

3             THE DEFENDANT:  I do, your Honor.

4             THE COURT:  All right.  Sir, would you

5    please state your full name for the record?

6             THE DEFENDANT:  Robert Viers Stephen

7    Matthews.

8             THE COURT:  Have you ever used any other

9    names?

10            THE DEFENDANT:  No, your Honor.

11            THE COURT:  What year were you born?

12            THE DEFENDANT:  1958.

13            THE COURT:  And where were you born,

14    sir?

15            THE DEFENDANT:  Chateauroux, France.

16            THE COURT:  I'm sorry, France?

17            THE DEFENDANT:  Chateauroux.

18            THE COURT:  Are you a United States

19    citizen?

20            THE DEFENDANT:  I am, your Honor.

21            THE COURT:  Other than France, have you

22    ever lived outside of the United States?

23            THE DEFENDANT:  Never lived, but

24    travelled, yes.

25            THE COURT:  How far did you go in

```
 1   school, sir?
 2              THE DEFENDANT:  I got an A.A., and one
 3   year at UMass as an econ major.
 4              THE COURT:  Are you now or have you
 5   recently been under the care of a physician,
 6   psychiatrist, social worker, or counselor?
 7              THE DEFENDANT:  I do have a doctor, your
 8   Honor, yes.
 9              THE COURT:  And as a part of that
10   particular medical relationship, have you been --
11   are you on any particular medication?
12              THE DEFENDANT:  I am, your Honor.  5mg
13   of a drug, and I don't recall the name.
14              THE COURT:  In the past 48 hours, have
15   you taken that drug?
16              THE DEFENDANT:  Yes, your Honor.
17              THE COURT:  And have you taken any other
18   drugs, medicine -- narcotic drugs, medicine, or
19   pills?
20              THE DEFENDANT:  No, your Honor.
21              THE COURT:  And the drug that you do
22   take, does it have any effect on your ability to
23   perceive or appreciate what is going on here today?
24              THE DEFENDANT:  No, it doesn't, your
25   Honor.
```

1          THE COURT:  In the past 48 hours, have
2   you consumed any alcoholic beverages?
3          THE DEFENDANT:  I had a mini Corona
4   beer, your Honor.
5          THE COURT:  I assume that beer is not
6   having any current affect on your ability to
7   comprehend or appreciate what is going on here
8   today?
9          THE DEFENDANT:  Yes.  It was last night,
10  your Honor.
11         THE COURT:  Have you ever been
12  hospitalized or treated for alcoholism or narcotics
13  addiction?
14         THE DEFENDANT:  No, I haven't, your
15  Honor.
16         THE COURT:  So today, as you are before
17  me, is your mind clear?
18         THE DEFENDANT:  Yes, very clear, your
19  Honor.
20         THE COURT:  And you do understand what
21  is going on here today?
22         THE DEFENDANT:  I do, your Honor.
23         THE COURT:  Thank you, sir.
24         Mr. Ring, are you sure that Mr. Matthews
25  understands the nature of these proceedings?

8

```
 1                    MR. RING:  Yes, your Honor.  I have

 2   spent a considerable amount of time with Mr.

 3   Matthews, including today, including in the hours

 4   leading up to this hearing, and I am fully confident

 5   that he understands the nature of these proceedings

 6   and he is of sound mine.

 7                    THE COURT:  Thank you, sir.  So you've

 8   had no difficulty communicating with him, Mr. Ring?

 9                    MR. RING:  None, your Honor.

10                    THE COURT:  And you have discussed this

11   case with him, as I think you noted already?

12                    MR. RING:  Yes, your Honor.

13                    THE COURT:  And you have no doubt as to

14   his competence to plead guilty at this time.

15                    MR. RING:  None whatsoever, your Honor.

16                    THE COURT:  Thank you, sir.

17                    Mr. Matthews, have you had an

18   opportunity to discuss your case with Mr. Ring?

19                    THE DEFENDANT:  I have, your Honor.

20                    THE COURT:  Are you satisfied with the

21   representation you have been provided?

22                    THE DEFENDANT:  Yes, your Honor.

23                    THE COURT:  Mr. Pierpont, what's the

24   nature of the charge against Mr. Matthews and the

25   maximum sentence to which he could be exposed and
```

1  any mandatory minimum that may apply?

2          MR. PIERPONT:  So, your Honor, Mr.

3  Matthews is here today -- as your Honor is aware,

4  he's charged in 21 counts of a 21-count superseding

5  indictment.  He's here today to plead guilty to

6  three of those counts, your Honor.  That would be

7  Counts Ten, Twelve and Twenty-One of the superseding

8  indictment, and they charge violations of 18 U.S.C.

9  Section 1349, that's Count Ten, conspiracy to commit

10  bank and wire fraud; 18 U.S.C. Section 1957, and

11  that's Count Twelve, illegal monetary transactions;

12  and 26 U.S.C. Section 7201, tax evasion, which

13  represents Count Twenty-One of the indictment.

14          The maximum penalties, your Honor, for

15  the conspiracy count is 30 years, for the illegal

16  monetary transactions is ten years, and for the tax

17  evasion is five years.  With respect to -- there are

18  no minimums, your Honor.

19          With respect to supervised release, with

20  respect to the conspiracy count, the maximum term of

21  supervised release is five years.  With respect to

22  the illegal monetary transactions, supervised

23  release is up to three years.  And with respect to

24  Count Twenty-One, the tax evasion count, the maximum

25  supervised release is three years.

```
 1            As to the fines, your Honor, the

 2   conspiracy count carries a maximum fine of

 3   $1 million, the illegal monetary transaction carries

 4   a maximum fine of $250,000, and the tax evasion

 5   carries a maximum fine of $100,000.  The defendant

 6   is also subject to the alternative fine provision of

 7   18 U.S.C. Section 3571.

 8            There is also, your Honor, a special

 9   assessment.  Mr. Matthews is required to pay $100 on

10   each count of conviction, totaling $300.

11            And restitution, your Honor, is also an

12   issue in this case and is mandatory in this case.

13            THE COURT:  Thank you very much.

14            Mr. Matthews, you understand the charges

15   against you, sir?

16            THE DEFENDANT:  I do, your Honor.

17            THE COURT:  And do you understand the

18   penalties you may face as a result of these charges?

19            THE DEFENDANT:  I do, your Honor.

20            THE COURT:  And so, sir, have you had

21   enough opportunity and information to discuss your

22   case with Mr. Ring?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  And do you believe he's

25   answered your questions well enough and given you
```

```
 1    enough advice and guidance for you to make a
 2    decision about pleading guilty today?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  And do you have any
 5    concerns, again, about whether he has done a good
 6    job for you?
 7              THE DEFENDANT:  No, your Honor.
 8              THE COURT:  All right.  What I'm going
 9    to do now, sir, is I'm going to review with you the
10    various rights that you would be giving up if you
11    decide to plead guilty today.  I'm going to go
12    through each of them to make sure you are aware of
13    them before you enter your guilty plea.  Please
14    listen carefully because at the end of this review
15    I'm going to ask if you understand them and you know
16    you are waiving every one of those rights by
17    entering a plea of guilty.
18              The first and most important thing you
19    must understand is that you do not have to plead
20    guilty even if you think you are guilty.  Instead,
21    you can require the government to prove its case at
22    trial.  Under our system of law, the prosecutor has
23    the burden of proving the guilt of a defendant
24    beyond a reasonable doubt, and if the prosecutor is
25    unable to meet this burden, the jury has the duty to
```

1   find the defendant not guilty.

2              It sometimes happens in American

3   courtrooms that a jury returns a verdict of not

4   guilty.  What the jury is saying is not necessarily

5   that they found the defendant to be innocent, but

6   rather that the government had failed to meet its

7   burden of proving beyond a reasonable doubt that the

8   defendant was guilty.  Do you understand, sir?

9              THE DEFENDANT:  I do, your Honor.

10             THE COURT:  So even if you believe that

11  you are guilty, you do have a choice.  You may plead

12  guilty, as you apparently now wish to do, or you can

13  change your mind right now and say to the government

14  "meet your burden of proving my guilt beyond a

15  reasonable doubt."  And the way you exercise that

16  option is by saying "not guilty" when I ask you how

17  you wish to plead.

18             You have a right to plead not guilty,

19  and once you plead not guilty, or if you have

20  already pled not guilty, you have a right to persist

21  in that plea.  Do you understand, sir?

22             THE DEFENDANT:  I do, your Honor.

23             THE COURT:  If you plead not guilty, the

24  Constitution and federal laws entitle you to a

25  speedy, public trial by jury with the assistance of

Case 9:16-cv-81871-KAM   Document 492-5   Entered on FLSD Docket 08/03/2019   Page 25 of 67
Case 3:18-cr-00048-VAB   Document 101   Filed 05/03/19   Page 13 of 55

13

```
 1    a lawyer at every stage of the proceedings on the

 2    charges in the indictment.  If you could not afford

 3    counsel, you would have the right to have counsel

 4    appointed to represent you.  At the trial you would

 5    be presumed innocent and the government would have

 6    to overcome that presumption by proving you guilty

 7    of each and every element of the crimes charged by

 8    competent evidence and beyond a reasonable doubt.

 9    You would not have to prove that you were innocent.

10            If the government were to fail to prove

11    each and every element of the crimes charged, the

12    jury would have the duty to find you not guilty.  Do

13    you understand, sir?

14            THE DEFENDANT:  I do, your Honor.

15            THE COURT:  In the course of a trial the

16    witnesses for the government would have to come to

17    Court and testify in your presence and your counsel

18    would have the right to cross-examine the witnesses

19    for the government, to object to evidence offered by

20    the government, to offer evidence on your behalf, as

21    well as to use a subpoena to obtain the attendance

22    of witnesses to testify at trial on your behalf.

23            At trial, while you would have the right

24    to testify if you chose to do so, you also could not

25    be required to testify.  You have a constitutional
```

1   right not to be compelled to take the stand at a

2   criminal trial against yourself.  If you decide not

3   to testify, the Court would instruct the jury that

4   you were exercising your right and that it could not

5   be held against you.

6              If you decide to plead guilty, however,

7   I will have to ask you questions about what you did

8   in order to satisfy myself that you are in fact

9   guilty and you will have to answer my questions and

10  admit your guilt.  If you plead guilty and I accept

11  your plea as valid, you will be giving up your

12  constitutional right to a trial and the other rights

13  I also have discussed.  There will be no trial of

14  any kind and no right to appeal the conviction,

15  although under some circumstances you or the

16  government may have the right to appeal any sentence

17  I impose.

18              So if you plead guilty and I accept your

19  plea as valid, I will simply enter a finding of

20  guilty on the basis of your guilty plea.  Do you

21  understand, sir?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  Do you understand all of the

24  rights I have just reviewed with you, sir?

25              THE DEFENDANT:  I do, your Honor.

Case 9:16-cv-81871-KAM   Document 492-5   Entered on FLSD Docket 08/03/2019   Page 27 of 67
Case 3:18-cr-00048-VAB   Document 101   Filed 05/03/19   Page 15 of 55

15

```
 1                    THE COURT:  Do you have any questions?
 2                    THE DEFENDANT:  No, your Honor.
 3                    THE COURT:  Mr. Matthews, are you
 4       willing to give up your right to a trial?
 5                    THE DEFENDANT:  Yes, your Honor.
 6                    THE COURT:  Are you willing to give up
 7       the other rights I also have just discussed?
 8                    THE DEFENDANT:  I am, your Honor.
 9                    THE COURT:  The offense to which you
10       intend to plead guilty is a felony offense, and if
11       your plea is accepted, you will be found guilty of
12       this offense.  You will be subject to sentencing, as
13       I will describe to you in detail in a few minutes,
14       but you also will be subject to other collateral
15       consequences and demands.  You will be deprived of
16       valuable civil rights, such as the right to vote,
17       the right to hold public office, the right to serve
18       on a jury, and the right to possess any kind of
19       firearm.  A DNA sample will be collected from you to
20       be used by the Bureau of Prisons or the probation
21       office for analysis and indexing and inclusion in a
22       federal database.
23                    I understand you said you are a United
24       States citizen, but if for some reason you are not,
25       you could be deported or removed from the United
```

```
1    States, denied citizenship, and denied admission to

2    the United States in the future.

3                 Finally, your guilty plea today may work

4    to your disadvantage if in the future you are found

5    guilty of another crime because there is a

6    possibility you could receive a more severe penalty

7    at that time as a result of this guilty plea and

8    conviction.

9                 Mr. Matthews, do you understand the

10   additional consequences of pleading guilty?

11              THE DEFENDANT:  I do, your Honor.

12              THE COURT:  And are you willing to

13   accept all of those consequence and still willing to

14   give up your right to a trial and the other rights I

15   have discussed?

16              THE DEFENDANT:  I am, your Honor.

17              THE COURT:  Is anyone threatening you or

18   forcing you to enter a plea of guilty, sir?

19              THE DEFENDANT:  No, your Honor.

20              THE COURT:  Do you want more time to

21   talk to Mr. Ring about giving up your right to trial

22   and pleading guilty?

23              THE DEFENDANT:  No, your Honor.

24              THE COURT:  Mr. Ring, are you sure that

25   Mr. Matthews has had enough time and received enough
```

1    information and guidance from you about the strength

2    of the government's case and the strength of any

3    defense case such that he's able to make a knowing,

4    intelligent, and voluntary choice to plead guilty

5    here today?

6              MR. RING:  We've had an extensive amount

7    of time to consult, to review evidence, to discuss

8    the options that are available, in addition to the

9    consequences of pleading guilty, and I am fully

10   satisfied that Mr. Matthews has had the opportunity

11   to do those things that he should do, anybody in his

12   circumstances should do before making this decision,

13   that he's considered those options, that he

14   understands the evidence against him and the

15   consequences of pleading guilty here today, and he's

16   ready to do so.

17             THE COURT:  All right.  Thank you.  Are

18   you convinced he understands the rights he will be

19   waiving by pleading guilty?

20             MR. RING:  Yes, your Honor.

21             THE COURT:  And are you convinced he

22   understands the minimum and maximum sentence

23   involved here?

24             MR. Ring:  Yes, your Honor.

25             THE COURT:  Thank you very much, Mr.

```
 1   Ring.
 2               Mr. Pierpont, I understand there is a
 3   written plea agreement.  Is that correct?
 4               MR. PIERPONT:  That is correct, your
 5   Honor.
 6               THE COURT:  All right.  And Mr. Ring and
 7   Mr. Matthews have had an opportunity to review it?
 8               MR. PIERPONT:  Yes, your Honor.
 9               THE COURT:  Mr. Matthews, have you had
10   an opportunity and taken that opportunity to review
11   this plea agreement carefully, sir?
12               THE DEFENDANT:  I have, your Honor.
13               THE COURT:  Would you like a recess or
14   more time to review this plea agreement with Mr.
15   Ring or talk to him about whether this is really an
16   agreement you wish to enter into?
17               THE DEFENDANT:  No, your Honor.
18               THE COURT:  Mr. Pierpont, why don't you
19   go ahead and outline the terms of the plea
20   agreement.
21               MR. PIERPONT:  Certainly, your Honor.
22   So the plea agreement is a 13-page letter dated
23   today, April 25, 2019, from the United States
24   Attorney's Office addressed to Attorney Ring.  It's
25   broken into sections.
```

1          The first section, your Honor, is

2     entitled The Plea and the Offense.  In it Mr.

3     Matthews agrees to plead guilty to Count Ten,

4     Twelve, and Twenty-One of the indictment, which

5     charges, as I alluded to earlier, violations of 18

6     U.S.C. Section 1349, conspiracy; 18 U.S.C. Section

7     1957, illegal monetary transactions; and 26 U.S.C.

8     Section 7201, tax evasion.

9          That section also includes, your Honor,

10    the elements.  I'd be happy to explain them now or

11    later.

12          THE COURT:  Why don't we do them later.

13    Thank you so much, sir.

14          MR. PIERPONT:  After that, your Honor,

15    the next section on page 2 begins with penalties.  I

16    went over those before, but again, the offense

17    charged in Count Ten of the indictment carries a

18    maximum penalty of 30 years; Count Twelve, ten

19    years; Count Twenty-One, five years.

20          There is also a section related to

21    supervised release which I related to the Court

22    earlier when asked.

23          There is also a section about fines,

24    special assessments, and at the bottom of page 3 is

25    restitution.  I will note for the Court that right

Case 9:16-cv-81871-KAM   Document 492-5   Entered on FLSD Docket 08/03/2019   Page 32 of 67
Case 3:18-cr-00048-VAB   Document 101   Filed 05/03/19   Page 20 of 55

20

1    at the bottom of page 3 the defendant explicitly

2    agrees that his tax restitution is $2,885,234.59,

3    plus accrued interest, just to the IRS.

4                Finally, continuing on page 4, there is

5    a section regarding interest, penalties, and fines.

6                The next sort of main section, your

7    Honor, is entitled The Sentencing Guidelines.  There

8    is a subsection called Applicability.  It talks

9    about the applicability of the sentencing guidelines

10   to this matter.

11               Top of page 5 there is a subsection

12   called Acceptance of Responsibility.  It's three

13   paragraphs long, but in short it provides that if

14   Mr. Matthews adheres to his obligations under the

15   plea agreement, the government will agree that his

16   total offense level under the guidelines should be

17   reduced by up to three points.

18               The bottom of page 5 talks about a

19   stipulation of offense conduct, which is appended to

20   the plea agreement.

21               Top of page 6, the parties reserve the

22   right to address the Court with appropriate

23   information.

24               The next sort of main section beginning

25   on page 6 is called Waiver of Rights.  Your Honor

```
 1    went over a lot of these with Mr. Matthews already,
 2    but that includes the waiver of trial rights, the
 3    consequences of guilty pleas, waiver of any claim of
 4    defense of statute of limitations, the waiver of a
 5    right to challenge his conviction accept under
 6    limited circumstances, your Honor, and the waiver of
 7    a right to appeal or collaterally attack his
 8    sentence.
 9              Specifically in that subsection, Mr.
10    Matthews agrees that, except for limited
11    circumstances, he will not be allowed to either
12    appeal or collaterally attack his sentence unless
13    your Honor imposes a sentence greater than
14    360 months of imprisonment, a five-year term of
15    supervised release, a $300 special assessment, a
16    $1 million fine, and restitution in any amount,
17    regardless of how your Honor arrives at that
18    sentence.
19              Page 7 talks about the acknowledgement
20    of guilt and the voluntariness of plea.
21              Page 8 talks about the scope of the
22    agreement and collateral consequences.
23              Page 9, your Honor, talks about
24    satisfaction of federal criminal liability.
25              Excuse me for just one moment, your
```

1    Honor.

2              So, your Honor, I apologize for the

3    delay.

4              THE COURT:  That's all right.  Like I

5    said, I'm in no rush.  I want to make sure we get

6    this right.

7              MR. PIERPONT:  Yes.  So continuing, your

8    Honor, on to page 8 and into page 9, it talks about

9    the satisfaction of federal criminal liability and

10   breach.  I just do want to highlight this section

11   for the Court for just a moment here.  The

12   defendant's guilty plea, if accepted by the Court,

13   will satisfy the federal criminal liability of the

14   defendant in the District of Connecticut as a result

15   of his participation in the misconduct that forms

16   the basis of the indictment in this case.  It then

17   goes on to say "as well as the relevant conduct

18   described in the stipulation of offense and relevant

19   conduct attached to this plea agreement."

20             We'll get to this in a moment, your

21   Honor, but the stipulation of offense and relevant

22   conduct is a little bit broader than what's charged

23   in there.  So this section satisfies Mr. Matthews'

24   liability for all of what's described in the

25   stipulation of offense and relevant conduct.

Case 9:16-cv-81871-KAM Document 492-5 Entered on FLSD Docket 08/03/2019 Page 35 of 67
Case 3:18-cr-00048-VAB Document 101 Filed 05/03/19 Page 23 of 55

23

 1              Continuing, your Honor, to page 10 --
 2              THE COURT:  We can wait -- Mr. Ring is
 3     consulting with his client.
 4              MR. RING:  So, your Honor, I think, as
 5     Mr. Pierpont said, he had brought a draft today that
 6     didn't include some of the satisfaction of liability
 7     language.  The version that I went over with Mr.
 8     Matthews yesterday, and read with him word by word,
 9     is a version that we're actually going to use.
10     We'll change the date.
11              And so Mr. Matthews understands that
12     there is no difference in what's being represented
13     by the government today from what we discussed
14     previously.  So we're all set, your Honor.
15              THE COURT:  That's fine.  I just want to
16     make sure.
17              Mr. Pierpont, it's fine, we'll wait.  I
18     don't want you to talk while Mr. Ring feels he needs
19     to consult with him.
20              MR. PIERPONT:  I understand.  Thank you,
21     your Honor.  I didn't appreciate that they were
22     consulting.
23              THE COURT:  Okay.
24              MR. PIERPONT:  Again, so continuing on
25     to page 10, it talks about the section entitled No

1    Other Promises.

2                    Page 11 and page 12 talk about the

3    stipulation of offense conduct.  Again, your Honor,

4    we'll talk about that later.  I do just want to

5    highlight the penultimate paragraph on page 12 in

6    which the party, Mr. Matthews, explicitly agrees

7    that the foregoing relevant conduct should be

8    considered by the Court for the purposes of

9    calculating the defendant's sentencing guideline

10   range and must be considered by the Court in

11   assessing restitution.

12                    So that's another agreement between the

13   parties there.

14                    And then, your Honor, continuing on page

15   13 to 14 is the rider concerning restitution.

16                    THE COURT:  Okay.  All right.  Thank you

17   very much.

18                    Mr. Matthews, what I want to do now is

19   highlight certain provisions of the plea agreement.

20   I'm going to begin by describing to you, sir, how

21   sentencing works.

22                    As to any possible term of imprisonment,

23   supervised release, criminal fine, and other parts

24   of a sentence, there are several things you must

25   know.  First, I cannot impose a sentence above what

1    the statutory maximum is or below any mandatory

2    minimum, but I have discretion to determine where

3    within that minimum and maximum the sentence should

4    be, and that exercise of discretion will be based in

5    large part on the arguments and facts set forth by

6    the government and by you, through your counsel, Mr.

7    Ring, as well as the advice I receive from the

8    United States Probation Office which will prepare a

9    presentence investigation report.

10            Second, in deciding what sentence to

11   impose, I must consider the factors set forth in the

12   principal federal sentencing statute 18 U.S.C.

13   Section 3553.  Those factors include the nature and

14   circumstances of the crime, as well as your personal

15   history and character.  I have to decide upon a

16   sentence that reflects the seriousness of the crime,

17   that promotes respect for the law, and that provides

18   just punishment.

19            I also must consider what sentence is

20   needed to protect the public and deter others from

21   engaging in crime, in addition to what sentence may

22   serve rehabilitation goals, such as to provide you

23   with educational or vocational training and with

24   medical care if needed.

25            And the statute commands me to consider

1    the need to provide restitution and the need to

2    avoid unwarranted sentence disparities among

3    defendants who have similar backgrounds and who have

4    been convicted of similar criminal conduct.

5              Third, I have to consider what sentence

6    is recommended by the United States guidelines.  I

7    do not have to follow what the guidelines say and I

8    may depart and vary upward or downward from the

9    guidelines, but that recommendation must be

10   considered.

11             Based principally on the seriousness of

12   the crime and on a defendant's past criminal

13   behavior, the guidelines provide a presumptive

14   sentencing range, meaning a maximum and minimum

15   sentence within the statute's permissible range.

16   There may, however, be factors present that would

17   allow a departure from this presumptive guideline

18   range.  So there might be facts about your case that

19   would cause me to sentence you to a longer or

20   shorter term of imprisonment than the guidelines

21   calculations.

22             Until you are sentenced, which will be

23   after I receive a presentence report and hear from

24   you, from your lawyer, and from the government, you

25   cannot know with certainty what the guidelines

1   recommendation will be, whether there will be

2   grounds to depart from the guidelines, and what the

3   ultimate sentence actually will be.

4           Moreover, in deciding what sentence to

5   impose, I will very strongly consider, but I'm not

6   bound by what you and the government have agreed to

7   regarding sentencing in your plea agreement.

8   Therefore, you won't know your sentence until the

9   day of sentencing.  And if I calculate your sentence

10  differently from what the sentencing guidelines

11  suggest or from what you and the government agreed

12  to or from what you hoped for, this does not allow

13  you to have the sentence cancelled, to withdraw your

14  guilty plea, and to have the case go to trial.

15          Do you understand all of that, Mr.

16  Matthews?

17          THE DEFENDANT:  I do, your Honor.

18          THE COURT:  And do you understand that I

19  can impose a sentence more severe than you may

20  expect?

21          THE DEFENDANT:  I do, your Honor.

22          THE COURT:  Mr. Matthews, do you have

23  any questions about what I have explained about how

24  your sentence will be determined?

25          THE DEFENDANT:  No, your Honor.

1          THE COURT:  Thank you.  So I understand

2    that it is your wish to plead guilty to Count Ten,

3    conspiracy, in violation of 18 U.S.C. Section 1349;

4    Count Twelve, involving illegal monetary

5    transactions, in violation of 18 U.S.C. Section

6    1957; and Count Twenty-One, tax evasion, in

7    violation of 26 U.S.C. Section 7201.

8          I now want to discuss with you the

9    penalties and the sentencing scheme that are

10   applicable in your case if you do plead guilty.  For

11   Count Ten, it's a maximum term of imprisonment of --

12   hold on one second.  I want to make sure I have this

13   right.  Sorry.  Hold on one second.

14         So Count Ten I have a maximum term of

15   imprisonment of 30 years.

16         MR. PIERPONT:  That is correct, your

17   Honor.

18         THE COURT:  And that you face a maximum

19   supervised release term of up to three years, and if

20   you violate any condition of supervised release you

21   could be -- yes.  No, I'm sorry, it's a maximum

22   supervised release term of five years and up to

23   three years for any violation.  So that if you

24   violate any condition of supervised release, I could

25   then sentence you to additional time in prison of as

```
 1    much as three years with no credit for the time

 2    already spent on supervised release.  That you may

 3    be assessed a fine -- it could be a fine of

 4    $1 million, but the alternative fine provision also

 5    applies to this -- the alternative fine provision

 6    applies, and under the alternative fine provision --

 7    hang on one second.  It should be -- hang on.  It

 8    should be twice the loss or twice the offense or a

 9    maximum of --

10              MR. RING:  Twice the gross gains, your

11    Honor.

12              THE COURT:  Yes, twice the gross gains.

13    Sorry about that.

14              Yes.  So, it's twice the gross gains.

15    And then under -- and then you may be ordered to pay

16    restitution under 18 U.S.C. Section 3663A.  I must

17    impose a mandatory special assessment of $100.

18              And you should know that parole has been

19    abolished in the federal system.  So if you are

20    sentenced to prison, you will not be released on

21    parole.  And the sentence could be enhanced

22    depending on the findings of the presentence report.

23              And then you also agree to plead guilty

24    to Count Twelve, and under Count Twelve -- hang on.

25    It's one of those days for me.  Under Count Twelve,
```

1    for illegal monetary transactions under 18 U.S.C.

2    Section 1957, there is a maximum of ten years'

3    imprisonment; supervised release of not more than

4    three years, and up to two years for violation; a

5    fine of $250,000; mandatory restitution; and,

6    special assessment of $100.

7              And under Count Twenty-One, tax evasion

8    under 26 U.S.C. Section 7201, it's a maximum term of

9    five years' imprisonment; supervised release of not

10   more than three years, and up to two years for a

11   violation; a fine of 250,000, and that's also again

12   subject to the alternative fine provision similar to

13   Count Ten; possible restitution of $2,885,234.59;

14   and, the special assessment of $100.

15             And, again, as with both Count Ten and

16   Twelve, under Count Twenty-One, it's important to

17   note, again, under the federal system parole has

18   been abolished, and if you are sentenced to prison

19   you will not be released on parole.  And your

20   sentence may be enhanced depending on the findings

21   of the presentence report.

22             So, sir, do you understand your sentence

23   could be increased for a variety of reasons, for

24   example if it's determined you have a more serious

25   criminal history than we're aware of now?  Do you

```
 1   understand?

 2             THE DEFENDANT:  I do, your Honor.

 3             THE COURT:  Have you discussed this

 4   possibility with Mr. Ring?

 5             THE DEFENDANT:  Yes, your Honor.

 6             THE COURT:  And do you understand if

 7   some matters are brought to my attention and I

 8   decide to increase your sentence because them you

 9   may not withdraw your guilty plea?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  All right.  Now, do you also

12   understand that you have rights to appeal?  And

13   there is a section of your plea agreement that

14   concerns waiver of your appeal rights.  Are you

15   aware of that, sir?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Mr. Pierpont, has the

18   government disclosed to the Court any and all

19   provisions concerning waiver of appeal rights in the

20   plea agreement?

21             MR. PIERPONT:  Yes, your Honor.

22             THE COURT:  Mr. Matthews, have the

23   provisions concerning waiver of appeal rights been

24   fully explained to you?

25             THE DEFENDANT:  They have, your Honor.
```

Case 9:16-cv-81871-KAM   Document 492-5   Entered on FLSD Docket 08/03/2019   Page 44 of 67
Case 3:18-cr-00048-VAB   Document 101   Filed 05/03/19   Page 32 of 55

32

```
 1              THE COURT:  And you do understand them?
 2              THE DEFENDANT:  Yes, your Honor.
 3              THE COURT:  So in the plea agreement you
 4    voluntarily, knowingly and intelligently waive your
 5    right to appeal or to collaterally attack the
 6    conviction or sentence of imprisonment imposed by
 7    the Court if that sentence does not exceed the
 8    following:  360 months of imprisonment, a period of
 9    five years of supervised release; a $300 special
10    assessment, a fine of $1 million, and restitution in
11    the amount to be determined by the Court, even if
12    the Court imposes such a sentence based on an
13    analysis different from that set forth in your plea
14    agreement, and that such waivers are generally
15    enforceable?  Do you understand all of this, sir?
16              THE DEFENDANT:  Yes, your Honor.
17              THE COURT:  Mr. Ring, are there any
18    sentencing issues that you believe would survive
19    this waiver?
20              MR. RING:  No, your Honor.
21              THE COURT:  Mr. Matthews, if despite the
22    waiver you wish to appeal some issue that is claimed
23    to survive it, you must file a notice of appeal
24    within 14 days of sentencing.  Do you understand
25    that, sir?
```

1      THE DEFENDANT:  Yes, your Honor.

2      THE COURT:  And are you willing to waive

3  the appeal rights just described?

4      THE DEFENDANT:  Yes, your Honor.

5      THE COURT:  All right, sir --

6      MR. RING:  Actually, can I amend, your

7  Honor?  If the Court were to impose a sentence of

8  over 30 years, I actually think there probably would

9  be an appeal that would survive the waiver.

10      THE COURT:  But that would be within the

11  waiver, though, wouldn't it?

12      MR. RING:  Yes.

13      THE COURT:  Because you have -- because

14  the waiver of the appeal rights is for 360 months of

15  incarceration.

16      MR. RING:  Yes.  I thought the Court's

17  question was would there be an appeal that would

18  survive the waiver.

19      THE COURT:  Yes, but the waiver -- I

20  assume the waiver would include the content.  In

21  essence, what you are waiving, is not appealing

22  something that exceeds the 360, the five years, $300

23  special assessment, the million dollar fine, and

24  restitution amount.

25      MR. RING:  Correct, your Honor.

34

```
 1              THE COURT:  All right.  So with all of
 2    that, you are comfortable with the waiver of appeal
 3    rights that's been described, Mr. Matthews?
 4              THE DEFENDANT:  Yes, your Honor.
 5              THE COURT:  All right.  So now in terms
 6    of the elements of the offenses, we have Count Ten,
 7    conspiracy, in violation of 18 U.S.C. Section 1349;
 8    Count Twelve, illegal money transactions, under 18
 9    U.S.C. Section 1957; and Count Twenty-One, tax
10    evasion, under 26 U.S.C. Section 7201.
11              I will now ask Assistant U.S. Attorney
12    Pierpont to explain to you the elements of the
13    offense to which you have been charged.  By
14    elements, sir, I mean those facts that the
15    government would have to prove beyond a reasonable
16    doubt before you could be convicted were you to
17    decide not to plead guilty and instead proceeded to
18    trial.  And I want you to bear in mind that the
19    government would have to prove each of those facts
20    by persuading a jury of 12 persons that those facts
21    were true beyond a reasonable doubt.  Do you
22    understand, sir?
23              THE DEFENDANT:  I do, your Honor.
24              THE COURT:  Mr. Pierpont?
25              MR. PIERPONT:  Yes, your Honor.  So
```

1   beginning with Count Ten that charges conspiracy, in

2   violation of 18 U.S.C. Section 1349, there are two

3   elements there that the government would prove

4   beyond a reasonable doubt if this case were to

5   proceed to trial:  First, that two or more persons

6   in some manner or way agreed to try to accomplish a

7   common and unlawful plan to commit bank fraud and

8   wire fraud as charged in the indictment; and second,

9   the defendant knew the unlawful purpose of the plan

10   and willfully joined in it.

11              With respect to illegal monetary

12   transactions, in violation -- charged in Count

13   Twelve of the indictment, a violation of 18 U.S.C.

14   Section 1957, there are five elements that the

15   government would have to prove beyond a reasonable

16   doubt at trial:  That is, one, that the defendant

17   knowingly engaged in a monetary transaction; two,

18   the monetary transaction involved criminally derived

19   proceeds of a value greater than $10,000; three, the

20   monetary transaction involved criminally derived

21   property which was derived from specified unlawful

22   activity; four, that the defendant knew the monetary

23   transaction involved criminally derived property;

24   and five, that the monetary transaction took place

25   within the United States.

1          Finally, your Honor, with respect to

2    Count Twenty-One of the indictment charging a

3    violation of 26 U.S.C. Section 7201, tax evasion,

4    there are three elements there that the government

5    would have to prove at trial beyond a reasonable

6    doubt.  First, the existence of a substantial tax

7    liability; second, that the defendant committed an

8    affirmative act constituting an evasion or attempted

9    evasion of the tax; and third, that the defendant

10   acted willfully when committing that affirmative act

11   of evasion or attempted evasion.

12             THE COURT:  Thank you very much, Mr.

13   Pierpont.

14             Mr. Matthews, do you understand the

15   elements of the offense to which you have been

16   charged, sir?

17             THE DEFENDANT:  I do, your Honor.

18             THE COURT:  Do you have any question

19   about those elements?

20             THE DEFENDANT:  No, your Honor.

21             THE COURT:  At this time we're going to

22   turn to the conduct that brings us here today.  I

23   would ask you to tell me in your own words, sir,

24   what you did that shows that you are, in fact,

25   guilty of the charges to which you are now offering

1    to plead guilty.

2              THE DEFENDANT:  Under Count Ten, your

3    Honor, I knew that the EB-5 investors were providing

4    funds that were to be used for the development of

5    the Palm House Hotel, and I knew the investors were

6    told that their funds would be used to develop the

7    hotel in accordance with PPM and marketing material

8    that was provided to them.

9              I arranged with others to use and divert

10   portions of the EB-5 funds for my personal benefit

11   beyond what I was entitled to in the PPM.  This

12   included using EB-5 funds to obtain real and

13   personal property which was put under the control of

14   myself and others rather than under the control of

15   the hotel and its entities.

16             I also arranged with others to obtain

17   control of my former residence on Lower Church Hill

18   Road in Washington Depot, Connecticut when it was

19   being auctioned by the bank after foreclosure.  I

20   knew I could not obtain the property in my own name,

21   so I worked with others so I would be able to regain

22   control of the property and also hopefully make

23   money from the bank sale of the property at a below

24   market price.  I knew the bank would not make the

25   sale if it knew I was involved.

1      Under Count Twelve, on or around
2  April 30th of 2014, I arranged for $2.6 million to
3  be wired from Florida to Connecticut for the
4  purchase of my former residence in Connecticut.
5  These funds came from EB-5 investors for the purpose
6  of developing the Palm House Hotel.  I arranged for
7  the distribution of these funds specifically for the
8  purchase of my former residence and intended to
9  benefit personally from such use of the funds.  I
10  distributed funds through and to various entities
11  involved in the transaction in order to conceal my
12  involvement in the repurchase of my former
13  residence.
14      Under Count Twenty-One, due to tax
15  returns for 2005 and 2007, I had an outstanding tax
16  liability of more than $2 million, and I knew that
17  -- I knew of that tax liability.  I put assets and
18  property controlled by me under the names of various
19  entities, but not my own name.  I did this in order
20  to prevent creditors, including the IRS, from taking
21  these assets.  I knew that this was wrong.
22      THE COURT:  All right.  Thank you very
23  much, Mr. Matthews.
24      I'm now going to ask Mr. Pierpont to
25  summarize what you did that makes you guilty of the

1  charges to which you intend to plead guilty and to

2  summarize the government's evidence as to the

3  charges against you.  Please listen carefully, sir,

4  because when he is finished, I will ask whether you

5  agree with his summary.

6          Mr. Pierpont?

7          MR. PIERPONT:  Thank you, your Honor.

8  So beginning with Count Ten, the conspiracy to

9  commit bank and wire fraud, your Honor, as Mr.

10  Matthews said, there are really sort of two facets

11  of that which Mr. Matthews worked with others to

12  perpetrate these crimes.  And I will begin with the

13  wire fraud, your Honor.

14          Mr. Matthews provided information that

15  ultimately made their way to EB-5, or foreign,

16  investors, about a project called the Palm House

17  Hotel.  And, to be clear, the government has these

18  promotional materials and would rely upon them at

19  trial.

20          These promotional materials contained

21  material misrepresentations, your Honor.  Those

22  material misrepresentations include information

23  about the amount of equity that Mr. Matthews had in

24  the property.  They include material

25  misrepresentations as to individuals who are going

```
 1    to be involved and associated with the Palm House
 2    Hotel.  They include misrepresentations about who
 3    would be on the advisory board.  And they also
 4    include misrepresentations regarding the involvement
 5    of Mr. Matthews' brother, Mr. Gerry Matthews, as
 6    well, insofar as he was held out as though he was
 7    somebody who was managing the property when, in
 8    fact, he was not.
 9              In reliance on those misrepresentations,
10    your Honor, we've had the opportunity to, and would
11    expect to call, at least one of -- one of these
12    investors to come and testify at trial.  Money was
13    invested.  And we're talking to the tune of about
14    half a million dollars per foreign investor.  Once
15    the money was provided by the foreign investors, it
16    was supposed to be used for development of the Palm
17    House Hotel, but, as Mr. Matthews said, portions of
18    that money were diverted for various different
19    reasons, including personal expenditures and buying
20    different properties.
21              That includes, your Honor, a property at
22    115 Lower Church Hill Road, which brings us to sort
23    of the second prong of the conspiracy count.  And so
24    regarding the property at 115 Lower Church Hill
25    Road -- again we have the documents that we would
```

1   introduce at trial to support this -- Mr. Matthews

2   lost that house in foreclosure.  The bank that

3   foreclosed on it, JPMorgan, would be unwilling to

4   sell that property back to Mr. Matthews, and so Mr.

5   Matthews arranged with others to create a shell

6   entity to buy that home at auction from the bank.

7   And that was supposed to be for Mr. Matthews'

8   benefit.

9            So there were misrepresentations that

10  were made along the way, your Honor, by others

11  acting in concert with Mr. Matthews, but Mr.

12  Matthews orchestrated the arrangement.  So that's

13  Count Ten.

14           Turning, your Honor, to illegal monetary

15  transactions, I will talk -- which I believe is

16  Count Twelve.  As Mr. Matthews identified, there was

17  a movement of EB-5 money from an account in which

18  those EB-5 monies were placed -- again, we have the

19  bank records and we'd be able to trace this

20  through -- that ultimately went through two various

21  accounts in Florida before making their way to an

22  account up here to Connecticut for the purchase of

23  the home.

24           Finally, your Honor, with respect to the

25  tax evasion, as Mr. Matthews said, there was a

1    substantial tax owing and due from 2005 and 2007.

2    We have those returns.  They were signed, and we

3    have evidence they were signed, by Mr. Matthews.  We

4    have evidence that he was aware of that based on a

5    myriad of notices that were sent to his house, his

6    houses across the years, and also including

7    conversations that he had with IRS representatives

8    regarding his outstanding tax liability.

9              That notwithstanding, there were a

10   number of steps that Mr. Matthews took to put

11   property and assets that were within his control out

12   -- not in his name, but in the name of other

13   entities, so that it was beyond the reach of the

14   IRS.

15             One point that I would point out, your

16   Honor, I believe there are eight overt acts that

17   were charged in Count Twenty-One, and I will just

18   focus again on 115 Lower Church Hill Road to talk a

19   little about the specific evidence there, and that

20   is, in one instance Mr. Matthews arranged for a loan

21   to be taken out by -- from an individual with the

22   initials of K.M., secured by the property at 115

23   Lower Church Hill Road.  We have that loan

24   documentation and we'd introduce it into evidence.

25             That money -- that property at that time

43

```
 1   was in the name of an entity called NJL Development.

 2   That is important because there were also liens

 3   filed against Mr. Matthews that would attach to his

 4   various properties in Washington Depot, but by

 5   putting it in the name of NJL Development, that lien

 6   didn't attach.  Mr. Matthews was able to obtain a

 7   loan.  The proceeds of those loans went to a bank

 8   account that was in Mr. Matthews' control, and Mr.

 9   Matthews and Ms. Matthews spent money out of that

10   account for personal reasons and thereby evading

11   their tax obligations.

12              THE COURT:  Thank you very much.

13              Mr. Matthews, do you agree with Mr.

14   Pierpont's summary of what you did, sir?

15              THE DEFENDANT:  Yes, your Honor.

16              THE COURT:  Is there anything he said

17   with which you disagree?

18              THE DEFENDANT:  No, your Honor.

19              THE COURT:  All right.  Is there

20   anything else you wish to say about his summary?

21              THE DEFENDANT:  No, your Honor.

22              THE COURT:  All right.  Turning back to

23   the plea agreement -- before I do that, I do want to

24   sort of just make sure the record -- yes?

25              MR. PIERPONT:  I'm sorry, your Honor.  I
```

1   probably should have said this while I was standing,

2   which is, included in that stipulation of offense

3   conduct, and I think I alluded to this before, there

4   are three paragraphs that talk about other conduct

5   that Mr. Matthews didn't proffer to, and the

6   government doesn't understand that he's required to

7   proffer to them here today because it's not required

8   for him to be adjudged guilty of the offenses to

9   which he is pleading guilty, but I do want to just

10  note for the record that they are contained within

11  paragraphs 1, 2 and 3.  They are -- of the

12  stipulation of offense conduct.  They involve a

13  construction loan at the Point Breeze Hotel in

14  Nantucket, Massachusetts, a home at 11 Cliff Road in

15  Nantucket, as well as the misuse of insurance

16  proceeds.

17              As I had alluded to, your Honor, as we

18  were going through the plea agreement, the defendant

19  in this stipulation explicitly agreed that this

20  foregoing relevant conduct may be considered by the

21  Court for the purposes of calculating the guidelines

22  range and must be considered for purposes of

23  restitution.  And I just wanted to make sure that

24  was --

25              THE COURT:  I understand.  If I

```
 1    understand what you are saying, it is that obviously

 2    they might not be relevant to these three counts,

 3    the government -- it is being included in here and

 4    the government, as part and parcel of this plea

 5    agreement, is basically including that conduct in

 6    what the issues are related to Mr. Matthews.

 7              MR. PIERPONT:  That's right, your Honor.

 8    And at the same time the government is saying that

 9    that conduct also satisfies his liabilities here.

10    So both sides.  That's why that language is

11    included.

12              THE COURT:  Mr. Ring, that's your

13    understanding as well?

14              MR. RING:  Yes, your Honor.

15   .          THE COURT:  All right.  I did want to do

16    one thing just to make sure I've cleaned up my

17    description of the applicability of the alternative

18    fine provision under 18 U.S.C. Section 3571.

19              To be clear, the maximum fine that may

20    be imposed is the greatest of the following:  Twice

21    the gross gain to the defendant resulting from the

22    offense, twice the gross loss resulting from the

23    offense, 250,000, or the amount specified in the

24    section defining the offense, which for Count Ten is

25    $1 million and Count Twenty-One is $100,000.
```

1       I have gotten that now correct?  Is that

2  your understanding?

3              MR. PIERPONT:  Can you just say those

4  maximum fines one more time?

5              THE COURT:  I thought it was 1 million

6  and 100,000.  1 million for Count Ten and 100,000

7  for Count Twenty-One.

8              MR. PIERPONT:  And then 250 for Count

9  Twelve.

10             THE COURT:  Yes.

11             Is that your understanding as well?

12             MR. RING:  Yes, your Honor.

13             THE COURT:  I just wanted to make sure

14  that was clear before we turn back to the plea

15  agreement itself.

16             And, Mr. Matthews, does the written plea

17  agreement and the other matters we have discussed

18  today, as outlined by Assistant U.S. Attorney

19  Pierpont, fully and accurately reflect your

20  understanding of the agreement you are entering into

21  with the government?

22             THE DEFENDANT:  It does your Honor.

23             THE COURT:  And are you aware that Mr.

24  Ring as well as Mr. Pierpont have discussed your

25  agreement to plead guilty?  You are aware of that?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  And is your willingness to

 3   plead guilty today based on the prior discussions

 4   between Mr. Ring and Mr. Pierpont that have resulted

 5   in this plea agreement?

 6              THE DEFENDANT:  Yes, your Honor.

 7              THE COURT:  And other than the promises

 8   contained in the written agreement, has anyone made

 9   any promises that are causing you to plead guilty,

10   sir?

11              THE DEFENDANT:  No, your Honor.

12              THE COURT:  And has anyone made any

13   threats against you or is anyone in any way forcing

14   you to plead guilty or otherwise coercing you to

15   plead guilty, sir?

16              THE DEFENDANT:  No, your Honor.

17              THE COURT:  And are you pleading guilty

18   today of your own free will and because you are, in

19   fact, guilty?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  All right.  If you are

22   ready, go ahead and sign the plea agreement and then

23   stipulation of offense conduct.

24              MR. RING:  Your Honor, just for the

25   record, the Court is going to see that we ended up
```

```
1    using the version that I referred to as us having

2    reviewed yesterday.  So there is a notation on the

3    first page where the date was wrong in the original

4    version and we've corrected it.

5                    THE COURT:  That's fine.  And all

6    parties have initialled that?

7                    MR. RING:  No.  I will initial the date

8    now.

9                    MR. PIERPONT:  May I approach, your

10   Honor?

11                   THE COURT:  Yes, please.

12                   All right.  Mr. Matthews, I will have

13   the clerk of court ask you how you wish to plead.

14   This is your last opportunity to decide whether you

15   wish to go through with this and enter a plea of

16   guilty.  Are you ready to be put to plea at this

17   time, sir?

18                   THE DEFENDANT:  Yes, your Honor.

19                   THE COURT:  All right.  And I will have

20   the charge read to you unless you waive a reading of

21   the charge.  Do you waive a reading of the charge,

22   sir?

23                   THE DEFENDANT:  Yes, please.

24                   THE COURT:  Ms. Perez?

25                   THE CLERK:  In the case of United States
```

Case 9:16-cv-81871-KAM   Document 492-5   Entered on FLSD Docket 08/03/2019   Page 61 of 67
Case 3:18-cr-00048-VAB   Document 101   Filed 05/03/19   Page 49 of 55

49

```
 1    of America v. Robert V. Matthews, Criminal No.

 2    3:18CR48(VAB), as to Count Ten of the superseding

 3    indictment charging you with a violation of Title

 4    18, United States Code, Section 1349, what is your

 5    plea?

 6               THE DEFENDANT:  Guilty.

 7               THE CLERK:  As to Count Twelve of the

 8    superseding indictment charging you with a violation

 9    of Title 18, United States Code, Section 1957, what

10    is your plea?

11               THE DEFENDANT:  Guilty.

12               THE CLERK:  As to Count Twenty-One of

13    the superseding indictment charging you with a

14    violation of Title 26, United States Code, Section

15    7201, what is your plea?

16               THE DEFENDANT:  Guilty.

17               THE CLERK:  Your Honor, the defendant

18    pleads guilty as to Count Ten, Twelve and Twenty-One

19    of the superseding indictment.

20               THE COURT:  All right.  Thank you, Ms.

21    Perez.

22               On the basis of the plea agreement and

23    the stipulation of offense conduct attached to it,

24    and the other matters discussed today; the answers

25    given by the defendant, Mr.  Robert Matthews, under
```

Case 9:16-cv-81871-KAM   Document 492-5   Entered on FLSD Docket 08/03/2019   Page 62 of 67
Case 3:18-cr-00048-VAB   Document 101   Filed 05/03/19   Page 50 of 55

50

1    oath, on the record, in the presence of his counsel,

2    Mr. Ring and Mr. Tuchmann; the questions of the

3    Court and the remarks of Mr. Ring and the remarks of

4    Assistant U.S. Attorney Pierpont, it is the finding

5    of the Court in the case of United States v. Robert

6    Matthews that the defendant is fully competent and

7    capable of entering an informed plea, that the

8    defendant is aware of the nature of the charge and

9    the consequences of the plea, and that the plea of

10    guilty is a knowing and voluntary plea supported by

11    an independent basis in fact containing each of the

12    essential elements of the offense.

13           The Court finds that the defendant knows

14    of his right to plead not guilty and to trial and

15    related rights, and that he is giving up these

16    rights by his plea of guilty; that he knows of the

17    maximum possible sentence and any minimum required

18    sentence in terms of imprisonment, supervised

19    release, monetary fine, forfeiture, restitution, and

20    payment of a special assessment; that he knows of

21    the Court's obligation to consider the sentencing

22    statute and sentencing guidelines; and that he knows

23    of and accepts the terms of any plea agreement

24    provision waiving his right to appeal or to attack

25    his sentence collaterally.

1          The plea to Counts Ten, Twelve and

2     Twenty-One of the superseding indictment, therefore,

3     are accepted, and the defendants is now adjudged

4     guilty of those offenses.  Accordingly, a finding of

5     guilty shall enter and this case is referred to the

6     United States Probation Office for a presentence

7     investigation.

8          Mr. Matthews, a United States probation

9     officer will prepare a presentence report on you,

10    and this report will be submitted to the Court to

11    assist it in determining the appropriate sentence in

12    your case.  Please bear in mind that the probation

13    officers work for the court, not the United States

14    attorney, so your cooperation and that of your

15    family and friends with the probation officer

16    generally will benefit you.

17         It is very important, however, that you

18    discuss very carefully with your attorney what you

19    say to the probation office because the presentence

20    report, again, is very important in determining your

21    sentence under the sentencing guidelines.  In

22    addition, anything that you, your family, friends or

23    anyone else tells the probation officer could have

24    an impact on your sentence and other consequences as

25    well.  You also have the right to have your attorney

```
 1    present during your discussions with the probation

 2    officer.  Do you understand, sir?

 3               THE DEFENDANT:  Yes, your Honor.

 4               THE COURT:  So please read and review

 5    the presentence report with your attorney.  At

 6    sentencing I will ask if you have read the

 7    presentence report, understood it and given any

 8    response you have to it to the probation officer or

 9    to your attorney.

10               So I understand that Mr. Matthews is

11    currently on bond.  So is there application for

12    release, to just continue the conditions on bond in

13    place, Mr. Ring?

14               MR. RING:  Yes, your Honor.

15               THE COURT:  So we've got $500,000 bond,

16    that's cosigned by property, and there are travel

17    conditions.  I'm inclined to sort of continue all of

18    the conditions that are in place.

19               Mr. Pierpont, is there any objection by

20    the government?

21               MR. PIERPONT:  No objection, your Honor.

22               THE COURT:  So there is no basis for

23    concern regarding likelihood of fleeing or posing

24    any danger to any person or the community, correct?

25               MR. PIERPONT:  Not that are not
```

 1    satisfied by the conditions, your Honor.

 2              THE COURT:  So the Court will maintain

 3    the current conditions and they will remain in place

 4    with respect to bond.

 5              Now, as to a scheduling order, under

 6    Local Rule 32(f), I am asking the parties to get

 7    together, consult with probation, and arrive at

 8    mutually agreeable deadlines for disclosure of

 9    memoranda and sentencing.  If you could submit

10    something by May 3rd, that would be greatly

11    appreciated.

12              Mr. Pierpont, is that deadline

13    sufficient?

14              MR. PIERPONT:  That's fine.

15              THE COURT:  Mr. Ring, does that work for

16    the defense?

17              MR. RING:  Yes, your Honor.

18              THE COURT:  All right.  Is there

19    anything else at this time?  Mr. Pierpont?

20              MR. PIERPONT:  Not from the government,

21    your Honor.

22              THE COURT:  Mr. Ring?

23              MR. RING:  Administrative, your Honor.

24    I had filed earlier today a motion with the Court to

25    convert our representation to CJA appointment.  I

54

```
1    had hoped to attach to that motion in camera ex

2    parte affidavits; however, I didn't trust myself to

3    use the system in such a way I would be able to do

4    that effectively.

5                THE COURT:  So you want to submit it to

6    Ms. Perez?

7                MR. RING:  Yes, your Honor.  So I have

8    provided copies previously to the court.  I have the

9    originals with my signatures on it and Mr.

10   Matthews'.

11               THE COURT:  Based on your

12   representation, I am certainly comfortable granting

13   the motion to seal those given the nature of them,

14   and then we can deal with it accordingly.

15               MR. RING:  Thank you very much, your

16   Honor.

17               THE COURT:  Anything further?

18               MR. RING:  Nothing, your Honor.

19               THE COURT:  All right.  We are

20   adjourned.

21               (Proceeding concluded 3:15.)

22

23

24

25
```

1

2          I certify that the foregoing is a correct

3    transcript from the record of proceedings in the

4    above-entitled matter.

5

6                              5/3/19

7                              Date

8

9                    /S/   Sharon Montini

10                    Official Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25