UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LAN LI, et al., | ) |
|     Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 16-81871-Civ-Marra ) |
| JOSEPH WALSH, et al., | ) ) |
|     Defendants. | ) ) |

**PNC BANK, N.A.'S MOTION TO QUASH SUBPOENA *DUCES TECUM***

PNC Bank, N.A. ("PNC"), by and through undersigned counsel, moves to quash Plaintiffs' August 6, 2019 Subpoena *Duces Tecum* (the "Subpoena"), which plainly constitutes an "end-run" around the discovery rules set by the Federal Rules and established by this Court.

**I.     Background**

Three years ago, Plaintiffs filed the complaint in Case No. 16-81871-Civ-Marra (the "Lead Case") and asserted various fraud-based tort claims against 26 defendants – not including PNC – termed the "Bad Actors." (D.E. 351.) The heart of Plaintiffs' claims in the Lead Case is that over a three-year period, the Bad Actors fraudulently induced Plaintiffs to invest in a real estate investment project affiliated with the EB-5 immigrant investor program. Plaintiffs' funds flowed through a variety of financial institutions, including but not limited to, PNC, Regions Bank, and First United Bank. In the 100-page, 646-paragraph complaint, PNC is mentioned only twice. (*Id.* ¶¶ 51, 260.) On March 27, 2018, this Court entered a Scheduling Order in the Lead Case, which required the joinder of any additional parties by September 27, 2018, and established a discovery period that was slated to close on September 27, 2019. (D.E. 283.) On September 5, 2019, the Court extended the discovery deadline in the Lead Case until March 30, 2020. (D.E. 532.)

On March 1, 2019—28 months after initiating the Lead Case, *and six months after the time to join additional defendants to the Lead Case lapsed*—Plaintiffs sued PNC Bank and its now-retired employee in Florida state court. In this Related Case, Plaintiffs allege that PNC and its former employee had actual knowledge of, and provided substantial assistance to further, the Bad Actors' fraud scheme. (Case No. 19-80332-Civ-Marra, D.E. 1-4.) PNC successfully removed the Related Action to this Court and filed an Answer. (D.E. 475, 478.) On August 2, 2019, after

extensive negotiations, Plaintiffs and PNC filed a Joint Scheduling Report in the Related Case. In the Report, Plaintiffs and PNC agreed in part to produce their respective initial disclosures on December 15, 2019, and to engage in an 18-month discovery period. (D.E. 489.)

Four days later, Plaintiffs issued the instant Subpoena, which is incredibly broad. *See* August 6, 2019 Subpoena *Duces Tecum*, attached hereto as Composite Exhibit A. The Subpoena makes **168** requests for documents across an eight-year period (2011 through the present), and imposes a 30-day compliance period. Although it is difficult to distill the 168 requests into clear categories, they generally seek the following types of documents: (1) PNC's Bank Secrecy Act and anti-money laundering ("BSA/AML") policies and procedures, and related anti-fraud detection systems; (2) alerts, investigatory reports and other documents relating to PNC's actual implementation of its BSA/AML and anti-fraud detection systems, and monitoring of the accounts at issue; (3) PNC policies – including as to how they may have changed across time – concerning the opening and closing of bank accounts, including "Know Your Customer" ("KYC") policies and documents; the sub-titling of accounts; the effectuation of wire transfers, including any OFAC screens; and creation of sub-accounts; (4) PNC policies concerning the EB-5 Visa Program and any changes thereto; (5) PNC policies regarding escrow accounts and any changes thereto, coupled with an incredibly broad request regarding all other escrow accounts at PNC (Request No. 13); (6) all conceivable bank account documents – statements, checks, deposit and withdrawal items, wires, ACH documents, etc. – relating to at least six accounts; (7) communications between *and concerning* former and current PNC employees and certain "Bad Actors"; (8) personnel files for two specified PNC employees and potentially others; and (9) any fees earned by PNC.

Plaintiffs shortly thereafter issued two additional subpoena *duces tecum* to First United Bank and Regions Bank. *See* August 15, 2019 Subpoenas *Duces Tecum*, attached hereto as Composite Exhibit B. In stark contrast to the Subpoena, these subpoenas request a single category of documents: "all records and documents" relating to a single account holder. *See id.*

In a recent filing to the Court, Plaintiffs admit that they previously subpoenaed and received documents from PNC. (D.E. 505.) Plaintiffs now contend that these documents are "incomplete," but do not explain how. PNC was unaware of this allegation prior to reading it in this filing. Further, Exhibit N to the complaint in the Lead Case is a detailed spreadsheet created by Plaintiffs setting forth transactions at PNC from December 2012 through April 2015 – the time period when the Plaintiffs' funds were transacted at PNC. *See* Composite Exhibit C. Plaintiffs also submitted

2

a forensic financial report, dated December 28, 2018, in the 160 Royal Palm bankruptcy proceeding setting forth a detailed analysis regarding accounts at PNC. *See* Composite Exhibit D. Thus, Plaintiffs already possess a considerable amount of relevant account information.

## II. Appropriate Use of Rule 45 Subpoenas

"Rule 45 is the method to obtain documents (and testimony) from a non-party." *Tara Prods. v. Hollywood Gadgets, Inc.*, 2014 U.S. Dist. LEXIS 35223, *11 (S.D. Fla. Mar. 18, 2014). The Eleventh Circuit has not addressed whether a Rule 45 subpoena may be properly served on a party, such as PNC, and other courts are split on the issue. *Id.*; s*ee United States v. 2121 Celeste Rd. SW*, 307 F.R.D. 572, 587-590 (D.N.M. 2015) (discussing circuit split and collecting cases).

Regardless of whether a Rule 45 subpoena is served on a party or non-party, it may not be used to circumvent or to make an "end-run" around the discovery rules and orders applicable to the parties. *Tara Prods.*, *supra*, at *12. *See, e.g., Circle Grp., LLC v. Se. Carpenters Reg'l Council*, 836 F. Supp. 2d 1327, 1351 (N.D. Ga. 2011); *Abrams v. Ciba Specialty Chems. Corp.*, 265 F.R.D. 585, 588 (S.D. Ala. 2010); *Panchoosingh v. Gen. Labor Staffing Servs.*, 2009 U.S. Dist. LEXIS 134901, *2-3 (S.D. Fla. Jan. 28, 2009); *Home & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 2008 U.S. Dist. LEXIS 108363, *4 (M.D. Fla. Sept. 8, 2008); *Barrington v. Lockheed Martin, Corp.*, 2007 U.S. Dist. LEXIS 32602, *4 (M.D. Fla. May 3, 2007).

"It is improper to use a Rule 45 subpoena for the express purpose of circumventing the response time provided to a party under Rule 34 and the Court's discovery deadline." *Barrington*, *supra*, at *11. To allow a party "to use Rule 45 to circumvent the requirements of a court-mandated discovery deadline would clearly be contrary" to the traditional interpretation of the Federal Rules. *Mortg. Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 566-68 (W.D.N.C. 2010).

## III. Permissible Scope of Discovery and Standard for Quashing a Subpoena

The scope of discovery under a Rule 45 subpoena is identical to the scope of discovery under Rule 26 and is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1); *Am. Fed. of State, Cty., and Mun. Empls. Council 79 v. Rick Scott*, 277 F.R.D. 474, 476-77 (S.D. Fla. 2011). Rule 45 "imposes an affirmative obligation on the issuing party to not unduly burden the party subject to the subpoena." *Coleman v. Lennar Corp.*, No. 18-mc-20182-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 214354, at *4-5 (S.D. Fla. June 14, 2018). Further, "concern for the unwanted burden thrust upon non-parties"—such as PNC in this matter—"is a factor entitled to special weight in

evaluating the balance of competing needs." *ADP, LLC v. Ultimate Software Grp., Inc.*, 2017 U.S. Dist. LEXIS 222418, at *3 (S.D. Fla. July 26, 2017) (quotations and citation omitted).

Under Rule 26, the Court may issue an order to protect a person from annoyance, oppression, or undue burden or expenses, including the entry of an order forbidding the discovery. Fed. R. Civ. P. 26(c)(1). Under Rule 45, the Court may quash a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3). A party seeking to quash a subpoena must show that the information sought is protectable, but the party issuing the subpoena bears the burden of proving the requests are relevant. *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007). Accordingly, in determining whether to quash the subpoena, the Court should balance the need for the particular discovery against the burden imposed with production. *Id.*

## IV.     Argument

The Plaintiffs' Subpoena improperly circumvents the discovery rules applicable to the Related Case under the guise of a non-party subpoena in the Lead Case. This is evidenced by the nature of the documents sought, which are overbroad and irrelevant to the claims asserted in the Lead Case. Accordingly, the Subpoena should be quashed pursuant to Fed. R. Civ. P. 26 and 45.

PNC is in a unique position: it is a party to the Related Case initiated by the same Plaintiffs who characterize PNC as a non-party to the Lead Case for purposes of obtaining discovery before issuance of the Related Case's scheduling order. PNC's status as a non-party is further complicated by the fact that the Court has consolidated the Lead Case and Related Case for purposes of discovery. (Case No. 19-80332-Civ-Marra, D.E. 16.) Whether PNC is a party or non-party, a Rule 45 subpoena is improper if it serves as an "end-run" to discovery rules and orders.

Plaintiffs repeatedly have shown a disregard for the discovery deadlines issued by the Court. Rather than joining PNC as a defendant to the Lead Case by the deadline provided in the Court's Scheduling Order, Plaintiffs initiated the Related Case long after initiating the Lead Case, and six months after the time to join additional defendants to the Lead Case had lapsed. To obscure their circumvention of this Court's directives, Plaintiffs filed the Related Case in a different forum. Plaintiffs then issued the Subpoena a mere four days after PNC and Plaintiffs filed their Joint Scheduling Report in the Related Case – which the Court has not yet ruled on – and before that case's discovery period even has begun. PNC believed that the parties had agreed and negotiated in good faith to exchange initial disclosures by December 15, 2019. This expeditious four-month

4

period for PNC to get thousands of documents collected, reviewed, and produced was a tremendous compromise by PNC. Plaintiffs' issuance of the Subpoena insults those efforts.

Although Plaintiffs purport to seek documents via the Subpoena to further their claims asserted in the Lead Case, the documents sought are plainly irrelevant under Rule 26. The discovery sought by the Subpoena clearly is tied to the claims at issue in the Related Case, and has no bearing on the claims asserted in the Lead Case. The Lead Case alleges a fraud scheme perpetrated by 26 other defendants; PNC itself is mentioned only twice in the Lead Case's 646-paragraph complaint. The Lead Case's complaint does not allege any misconduct by PNC or its employees. The Lead Case's complaint does not allege that PNC's procedures, policies, and monitoring systems were deficient in detecting any alleged fraudulent activity. In contrast, the actions of a PNC employee, and the nature of the PNC bank accounts and the manner in which they were created, maintained and monitored, are directly at issue in the Related Case. Once again, the Subpoena represents an "end run" around the discovery schedule proposed by the parties.

Further, documentation relating to the creation and implementation of PNC's BSA/AML policies and procedures are highly confidential and protected from disclosure pursuant to a robust body of federal law – certainly in regard to the Lead Case involving other defendants. *See* Declaration of Kenneth Senatore, attached hereto as Exhibit E. The many and various requests for internal policies and emails clearly relate to the claims in the Related Case, not the Lead Case.

Moreover, the Subpoena seeks documents from January 1, 2011 through either May 30, 2018 or the present day. Because the first Plaintiff invested funds in SARC in December 2012, and the last Plaintiff's funds left the relevant SARC account at PNC in early 2015, Plaintiffs cannot explain how PNC account records (pertaining to *other individuals*) or policies and procedures pertaining to before or after this time are relevant to the claims in either the Lead Case or Related Case. The Subpoena's clearly improper breadth is only highlighted when compared with the limited subpoenas issued to third-parties First United Bank and Regions Bank.

Any alleged prejudice to Plaintiffs' ability to litigate their claims in the Lead Case for want of further discovery from PNC is self-imposed, and is outweighed by the burden imposed on PNC by the Subpoena – particularly given the Joint Scheduling Report filed in the Related Action. Plaintiffs, who concede that they already possess numerous PNC documents, must do more than assert a conclusory, unsubstantiated allegation that documents previously provided by PNC were "incomplete." Plaintiffs also must show both relevance and proportionality, which they cannot.

5

## V. Conclusion

For the foregoing reasons, non-party PNC respectfully requests this Court to quash the Subpoena and to award PNC costs and fees associated with the filing of this Motion.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Undersigned counsel certify that they consulted with Plaintiffs' counsel via telephone and email regarding the instant motion in a good faith effort to resolve the disputes regarding the Subpoena but were unable to reach an agreement.

Dated: September 9, 2019                    Respectfully submitted,

/s/  Nina Stillman Mandel
Nina Stillman Mandel
Fla. Bar No. 843016
**MANDEL & MANDEL LLP**
169 East Flagler Street, Suite 1224
Miami, Florida 33131
Telephone: 305.374.7771
nsm@mandel.law

/s/  Peter D. Hardy
Peter D. Hardy (admitted *pro hac vice*)
Terence Grugan (admitted *pro hac vice*)
Mary Treanor (admitted *pro hac vice*)
Juliana Carter (admitted *pro hac vice*)
Mansi Shah (admitted *pro hac vice*)
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103

*Counsel for PNC Bank, N.A.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed via CM/ECF on this 9th day of September 2019, and was therefore served by electronic mail on all parties.

*/s/ Nina Stillman Mandel*