# COMPOSITE EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida ▾

| | |
|---|---|
| LAN LI, et al | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 16-cv-81871 |
| JOSEPH WALSH, et al | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           PNC BANK - 9875 JOG ROAD, BOYNTON BEACH, FL 33437

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

SET FORTH IN EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

| Place: George Gesten McDonald, PLLC<br>9897 Lake Worth Road, Suite 302 Lake Worth, FL 33467 | Date and Time:<br>**September 6, 2019** |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   08/06/2019

*CLERK OF COURT*

                                                OR      *David J. George*

_____                    _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Li Lan, Et al
, who issues or requests this subpoena, are:

David J. George, Esq. DGeorge@4-Justice.com  9897 Lake Worth Rd., Suite 302 Lake Worth, FL 33467 (561)232-6002

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit "A"

## DEFINITIONS

1.       "Communication" or "communications" means any oral, written or electronic utterance, notation or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, any Documents, correspondence, letters, facsimiles, e-mails, text messages, voice recordings, video recordings, voicemail, instant messages, conversations, dialogues, discussions, interviews, conferences, meetings, consultations, agreements, and other understandings or exchanges between or among two or more people.

2.       "Document" or "Documents" means all paper Documents, graphic or auditory records or representations, tangible items, and electronically stored information, and shall have the broadest possible meaning accorded to it consistent with the Federal Rules of Civil Procedure (which is incorporated in this definition as if fully set forth), and includes, by way of illustration only and not by way of limitation, the following items which are in your possession, custody, control:

a.       all written, paper or printed material of any kind, including, but not limited to: all transmittal slips, memoranda, notes, schedules, agendas, notices, books, brochures, calendars, employment files, announcements, meeting minutes, records of meetings, records of conversations, newsletters, telegrams, summaries, lists, compilations, facsimile transmissions, transcripts, diaries, appointment books, agreements, contracts, reports, studies, checks, check stubs, invoices, financial statements, bank statements, receipts, *communications,* interoffice and intraoffice exchanges, conversations, inquiries, replies, correspondence, and letters, whether in person, by telephone, in writing, or by means of any other transmittal devices, and all originals, reproductions, copies, changes, amendments, drafts and all non-identical copies of the foregoing;

b.       graphic or auditory records or representations of any kind, including, but not limited to: all images, photographs, charts, drawings, sketches, diagrams, maps, schematics, microfiche, microfilm, slides, videotapes, laser discs, digital versatile discs, Blu-ray discs, Ultraviolet discs, cassette tapes, reel to reel tapes, recordings, sound bites, motion pictures, voice messages, and all originals, reproductions, copies, changes, amendments, drafts and all non-identical copies of the foregoing; and

For purposes of the foregoing, *Documents* may be located, stored or archived in any physical location or on any electronic storage media, including, without limitation, any computer, server, appliance, cloud-based service, web-based service, application based service, database, internal hard drive, external hard drive, solid-state drive, hard or floppy diskette, compact disc, digital versatile disc, Blue-ray disc, Ultraviolet disc, flash memory, flash card, thumb drive, cartridge, magnetic tape, mobile phone, tablet device, or personal digital assistant.

For *Documents* which remain within your control even if they are maintained, hosted or stored by a non-party service provider that may be protected from production by the non-party service provider via the Stored Communications Act (18 U.S.C. Chapter 121 §§ 2701-

2712),  you must work with that non-party service provider to retrieve relevant *Documents* or you must grant consent for your counsel and/or their vendors or agents to work with the non-party service provider to collect *Documents* maintained, hosted or stored by the non-party service provider.

Moreover, for purposes of the foregoing, the term "draft" means any earlier, preliminary, preparatory, or tentative version of all or part of a *document,* whether or not such draft was superseded by a later draft and whether or not the draft's terms are the same as or different  from the final *document's* terms.  <u>Please note that *"Document"* and *"Documents"* as</u> defined herein specifically include *"Communication"* and *"Communications"* <u>as defined above.</u>

        3.      "Person" as used herein means any natural person or any entity, including, without limitation, any individual, public company, private company, firm, corporation, limited liability company, joint venture, trust, proprietorship, tenancy, association, partnership, business, agency, department, governmental body, bureau, board, commission, or any other form of public or private entity. With respect to an entity, Person shall include all subsidiaries and affiliates of the entity, as well as the present and former directors, officers, employees, attorneys, paralegals, legal assistants, managers, agents and anyone acting on behalf of, at the direction of, or under the control of, the entity or its subsidiaries or affiliates.

        4.      "Relates to" or "relating to" means authorizing, concerning, constituting, composing, containing, consisting of, connected with, describing, disclosing, discussing, evidencing, explaining, mentioning, pertaining to, proposing, reflecting, regarding, referring to, directly or indirectly, setting forth, showing, or summarizing.

        5.      Where appropriate: (a) use of the singular includes the plural, and vice versa; (b) the past tense includes the present tense; (c) the words "and" and "or" are both conjunctive and disjunctive; (d) the words "all" and "any" mean "any and all"; (e) the word "including" means "including without limitation";  and (f) use of the masculine includes the feminine, and vice versa.

## INSTRUCTIONS

<u>General Instructions:</u>

        1.      Unless otherwise specifically stated in each Request, the relevant time period shall be the period from January 2011 through and including the present.

        2.      If any *document* is withheld under a claim of privilege or immunity, in order that the Court and the parties may determine the validity of the claim of privilege or immunity, *you* must provide sufficient information to determine the identity of the *document* as well as the basis for any asserted claim of privilege or immunity. *Documents* shall be deemed adequately described for this purpose if *you* have supplied the following information: (a) a description  of  the nature of the *document* (e.g., letter or memorandum); (b) the date of the *document;* (c) the identity of the *person(s)* who sent and received the original and any copy(ies) of the *document* as well as his or her respective capacity; (d) the identity of the custodian of the *document;* (e) a description of the subject matter of the *document;* (f) a

description of the basis upon which *you* contend *you* are entitled to withhold the *document* from production; and (g) the identity of all *persons* who have seen the *document.*

3.      If any *document* or portion thereof has been destroyed, redacted in whole or in part, purged, or is no longer in *your* possession, custody or control, state: (a) the date of the occurrence and reason why it was destroyed, redacted, purged, or no longer in *your* possession, custody or control; (b) the *person* who destroyed, redacted, purged or caused the *document* to no longer be in *your* possession, custody or control; and (c) if the *document* was completely destroyed, the file where the *document* was maintained before its destruction.

4.      You must comply with the Electronically Stored Information Protocol attached hereto as Exhibit "B".

## <u>REQUESTS</u>

1. PNC's internal standards, policies and procedures regarding the acceptance, creation, maintenance, monitoring, rules and regulations with respect to escrow accounts in effect from January 1, 2011 through and including May 30, 2018.

2. PNC's internal standards, policies and procedures regarding the acceptance, creation, maintenance, monitoring, rules and regulations with respect to escrow accounts in effect from June 1, 2018 through and including the date of your response to this Request.

3. PNC's Treasury Department standards, policies and procedures regarding the acceptance, creation, maintenance, monitoring, rules and regulations with respect to escrow accounts in effect from January 1, 2011 through and including May 30, 2018.

4. PNC's Treasury Department standards, policies and procedures regarding the acceptance, creation, maintenance, monitoring, rules and regulations with respect to escrow accounts in effect from June 1, 2018 through and including the date of your response to this request.

5. All documents, including but not limited to signature cards, account agreements, escrow agreements or the like regarding the creation or maintenance of the Analysis Business Checking Account (ending in 7626) originally named South Atlantic Regional Center LLC - Royal Palm Town Center IV, LLLP on or about January 18, 2011.

6. All documents, including but not limited to signature cards, account agreements, escrow agreements or the like regarding PNC's changing of the name of the Analysis Business Checking Account (ending in 7626) originally named South Atlantic Regional Center LLC - Royal Palm Town Center IV, LLLP to South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account on or about January 31, 2011 or at any time thereafter.

7. All documents, including but not limited to emails, correspondence, agreements and computer records and/or reports evidencing at whose request the name of the Analysis Business Checking Account (ending in 7626) was changed from Atlantic Regional Center LLC - Royal Palm Town Center JV, LLLP to South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account on or about January 31, 2011 or at any time thereafter.

8. All documents demonstrating who at PNC bank changed the name of the Analysis Business Checking Account (ending in 7626) to South Atlantic Regional Center LLC Royal Palm Town Center Escrow Account on or about January 31, 2011 or at any time thereafter.

9. All documents, including but not limited to internal emails and memoranda, regarding PNC's decision to allow the words "escrow account" to be added to the Analysis Business Checking Account (ending in 7626), including all persons at PNC who made and/or approved that decision.

10. PNC's policies and procedures with respect to the use of PNC's Escrow Services Module and specifically whether and under what circumstances PNC allows it to be utilized in connection with non-escrow accounts. From January 1, 2011 through and including May 30, 2018.

11. All documents demonstrating or discussing why PNC permitted PNC's Escrow Services Module to be added to the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

12. All documents demonstrating who at PNC connected PNC's Escrow Services Module to the South Atlantic Regional Center LLC., Royal Palm Town Center Escrow Account (ending in 7626).

13. Documents demonstrating how many other Analysis Business Checking Accounts PNC added Escrow Service Modules to between January 1, 2011 and May 30, 2018, including but not limited to the account agreements, signature cards and escrow service modules for such accounts (redacted as necessary to protect the privacy of the account holders).

14. All account statements; including but not limited to paper, online and/or electronic statements. for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626), from the inception of the account through the date the account was closed.

15. All documents demonstrating all incoming wires or transfers of any kind into the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626), and the fees charged by PNC for those wires.

16. All documents sent to any people and/or investors who wired money into the South Atlantic Regional Center - Royal Palm Town Center Escrow Account (ending in 7626) demonstrating that each of their $500,000 in investment monies and $40,000 - $65,000.00 in administrative fees were received into the account.

17. All documents evidencing how PNC invested the money that was received into the South Atlantic Regional Center LLC Royal Palm Town Center Escrow Account (ending in 7626) and how much PNC made from those investments.

18. All documents demonstrating all outgoing wires or transfers of any kind from the South Atlantic Regional Center LLC – Royal Palm Town Center Escrow Account (ending in 7626),

and the fees charged by PNC for those wires, including but not limited to where each wire or transfer was sent (i.e. the ultimate destination of the money).

19. All documents, including but not limited to emails. and correspondence, by and between PNC (including but not limited to Ruben Ramirez, Daniel Osaba and/or any of PNC's officers, members, managers or employees thereof) on the one hand, and Anthony "Tony" Reitz, Joseph Walsh or South Atlantic Regional Center LLC ("SARC") (including any of its officers, members, managers or employees), on the other regarding Walsh and/or SARC's desire to leave SunTrust because of the "obstacles and red tape" created by SunTrust's strict adherence to the terms of the escrow agreements and EB-5 rules in connection with Walsh/SARC's escrow account(s) at SunTrust, and/or SARC's desire to open an escrow account at PNC.

20. All documents, including but not limited to emails and correspondence by and between PNC (including any of its officers, members, managers or employees thereof) on the one hand, and Anthony "Tony" Reitz, Joseph Walsh/SARC (including any of its officers, members, managers or employees), on the other, regarding any meeting between Walsh/SARC or any employee of Walsh/SARC, on the one hand, and any of PNC's business bankers from Boynton Beach, FL and/or a representative from PNC's Escrow Services Department or Treasury Department, on the other, regarding Walsh/SARC's desire to leave SunTrust because of the "obstacles and red tape'" created by SunTrust's strict adherence to the terms of the escrow agreements and EB-5 rules in connection with Walsh/SARC's escrow account at SunTrust, and/or SARC's desire to open an escrow account at PNC.

21. All documents related to the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) which include the use of the term "escrow."  To be clear, this Request is being included because, on information and belief, there are multiple different names of the fake "escrow account" that appear in PNC's books and records, including but not limited to "Palm House Hotel Escrow Account," "Palm House Hotel, LLLP Escrow Account," and "South Atlantic Regional Center Escrow Account," among others.

22. All documents, including but not limited to emails, memoranda; notes or the like, demonstrating <u>when</u> the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) was closed.

23. All documents, including but not limited to emails, memoranda, notes or the like, demonstrating *why* the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) was closed.

24. All documents, including but not limited to emails, correspondence, notes and the like demonstrating that Walsh/SARC and/or an employee of Walsh/SARC explained to PNC the exact nature of Walsh/SARC's business, as well as the intended use of any escrow account opened at PNC. This would include but not be limited to all documents disclosing the facts that any such escrow account opened at PNC would be used to deposit EB-5 investment monies from Chinese investors (running into the tens of millions of dollars) and that those EB-5 investments would be subject to escrow agreements.

5

25. All documents, including but not limited to emails, memoranda, notes and the like demonstrating any internal discussions, analysis and/or conclusions by PNC regarding any of the documents discussed in ¶ 24, above.

26. All documents, including but not limited to emails, memoranda, notes and the like demonstrating any internal discussions, analysis and/or conclusions by PNC regarding whether and under what circumstances to open the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

27. All documents, including but not limited to emails, memoranda, notes and the like demonstrating any internal discussions, analysis and/or conclusions by PNC regarding whether and under what circumstances to add PNC's Escrow Services Modules to the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

28. All documents, including but not limited to emails, correspondence and the like demonstrating that PNC gave notice to any person who wired or otherwise deposited money into the South Atlantic Regional Center LLC Royal Palm Town Center Escrow Account that their money had been removed from the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) by Walsh/SARC.

29. All documents, including but not limited to emails, correspondence and the like demonstrating that PNC gave notice to any person who wired or otherwise deposited money into the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) that the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) was not a real escrow account.

30. All documents, including but not limited to signature cards, account agreements or the like regarding the creation or maintenance of the Business Enterprise Checking Account (ending in 8336) called Palm House LLLP Checking Operating Account.

31. All documents evidencing how PNC invested the money that was received into the Business Enterprise Checking Account called Palm House LLLP Checking Operating Account (ending in 8336) and how much PNC made from those investments.

32. All documents demonstrating all outgoing wires or transfers of any kind from the Business Enterprise Checking Account called Palm House LLLP Checking Operating Account (ending in 8336), and the fees charged by PNC for those wires.

33. All account statements, including but not limited to paper, online and/or electronic statements for the Business Enterprise Checking Account called Palm House LLLP Checking Operating Account (ending in 8336) from January 1, 2011 through the date of the last account statement.

34. All documents, including but not limited to emails, memoranda, notes or the like, demonstrating when the Business Enterprise Checking Account called Palm House LLLP Checking Operating Account (ending in 8336) was closed.

35. All documents, including but not limited to signature cards, account agreements or the like regarding the creation or maintenance of the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

36. All documents evidencing how PNC invested the money that was received into the Checking Account called South Atlantic Regional Center, LLC (ending in 8469) and how much PNC made from those investments, including but not limited to where each wire or transfer was sent (i.e. the ultimate destination of the money).

37. All documents evidencing how PNC invested the money that was received into the Checking Account called South Atlantic Regional Center, LLC (ending in 8336) and how much PNC made from those investments, including but not limited to where each wire or transfer was sent (i.e. the ultimate destination of the money).

38. All documents demonstrating all outgoing wires or transfers of any kind from the Checking Account called South Atlantic Regional Center, LLC (ending in 8469), and the fees charged by PNC for those wires, including but not limited to where each wire or transfer was sent (i.e. the ultimate destination of the money).

39. All account statements, including but not limited to paper, online and/or electronic statements for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469) from January 1, 2011 through the date of the last account statement.

40. All documents, including but not limited to emails, memoranda, notes or the like, demonstrating when the Checking Account called South Atlantic Regional Center, LLC (ending in 8469) was closed.

41. All documents, including but not limited to emails, memoranda, notes or the like, demonstrating why the South Atlantic Regional Center LLC- Royal Palm Town Center Escrow Account (ending 8469) was closed.

42. PNC's internal policies and procedures regarding the creation, maintenance, monitoring rules and regulations with respect to EB-5 escrow accounts in effect from January 1, 2011 through and including the date of your response to this Request.

43. PNC's internal policies and procedures regarding the creation, maintenance, monitoring rules and regulations with respect to escrow accounts in effect from January 1, 2011 through and including the date of your response to this Request.

44. Copies of PNC's internal policies and procedures regarding the creation, maintenance, monitoring, rules and regulations with respect to any other (non-escrow) EB 5 accounts in effect from January l, 2011 through and including the date of your response to this Request.

45. Copies of PNC's internal policies and procedures regarding the maintenance, monitoring, rules and regulations with respect to its EB 5 program in effect from January 1, 2011 through and including the date of your response to this Request.

46. All account opening documentation related to South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

47. All opening documentation related to the Business Enterprise Checking Account called Palm House LLLP Checking Operating Account (ending in 8336) including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

48. All opening documentation related to the Checking Account called South Atlantic Regional Center, LLC (ending in 8469) including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

49. All opening documentation related to all deposit accounts of Joseph Walsh including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

50. All bank statements for all accounts of Joseph Walsh including copies of deposits (including copies (front and back) of checks or cash tickets being deposited), checks and wire transfers.

51. All opening documentation related to all deposit accounts of Joseph Walsh, Jr. including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

52. All bank statements for all accounts of Joseph Walsh, Jr. including copies (front and back) of deposits (including copies of checks or cash tickets being deposited), checks and wire transfers.

53. All opening documentation related to all deposit accounts of South Atlantic Regional Center, LLC including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

54. All bank statements for all accounts of South Atlantic Regional Center, LLC including copies of deposits (including copies (front and back) of checks or cash tickets being deposited), checks and wire transfers.

55. All opening documentation related to all deposit accounts of United States Regional Economic Development Authority, LLC including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

56. All bank statements for all accounts of United States Regional Economic Development Authority, LLC including copies of deposits (including copies (front and back) of checks or cash tickets being deposited), checks and wire transfers.

57. All opening documentation related to all deposit accounts of United States Regional Development Authority, Inc. including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

58. All bank statements for all accounts of United States Reginal Development Authority, Inc. including copies of deposits (including copies (front and back) of checks or cash tickets being deposited), checks and wire transfers.

59. All wire transfer documents for wire transfers into South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) including but not limited to documents showing the beneficiary, receiving bank, OFAC screen and review of deposit account for collected funds.

60. All wire transfer documents for wire transfers into the Business Enterprise Checking Account (ending in 8336) including but not limited to documents showing the beneficiary, receiving bank, OFAC screen and review of deposit account for collected funds.

61. All wire transfer documents for wire transfers into the Checking Account called South Atlantic Regional Center, LLC (ending in 8469) including but not limited to documents showing the beneficiary, receiving bank, OFAC screen and review of deposit account for collected funds.

62. All wire transfer documents for wire transfers into any accounts of Joseph Walsh including but not limited to documents showing the beneficiary, receiving bank, OFAC screen and review of deposit account for collected funds.

63. All wire transfer documents for wire transfers into any accounts of Joseph Walsh, Jr. including but not limited to documents showing the beneficiary, receiving bank, OFAC screen and review of deposit account for collected funds.

64. All wire transfer documents for wire transfers into any accounts of South Atlantic Regional Center, LLC including but not limited to documents showing the beneficiary, receiving bank, OFAC screen and review of deposit account for collected funds.

65. All wire transfer documents for wire transfers into any accounts of United States Regional Development Authority, LLC including but not limited to documents showing the beneficiary, receiving bank, OFAC screen and review of deposit account for collected funds.

66. All wire transfer documents for wire transfers into any accounts of United States Regional Development Authority, Inc. including but not limited to documents showing the beneficiary, receiving bank, OFAC screen and review of deposit account for collected funds.

67. All internal documentation relating to transfers between any account at PNC to/from the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

68. All internal documentation relating to transfers between any account at PNC to/from the Business Enterprise Checking Account (ending in 8336).

69. All internal documentation relating to transfers between any account at PNC to/from the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

70. All internal documentation relating to transfers between any account at PNC to/from any account of Joseph Walsh.

71. All internal documentation relating to transfers between any account at PNC to/from any account of Joseph Walsh, Jr.

72. All internal documentation relating to transfers between any account at PNC to/from any account of South Atlantic Regional Center, LLC.

73. All internal documentation relating to transfers between any account at PNC to/from any account of United States Regional Development Authority, LLC.

74. All internal documentation relating to transfers between any account at PNC to/from any account of United States Regional Development Authority, Inc.

75. The name of any and all automated account monitoring systems used during the timeframe of January 1, 2011 through the date of your response to this Request to identify suspicious transactions such as money laundering, Ponzi schemes or other financial fraud, under the Bank Secrecy Act and any User Guides for any such systems.

76. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

77. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for the Business Enterprise Checking Account (ending in 8336).

78. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

79. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of Joseph Walsh.

80. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of Joseph Walsh, Jr.

81. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of South Atlantic Regional Center, LLP.

82. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of United States Regional Development Authority, LLP.

10

83. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of United States Regional Development Authority, Inc.

84. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

85. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for the Business Enterprise Checking Account (ending in 8336).

86. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

87. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of Joseph Walsh.

88. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of Joseph Walsh, Jr.

89. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of South Atlantic Regional Center, LLC.

90. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of United States Regional Development Authority, LLC.

91. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of United States Regional Development Authority, Inc.

92. The name(s) of all fraud detection and/or fraud alert system(s) in place during the timeframe January 1, 2011 through the date of your response to this Request to detect fraudulent activity such as check fraud and money laundering (cash in and out at the teller window) and all user guides for any such system.

93. All fraud detection reports and/or fraud alert reports related to the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

94. All fraud detection reports and/or fraud alert reports related to the Business Enterprise Checking Account (ending in 8336).

95. All fraud detection reports and/or fraud alert reports related to the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

96. All fraud detection reports and/or fraud alert reports related to all accounts of Joseph Walsh.

97. All fraud detection reports and/or fraud alert reports related to all accounts of Joseph Walsh, Jr.

98. All fraud detection reports and/or fraud alert reports related to all accounts of South Atlantic Regional Center, LLC.

99. All fraud detection reports and/or fraud alert reports related to all accounts of United States Regional Development Authority, LLC.

100. All fraud detection reports and/or fraud alert reports related to all accounts of United States Regional Development Authority, LLC.

101. Copies of PNC's internal policies and procedures relating to opening accounts.

102. Copies of PNC's internal policies and procedures relating to opening deposit accounts.

103. Copies of PNC's internal policies and procedures relating to opening escrow accounts.

104. Copies of PNC's internal policies and procedures relating to name changes on deposit accounts.

105. Copies of PNC's internal policies and procedures relating to post-account-opening reviews.

106. Copies of PNC's compliance policies and procedures relating to deposit accounts.

107. Copies of PNC's compliance policies and procedures relating to escrow accounts.

108. Copies of PNC's internal policies and procedures relating to wire transfers.

109. Copies of PNC's internal policies and procedures relating to the Bank Secrecy Act.

110. Copies of PNC's internal policies and procedures relating to the USA PATRIOT Act.

111. Copies of PNC's internal policies and procedures of the BSA/AML.

112. Copies of PNC's BSA/AML Department protocols for investigating alerts generated by the internal automated account monitoring system.

113. Copies of PNC's fraud detection department internal policies, procedure and protocols.

114. All documents evidencing a change to PNC's internal policies and procedures as a result of transactions in the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

115. All documents evidencing a change to PNC's internal policies and procedures as a result of transactions in the Business Enterprise Checking Account (ending in 8336).

116.    All documents evidencing a change to PNC's internal policies and procedures as a result of transactions in the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

117.    All documents evidencing a change to PNC's internal policies and procedures as a result of transactions in any of Joseph Walsh's accounts.

118.    All documents evidencing a change to PNC's internal policies and procedures as a result of transactions in any of Joseph Walsh Jr.'s accounts.

119.    All documents evidencing a change to PNC's internal policies and procedures as a result of transactions in any of South Atlantic Regional Center LLC's accounts.

120.    All documents evidencing a change to PNC's internal policies and procedures as a result of transactions in any of United States Regional Development Authority LLC's accounts.

121.    All documents evidencing a change to PNC's internal policies and procedures as a result of transactions in any of United States Regional Development Authority LLC's accounts.

122.    All documents, including but not limited to notes, emails and memoranda evidencing Ruben Ramirez' in-person meeting(s) with Anthony "Tony" Reitz prior to the opening of the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

123.    All documents, including but not limited to notes, emails and memoranda evidencing Daniel Osaba's in-person meeting(s) with Anthony "Tony" Reitz prior to the opening of the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

124.    Ruben Ramirez' entire personnel file during his employment by PNC.

125.    Daniel Osaba's entire personnel file during his employment by PNC.

126.    The entire personnel file of any employee of PNC who was involved in adding the words "escrow," "escrow account" or the like to the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

127.    The entire personnel file of any employee of PNC who was involved in adding the words "escrow," "escrow account" or the like to the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 8336).

128.    The entire personnel file of any employee of PNC who was involved in adding the words "escrow," "escrow account" or the like to the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 8469).

129.    The entire personnel file of any employee of PNC who told any person, over the phone, that the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) was an escrow account.

130.    Any and all emails, texts, voicemails or other communications whatsoever by and between Ruben Ramirez and Anthony "Tony" Reitz regarding: (1) the PNC accounts ending in -7626, -8336 or -8469; (2) any topic related to EB-5 projects, EB-5 investors or the EB-5 program; (3) Joseph Walsh; (4) the Securities and Exchange Commission; (5) whether PNC should close any of the accounts opened on behalf of South Atlantic Regional Center, LLC; or (6) problems with the Palm House Hotel project.

131.    Any internal documents regarding the Palm House Hotel project.

132.    All documents reflecting a social security number or partial social security number of any member, manager or partner with signature authority for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

133.    All documents reflecting a social security number or partial social security number of any member, manager or partner with signature authority for the Business Enterprise Checking Account (ending in 8336).

134.    All documents reflecting a social security number or partial social security number of any member, manager or partner with signature authority for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

135.    PNC's internal standards, policies and procedures regarding the naming and renaming of accounts in effect from January 1, 2011 through and including May 30, 2018.

136.    All operating agreements, partnership agreements, articles of organization, articles of incorporation, certificates of limited partnership, fictitious name registrations, and corporate resolutions for the Business Enterprise Checking Account (ending in 8336).

137.    All operating agreements, partnership agreements, articles of organization, articles of incorporation, certificates of limited partnership, fictitious name registrations, and corporate resolutions for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

138.    All operating agreements, partnership agreements, articles of organization, articles of incorporation, certificates of limited partnership, fictitious name registrations, and corporate resolutions for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

139.    All checks (front and back) deposited into the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

140.    All checks (front and back) deposited into for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

141. All checks (front and back) deposited into the Business Enterprise Checking Account (ending in 8336).

142. All deposit slips related to the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

143. All deposit slips related to for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

144. All deposit slips related to the Business Enterprise Checking Account (ending in 8336).

145. All checks, including cashiers' checks (front and back) drawn upon the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

146. All checks, including cashiers' checks (front and back) drawn upon for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

147. All checks, including cashiers' checks (front and back) drawn upon the Business Enterprise Checking Account (ending in 8336).

148. All withdrawal slips related to the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

149. All withdrawal slips related to for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

150. All withdrawal slips related to the Business Enterprise Checking Account (ending in 8336).

151. All documents evidencing any withdrawal or deposit into the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

152. All documents evidencing any withdrawal or deposit into for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

153. All documents evidencing any withdrawal or deposit into the Business Enterprise Checking Account (ending in 8336).

154. All documents related to any wire transfers for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

155. All documents related to any wire transfers for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

156. All documents related to any wire transfers for the Business Enterprise Checking Account (ending in 8336).

157.  All documents related to automated clearing house (ACH) transactions for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

158.  All documents related to automated clearing house (ACH) transactions for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

159.  All documents related to automated clearing house (ACH) transactions for the Business Enterprise Checking Account (ending in 8336).

160.  All documents related to the Customer Identification Program (CIP) for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

161.  All documents related to the Customer Identification Program (CIP) for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

162.  All documents related to the Customer Identification Program (CIP) for the Business Enterprise Checking Account (ending in 8336).

163.  All documents related to Customer Due Diligence (CDD) for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

164.  All documents related to Customer Due Diligence (CDD) for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

165.  All documents related to Customer Due Diligence (CDD) for the Business Enterprise Checking Account (ending in 8336).

166.  All documents related to the review of the Checking Account called South Atlantic Regional Center, LLC (ending in 8469) as required by the Patriot Act.

167.  All documents related to the review of the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) as required by the Patriot Act.

168.  All documents related to the review of the Business Enterprise Checking Account (ending in 8336) as required by the Patriot Act.

# EXHIBIT "B"

(Electronically Stored Information Protocol Order – Document 403)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 16-81871-CIV-MARRA/MATTHEWMAN

LAN LI, an individual; et al.,

      Plaintiffs,

v.

JOSEPH WALSH, an individual; et al.,

      Defendants.

_____/

**ELECTRONICALLY STORED INFORMATION PROTOCOL**

      Plaintiffs, Lan Li, et al., and Defendants, Joseph Walsh, Joseph Walsh, Jr., Palm House

Hotel, LLLP, South Atlantic Regional Center, LLC, USREDA, LLC, JJW Consultancy, Ltd.,

Robert Matthews, Maria a/k/a Mia Matthews, Bonaventure 22, LLC, Mirabia, LLC, Alibi LLC,

Palm House PB, LLC, Palm House, LLC, Ali Herischi, Herischi & Associates LLC, Leslie

Robert Evans, Leslie Robert Evans & Associates, P.A., Gerry Matthews, and KK-PB Financial,

LLC (collectively, the "Defendants") (collectively, the Plaintiffs and Defendants shall be

referred to as "the Parties"), mutually agree to the following protocol for the production of

electronically stored information ("ESI") in this proceeding:

## I.   SCOPE

      **A.**     The procedures and protocols outlined herein govern the search for, review and
production of ESI (as defined below), by any party during the pendency of this litigation and
supplement, but do not replace or supersede those obligations, procedures, and requirements of
Fed. R. Civ. P. 26 and 34 regarding discovery and production of ESI.

      **B.**     The term "Electronically Stored Information" or "ESI" means all electronic,
mechanical and electrical records or representations of any kind including, but not limited to: all
electronic communications, text messages, electronic mail ("email"), instant messages, e-
communications, e-communications accessed through "chat" messaging, including, by way of
example, but not limited to, WhatsApp, Line, Band, iMessage, or social media applications
whether accessed through a mobile device, computer or tablet application, messages, emails or e-

communications accessed or posted via website or web portal, self-destructing messaging applications (also referred to as disappearing or ephemeral messaging) including, by way of example, but not limited to, Wickr, Signal, Snapchat or Confide, computer logs, network logs, Internet history, document files, spreadsheet files, presentation files, database files, desktop publishing files, source code files, object code files, executable files, data files, script files, project management files, text files, portable document format files, tabulated data files, virtual machine files, XML files, webpage files, image files, design files, GIS files, system files, compressed files, disk image files, audio files, video files, backup files, graphic or auditory records or representations of any kind, including, but not limited to: all images, photographs, charts, drawings, sketches, diagrams, maps, schematics, voice messages, and all originals, reproductions, copies, changes, amendments, drafts and all non-identical copies of the foregoing; and metadata and all originals, reproductions, copies, changes, amendments, drafts, and all non-identical copies of the foregoing and shall have the broadest possible meaning accorded to it consistent with Fed. R. Civ. P. 26 (which is incorporated in this definition as if fully set forth), and includes, by way of illustration only and not by way of limitation, the above items which are in a party's possession, custody, control, knowledge, or are known to a party consistent with Fed. R. Civ. P. 34 (which is incorporated in this definition as if fully set forth).

For purposes of the foregoing, ESI may be located, stored or archived on any electronic storage media, including, without limitation, any computer, server, appliance, cloud-based service, web-based service, application based service, database, internal hard drive, external hard drive, solid-state drive, hard or floppy diskette, compact disc, laser disc, digital versatile disc, Blue-ray disc, UltraViolet disc, flash memory, flash card, thumb drive, cartridge, magnetic tape, mobile phone, tablet device, personal digital assistant, microfiche, microfilm, slides, videotapes, cassette tapes, reel to reel tapes, recordings, sound bites, motion pictures and in fact may even be any of the items listed above.

Moreover, for purposes of the foregoing, the term "draft" means any earlier, preliminary, preparatory, or tentative version of all or part of ESI, whether or not such draft was superseded by a later draft and whether or not the draft's terms are the same as or different from the final ESI's terms.

**C.** The term "Native Format" means the file format of ESI in the application in which such ESI was originally created, including the ESI's unaltered metadata.

**D.** The term "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images.

## II. IDENTIFICATION OF RESPONSIVE ESI

**A.** ESI which is neither privileged nor otherwise protected shall be timely reviewed and produced in accordance with this protocol. After receiving requests for production, the party making the production (the "Producing Party") shall conduct a reasonable and good faith search for responsive ESI.

**B.**     Absent a further order of the Court, a Producing Party shall not have an obligation to search or produce *from sources* of ESI that the Producing Party in good faith identifies as not reasonably accessible.

**C.     Search Terms.**  Search terms may be employed as part of an overall ESI search and retrieval strategy, recognizing the inherent limitations of reliance on search terms alone.  The Parties shall meet and confer, either in person or via telephone, to reach an agreement as to the method of searching, and the words, terms, and phrases to be used to locate and identify potentially responsive ESI.  The Parties shall also attempt to agree on the timing and conditions of any additional searches that may become necessary in the normal course of discovery.  When search terms are used, the Producing Party will maintain a record of the search terms used and the search term occurrence analysis.

**D.     Technology Assisted Review.**  A party may use a technology assisted review process to identify potentially relevant ESI.  When a technology assisted review process is used, the Producing Party will maintain a record of the material elements of its search and review methodologies, and any quality assurance activities undertaken to assess the accuracy and completeness of its production.  Material elements of search and review methodologies include, but are not limited to, the composition of seed sets and the use of analytical algorithms, as may be applicable.  Quality assurance activities include, but are not limited to, statistical sampling, reviewer overturn rates, training round stability, and calculations of precision, recall and F1 score, as may be applicable.

**E.     Date Range.**  Unless otherwise specifically stated in a specific request within a request for production, the relevant time period shall be the period from January 1, 2012 to the present.

**F.     System Files.**  Common system and program files as defined by the NIST library, commonly used by discovery vendors to exclude system and program files from document review and production, need not be processed, reviewed or produced.  The Parties shall meet and confer, either in person or via telephone, to agree on any additional file types that also need not be processed, reviewed, or produced.

**III.     PRODUCTION OF ESI**

**A.     General ESI Production Format.**  The following provisions shall generally govern the production format and procedure for ESI other than email, databases, or spreadsheets.

**1.     Format.**  Unless a Requesting Party serves a discovery request seeking production in Native Format, ESI (other than email, spreadsheets, or databases, whose production format will be in Native Format, as discussed in Section III.B) shall be produced in a single-page, Group IV TIFF or PDF image files, and such TIFF/PDF image files must be at least 300 dpi resolution.  More specifically, ESI produced as TIFF/PDF image files shall be produced as follows: (1) each production of TIFF/PDF image files shall be accompanied by a corresponding load file ("Image Load File"); (2) each TIFF/PDF image file must contain the same information and same physical representation as the Native Format file from which the TIFF/PDF image file was

3

created; (3) each TIFF/PDF image file shall be accompanied by an extracted text file containing all extracted text of the Native Format file from which the TIFF/PDF image file was created (subject to the only limitation that text that has been redacted for any privilege or confidential information as agreed by the Parties under a separate Agreed Order Regarding Material Designated as Confidential [DE 310] need not be included); (4) each extracted text file shall be named to match the endorsed number assigned to the first page of each corresponding TIFF/PDF image file; (5) the extracted text files shall be accompanied by a Control List File ("LST"); (6) each production of TIFF/PDF image files shall be accompanied by an image cross-reference load file, such as Opticon ("OPT"), which shall provide the beginning and ending endorsed number of each TIFF/PDF image file and the number of pages it includes, confidential designation as appropriate, custodian and source; and (7) each production of TIFF/PDF image files must be accompanied by a data load file ("Data Load File" or "DAT") that contains both the hash value and all available metadata of the Native Format files from which the TIFF/PDF image files were created.

Moreover, each TIFF/PDF image file will be assigned a Bates number that: (i) is unique across the entire document production; (ii) maintains a constant length across the entire production padded to the same number of characters; (iii) contains no special characters or embedded spaces; and (iv) is sequential within a given document.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  Each TIFF/PDF image file shall be named with the Bates Number corresponding to the number assigned to the document page contained in that image.  In the event a party determines that it is unable to produce in the format specified in this section without incurring unreasonable expense, the parties shall meet and confer, either in person or via telephone, in a good faith attempt to agree upon an alternative format for production.

**2.      Processing Specifications.**  For each Native Format file that is converted to TIFF/PDF format: (1) all tracked changes shall be maintained so that all changes are visible; (2) OLE Embedded files shall not be extracted as separate documents; (3) author comments shall remain or be made visible; (4) hidden columns, cells, rows, worksheets and other hidden data shall remain or be made visible; (5) presenter notes shall remain or be made visible; and (6) to the extent ESI in a foreign language is produced, processing of such ESI shall be unicode-compliant.

**3.      Unitization.**  If a Native Format file that is converted to TIFF/PDF format is more than one page, the unitization of the file and any attachments or affixed notes must be maintained as it existed when collected. If unitization cannot be maintained, the original unitization must be documented in the Data Load File or otherwise electronically tracked.

**4.      Color.**  If a Native Format file that is converted to TIFF/PDF format contains color, the TIFF/PDF image file need not be produced in color.  However, if good cause exists, the Requesting Party may request for a file to be produced in color.

4

    **5.    Exception Files.**  Native Format files that cannot be produced or imaged due to technical difficulties shall be identified as exception files and identified on a log listing the file's name, custodian, and reason for the exception.  Common exception files include, without limitation, corruption, password protection, digital rights management, or proprietary software associated to the file.

    **B.    Production Format for Email and Information from Databases and Spreadsheets.**  The following provisions shall generally govern the production format and procedure for email, spreadsheets, and databases:

    **1.    Email.**  Email shall be produced electronically (i) in Native Format as a .pst or .mbox file with all available metadata remaining intact, (ii) in Native Format with accompanying load files that contain all available metadata, or (iii) in a single-page, Group IV TIFF or PDF image files in accordance with the requirements of Section III.A.

    In the instance of email that needs to have redactions applied, such email shall be produced in a single-page, Group IV TIFF or PDF image files in accordance with the requirements of Section III.A.  For each email produced, all metadata must remain intact and all parent/child document relationships must be maintained.

    **2.    Spreadsheets.**  Absent special circumstances, Excel files, .csv files and other similar spreadsheet files will be produced in Native Format with all cells, columns, rows and worksheets and other information unhidden and expanded.  Native Format files will be provided in a self-identified "Natives" directory.  Each Native Format file will be produced with a corresponding single-page TIFF/PDF placeholder image, which will contain language indicating that the spreadsheet file is being produced as a Native Format file.  Native Format files will be named with the beginning Bates number that is assigned to that specific record in the production.  A "NativeLink" entry for each spreadsheet file will be included in the load file indicating the relative file path to each Native Format file on the Production Media.  Native Format files will be produced with extracted text and all applicable metadata fields if possible.

    In the instance of a spreadsheet file that needs to have redactions applied, such spreadsheet file shall be produced in a single-page, Group IV TIFF or PDF image files in accordance with the requirements of Section III.A.  Each Producing Party will make reasonable efforts to ensure that Native Format files, prior to conversion to a TIFF/PDF image file, reveal hidden data from redacted Native Format files that are produced as TIFF/PDF image files and will be formatted so as to be readable. (For example, column widths should be formatted so that numbers do not appear as "#########.").  Under these circumstances, all single-page TIFF/PDF image files shall include all cells, columns, rows and worksheets and other information unhidden and expanded in accordance with the requirements of Section III.A.2.

    **3.    Databases.**  If responding to a discovery request requires production of ESI contained in a database, such as Quickbooks or a similar accounting platform, the Producing Party at its option may provide the database as a Native Format file in accordance with Section III.B.2 above, or may comply with the discovery request by

querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format). The first line of each such file will, to the extent possible, show the column headers for each field of data included. The Parties shall meet and confer, either in person or via telephone, as needed to finalize the appropriate data extraction and production format for specific information contained in particular databases.

        **4.**     **Requests for Other Native Files.**   Other than as specifically set forth above, a Producing Party need not produce ESI in Native Format, or unless sought by the Requesting Party through a discovery request served. Parties shall not request Native Format files as a matter of course. However, if a Requesting Party requests certain ESI in Native Format, the Requesting Party shall provide a list of the Bates numbers of documents it requests to be produced in Native Format, if available. The Parties shall attempt to agree on the production of the requested Native Format files. If the Parties are unable to agree, the Requesting Party may seek to compel the production of the Native Format files requested. Each Native Format file ultimately produced in response to a request made under this subsection will be produced to the extent possible consistent with Section III.B.2.

      **C.**     **Production Media.**   The Producing Party shall produce ESI on CD-ROM, DVD, external hard drive (with standard PC compatible interface), an Internet file sharing platform, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). The Production Media shall include a unique identifying label specifying: (a) the party's identity; (b) the date of the production of ESI; and (c) the case name and number. To maximize the security of information in transit, any Production Media may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password, if needed, to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

      **D.**     **Duplicate Production Not Required.**   ESI files need only be produced once. The Producing Party may apply global deduplication to responsive ESI based on MD5 Hash values or an equivalent deduplication key. Email will be deduplicated by family, not on an individual basis. All Native Format files, even deduplicated versions, will be retained in a format readily accessible.

      **E.**     **Privilege Logs.**   A party withholding documents based on one or more claims of privilege will produce a privilege log. There will be no obligation to produce privilege logs identifying attorney-client communications concerning case strategy or the course of litigation that occur following the commencement of this lawsuit, including the efforts to locate and collect documents and ESI in response to a discovery request in this matter. Failure to produce a Privilege Log prior to or contemporaneously with a particular production is not a waiver of any applicable privilege. Rather, the Producing Party need only produce its Privilege Logs within a reasonable time of each production.

**F.** **Production Format of Plaintiffs' Form I-526 Immigrant Petitions.** Without in any way limiting the requirements of this protocol, the Parties agree that a Producing Party need not produce any of the Plaintiffs' Form I-526s, Immigrant Petition by Alien Entrepreneur ("Form I-526s"), or related immigration documentation sent to or from the U.S. Citizenship and Immigration Services ("USCIS"), in the forms specified in Sections III.A or III.B of this protocol. If responding to a discovery request requires production of any of the Plaintiffs' Form I-526s or related immigration documentation sent to or from the USCIS, the Producing Party may produce such ESI as Group IV TIFF image files, PDF image files, or an alternative production format agreed upon by the Requesting Party and Producing Party.

## IV. CLAWBACK AGREEMENT

**A.** The Parties, pursuant to Federal Rule of Evidence 502(d) and Federal Rule of Civil Procedure 26(c)(1), agreed to a clawback agreement, the Federal Rule of Evidence 502(d) Order, for the protection of privileged materials that may be inadvertently produced or otherwise disclosed during the course of the litigation by any party and by any third party. Accordingly, all of the provisions of the Federal Rule of Evidence 502(d) Order agreed to by the Parties are incorporated herein by reference as if they are fully set forth in this protocol.

## V. MISCELLANEOUS

**A.** If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the Parties shall meet and confer, either in person or via telephone, to agree on a reasonable, alternative form of production. Any party may file a motion with the court to seek individual relief from this protocol.

**B.** Each party will presumptively bear its own costs of production. Notwithstanding the foregoing, the Court, pursuant to its Order dated December 6, 2018 [DE 398], reserves jurisdiction to determine whether cost-shifting is appropriate in the future as the discovery process proceeds.

**C.** Nothing in this protocol shall be construed to affect the discoverability or admissibility of any document, ESI, or data. All objections to the discoverability or admissibility of any document, ESI, or data are preserved and may be asserted at the appropriate time.

**D.** The Parties may agree to modify or waive the terms of this protocol in writing signed by counsel for the affected parties.

**DATED** this 17th day of December, 2018.

| | |
|---|---|
| */s/ J. Anthony Nelson* | */s/ Christopher W. Kammerer* |
| **DEVIN S. RADKAY** | **CHRISTOPHER W. KAMMERER** |
| Florida Bar No. 41976 | Florida Bar No. 0042862 |
| Email: dradkay@gunster.com | Email: ckammerer@kammerermariani.com |
| **J. ANTHONY NELSON** | **JOHN F. MARIANI** |
| Florida Bar No. 126351 | Florida Bar No. 263524 |
| Email: jnelson@gunster.com | Email: jmariani@kammerermariani.com |
| GUNSTER, YOAKLEY & STEWART, P.A. | KAMMERER MARIANI PLLC |

7

777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401-6194
(561) 655-1980/Facsimile (561) 655-5677
*Co-Counsel for Plaintiffs*

**DAVID J. GEORGE**
Florida Bar No. 898570
Email: dgeorge@4-Justice.com
Secondary Email: eservice@4-justice.com
**RYAN D. GESTEN**
Florida Bar No. 0240760
Email: RGesten@4-Justice.com
GEORGE GESTEN McDONALD, PLLC
9897 Lake Worth Road, Suite 302
Lake Worth, FL 33467-2377
(561) 232-6002/Facsimile (561) 655-5677
*Co-Counsel for Plaintiffs*

1601 Forum Place, Suite 500
West Palm Beach, FL 33401
Telephone: (561) 990-1592
*Counsel for Robert Matthews, Maria Matthews, Bonaventure 22, LLC, Mirabia LLC, Alibi, LLC, Palm House, LLC, 160 Royal Palm, LLC, and Palm House PB, LLC*

*/s/ Gregory R. Elder*
**GREGORY R. ELDER**
Florida Bar No. 54006
Email: gelderlaw@gmail.com
LAW OFFICES OF GREGORY R. ELDER, LLC
108 SE 8th Avenue, Suite 114
Fort Lauderdale, Florida 33301
Phone: (305) 546-1061
*Counsel for Leslie Robert Evans and Leslie Robert Evans & Associates, P.A.*

*/s/ Alaina Fotiu-Wojtowicz*
**ALAINA FOTIU-WOJTOWICZ**
Florida Bar No. 0084179
BRODSKY FOTIU-WOJTOWICZ, PLLC
Co-Counsel for Defendants
169 E. Flagler Street, Suite 1224
Miami, Florida 33131
Tel: 305-503-5054
Fax: 305-677-5089
alaina@bfwlegal.com
docketing@bfwlegal.com
*Counsel for Ali Herischi and Herischi & Associates, LLC*

*/s/ Robert C. Glass*
**ADAM T. RABIN**
Florida Bar No. 985635
arabin@mccaberabin.com
**ROBERT C. GLASS**
Florida Bar No. 052133
rglass@mccaberabin.com
McCABE RABIN, P.A.
1601 Forum Place, Suite 505
West Palm Beach, FL 33401
Telephone: 561.659.7878
*Counsel for Gerry Matthews*

*/s/ Seth A. Kolton*
**HENRY B. HANDLER**
Florida Bar No. 259284
hbh@whcfla.com
jn@whcfla.com
filings@whcfla.com
**DAVID K. FRIEDMAN**
Florida Bar No. 307378
dkf@whcfla.com
jh@whcfla.com

*/s/ Larry A. Zink*
**LARRY A. ZINK**
Florida Bar No. 0109592
Zink, Zink & Zink Co., L.P.A.
Florida Office: 1198 Hillsboro Mile – Suite 244, Hillsboro Beach, FL 33062
Ohio Office: 3711 Whipple Avenue, N.W., Canton, OH 44718-2933
Email: zinklaw3711@yahoo.com
*Counsel for KK-PB Financial, LLC*

**SETH A. KOLTON**
Florida Bar No. 21045
sak@whcfla.com
gc@whcfla.com
WEISS HANDLER & CORNWELL, P.A.
One Boca Place, Suite 218-A
2255 Glades Road
Boca Raton, FL 33431
Telephone: (561) 997-9995
Facsimile: (561) 997-9995
*Counsel for Palm House Hotel, LLLP, South Atlantic Regional Center LLC, USREDA LLC, Joseph Walsh, Joseph Walsh, Jr., and JJW Consultancy, Ltd.*