# COMPOSITE EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

160 Royal Palm, LLC,                          Case No.  18-19441-EPK

Debtor.                                       Chapter 11

_____/

_____

**EXPERT REPORT OF**
**MARCIE D. BOUR, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV**

_____

Expert Report of Marcie D. Bour
December 28, 2018

## I.    <u>INTRODUCTION</u>

1.    Yip Associates has been retained by Debtor in Possession, 160 Royal Palm, LLC, for the bankruptcy estate of 160 Royal Palm, LLC (the "Debtor").

2.    I have been asked to provide an expert opinion with regard to the following issues for the evidentiary hearing:

    a.  Analyze the sources of funds received by or used for the benefit of the Debtor.

    b.  Provide a solvency analysis of the Debtor as of August 31, 2013, immediately after the transfer of the member interest from Glenn Straub ("Mr. Straub") to Palm House, LLC, and on March 29, 2014, the day after the Debtor's mortgage to KK-PB Financial, LLC ("KK-PB") was recorded.

    c.  Document the flow of funds related to the transaction and identify the creditors of 160 Royal Palm, LLC as of August 31, 2013 and March 29, 2014.

    d.  Trace the flow of funds from EB-5 Investors, directly or indirectly, to or for the benefit of the Debtor.

3.    Previously, I expressed opinions in two affidavits.  I received additional information and had the opportunity to further analyzed previously received information.  This Expert Report supersedes any previous opinions expressed in this case.

4.    In preparing this report and forming the opinions expressed herein, I have reviewed and considered to the extent deemed necessary and appropriate, the documents, information and data sources listed in Exhibit 1, as well as the sources specifically cited in this report.

5.    My opinions are based on the document reviewed, analysis preformed, independent research, and testimony of witnesses, as well as my experience, education and training as

Expert Report of Marcie D. Bour
December 28, 2018

a certified public accountant, forensic accountant and business appraiser, as relevant to the engagement.

6.      Should additional documents and information be made available or reviewed, certain information or facts may come to light, which may impact the observations and conclusions herein.  I reserve the right to amend this Expert Report based on such information.

## II.      **RELEVANT EXPERIENCE**

7.      I am a Partner at Yip Associates, a forensic accounting and financial investigations firm with offices in Miami, Fort Lauderdale, Boca Raton, Tampa, New York, and New Jersey.

8.      I am a Certified Public Accountant licensed by the State of Florida since 1993.  Prior to becoming licensed in Florida, I was licensed as a Certified Public Accountant in Pennsylvania in 1986.  I also hold the following professional designations: Certified Fraud Examiner ("CFE"), Master Analyst in Financial Forensics ("MAFF"), Certified Valuation Analyst ("CVA"), Accredited in Business Valuation ("ABV"), Accredited in Business Appraisal Review ("ABAR"), and Certified in Distressed Business Valuation ("CDBV"). My experience for the past 23 years has been in the areas of forensic accounting, economic losses, and business valuation.

9.      I have over thirty years of professional experience as a CPA, dealing with a wide variety of companies.  Specific to this case, I have been involved with real estate projects for over thirty years. I also have experience in asset tracing as it relates to real estate, as well as other asset tracing engagements.  See Exhibits 2 and 3.

## III.      **SUMMARY OF OPINIONS**

10.      Upon gaining a understanding of the transactions, I have documented the following:

3

Expert Report of Marcie D. Bour
December 28, 2018

    a. Mr. Straub had control of the Debtor as its sole member through August 30, 2013 and was an insider of the Debtor at that time.

    b. On August 30, 2013, Mr. Straub concluded a transaction whereby the Debtor assumed a mortgage and paid cash to Mr. Straub ("August 30, 2013 Transaction").

    c. The Debtor received no cash or property in the August 30, 2013 Transaction.

    d. As a result of the August 30, 2013 Transaction, the Debtor was insolvent.

    e. The Debtor did not have working capital and was inadequately capitalized to timely pay its obligations after the August 30, 2013 Transaction.

11. In connection with the August 30, 2013 Transaction,

    a. I have determined that the Debtor received funds from EB-5 investors used for the purchase of the member interest in the August 30, 2013 Transaction.

    b. Mr. Straub was paid cash of $6,211,000 by the Debtor.

    c. Funding for the Debtor's development of the Palm House Hotel ("Hotel") was through South Atlantic Regional Center LLC ("SARC"), a promoter of EB-5 investment programs, and Palm House Hotel, LLLP, an EB-5 investment vehicle.

    d. The Debtor was insolvent as of August 31, 2013 and March 29, 2014.

## IV.  BACKGROUND: 160 ROYAL PALM, LLC AND RELATED ENTITIES

12. In 2009, during the height of the recession, Mr. Straub purchased the real estate located at 160 Royal Palm Way, Palm Beach, Florida for $10,000,100.  Mr. Straub, through his single member entity, 160 Royal Palm, LLC, entered into an agreement to sell the property to Palm House PB, LLC.  The purchase and sales agreement, dated March 12, 2012, represented in Section 3.1 that the Seller's Verified Costs (including the $10 million land

4

Expert Report of Marcie D. Bour
December 28, 2018

acquisition cost) totaled approximately $19 million.  The difference between the purchase price of $26.6 million and the Seller's Verified Costs consisted of profit.

13. The agreement to purchase the real estate with the partially complete Palm House Hotel was revised ("As Is Agreement") at an increased purchase price of $36 million.

14. An assignment agreement transferred the member interest in the Debtor from Mr. Straub to Palm House, LLC[1] as of August 30, 2013.  The member interest was sold instead of the real estate.

15. In association with the transfer of the member interest to Palm House, LLC, a note for $27,468,750 and related mortgage were signed by the Debtor.  The note and mortgage constituted 100% financing of the Seller's Verified Cost and Mr. Straub's profit in the first contract.

16. As described in a response to a Request for Evidence to support an EB-5 application, the following information was provided to U.S. Citizenship and Immigration Services ("USCIS") by SARC:[2]

    a. "Royal 160 LLC (owned by the current Developer, Robert Matthews) purchased the property for $29,000,000 in Aug 2006, and carried a mortgage on the property."[3]

    b. "In 2009, due to the housing and economic downturn, Royal 160 LLC enlisted the help of a business associate to buy out the note on the property in a "friendly" deal,

---

[1] Palm House, LLC is owned by Gerry Matthews for the benefit of Robert Matthews (99%) and Ryan Black (1%). SEC Documents page 48-61.
[2] Excerpted from Bates No. Robert Matthews0007553-0007556.
[3] This is corroborated by the deed accessed https://www.pbcgov.org/papa/.

5

Expert Report of Marcie D. Bour
December 28, 2018

wherein construction could continue on the property and Robert Matthews could re-purchase the property once economic conditions improved."[4]

    c. "In 2009, 160 Royal Palm, LLC (owned by Matthews' business associate Glenn Straub) purchased the note for $10,100,000 and gained ownership of the property."[5]

    d. "In September 2013, Robert Matthews purchased 160 Royal Palm, LLC for $36,625,000, thereby re-acquiring ownership of the property."

17. Prior to the assignment of the membership interest, in April 19, 2012, USREDA, Inc. agreed "to provide [a] commitment with regard to expansion and current development of THE PALM HOUSE HOTEL | PALM.  USREDA will provide up to $62,000,000 in working capital through an EB-5 Investment Facility granted through the USCIS."[6]  This document refers to Robert Matthews ("Mr. Matthews") as President of The Palm House Hotel even though he allegedly had no ownership or control over the real estate.

18. The $62,000,000 commitment for the financing is the difference between the $91,000,000 total project costs as represented to the investors over the $29,000,000 land acquisition cost as shown in the SARC / Palm House, LLC (Palm House Project) Confidential Business Review.[7]

19. SARC accepted funds from the first Palm House Hotel EB-5 investor on November 16, 2012, nine months prior to the indirect transfer of the Debtor to Mr. Matthews in August 2013.[8]

---

[4] Electronic Articles of Organization for Florida Limited Liability Company filed with the Florida Secretary of State as access at www.sunbiz.org indicate that as of September 15, 2009 Glenn F. Straub is the managing member/manager of 160 Royal Palm, LLC.
[5] https://www.pbcgov.org/papa/ indicates that the purchase price was $10,000,100 based on the certificate of title dated October 22, 2009.
[6] Bates No. Robert Matthews000100, Letter dated April 19, 2012 from Joseph Walsh, Sr. to Robert Matthews.
[7] Bates No. RB_PH_00574.
[8] ERSHAL-0041.

Expert Report of Marcie D. Bour
December 28, 2018

20.     SARC notified Palm House, LLC that it was approved for a $39,500,000 loan for the Palm House Hotel Project on or about November 30, 2012.[9]

21.     Effective August 30, 2013, a first amendment to the As Is Agreement provided that Palm House PB, LLC assigned its rights in the contract to Palm House, LLC.  It also included a confidentiality provision which limits Mr. Straub and any other person or entity controlled by or affiliated with him to "disclose to the Town of Palm Beach or any of its employees or representatives any information about the Agreement, as amended herein, or any transaction thereunder, including the possibility of the sale or exchange of control of the Property, status of discussions or negotiations, the execution of any documents or any of the terms of such transactions unless required by applicable law.  This covenant shall survive Closing."[10]

22.     A second amendment provided for the closing date to be August 30, 2013.[11]

23.     Separate from these amendments, Palm House, LLC and Mr. Straub signed an assignment agreement to transfer the member interest in Debtor, rather than transferring the real estate as contemplated by the As Is Agreement.[12]

24.     A closing statement dated August 30, 2013 ("Closing Statement") was prepared by Leslie R. Evans ("Mr. Evans") which reflects:[13]

    a.     A contact price of $36,625,000.

    b.     The amount to be escrowed of $744,442 and the amount to be paid to creditors of $88,075.70, totaling $832,517.70.

---

[9] SEC Documents page 23-27.
[10] Section 2, First Amendment to "As Is" Agreement for Purchase and Sale between Palm House PB, LLC and 160 Royal Palm, LLC.  Bates No. KK-PB7/31/18Disc41-58.
[11] Ibid, Section 1.
[12] Bates No. KK_PB7/31/18Disc26-33.
[13] Bates No. KK_PB7/31/18Disc2.

Expert Report of Marcie D. Bour
December 28, 2018

    c.   A deposit from the buyer of $2,000,000.

    d.   Seller financing of $27,468,750.

    e.   Cash due to seller at closing of $6,220,920.86

25.    The seller financing from Mr. Straub actually was a mortgage to KK-PB in the amount of $27,468,750 from the Debtor for his transfer of his member interest in the Debtor.[14]

26.    The closing statement is signed by Palm House, LLC, as the seller, and 160 Royal Palm, LLC as the buyer.  This is inconsistent with the assignment agreement which is between Mr. Straub as the seller and Palm House, LLC as the buyer.[15]

**V.**      **FUNDS RECEIVED BY OR USE FOR BENEFIT OF DEBTOR**

27.    I traced the funds that were received by the Debtor or used for the benefit of the Debtor at through two different dates, August 30, 2013 and March 28, 2014.

28.    Prior to the transfer of the member interest, Mr. Straub, directly or through entities that he controlled, funded the Debtor's construction activities.  After the transfer of the member interest, the activities of the Debtor were funded by money from SARC and USREDA.

29.    The following chart illustrates the flow of funds between the various entities prior to the August 30, 2014 Transaction.

---

[14] Bates No. KK_PB7/31/18 DISC 26, 000004-000025.
[15] Bates No. KK_PB7/31/18Disc26-33.

Expert Report of Marcie D. Bour
December 28, 2018



30.   I traced EB-5 Investor money into the SARC PNC account xxx7626 prior to the August 30, 2013 Transaction.  These transactions specifically indicated they were for the "Palm House Hotel" or "Palm House Hotel, LLLP".  The money was wired into this SARC account titled "Escrow Account".  The money in this account also included investments in other EB-5 ventures.

31.   As illustrated above, money was moved from SARC through two attorneys' escrow (IOTA) accounts before being transferred to the Debtor.  No transfers were made to Palm House, LLC, the owner of the Debtor.

32.   The following chart illustrates how the flow of funds changed after the August 30, 2013 Transaction through March 28, 2018.

Expert Report of Marcie D. Bour
December 28, 2018



33.     After August 30, 2013, additional funds were transferred into the Debtor's Bank of America account xxx3405, which were used to pay Mr. Straub cash due from the closing of the August 30, 2013 Transaction.  The funds were received from SARC and the proceeds from a hard money loan from Revere High Yield Fund, L.P. by the attorneys' escrow accounts and then transferred to the Debtor.

|  | Source of Funds | 160 Royal Palm Bank Account |
| --- | --- | --- |
| Transfer from Galle IOTA | Evans/SARC | $ 2,600,000.00 |
| Transfer from Evans IOTA | SARC | 2,580,000.00 |
| Transfer from Evans IOTA | SARC | 150,920.08 |
| Transfer from Galle IOTA | Revere Loan | 890,000.78 |
| Cash available in 160 Royal Palm Acct |  | $ 6,220,920.86 |

34.     I traced funds in the Debtor's Regions accounts xxx7918 and xxx6046, which was opened November 1, 2013.

10

Expert Report of Marcie D. Bour
December 28, 2018

| Payor | Sources through 03/29/14 | Notes |
|---|---|---|
| Palm House Hotel (Acct x8336) | $ 2,000,000.00 | |
| Leslie Evans Escrow (Account x0443) | 1,485,000.00 | |
| Unknown Credit | 100,000.00 | |
| Internal Transfer (Acct x7918) | 50,000.00 | Transfer |
| Palm House PB LLC | 36,200.00 | |
| Internal Transfer (Acct x6046) | 30,000.00 | Transfer |
| NJL Development | 10,000.00 | |
| Brioni | 6,042.00 | Refund |
| Chanel #3 | 736.70 | |
| Robert Matthews | 50.00 | |
| Regions Bank | 1.34 | |
| **Totals:** | $ 3,718,030.04 | |

35.     As noted above, all transfers to the Debtor have been accounted for except for a deposit of $100,000 made on March 27, 2014.

36.     I also traced $180,000 into the Debtor's Regions account xxx5996.

37.     Subsequently, through December 31, 2014, additional funds were received from the following sources:

| Payor | Sources After 03/31/14 through 12/31/14 | Notes |
|---|---|---|
| Palm House Hotel (Acct x8336) | $ 8,500,000.00 | |
| Leslie Evans Escrow (Account x0443) | 7,100,000.00 | |
| Unknown Credit | 93,550.00 | |
| Internal Transfer (Acct x7918) | 990,000.00 | Transfer |
| Internal Transfer (Acct x6046) | 840,000.00 | Transfer |
| Easyjet | 566.00 | Refund |
| Budget.Com | 500.83 | Refund |
| Expedia | 492.07 | Refund |
| Boots | 180.25 | Refund |
| Jet Blue | 120.00 | Refund |
| Bloomingdales | 63.07 | Refund |
| Target | 31.79 | Refund |
| Steamship Authority | 25.00 | Refund |
| Instant Checkmate | 22.86 | Refund |
| Regions Bank | 18.74 | |
| **Totals:** | $ 17,525,570.61 | |

38.     With the exception of the unknown credit for $93,550, all transfers to the Debtor have been accounted for.  Mr. Evans kept a ledger for the transactions involving the Debtor, which

11

Expert Report of Marcie D. Bour
December 28, 2018

has been modified.  The most recent version, date stamped February 17, 2017, reflects the Matthews P/O Palm House escrow sub-account having a negative balance from September 3, 2013.  The only times the escrow sub-account shows a positive balance is immediately after a deposit and before the funds are disbursed.  The balance went negative within as little as a day and as long as eight days.  It was not until April 9, 2014, that the escrow sub-account balance remained positive balance until the funds were transferred out on August 12, 2014.

39.     On April 3, 2014 the escrow sub-account balance for Matthews P/O Palm House was ($3,343.19).

40.     Between April 3, 2014 and June 10, 2014, Palm House Hotel, LLLP advanced $7,000,000 to the escrow sub-account.  These funds were transferred to the Debtor.

41.     I went a step further and was able to trace the funds received by the Evans IOTA account back to SARC's "escrow account".  This account was used to collect funds from EB-5 investors.

42.     The shortfall in funds was made up by a transfer on September 24, 2014 of $106,343.19 that is described as "B. Matthews loan to Palm House 137…" This was not an actual cash deposit from Mr. Matthews, but rather a "transfer" of funds from another Evans IOTA sub-accounts, Matthews Brokerage Fee Acct, which was "opened" with a transfer of the commission from the transfer of the member interest in 160 Royal Palm.[16]

**TRACING EB-5 INVESTOR MONEY USED FOR PURCHASE OF MEMBER INTEREST**

43.     Prior to August 30, 2013, SARC raised $3.5 million from investors to fund the Palm House Hotel.

---

[16] Leslie Robert Evan & Associates, P.A. Account QuickReport dated stamped February 17, 2017.

Expert Report of Marcie D. Bour
December 28, 2018

44.   Between November 6, 2012 and February 5, 2013, SARC and USREDA advanced $3,000,000 to Craig Galle ("Mr. Galle").

| Analysis of Transfers between Galle IOTA Account, Evans IOTA Account and 160 Royal Palm | | | | | | |
|---|---|---|---|---|---|---|
| | Galle | | Evans | | 160 Royal Palm (Debtor) | |
| Date | Disbursements | Deposits | Disbursements | Deposits | Disbursements | Deposits |
| 11/6/2012 USREDA | | $ 1,500,000.00 | | | | |
| 1/11/2013 SARC | | 500,000.00 | | | | |
| 1/18/2013 SARC | | 500,000.00 | | | | |
| 2/5/2013 SARC | | 500,000.00 | | | | |
| 4/15/2013 Transfer between attorneys | 3,000,000.00 | | | $ 3,000,000.00 | | |
| 7/15/2013 SARC | | | | 1,500,000.00 | | |
| 7/17/2013 Transfer between attorneys | | 2,000,000.00 | $ 2,000,000.00 | | | |
| 7/29/2013 Transfer between attorneys | 2,000,000.00 | | | 2,000,000.00 | | |
| 8/15/2013 Transfer between attorneys | | 2,000,000.00 | 2,000,000.00 | | | |
| 8/26/2013 SARC | | 900,000.00 | | | | |
| 8/28/2013 SARC | | | | 2,000,000.00 | | |
| 8/29/2013 SARC | | | | 230,000.00 | | |
| 8/30/2013 160 Royal Palm | 2,600,000.00 | | | | | 2,600,000.00 |
| 9/3/2013 160 Royal Palm | | | 2,580,000.00 | | | 2,580,000.00 |
| 9/3/2013 160 Royal Palm | | | 150,920.08 | | | 150,920.08 |
| 9/6/2013 Net Proceeds from Revere Loan | | 3,026,859.51 | | | | |
| 9/6/2013 Leslie Robert Evans Escrow | 1,064,858.73 | | | 1,064,858.73 | | |
| 9/6/2013 160 Royal Palm LLC | 890,000.78 | | | | | 890,000.78 |
| 9/6/2013 New Haven Contracting South | 550,000.00 | | | | | |
| 9/6/2013 Nicholas Laudano | 522,000.00 | | | | | |

45.   After moving funds back and forth between escrow accounts, and receiving an additional $900,000 from SARC, Mr. Galle advanced $2,600,000 to the Debtor on August 30, 2013.

46.   SARC advanced Mr. Evans $2,230,000 on August 28 and 29, 2013, shortly before he advanced a total of $2,730,920.08 to the Debtor on September 3, 2013. [17]

47.   I traced at least $500,000 of the funds advanced to the Evans IOTA account to a Palm House Hotel EB-5 investor deposit.

48.   The balance of $1,500,000 can be traced to EB-5 investors for a different SARC project.

49.   The last source of funds used to pay Mr. Straub came from the proceeds of a Revere Capital Management, LLC ("Revere") loan.[18]   This loan was taken out by Royal Palm Development I, LLC.  Revere demanded that there be a second mortgage to collateralize the loan on the real estate owned by the Debtor, which would only be recorded if there was

---

[17] Bates No. Robert Matthews007226; Robert Matthews 007545.
[18] The Revere loan was made by Revere High Yield Fund, L.P.

Expert Report of Marcie D. Bour
December 28, 2018

an event of default.  This became irrelevant when Palm House Hotel, LLLP, the EB-5 investment vehicle, advanced the funds to repay the loan on November 26, 2013.

50.    I traced the repayment of the Revere loan on November 26, 2013 to funds transferred into the Evans IOTA Account from Palm House Hotel, LLLP on the same day the loan was repaid.  The wire information from Palm House Hotel, LLLP indicated, "Revere Capital Management, LLC Note Payoff."[19]

## CONCLUSIONS FROM ASSET TRACING

51.    The money used to fund the purchase of the member interest in the Debtor included funds from EB-5 investors in Palm House Hotel, LLLP.  This money was transferred to attorney trust accounts and then disbursed to the Debtor.

52.    Mr. Evans, who conducted the closing, did not disburse any money to Mr. Straub or KK-PB in connection with the August 30, 2013 Transaction.

53.    The Debtor wired cash to Mr. Straub in addition to signing a mortgage to KK-PB, Mr. Straub's single member LLC, in connection with the August 30, 2013 Transaction.

54.    The Debtor received no cash or property in connection with the August 30, 2013 Transaction.

## VI.    DEBTOR FUNDS USED FOR NON-BUSINESS PURPOSES

55.    As part of my analysis, I also reviewed the cash disbursement of the Debtor.  I analyzed the Debtor's Regions bank accounts xxx7918 and xxx6046 from the date opened, in November 15, 2013 through December 31, 2014 and the Debtor's Bank of America account xxx3405 from August 31, 2013 through November 21, 2013.

---

[19] SARC-DS_000374_1STRFP.

Expert Report of Marcie D. Bour
December 28, 2018

56. A total of $27,539,060.85 in disbursements was analyzed from the Debtor bank accounts.

Approximately $4 million was identified as non-business disbursements.

    a. Most notably, in June and July 2014, the Debtor paid $2,018,030 to International Yacht

       Collection for the purchase of a 151 foot yacht for the benefit of the Mr. Matthews.

    b. The Debtor advanced $1,150,000 to Bonaventure 22, LLC, another of Mr. Matthews's

       investments which was expensed as a developer fee.

    c. Marina costs of $153,188.33.

    d. Wages and expenses related to the 151 foot yacht, were paid to Palm House PB, LLC

       in the amount of $336,000.

    e. Boat insurance of $30,615.91.

    f. Trump International Golf Club of $25,766.46.

    g. Legal fees related to Alibi of $25,444.21.

    h. The Mar-a-Lago Club fees of $22,514.44

    i. Top Quality Yacht expenses of $14,000.

    j. Marine Documentation, Inc. expenses of $6,480 for boat registration.

    k. Dental expenses of $1,948.36.

    l. Retail stores including Fendi, Barney, and Bloomingdales total $8,976.38.

57. The total non-business expenses, including those in the preceding paragraph are

approximately $4 million for the period.

58. Not included above are payments made by New Haven Contracting South for the benefit

of Mr. Matthews from the $13,726,000 paid to the contractor.

15

Expert Report of Marcie D. Bour
December 28, 2018

## VII.      EVANS IOTA ESCROW FUNDS USED FOR NON-BUSINESS PURPOSES

59.    Mr. Evans maintained a balance (sub-account) within his First Union IOTA account titled "Matthews P/O Palm House 1375.150". This account received funds from SARC that were specifically earmarked for "Palm House Hotel". On December 19, 2013, the Evans IOTA account received a wire from SARC for $2,500,000 with the reference "OBI:EB5 Palm House Investment"[20] On December 26, 2013, another $3,000,000 was received with the reference "OBI: Palm House EB5 Investment"[21]

60.    The two wires received in December totaling $5,500,000 were then used to pay interest, real estate property taxes, insurance, and attorney's fees and costs of $5,358,869.05 related to Mr. Matthews' personal mortgage with DB Private Wealth Mortgage Ltd.[22]

61.    Mr. Evans transferred the brokerage commission for the August 30, 2013 Transaction of $1,831,250 to the Evans IOTA sub-account "Matthews Brokerage Fee Acct" on September 3, 2013.[23] From these funds, mortgage payment and real estate taxes totaling $642,454.15 were paid. The funds were also used to transfer $1,000,000 to 149 Brazilian LLC on June 6, 2014.

---

[20] SARC-DS_002604_1STRFP.
[21] SARC-DS_002610_1STRFP.
[22] DB Private Wealth Mortgage, Ltd. V Robert V. Matthews, et al., Case No. 502011CA014062XXXXMBAW, 15th Judicial Circuit, Palm Beach County, FL.
[23] Leslie Robert Evans & Associates, PA, Account QuickReport, All transactions: Account 1213, First United IOTA Real Estate), Matthews Brokerage Fee Acct; and 1250, 1st Union IOTA (RE 8/11/14) Matthews Brokerage Fee Acct. Report date stamped 2/17/17. Another Quick Report for the same Matthews Brokerage Fee Acct shows the money for the commission being transferred May 23, 2014. That report is date stamped 5/23/14. Both indicate that the money was transferred to the same sub-account.

16

Expert Report of Marcie D. Bour
December 28, 2018

VIII.     **METHODOLGY AND ANALYSIS - SOLVENCY**

62.     In order for a debtor to be insolvent under 11 U.S.C. §101(32)(A), it must have a "…financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation."

63.     Section 726.103(1), Florida Statutes, provides a definition referred to as the "balance sheet test."  Under the test, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."

64.     Additionally, insolvency is presumed for "[a] debtor who is generally not paying his or her debts as they become due…" [24]

65.     Typically, the assets and liabilities on the debtor's balance sheet are adjusted to their fair valuations.  When the liabilities at fair valuation exceed the assets at fair valuation, the debtor is insolvent.  While this traditional balance sheet test is simple in its format, determining the fair valuation of the assets and liabilities can be more complex.

66.     There is no definition of fair valuation within the Bankruptcy Code.  Most jurisdictions, including Florida, interpret fair valuation to mean fair market value.

67.     Fair market value is defined in the International Business Valuation Glossary of Terms, as "[T]he price, expressed in terms of cash equivalents, at which property would change hands between a hypothetical willing and able buyer and a hypothetical willing and able seller, acting at arms' length in an open and unrestricted market, when neither is under compulsion to buy or sell and when both have reasonable knowledge of the relevant facts."

68.     There are three accepted groupings of methodologies for valuing assets and liabilities.  For the valuation of tangible property, they are the cost approach, the income approach, and

---

[24] Section 726.105(1)(b)2, Florida Statute.

17

Expert Report of Marcie D. Bour
December 28, 2018

the sales comparison approach. The equivalent for intangible assets and business enterprises are the asset approach, the income approach, and the market approach.

69.    I have used an asset approach framework for purposes of testing solvency for purposes of this report, since the Debtor has no source of income to use as a basis for a cash flow methodology. Additionally, the Real Estate Appraisal confirms that the Hotel has no goodwill (intangible assets). Within the bankruptcy context, this methodology is referred to as a balance sheet test.

70.    It is not clear whether a balance sheet test rises to the level of a business valuation. *Statement on Standards for Valuation Services No. 1: Valuation of a Business, Business Ownership Interest, Security or Intangible Asset* ("SSVS") specifically addresses in its forward that business valuation may be performed for bankruptcy proceedings.[25] However, this engagement does not constitute the value of a traditional business or ownership in a business.

71.    The limited liability company at issue, the Debtor, never actually commenced business operations. It is a holding company owning and attempting to redevelop a hotel. As such, it has value only to the extent that it owns assets that have value. In any case, I am not determining the fair market value of the entity, but adjusting the assets and liabilities to their fair market values, based on available information.

72.    In Interpretation No. 1-01, "Scope of Applicable Services" of SSVS ("Interpretation"), the General Interpretation states, "In is the process of estimating value, professions judgement is used to apply valuation approaches and valuation methods as described in the SSVSs."[26]

---

[25] *Statement on Standards for Valuation Services No. 1: Valuation of a Business, Business Ownership Interest, Security or Intangible,* page 5.
[26] SSVS, page 55, paragraph 2.

Expert Report of Marcie D. Bour
December 28, 2018

The Interpretation clarifies that the standards do not apply to a mechanical computations that do not rise to the level of an engagement to estimate value, nor to use of values provided by the client or a third party.

73. The only place the Interpretation refers to solvency is in Illustration 12h referring to tax planning associated with the discharge of indebtedness under IRC section 108.   The definition of insolvency under IRC section 108 is similar to that in bankruptcy, "insolvency results from an excess of liability over the fair market value of assets."  The Interpretation states that, "If

    a. The company must rely on the insolvency provisions of IRC section 108;

    b. One or more of the assets for which value is relevant under IRC section 108 is a subject interest (that is, a business, business ownership interest, security or intangible asset);

    c. The company or a third party does not provide the valuation; and

    d. The member applies valuation approaches and methods, and uses professional judgement to value the subject interest(s) for purposes of the IRC section 108(d)(3), [SSVS] applies."[27]

74. The solvency analyses presented in Affidavits prepared October 17, 2108 and November 21, 2018 do not rise to this level since, no business or business interest was valued using the application of valuation methods and professional judgement.   Although an asset approach framework was used, no independent values were determined in the mechanical computation of insolvency at that time.

---

[27] Excerpted from SSVS, Interpretation, pages 64-65, paragraphs 45-46.

Expert Report of Marcie D. Bour
December 28, 2018

75.     However, in this Expert Report, it is possible that the calculation of the fair market value of the Mortgage Note due to KK-PB might be considered to rise to the level of a business valuation, although no business valuation judgement was used in the mathematical calculation of the fair market value.  Therefore, I have considered the necessary factors as outlined in SSVS in my solvency calculation.

76.     In this Expert Report, I do not express an opinion of value, but rather an opinion of solvency.

## IX.     <u>REAL ESTATE APPRAISAL</u>

77.     In arriving at my opinion of solvency, I have relied upon the real estate appraisal performed by Jeffery S. Brown ("Mr. Brown") of Cushman & Wakefield of the Palm House dated December 26, 2018 for market values as of August 30, 2013 and March 28, 2014 ("Real Estate Appraisal").  Mr. Brown holds the designation of MAI and is a Florida State-Certified Real Estate Appraiser.

78.     The appraisal is for the property located at 160 Royal Palm Way, Palm Beach, Florida ("Hotel") owned by the Debtor.

79.     Mr. Brown provided an opinion on the retrospective market value of the Hotel as of August 30, 2013 and March 28, 2014.

| Value Conclusions | | | | | Allocation of Value Components | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Appraisal Premise | Real Property Interest | Date of Value | Value Conclusion | Per Room | Real Property | Personal Property | Business Value |
| Retrospective Market Value | Fee Simple | 8/30/2013 | $19,200,000 | $243,038 | $19,200,000 | $0 | $0 |
| Retrospective Market Value | Fee Simple | 3/28/2014 | $19,700,000 | $249,367 | $19,700,000 | $0 | $0 |

80.     In his appraisal, he addressed the history of the property, the progress of its development, the relevant national economic and local conditions, the outlook for the hospitality industry (both nationally and locally), competition, and the goodwill associated with the project.

20

Expert Report of Marcie D. Bour
December 28, 2018

81.    His appraisal relied upon an income capitalization method and a sales comparison approach.  The results of the two methods were within 1% of each other.

82.    I have relied upon these market values for my opinion of solvency.

## X.    <u>BALANCE SHEET TEST – AUGUST 31, 2013</u>

83.    Using the QuickBooks records of the Debtor as a starting point, the following balance sheets present the assets and liabilities recorded for the respective dates:[28]

| Historical Balance Sheets | August 31, 2013 | March 29, 2014 |
|---|---|---|
| Cash | $            - | $      214,181.84 |
| Vehicle (Maserati) | | 65,000.00 |
| Loan to NJL | | 125,000.00 |
| Accounts Payable | | (166.35) |
| Due to USREDA | | (536,200.00) |
| Retainage Received | | (2,975,000.00) |
| Deficit | $            - | $   (3,107,184.51) |

84.    First I adjusted the August 31, 2013 balance sheet for the following:

| | August 31, 2013 Historical Balance Sheet | Adjustments | August 31, 2013 Balance Sheet - Fair Value | Ref |
|---|---|---|---|---|
| Cash | $            - | $   2,601,397.46 | $   2,601,397.46 | (a) |
| Real Estate | | 19,200,000.00 | 19,200,000.00 | (b) |
| Liens and Obligations | | (832,517.70) | (832,517.70) | (c) |
| Outstanding Balance Due to Van Linda Iron Works | | (8,911.00) | (8,911.00) | (d) |
| Outstanding Balance Due to New Haven Contracting South | | (5,458,335.00) | (5,458,335.00) | (e) |
| Cash due to Straub from Closing | | (6,211,000.00) | (6,211,000.00) | (f) |
| Mortgage - KK-PB Financial, LLC | | (18,791,625.67) | (18,791,625.67) | (g) |
| Deficit | $            - | $   (9,500,991.91) | $   (9,500,991.91) | |

a.  Cash:  The cash in the bank at August 31, 2013 was $2,705,360.05.  However, the Debtor had outstanding checks totaling $103,962.59.  The cash balance adjusted for the outstanding checks was $2,601,397.46.

b.  Real Estate:   Based on the Real Estate Appraisal of $19,200,000, as previously discussed.

---

[28] QuickBooks records were recovered from computers located at the Debtor's premises on November 13, 2018.

Expert Report of Marcie D. Bour
December 28, 2018

    c.  Liens and Obligations:  Based on the amounts reflected on the settlement sheet, the following liens and obligations were due:

| | | |
|---|---|---|
| Escrow Liens/Retainage | $ | 133,442.00 |
| Escrow A/C | | 25,000.00 |
| Escrow Fines $2,000 per day | | 586,000.00 |
| Cleary Lien | | 82,374.75 |
| VCNA Prestige Granite | | 5,700.95 |
| | $ | 832,517.70 |
| | | |

       i.  An escrow account was to be set up for $744,442 for the amounts indicated as "Escrow", however, no such account was established, and as such they remain obligations of the Debtor.

      ii.  Mr. Evans testified that he never set up an escrow account to pay the debts of Debtor after the closing.[29]

     iii.  This is consistent with my asset tracing, since the balance of the Evans IOTA account was only $9,852.72, insufficient to cover setting up the escrow account to pay these debts.[30]

     iv.  The Cleary Lien and the VCNA Prestige Granite liabilities were not paid from the Evans IOTA account either.

      v.  As of August 31, 2013 these amounts were also still outstanding.

     vi.  Counsel for the Debtor has been working to identify additional amounts due as of the balance sheet test date.  Any such obligations identified would only deepen the Debtor's insolvency.  At such time when this information is available, it would be appropriate to adjust the balance sheet.

---

[29] Evans Deposition, October 19, 2015, 20:3-22.
[30] The escrow sub-account balance is the same on both the 2/17/17 and 5/23/14 versions of the Evans IOTA Account QuickReports.

22

Expert Report of Marcie D. Bour
December 28, 2018

d.  Outstanding Balance Due to Van Linda Iron Works:  Based on invoices provided by Van Linda Iron Works, the balance of $8,911 has been recorded.

e.  Outstanding Balance Due to New Haven Contracting South.  Based on an AIA Document G702, Application and Certificate for Payment for the period August 15, 2013, the Debtor owed New Haven Contracting South $5,458,335. [31]

f.  Cash Due to Straub from Closing: The closing statement reflects cash due to Mr. Straub of $6,220,920.86.  On September 11, 2013, the Debtor paid Mr. Straub $6,211,000.  I have shown the $6,211,000 as the amount due.

g.  Mortgage – KK-PB Financial, LLC.  The Debtor assumed a mortgage due to KK-PB Financial LLC with a face amount of $27,468,750.00.

    i.  The debt had a stated interest rate of prime plus 2%, but not less than 6%.

    ii.  The default rate of the loan was 10%.

    iii.  Interest was waived for the first fourteen months of the debt and then debt service, starting November 1, 2014 was payable based on a ten year amortization.

    iv.  The monthly debt service was $304,959.44.

    v.  The loan amortization schedule prepared erroneously was calculated showing the start date of the loan as October 1, 2014, when in fact interest did not start to accrue until November 1, 2014.

---

[31] This document was retrieved from the computer of New Haven Contracting South maintained at the Debtor's principal place of business.

Expert Report of Marcie D. Bour
December 28, 2018

    vi.  In order to state a loan at its fair market value, it is necessary to recalculate the loan principal to take into condition interest at prevailing rates.[32]  While the stated rate was prime plus 2%, but not less than 6%, the financing obtained from Revere Capital, a hard money lender, was at a rate of 14%.  I have recalculated the value of the loan based on the following assumptions:

| | Rate | Value of KK-PB Obligation |
|---|---|---|
| | 6% | 25,607,741 |
| | 14% | 18,130,958 |

    vii.  I discussed the interest rate with Cary Glickstein, the Court Appointed Manager for the Debtor.  Based on my discussion with him and supported by the Revere loan collateralized by the Hotel, I have calculated the fair market value of the mortgage based on a market rate of 14% rate at the time of the mortgage.

85.    As shown above, the Debtor fails the Balance Sheet Test for solvency as of August, 31 2013, immediately after the transfer of the member interest of the Debtor.

## XI.    BALANCE SHEET TEST – AUGUST 31, 2013

86.    I then went through the same steps to adjust the balance sheet for March 29, 2014.

---

[32] I used TValue, a software program which does time value of money calculations, to solve for the fair market value of the principal of the note based on the payment terms and the rate.

Expert Report of Marcie D. Bour
December 28, 2018

| Historical Balance Sheets | March 29, 2014 Historical Balance Sheet | Balances from August 31, 2013 | Adjustments | March 29, 2014 Balance Sheet - Fair Value | Ref |
|---|---|---|---|---|---|
| Cash | $     214,181.84 | | | $     214,181.84 | (a) |
| Vehicle (Maserati) | 65,000.00 | | | 65,000.00 | (b) |
| Loan to NJL | 125,000.00 | | | 125,000.00 | (c) |
| Real Estate | | 19,200,000 | 500,000.00 | 19,700,000.00 | (d) |
| Accounts Payable | (166.35) | | | (166.35) | (e) |
| Additional Fines | | | (420,000.00) | (420,000.00) | (f) |
| Liens and Obligations | | (832,517.70) | | (832,517.70) | (g) |
| Outstanding Balance due to Van Linda Iron Works | | (8,911.00) | (2,785.00) | (11,696.00) | (h) |
| Outstanding Balance due to New Haven Contracting South | | (5,458,335.00) | 3,247,000.00 | (2,211,335.00) | (i) |
| Due to USREDA | (536,200.00) | | | (536,200.00) | (j) |
| Retainage Received | (2,975,000.00) | | | (2,975,000.00) | (k) |
| Palm House Hotel LLLP funds advanced to Galle and Evans | | | (7,630,000.00) | (7,630,000.00) | (l) |
| Mortgage - KK-PB Financial, LLC | | (18,791,625.67) | (865,336.80) | (19,656,962.47) | (m) |
| Deficit | $ (3,107,184.51) | $ (5,891,389.37) | $ (5,171,121.80) | $ (14,169,695.68) | |

a. Cash: there was no adjustment necessary to the cash balance.

b. Vehicle (Maserati):  The Debtor had recorded the purchase of a Maserati on its books at a cost of $65,000.

    i. The car had a manufacturer's suggested retail price ("MSRP") of $118,900 when new.[33]

    ii. Since the book value is almost half of the MSRP, I have not adjusted the value.

    iii. Four years later, in 2018, the Debtor was able to take possession of the vehicle and sell it at auction for $37,500.

c. Loan to NJL:  Two advances in excess of the amounts charged to contractor fees were posted, November 26, 2013 and December 23, 2013 totaling $125,000.

    i. No payments were ever made on these advances.

    ii. No interest was ever charged or collected on the advances.

    iii. To err in favor of the Debtor, this asset has not been adjusted.

---

[33] https://www.motortrend.com/cars/maserati/granturismo/2011/.

Expert Report of Marcie D. Bour
December 28, 2018

    d.   Real Estate:  The real estate has been adjusted to its March 30, 2014 appraised value of $19,700,000.

    e.   Accounts Payable:  Counsel for the Debtor has been working to identify additional amounts due as of the balance sheet test date.  Any such obligations identified would only deepen the Debtor's insolvency.  At such time when this information is available, it would be appropriate to adjust the balance sheet.

    f.   Additional Fines:  The Town of Palm Beach is charging fines of $2,000 per day to the Debtor for each day until the construction has been completed.  Since August 30, 2013, an additional 210 days had passed without completing construction. The additional finds that accrued during this period were $420,000.

    g.   Liens and Obligations:  There has been no change to this amount.

    h.   Outstanding Balance due to Van Linda Iron Works:  Based on invoices provided by Van Linda Iron Works, the balance has been adjusted to $11,696.

    i.   Outstanding balance to New Haven Contracting South: The balance due to New Haven Contracting South has been reduced by the total advances from the Debtor of $2,697,000, assumed to be payment for past fees.   Additionally, New Haven Contracting South was paid $550,000 out of the proceeds from the Revere Loan. The balance due was also reduced by this payment.

    j.   Due to USREDA: The two advances to the Debtor were made in November 2013.  No adjustment has been made.

    k.   Retainage Received:  This account represents amounts advanced from USREDA and SARC, directly or through the Evans IOTA account between December 23, 2013 and March 24, 2014.  No adjustment has been made.

26

Expert Report of Marcie D. Bour
December 28, 2018

l.   Palm House Hotel, LLLP Funds Advanced to Galle IOTA and Evans IOTA accounts:

Funds were advanced to the Galle IOTA account and the Evans IOTA account prior to

the transfer of the membership interest.   The following table summarizes the transfers

and the source of funds:

| Funds Advanced Prior to Closing on behalf of Palm House Hotel LLLP | | | | |
|---|---|---|---|---|
| **Date** | **Source** | **Trust Account** | | **Amount** |
| 11/6/2012 | USREDA | Galle | | $    1,500,000 |
| 1/11/2013 | SARC | Galle | | 500,000 |
| 1/18/2013 | SARC | Galle | | 500,000 |
| 2/5/2013 | SARC | Galle | | 500,000 |
| 7/15/2013 | SARC | Evans | | 1,500,000 |
| 8/26/2013 | SARC | Galle | | 900,000 |
| 8/28/2013 | SARC | Evans | | 2,000,000 |
| 8/29/2013 | SARC | Evans | | 230,000 |
| | | | $ | 7,630,000 |

I have made an adjustment to record these advances as liabilities of the Debtor.

m.   Mortgage – KK-PB Financial, LLC:  The prime interest rate did not change between

the date of the loan and the date it was recorded, so I used the same interest rate of 14%

in calculating the fair market value of the Mortgage at $19,656,962.47.

## XII.   COMPENSATION FOR STUDY AND TESTIMONY

87.   Yip Associates will be compensated based on the various services rendered and the level

of skill and responsibility required.  The rates for our service are between $195 and $500

per hour, plus out-of-pocket expenses that may be incurred connection with this matter.

My hourly billing rate is $495.  My compensation is not contingent on the outcome of this

litigation.

88.   Whereas to the extent that discovery in this case is still ongoing, documents or other

information may be produced subsequent to this report.  The contents of such subsequent

discovery may warrant modification of the opinions expressed herein.   I have no

27

Expert Report of Marcie D. Bour
December 28, 2018

responsibility to update this report for events and circumstances occurring after December

28, 2018.  However, I reserve the right to review the information and opinions included in

this report including schedules and/or to further supplement this report upon receipt of any

additional information or discovery.

Respectfully Submitted,

Marcie D. Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV

Yip Associates

December 28, 2018

28

Expert Report of Marcie D. Bour
December 28, 2018

# EXHIBIT 1

Expert Report of Marcie D. Bour
December 28, 2018

# Source of Information

I have relied upon the following sources of information as well as those sources cited throughout my report.

- Real Estate Appraisal by Jeffery S. Brown ("Mr. Brown") of Cushman & Wakefield of the Palm House dated December 26, 2018 for market values as of August 30, 2013 and March 28, 2014 of property located at 160 Royal Palm Way, Palm Beach, FL.
- 160 Royal Palm, LLC Bank of America account xxx3405 records.
- 160 Royal Palm, LLC Regions accounts xxx 7918 and xxx6064 records.
- 160 Royal Palm, LLC General Ledger covering November 15, 2013 to September 4, 2014.
- 160 Royal Palm, LLC check register for the period from January 1, 2013 to August 30, 2013.
- Palm House Hotel, LLLP PNC account xxx8336 records
- South Atlantic Regional Center, LLC PNC accounts xxx7626 and xxx8469 records.
- USREDA Inc. PNC account xxx8485 records.
- USREDA LLC PNC account xxx5593 records.
- Closing Statement dated August 30, 2013 and related documents including Purchase and Sale Agreement, Amended Agreements, As Is Agreement, Assignment of Member Interest, Escrow Agreement, Note and Mortgage.
- Balance Sheets and Income Statements for 160 Royal Palm, LLC for August 31, 2013 and March 29, 2014 from QuickBooks and related detail schedules.
- ERSHAL-0041.
- Leslie Robert Evan & Associates, P.A. Account QuickReports dated stamped February 17, 2017 and May 24, 2014 and related documentation of transactions.
- Craig Galle IOTA account records and supporting documents.
- DB Private Wealth Mortgage, Ltd. V Robert V. Matthews, et al., Case No. 502011CA014062XXXXMBAW, 15th Judicial Circuit, Palm Beach County, FL.
- AIA Document G702 for the period August 15, 2013.
- Transaction Report for payments made to New Haven Contacting South for the period August 31, 2013 through March 29, 2014.
- The Palm House Contractor/Vendor Balances dated August 29, 2013.
- Court documents related to the auction of the Maserati.
- EB-5 investor list.
- Revere Capital Management, LLC loan documents.
- www.sunbiz.org.
- https://www.pbcgov.org/papa/.
- https://www.motortrend.com/cars/maserati/granturismo/2011/.
- https://pbctax.manatron.com.
- https://www.jpmorganchase.com/corporate/About-JPMC/historical-prime-rate.htm.

Expert Report of Marcie D. Bour
December 28, 2018

- https://newsroom.bankofamerica.com/system/files/Bank_of_America_Prime_Rate_History_1999-present_2.pdf.
- 11 U.S. Code § 101.
- 11 U.S. Code § 548.
- Section 726, Florida Statute.

Expert Report of Marcie D. Bour
December 28, 2018

# EXHIBIT 2

Expert Report of Marcie D. Bour
December 28, 2018

# MARCIE D. BOUR, CPA

| | |
|---|---|
| Education | B.B.A., Major in Accounting, with Distinction, Emory University (1984) |
| Professional History | Yip Associates, Partner, Forensic Accounting and Litigation Services (April 2015-) |
| | Marcie D. Bour, CPA, P.A./Florida Business Valuation Group, Forensic Accounting and Litigation Consulting Services, President (March 2003-) |
| | Valuation & Forensic Partners, LLC, Managing Director (2013-2014) |
| | Fiske & Company, Certified Public Accountants, Director Litigation Consulting Services (October 1999 - February 2003) |
| | Pinchasik, Strongin, Muskat, Stein & Co., Senior Manager (October 1998 - October 1999) |
| | Marcie D. Bour, CPA, Self Employed Litigation Consultant (May 1998 - October 1998) |
| | Kapila & Company, Manager (January 1998 - May 1998) |
| | Rachlin, Cohen & Holtz, Certified Public Accountants, Manager, Litigation Consulting and Business Valuation (October 1995 - January 1998) |
| | Bour & Yaverbaum, P.C. Certified Public Accountants, Pennsylvania, President and Managing Shareholder (May 1990 - August 1995) |
| | Felty & Company, Certified Public Accountants, Pennsylvania, Director of Taxes (September 1986 to May 1990) |
| | Laventhol & Horwath, Pennsylvania, Tax Specialist (July 1984 - September 1986) |
| Licenses & Accreditations | Certified Public Accountant, Florida (Pennsylvania, inactive) |
| | Accredited in Business Valuation |
| | Accredited in Business Appraisal Review |
| | Business Valuator Accredited for Litigation (credential retired 2012) |
| | Certification in Distressed Business Valuation |
| | Certified Valuation Analyst |
| | Certified Fraud Examiner |
| | Master Analyst in Financial Forensics (formerly Certified Forensic Financial Analyst) |
| | Qualified Arbitrator, Florida |

33

Expert Report of Marcie D. Bour
December 28, 2018

|   |   |
|---|---|
|   | Licensed Real Estate Broker, Florida (1983-1991) |
| Professional Affiliations | Member, American Institute of Certified Public Accountants (AICPA): Forensic and Valuation Section |
|   | Member, Florida Institute of Certified Public Accountants (FICPA): Valuation, Forensic Accounting and Litigation Services (VFALS) Section Resource Council (2006-2013); Chair VFALS Section Steering Committee (2013-2014); Chair 2012 VFALS Conference Planning Committee |
|   | Member, FICPA North Dade South Broward Chapter: Board of Directors (2002-2005, 2009 -2017); President (2008-2009): President Elect (2007-2008); Treasurer (2005-2007); CPE Chair (2005) |
|   | Affiliate Member, American Bar Association: Litigation, Intellectual Property Law, Business Law and Family Law Sections |
|   | Affiliate Member, Florida Bar: Family Law and Business Law Sections |
|   | Member, National Association of Certified Valuators and Analysts (NACVA): Executive Advisory Board (2008); Litigation Forensics Board Member (2006-2008); Chair, Litigation Track of 2005 Annual Conference; Co-Chair, Litigation Track of 2006 Annual Conference; Co-Chair Advanced Business Valuation Track of 2007 Annual Conference; Consultants' Training Institute, Instructor "Calculating Business Damages"; Team Leader and Instructor, "Loss of Business Income Claims Workshop" |
|   | Member, Association of Certified Fraud Examiners |
|   | Member, Institute of Business Appraisers (2002-2012): Board of Governors (2008-2011, Chair 2011-2012); 2010 Annual Symposium Chair; 2011 Volunteer of the Year Award |
|   | Member, 17th Judicial District of Florida Grievance Committee (1998-2001, 2004-2007, 2010-2013) |
|   | Member, Florida Bar Unlicensed Practice of Law Committee (2001-2004, 2016-) |
|   | Member (through 2017) American Woman's Society of Certified Public Accountants (AWSCPA): South Florida Affiliate Board Member (2006-2013; 2015-2017); South Florida Affiliate President (2014-2015); South Florida Affiliate President Elect (2013-2014); 2013 AWSCPA National Public Service Award |
| Range of Experience | Extensive experience performing litigation consulting in areas of valuation, proof of damages, proof of lost profits, forensic accounting and fraud examination. Assistance with discovery, site and document inspections, document management, research, strategy, deposition and trial preparation. Expert deposition or trial testimony in Federal and |

34

Expert Report of Marcie D. Bour
December 28, 2018

State Courts regarding shareholder disputes, matrimonial matters, damages, alter ego and usury cases.

Trademark licensure and patent infringement issues including valuation, lost profits, and reasonable royalty rates.  Litigation consulting regarding franchise relationships in areas of damages related to breach of contract, proof of lost profits and causation.

Consulting with regard to various employment issues including lost wages/earnings, lost profits, lost benefits, and mitigation in discrimination, wrongful death, personal injury, and wrongful termination.

Litigation consulting regarding divorce cases including discovery, forensic accounting with regard to hidden assets, tax issues including fraud, valuation, equitable distribution and other economic considerations.

Business valuations prepared for various purposes involving a wide variety of industries including  healthcare, retail, professional services, marketing, insurance, real estate, marine, Internet-based, technology, travel, trucking, packaging, light manufacturing, and wholesale/distribution.  Also valuations for undivided interests in real estate.

Non-litigation services provided for real estate clients, consulting with counsel regarding various tax issues, review property management systems for various properties to determine accuracy of reporting, construction costs and due diligence.

Tax experience includes research and compliance for individuals and small to medium size businesses, review and supervision, tax planning and expert testimony regarding QDROs.

**Publications and Speaking Engagements**

*A New Look at an Old Question:  are pass through entities worth more than C corporations?,* Southeast Chapter of Business Appraisers Annual Conference, Atlanta, GA (February 2018)

*Industry and Company Research for the Risk Assessment Process,* FICPA Accounting & Business Show, Ft. Lauderdale, FL (September 2017)

*Back to School: Lessons in industry and company research for the risk assessment process*, South Florida Affiliate of American Women's Society of CPAs, Davie, FL (June 2017)

Coauthor, <u>Financial Valuation Applications and Models, Fourth Edition</u>, Wiley, 2017

*Misadventures in Accounting:  A forensic accounting perspective*, FICPA University of Florida Accounting Conference, Gainesville, FL (November 2016); FICPA Mega Conference, Orlando, FL (June

35

Expert Report of Marcie D. Bour
December 28, 2018

2016); Southeast Chapter of Business Appraisers, Annual Conference, Atlanta, GA (September 2015); FICPA North Dade South Broward Chapter, Fort Lauderdale, FL (February 2015); FICPA South Dade Chapter, Miami, FL (February 2015)

*Expert Panel: Common Mistakes in Business Valuation,* Southeast Chapter of Business Appraisers, Annual Conference, Atlanta, GA (September 2015)

*Cost of Capital: A Case Study Approach,* NACVA Florida Conference, Coral Springs, FL (December 2014)

*Crossing the Bridge between Valuation and Litigation: How Valuation changes when the intended use is litigation,* Southeast Chapter of Business Appraisers, Annual Conference, Atlanta, GA (September 2014)

*What Business Appraisers Need to know about Litigation: A Non-Lawyer Expert's Viewpoint,* American Business Appraisers, Annual Conference, San Francisco, CA (April 2014)

*Business Interruptions:  A primer to policy provisions and loss claims,* NACVA and the CTI, 2013 Annual Consultants' Conference Washington, DC (June 2013)

*Benchmarking Data: Do you know enough about the data?* Tennessee Society of CPAs, Southeast Forensic & Valuation Service Conference, Nashville, TN (October 2013); FICPA Valuation Forensic Accounting and Litigation Services Conference, Fort Lauderdale, FL (January 2013); Southeast Chapter of Institute of Business Appraisers, Annual Conference, Atlanta, GA (September 2012)

"Do Business Valuations and Lost Profits Methodologies Produce the Same Damage Results?" *Dunn on Damages*: *The Economic Damages Report for Litigators and Experts*, Issue 5, Winter, 2011

*Application of the Transaction Method*, AICPA Business Valuation Conference, Las Vegas, NV (November 2011)

*Using the Direct Market Data Method*, Institute of Business Appraisers/NACVA, Southeast Chapter Conference, Atlanta, GA (September 2011)

*Calculations of Damages for Litigation*, FICPA Accounting Show, Fort Lauderdale, FL (September 2011)

*Ibbotson and Duff & Phelps:  You can't just mix and match,* NACVA, 2011 Annual Consultants' Conference, San Diego, CA (June 2011)

Coauthor, Financial Valuation Applications and Models, Third Edition, Wiley, 2011

Expert Report of Marcie D. Bour
December 28, 2018

*Transaction Databases Update: Pratt's Stats®, BIZCOMPS® and the IBA*, VPS STRAIGHTtalk Series Webinar (May 2011)

*Cost of Capital*, Institute of Business Appraisers, Southeast Regional Conference, Atlanta, GA (October 2010)

*Publish blog at http://www.bizvalblog.com*

*Calculation of Economic Losses Due to Catastrophic Events*, NACVA, Webinar Moderator (July 2010)

*Loss Claims Resulting from the Deepwater Horizon Oil Spill and the BV Claims Process*, NACVA, Webinar Moderator (July 2010)

"Liability Insurance: Covering business interruptions when they happen," *AccountingWeb.com,* November 2009

"What Every CPA Should Know About Business Valuation:  Part Two, Fundamentals and Form," *AWSCPA National News*, October 2008

*S Corporations:  Are they worth more than C Corporations?*, Institute of Business Appraisers, Southeast Chapter Conference, Atlanta, GA, (September 2008)

"What Every CPA Should Know About Business Valuation:  Part One, Fundamentals and Form," *AWSCPA National News*, February 2008

*What Every Accountant Should Know About Business Valuation*, AWSCPA/ASWA Joint Conference, Orlando, FL (October 2007)

"Business Valuation in Litigation: Where NOT to Cut Corners," *National Litigation Consultants' Review*, Volume. 7, Issue 1, June 2007

*The Relevance of Revenue Ruling 59-60 to Business Valuations Today:* FICPA Florida Accounting & Business Expo™, Orlando, FL (May 2007); FICPA's 22nd Annual Accounting Show, Fort Lauderdale, FL (Sept 2007)

*Valuation Issues for Professional Practices,* FICPA North Dade South Broward Chapter, Fort Lauderdale, FL (January 2007)

*Business Valuation v. Lost Profits: Reconciling the Inherent Differences in Methodologies for Measuring Damages,* NACVA, Thirteenth Annual Consultants' Conference, San Francisco, CA (June 2006)

"Valuation Issues in E-Business," co-author, paper presented at the Society for Advancement of Management, 2006 International Business Conference, Orlando, FL (April 2006)

Expert Report of Marcie D. Bour
December 28, 2018

*Exposure Draft – Proposed Statement on Standards for Valuation Services: the Impact on CPAs*, FICPA North Dade South Broward Chapter, Hollywood, FL (July 2005); AWSCPA South Florida Affiliate, Fort Lauderdale, FL (February 2006)

*Calculation of Lost Profits Damages: Methods, Deductible Costs and Other Key Issues*, NACVA, Twelfth Annual Consultants' Conference, Philadelphia,  PA (June 2005)

*Comparison of Economic Damages and Business Valuation Methodologies,*  Webinar Presented by Shannon Pratt and Business Valuation Resources, Speaker (February 2005)

*Business and Commercial Damages: Lost Profits,* Institute of Business Appraisers, Southeast Chapter Conference, Atlanta, GA (September 2004)

*Business and Commercial Damages*, Florida Atlantic University, Forensic Accounting Conference, Fort Lauderdale, FL (June 2004)

Instructor, Master Class, *Business & Commercial Damages,* Institute of Business Appraisers, Annual Conference, Orlando, FL (June 2003)

38

Expert Report of Marcie D. Bour
December 28, 2018

# EXHIBIT 3

Expert Report of Marcie D. Bour
December 28, 2018

## Marcie D. Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV
### Testimony Log - Prior Four Years

| Date of Testimony | Case Style | Case No. | Jurisdiction | Attorney | Plaintiff/ Defendant | Type of Testimony |
|---|---|---|---|---|---|---|
| January 2015 | The Patriot Group, LLC, Plaintiff v. James R. Palmer, Defendant | Case No.:3:14-cv-278 (RNC) | United States District Court of Connecticut | James R. Welborn, Jr., Esq. | Defendant | Deposition |
| June 2015 | Marin v. Dzikoski | Case No.: FMCE2014-00272 (35) | 17th Judicial Circuit, Broward County Florida | Nancy Brodski, Esq. | Wife/ Respondent | Deposition |
| July 2015 | Acarra LLC v. VizuALL d/b/a ScheduALL | Case No.: CACE 13-003968 | 17th Judicial Circuit, Broward County Florida | Bruce Berman, Esq. | Plaintiff | Deposition |
| August 2015 | KD Healthcare Co, USA, Inc. vs. MS Marketing, Inc. | Case No.: 15-003161 CA 01 (40) | 11th Judicial Circuit, Miami-Dade County Florida | Joshua Martin, Esq. | Defendant | Deposition |
| August 2015 | KD Healthcare Co, USA, Inc. vs. MS Marketing, Inc. | Case No.: 15-003161 CA 01 (40) | 11th Judicial Circuit, Miami-Dade County Florida | Joshua Martin, Esq. | Defendant | Hearing |
| September 2015 | Terry Berger and Albert Berger vs. National General Insurance Online, Inc. and RLI Insurance Company | Case No.: 502014CA010763XXXXMB | 15th Judicial Circuit, Palm Beach County Florida | Randy C. Golden, Esq. | Plaintiff | Deposition |
| September 2015 | Norwood Investments One, LLC, itself and on behalf of North Armenia Holdings, LLC, v. North Armenia Holdings, LLC, Pink Cat, LLC, Dali Investments, LLC, Ronald David Greer, Liza Perdomo, DMG, QOL, LLC, and Hillcrest Propriety Holdings, LLC. | Case No. CACE 14-021394 | 17th Judicial Circuit, Broward County Florida | Eric Rosen, Esq. | Plaintiff | Deposition |
| December 2015 | Clement Bourgoin v. Myriam Nabizada | Case No.: 1302747&CA01 | 11th Judicial Circuit, Miami-Dade County Florida | Christopher Leigh, Esq. | Plaintiff | Trial |
| March 2016 | PSP MRC Debt Portfolio S I P vs. Project Orlando LLC, et al. | Case No.: 2013-CA-005076-O | 9th Judicial Circuit, Orange County Florida | James M. Talley, Esq. | Defendant | Deposition |
| May 2016 | Stylian Cocalides v. Raul D. Segredo and Avionica, Inc. and Archeion Holdings, LLC | JAMS Arbitration No. 14600002440 | Arbitration | Peter F. Valori, Esq. | Plaintiff | Arbitration Proceedings |

Expert Report of Marcie D. Bour
December 28, 2018

## Marcie D. Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV
### Testimony Log - Prior Four Years

| Date of Testimony | Case Style | Case No. | Jurisdiction | Attorney | Plaintiff/ Defendant | Type of Testimony |
|---|---|---|---|---|---|---|
| August 2016 | William J. Hebding, Individually and as Trustee of The Pamela M. Hebding Trust A-1; Triad Services, Inc. v. Cecilia Kresty, Daniel Kresty, Skill-Metric Machine and Tool, Inc. | Case No.: 502016CA001438XXX XMBAD | 15th Judicial Circuit, Palm Beach County Florida | Scott G. Hawkins, Esq. | Plaintiff | Deposition |
| September 2016 | In Re: The Marriage of James L. Fleming and Dorothea C. Fleming v. James L. Fleming and Tropic Traditions, Inc. | Case No.: 01-2015-DR- 3543 | 8th Judicial Circuit, Alachua County Florida | Justin Jacobson, Esq. | Wife/ Respondent | Trial |
| December 2016 | Top Secret Nutrition LLC v. FHG Corporation d/b/a Capstone Nutrition f/k/a Integrity Nutraceuticals | | Arbitration | Jesse Bernheim, Esq. | Plaintiff | Arbitration Proceedings |
| January 2017 | William J. Hebding, Individually and as Trustee of The Pamela M. Hebding Trust A-1; Triad Services, Inc. v. Cecilia Kresty, Daniel Kresty, Skill-Metric Machine and Tool, Inc. | Case No.: 502016CA001438XXX XMBAD | 15th Judicial Circuit, Palm Beach County Florida | Scott G. Hawkins, Esq. | Plaintiff | Deposition |
| March 2017, April 2017 | Dreamhouse Entertainment, LLC and Latele Novela Network, LLC v. Olympusat, Inc. | Case No.: 12-16082 CA 30 | 11th Judicial Circuit, Miami-Dade County Florida | Robert Einhorn, Esq. | Defendant | Depositions |
| October 2017 | Daniel R. Smith & Associates v. Al Edlredge, et al. | Case No.: 50201CA016887XXX XMB | 15th Judicial Circuit, Palm Beach County Florida | Gerald F. Richman, Esq. | Plaintiff | Trial |

41

Expert Report of Marcie D. Bour
December 28, 2018

## Marcie D. Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV
### Testimony Log - Prior Four Years

| Date of Testimony | Case Style | Case No. | Jurisdiction | Attorney | Plaintiff/ Defendant | Type of Testimony |
|---|---|---|---|---|---|---|
| May 2018 | Preserve Grove Isle, LLC and Grove Isle Associates, Inc. vs. Grove Isle Yacht & Tennis Club, LLC, Grove Isle Club, Inc., and Grove Isle Associates, LLLP | Case No.:15-009106CA04 (Limited Consolidation with Case No. 17-007277 CA 04) | 11th Judicial Circuit, Miami-Dade County Florida | John Shubin, Esq. | Defendant | Deposition |
| July 2018 | Express Logistics, LLC and Express Carriers LLC v. General Electric Company, Thomas Kirschner and Frank Kirschner | Case No. 2014 CA 002358 | 15th Judicial Circuit, Palm Beach County Florida | James Beasley, Esq, and Don Fountain, Esq. | Plaintiff | Deposition |
| August 2018 | Maria Yip, as Trustee of Providence Financial Investments, Inc. and Providence Fixed Income Fund, LLC v. Wilton Perez and Financial Assurance Group, Inc. | Case No. 16-20516-AJC; Case No. 16-20517-AJC | United States Bankruptcy Court, Southern District of Florida, Miami Division | Bryan West, Esq. | Plaintiff | Trial |
| September 2018 | Maria Yip, as Trustee of Providence Financial Investments, Inc. and Providence Fixed Income Fund, LLC v. Maxwell Ortiz Vega and Elite Max Consulting PSC | Case No. 16-20516-AJC; Case No. 16-20517-AJC | United States Bankruptcy Court, Southern District of Florida, Miami Division | Bryan West, Esq. | Plaintiff | Trial |
| November 2018 | In re: 160 Royal Palm, LLC, Debtor | Case No. 18-19441-BKC-EPK | United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division | Philip J. Landau, Esq. | Debtor | Deposition |