# EXHIBIT E

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **LAN LI**, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 16-81871-Civ-Marra |
| | ) |
| **JOSEPH WALSH**, et al., | ) |
| | ) |
| Defendants**.** | ) |
| | ) |

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. My name is Kenneth Senatore.

2. I have worked with PNC Bank, N.A. ("PNC") for nine years.

3. My job title is Enterprise Deputy Chief Bank Secrecy Act ("BSA")/Anti-Money Laundering ("AML") Compliance Officer. My job duties include the day-to-day BSA/AML management oversight for the core operating business units throughout the PNC Financial Services organization.

4. I set forth the information contained in this affidavit based on my personal knowledge and also my communications with other individuals with knowledge.

5. I have reviewed the Plaintiffs' Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, issued in the above captioned action. This purports to be a third-party subpoena for documents, and includes a section entitled "Requests." This section identifies 168 topics for which the Subpoena seeks documents from PNC regarding numerous entities and topics, across an eight-year period (2011 through the present).

6. Although it is difficult to distill the 168 requests into clear categories, they generally seek the following types of documents: (1) PNC's Bank Secrecy Act and anti-money laundering

("BSA/AML") policies and procedures, and related anti-fraud detection systems; (2) alerts, investigatory reports and other documents relating to PNC's actual implementation of its BSA/AML and anti-fraud detection systems, and monitoring of the accounts at issue; (3) PNC policies – including as to how they may have changed across time – concerning the opening and closing of bank accounts, including "Know Your Customer" ("KYC") policies and documents; the sub-titling of accounts; the effectuation of wire transfers, including any OFAC screens; and creation of sub-accounts; (4) PNC policies concerning the EB-5 Visa Program and any changes thereto; (5) PNC policies regarding escrow accounts and any changes thereto, coupled with an incredibly broad request regarding all other escrow accounts at PNC (Request No. 13); (6) all conceivable bank account documents – statements, checks, deposit and withdrawal items, wires, ACH documemts, etc. – relating to at least six accounts, irrespective of whether they pertain to funds received from the Plaintiffs; (7) communications between and concerning former and current PNC employees and certain "Bad Actors"; (8) personnel files for two specified PNC employees and potentially others; and (9) any fees earned by PNC.

7. The Subpoena also makes the following requests, in part:

> 46. All account opening documentation related to South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626) including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

> 47. All opening documentation related to the Business Enterprise Checking Account called Palm House LLLP Checking Operating Account (ending in 8336) including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

> 48. All opening documentation related to the Checking Account called South Atlantic Regional Center, LLC (ending in 8469) including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

49. All opening documentation related to all deposit accounts of Joseph Walsh including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

51. All opening documentation related to all deposit accounts of Joseph Walsh, Jr. including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

53. All opening documentation related to all deposit accounts of South Atlantic Regional Center, LLC including but not limited to Know Your Customer Information, customer due diligence information, enhanced due diligence information, signature cards and account agreements.

75. The name of any and all automated account monitoring systems used during the timeframe of January 1, 2011 through the date of your response to this Request to identify suspicious transactions such as money laundering, Ponzi schemes or other financial fraud, under the Bank Secrecy Act and any User Guides for any such systems.

76. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for the South Atlantic Regional Center LLC – Royal Palm Town Center Escrow Account (ending in 7626).

77. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for the Business Enterprise Checking Account (ending in 8336).

78. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

79. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of Joseph Walsh.

80. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of Joseph Walsh, Jr.

81. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of South Atlantic Regional Center, LLP.

82. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of United States Regional Development Authority, LLP.

83. All Bank Secrecy Act/Anti-Money Laundering ("BSA/AML") alerts generated by the automated account monitoring system for all accounts of United States Regional Development Authority, Inc.

84. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

85. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for the Business Enterprise Checking Account (ending in 8336).

86. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

87. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of Joseph Walsh.

88. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of Joseph Walsh, Jr.

89. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of South Atlantic Regional Center, LLC.

90. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of United States Regional Development Authority, LLC.

91. All documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for all accounts of United States Regional Development Authority, Inc.

92. The name(s) of all fraud detection and/or fraud alert system(s) in place during the timeframe January 1, 2011 through the date of your response to this Request to detect fraudulent activity such as check fraud and money laundering (cash in and out at the teller window) and all user guides for any such system.

93. All fraud detection reports and/or fraud alert reports related to the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

94. All fraud detection reports and/or fraud alert reports related to the Business Enterprise Checking Account (ending in 8336).

95. All fraud detection reports and/or fraud alert reports related to the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

96. All fraud detection reports and/or fraud alert reports related to all accounts of Joseph Walsh.

97. All fraud detection reports and/or fraud alert reports related to all accounts of Joseph Walsh, Jr.

98. All fraud detection reports and/or fraud alert reports related to all accounts of South Atlantic Regional Center, LLC.

99. All fraud detection reports and/or fraud alert reports related to all accounts of United States Regional Development Authority, LLC.

100. All fraud detection reports and/or fraud alert reports related to all accounts of United StatesRegional Development Authority, LLC.

106. Copies of PNC's compliance policies and procedures relating to deposit accounts.

107. Copies of PNC's compliance policies and procedures relating to escrow accounts.

109. Copies of PNC's internal policies and procedures relating to the Bank Secrecy Act.

110. Copies of PNC's internal policies and procedures relating to the USA PATRIOT Act.

111. Copies of PNC's internal policies and procedures of the BSA/AML.

112. Copies of PNC's BSA/AML Department protocols for investigating alerts generated by the internal automated account monitoring system.

113. Copies of PNC's fraud detection department internal policies, procedure and protocols.

160. All documents related to the Customer Identification Program (CIP) for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

161. All documents related to the Customer Identification Program (CIP) for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

162. All documents related to the Customer Identification Program (CIP) for the Business Enterprise Checking Account (ending in 8336).

163. All documents related to Customer Due Diligence (CDD) for the Checking Account called South Atlantic Regional Center, LLC (ending in 8469).

164. All documents related to Customer Due Diligence (CDD) for the South Atlantic Regional Center LLC - Royal Palm Town Center Escrow Account (ending in 7626).

165. All documents related to Customer Due Diligence (CDD) for the Business Enterprise Checking Account (ending in 8336).

166. All documents related to the review of the Checking Account called South Atlantic Regional Center, LLC (ending in 8469) as required by the Patriot Act.

167. All documents related to the review of the South Atlantic Regional Center LLC – Royal Palm Town Center Escrow Account (ending in 7626) as required by the Patriot Act.

168. All documents related to the review of the Business Enterprise Checking Account (ending in 8336) as required by the Patriot Act.

8. All of the requests noted in paragraph 7 above potentially seek documents regarding PNC's compliance with laws established under the BSA, *see* 31 U.S.C. §§ 5311-5332, and related regulations promulgated by the Financial Crimes Enforcement Network ("FinCEN") and the Office of the Comptroller of the Currency ("OCC"), which are within the Department of Treasury. BSA/AML laws and regulations encompass but are not limited to Know Your Customer, or KYC, rules; Customer Identification Program, or CIP rules; and Customer Due Diligence, or CDD rules.

9. The BSA codifies a broad range of reporting, recordkeeping, and AML program requirements for covered financial institutions—including banks like PNC. *See* 31 U.S.C. § 5311 (declaration of purpose is to "require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism.").

10. Part 1020 of 31 C.F.R. sets forth the BSA regulations specifically applicable to banks, including:

   (a) Reporting requirements, including Suspicious Activity Reports ("SARs") and Currency Transaction Reports ("CTRs");

   (b) Recordkeeping requirements;

   (c) Information-sharing procedures to deter money laundering and terrorist activity;

   (d) Requirement to maintain an AML program;

   (e) Compliance with federal law enforcement inquiries including subpoenas and summons;

   (f) Compliance with Section 311 of the USA Patriot Act; and

   (g) Requirement to maintain a CIP and CDD program.

11. Complying with the BSA is a complex and resource-intensive task. Combined, PNC employs 531 individuals, including contractors, in its AML Surveillance Operations department and its separate Investigative Services group, including approximately 100 fraud investigators. These individuals are spread across 26 branch offices throughout 11 states.

12. PNC has over 70 AML-related policies. These policies focus primarily on the investigation and remediation of potential violations of the BSA and/or terrorist financing.

13. PNC has approximately over 100 fraud detection policies. These policies focus primarily on the investigation and remediation of fraudulent activity engaged in by those who are not authorized to transact on an account.

14. PNC's AML and fraud detection policies often contain detailed instructions (complete with screenshots) on how to access and utilize PNC's AML and anti-fraud systems and

tools when fraud is suspected on a customer account. PNC would bear the burden of redacting such information before production.

15. Many BSA regulations implicate sensitive and confidential issues. For example, the BSA imposes a categorical prohibition against the production of a SAR, any information that would reveal the existence of a SAR, or any information that would reveal a decision to *not* file a SAR ("the SAR confidentiality rule").

16. According to Guidance from the OCC, the purpose of the SAR confidentiality rule is to help avoid (1) tipping off criminals wishing to evade detection; (2) revealing methods by which banks can detect suspicious activity; and (3) providing insight into how a bank uncovers potential criminal conduct that can be used by others to circumvent detection. A key concern driving the protection of this information is that criminals could "reverse engineer" the content of a SAR to discern bank investigative practices and devise methods of evading detection. This concern applies equally to any materials prepared by PNC as part of its process to detect and report suspicious activity, regardless of whether a SAR was filed or not. Such materials could include account alerts, investigative reports, and internal communications.

17. In general, PNC's AML and fraud detection/prevention policies are not generic policies. They are critical, highly-sensitive fraud detection and mitigation procedures that are part of PNC's complex internal systems used to detect and investigate potentially illegal activity.

18. PNC has spent significant time and resources developing and implementing these policies, and it has striven to keep its AML and anti-fraud strategies protected from the public and criminals, including cybercriminals. PNC ensures that its own employees not within the AML or anti-fraud groups do not have access to these policies, or the alerts, reports and other materials generated in relation to these policies. If this information is disseminated or falls into the wrong

8

hands, a bad actor could use the information contained in these documents against PNC, its customers and other entities within the financial system to engage in acts of fraud and other crimes.

19. To the extent that AML staff and related personnel may have interacted with the relevant parties' accounts, such information also implicates sensitive and confidential information.

20. Several requests pertain to "[a]ll documents related to any BSA/AML investigations performed as a result of any BSA/AML alerts for documents and communications relating to" certain accounts. Any internal investigations may be protected from disclosure pursuant to the attorney-client privilege or attorney work-product protection.

21. In addition, and as noted, the Subpoena requests documents regarding the following broad topics:

(i) PNC policies – including as to how they may have changed across time – concerning the opening and closing of bank accounts, including the sub-titling of accounts; the effectuation of wire transfers, including any OFAC screens; and creation of sub-accounts;

(ii) PNC policies concerning the EB-5 Visa Program and any changes thereto;

(iii) PNC policies regarding escrow accounts and any changes thereto;

(iv) All conceivable bank account documents – statements, checks, deposit and withdrawal items, wires, ACH documents, etc. – relating to at least bank six accounts, irrespective of whether they pertain to Plaintiffs' funds;

(v) Communications both between and concerning former and current PNC employees and certain "Bad Actors";

(vi) Personnel files for two specified PNC employees and potentially others; and

(vii) Any fees earned by PNC from the accounts at issue.

22. Based on a good faith review, the above combined requests appear to call for the identification, review, redaction and production of approximately 10,000 documents, all within a 30-day time period. Given both the breadth of these requests and the fact that they implicate several different types of documents, compliance would not be feasible within this time period.

9

23. Compliance with this third-party document request also would require PNC to conduct a costly and time-consuming privilege review in an abbreviated amount of time regarding documents potentially pertaining to time periods well before and after the time period when the Plaintiffs's funds entered and left the account ending in x7626 at issue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 5, 2019

_Kenneth J. Senatore_
Kenneth Senatore