IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| Lan Li, an individual; et al., | ) |
| Plaintiffs, | ) Civ. No. 16-cv-81871 |
| | ) Lead Case |
| v. | ) |
| JOSEPH WALSH, an individual; et al., | ) |
| Defendants. | ) |
| | ) |
| LAN LI, an individual, et al., | ) |
| Plaintiffs, | ) Civ. No. 19-80332 |
| v. | ) |
| PNC BANK, N.A., and RUBEN RAMIREZ, | ) |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO PNC'S MOTION TO QUASH SUBPOENA DUCES TECUM**

Plaintiffs, LAN LI, et al., by and through their undersigned counsel, hereby oppose PNC BANK, N.A.'s ("PNC") Motion to Quash Subpoena Duces Tecum (the "Subpoena"), and in support state:

**I.     Introduction**

PNC's Motion to Quash Subpoena Duces Tecum (the "Motion") relies heavily on hyperbolic attack but is light on substance, failing to rely on the true facts or provide full disclosure to the Court of the events leading up to the filing of the Motion, which demonstrate it is groundless, unnecessary and a waste of judicial resources. To begin with, the Motion drastically mischaracterizes PNC's and Ruben Ramirez' ("Ramirez") material and substantial rolls in the $50 million-dollar fraud at issue both in the Lead Case and in the related case against PNC (the "PNC

1

Action"). PNC seemingly ignores the fact that both it and Ramirez are critical, non-party fact witnesses in the Lead Case, because they had the idea to, and did in fact, set up the fake escrow account that was used as a conduit to defraud the EB-5 Investors. Indeed, every penny of the EB-5 Investors' stolen money flowed through PNC's fake escrow account, as PNC, Ramirez and the rest of the fraudsters intended.

Not content with its factual slight-of-hand, PNC then sets up strawman arguments in the Motion knowing full well that the EB-5 Investors have already offered to (and hereby do) withdraw eighty-eight (88) of the items about which PNC complains (the "Withdrawn Items").[1] Thus, it was unnecessary for PNC to raise many of the issues in the Motion as the withdrawal of the Withdrawn Items moots them.[2] To be clear, the EB-5 Investors agreed to and do limit the Subpoena only to those items which are necessary to: (1) allow the EB-5 Investors' forensic accountant to complete her work and trace all of their money in and out of the Palm House Hotel; (2) allow the EB-5 Investors to examine documents probative of Joseph Walsh's ("Walsh") and South Atlantic Regional Center's ("SARC") intent and actions in leaving SunTrust and seeking to open an escrow account at PNC Bank;[3] and (3) allow the EB-5 Investors to obtain all of the various names associated with the fake escrow account in furtherance of the fraud.[4]

---

[1] Those eighty-eight (88) items are: 1-4, 8-10, 12-13, 17, 23-27, 29, 31, 36-37, 41-45, 75-131, 135 and 160-168.

[2] On August 23, 2019 counsel for PNC wrote to the undersigned and threatened to move to quash the Subpoena, claiming it is: (1) non-compliant with the Federal Rules of Civil Procedure; (2) improper because a scheduling order has not been entered in the PNC Case; and (3) overly broad because it includes items that are "irrelevant to the Walsh case." A copy of the email, which also included requests for certain information from the EB-5 Investors (which was provided), is attached as Exhibit "A."

[3] PNC rejected Walsh's and SARC's request to open a legitimate escrow account there, which eventually led to PNC and Ruben Ramirez conceiving of, engineering and implementing the fake escrow account because PNC wanted the EB-5 Investors' tens of millions of dollars in EB-5 investments to be deposited there, one way or another.

[4] Pursuant to an email dated August 29, 2019, the undersigned wrote to counsel for PNC, offering to withdraw the eighty-eight (88) Withdrawn Items, explaining the reasons why the remaining items were necessary and probative, informing PNC that previously produced documents were not properly certified by PNC and providing PNC with the information it had previously sought regarding which account statements (in whatever form) are in the EB-5 Investors' possession. On September 6, 2019, counsel for PNC refused to further attempt to resolve the issues regarding the Subpoena. Finally, on September 9, 2019, the undersigned responded to PNC's counsel, urging them to reconsider their position, and offering to cooperate to narrow the number and scope of the

In addition, PNC casts aspersions because PNC was sued separately from the other fraudsters. Despite previously improperly disclosing settlement discussions in its Amended Notice of Removal [D.E. 17], PNC now conspicuously fails to disclose to the Court that those discussions began on October 6, 2017 and continued for a few months past when pre-suit mediation was held on November 16, 2018. So, while PNC attempts to paint the EB-5 Investors in a negative light because they did not join PNC in the Lead Case, that fact is completely irrelevant to whether the Subpoena is valid, necessary and proportional to the needs of the Lead Case. PNC's unjustified and unsubstantiated attacks continue when it alleges the Subpoena was used to attempt to circumvent the discovery rules applicable to the PNC Case. PNC does not even cite a discovery rule the EB-5 Investors are alleged to have circumvented in either the Lead Case or the PNC Action.

Despite PNC's posturing, its allegations of ulterior motives are not supported by any facts and are contradicted by what this Court already knows to be true. The Subpoena was issued on August 6, 2019, at which time the discovery cutoff in the Lead Case (both fact and expert discovery) was September 27, 2019. At that time, the only thing the EB-5 Investors were thinking about was completing discovery before the September 27th deadline. Having agreed to a long discovery schedule in the PNC case, there was no reason to attempt to begin discovery in the PNC case prior to the Court issuing a scheduling order. The Subpoena was issued in order to obtain the information necessary to continue to prepare for the Lead Case, and while it may have been somewhat broad, the EB-5 Investors readily agreed to re-examine the list of requested items and narrowed it significantly to those that are essential to the issues set forth above. PNC may not like the fact that it and Ramirez are material non-party witnesses in the Lead Case, but its displeasure is not grounds to quash the Subpoena. PNC makes the bold statement that "Plaintiffs have repeatedly shown a disregard for the discovery deadlines issued by the Court," but offers no factual support. To the contrary, the EB-5 Investors, upon determining that additional time was needed to complete discovery in the Lead Case, asked the Court for an extension well ahead of the discovery deadline (and obtained one).[5]

---

documents to be produced, but PNC's counsel did not respond, and instead filed the Motion. Copies of the these emails are attached as Composite Exhibit "B."

[5] PNC further argues that the Court's granting of an extension of time to the discovery deadline in the Lead Case [D.E. 532] moots the EB-5 Investors' legitimate need to enforce the Subpoena.

3

## II. Legal Standard

A Rule 45 subpoena is a tool by which a litigant may obtain documents from parties to an action <u>as well as non-parties</u>. *See Tara Prods. v. Hollywood Gadgets, Inc.,* 2014 WL 1047411, No. 09-61436-Civ, *3 (S.D. Fla. Mar. 18, 2014). In *Tara Prods.,* Magistrate Judge Seltzer specifically found that "[t]he majority of courts [] allow Rule 45 subpoenas to be served on parties as well as non-parties."[6]

The scope of discovery under a Rule 45 subpoena is identical to that of Rule 26, in that it is limited only by relevance and proportionality to the case. *See* Fed. R. Civ. P. 26(b)(1). Additionally, a Rule 45 subpoena may not be used to circumvent the other discovery rules. *See Barrington v. Lockheed Martin, Corp.,* 2007 WL 1303032, No. 6:05-cv-1601-Orl-KRS (M.D. Fla. May 3, 2007).

## III. PNC and Ramirez Are Material Non-Party Witnesses in the Lead Case

It is axiomatic that PNC and Ramirez cannot be both parties and non-parties in the same case. However, PNC attempts to have their cake and eat it too; first, by arguing the Subpoena is improper because PNC is <u>a party to the action</u>,[7] then, on the very same page, arguing PNC <u>is a non-party</u>.[8] Neither PNC nor Ramirez are, nor have they ever been, parties in the Lead Case. Therefore, the Subpoena is proper so long as it complies with the relevancy and proportionality requirements of Rule 26.

## IV. The Subpoena Seeks Relevant Information That is Proportional to the Needs of the Case

After the withdrawal of the Withdrawn Items, the EB-5 Investors seek only documents necessary to: (1) allow the EB-5 Investors' forensic accountant to complete her work and trace all

---

However, given the magnitude of the work still to be done in the Lead Case, further discovery delays would simply squander precious time.

[6] There, the court cited *Neel v. Mid-Atlantic of Fairfield, LLC,* No. SAG-10-cv-405, 2012 WL 98558, at *1 (D.Md. Jan. 11, 2012) (collecting cases). This part of the opinion was ignored in the Motion, despite being the very next sentence after that cited by PNC.

[7] Motion at p.3, Sec. II (stating "The Eleventh Circuit has not addressed whether a Rule 45 Subpoena may be properly served **on a party, such as PNC**, and other courts are split on this issue.") (emphasis added).

[8] Motion at p. 3, Sec. III ("Further, 'concerns for the unwanted burden thrust upon **non-parties'** – **such as PNC in this matter** – 'is a factor…'") (emphasis added).

4

of the money in and out of the Palm House Hotel; (2) allow the EB-5 Investors to examine documents probative of Walsh's and SARC's intent and actions in leaving SunTrust and seeking to open an escrow account at PNC Bank; and (3) allow the EB-5 Investors to obtain all of the various names associated with the fake escrow account in furtherance of the fraud. Any arguments that these documents are irrelevant, or their production is not proportional to the needs of the case is insincere at best, as each of the categories of documents listed above are probative of and relate directly to elements of Plaintiffs' claims against Defendants in the Lead Case.

## V.  The Subpoena Does Not Circumvent the Discovery Rules

PNC, as a non-party fact witness to the Lead Case, does not enjoy the thirty-day response window available to a party under a Rule 34 request. Although PNC cites five (5) cases for the proposition that the Subpoena is improper due to an alleged circumvention of discovery rules, **none of the cases PNC cited are applicable here.** *See Tara Prods,* 2014 WL 1047411, *3-4 (Rule 45 subpoena used to circumvent opposing party's 30 days to respond under Rule 34)(emphasis added); *See Abrams v. Ciba Specialty Chemicals Corp.,* 265 F.R.D. 585 (S.D. Ala. Mar. 19, 2010) (Rule 45 subpoena served upon opposing party in attempt to circumvent the discovery deadline) (emphasis added); *Panchoosingh v. General Labor Staffing Services, Inc.,* 2009 WL10667883, No. 07-80818-Civ-Hurley/Hopkins (S.D. Fla. Jan. 28, 2009) (denying motion to compel defendant's compliance with Rule 45 subpoena filed after the discovery deadline because to do so would impede the court's trial order) (emphasis added); *Homes and Land Affiliates, LLC v. Homes and Loans Magazine, LLC,* 2008 WL 4186989, No. 6:07-cv-1051-Orl-28DBA (M.D. Fla. Sept. 8, 2008) (Rule 45 subpoena served upon plaintiff providing only seven days to respond) (emphasis added); *Barrington,* 2007 WL 1303032, *4 (counsel admitted Rule 45 subpoena served upon plaintiff was intended to circumvent discovery response time provided under Rule 34).

Indeed, not a single case cited by PNC in the Motion supports its position that Plaintiffs are attempting to circumvent the discovery rules. Simply put, PNC is not a party to the Lead Case, yet cites case law that deals with Rule 45 subpoenas served exclusively upon parties.

## VI.  Conclusion

Plaintiffs attempted to meet and confer to narrow the scope of the Subpoena, and despite being unsuccessful at reaching an agreement, agreed to and have withdrawn the Withdrawn Items,

leaving those that are clearly appropriate to the prosecution of the Lead Case. These remaining items are, on their face, both relevant to the issues in the Lead Case, and proportional to the needs of the Lead Case.

Moreover, the Subpoena does not circumvent any discovery rules, as it complies with Rule 26's requirements of relevance and proportionality. Rule 34 does not apply here as PNC is not a party to the Lead Case, and it does not implicate any discovery deadlines. Therefore, the Court should deny the Motion for the reasons set out above.

**WHEREFORE,** Plaintiffs respectfully request this Honorable Court deny the Motion as to the remaining items in the Subpoena and for any additional and further relief this Court finds just and proper.

### CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302
Lake Worth, Florida 33467
Telephone: (561) 232-6002
Toll Free: (833) FINDJUSTICE
(833) 346-3587
Fax: (888) 421-4173
E-Service: EService@4-justice.com

By: */s/ David J. George*
**DAVID J. GEORGE, ESQ.**
Florida Bar Number: 898570
Emails: DGeorge@4-Justice.com
**RYAN D. GESTEN, ESQ.**
Florida Bar Number: 240760
Emails: RGesten@4-Justice.com
**MATTHEW R. CHIAPPERINI, ESQ.**
Florida Bar Number: 111417
Emails: MChiapperini@4-Justice.com