# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LAN LI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 16-81871 |
| | ) LEAD CASE |
| JOSEPH WALSH, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| LAN LI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 19-80332 |
| | ) |
| PNC BANK, N.A., and | ) |
| RUBEN RAMIREZ, | ) |
| | ) |
| Defendants. | ) |
| | ) |



FILED BY ____KJZ____ D.C.

Oct 5, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER FOLLOWING IN CAMERA REVIEW

**THIS CAUSE** is before the Court upon the Joint Motion for in camera review [DE 662], and Plaintiffs' accompanying Motion to Compel Production of Redacted or Withheld Documents [DE 670]. The matter is fully briefed [DEs 674, 677], and the Court has conducted an in camera review of the documents submitted by Defendant PNC Bank, N.A., ("PNC") which were submitted on August 17, 2020. [DE 675].

## BACKGROUND

In their Motion to Compel, Plaintiffs requested documents pertaining to any Anti-Money Laundering ("AML") or Bank Secrecy Act ("BSA") alerts or investigations that were generated by PNC regarding specific accounts that are relevant to the underlying litigation. PNC produced a

privilege log which contains 242 entries where PNC has asserted the Suspicious Activity Reports ("SAR") privilege over the requested documents.[1] Plaintiffs argue that PNC may have over-applied the SAR privilege. The Court conducted an extensive in camera review of thousands of pages of documents to determine if the privilege was properly applied by PNC. This Order follows.

## LEGAL STANDARDS

The party invoking a privilege has the burden to prove the privilege exists. *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). "[W]hen possible, privileges should be construed narrowly." *Pierce Cty., Wash. v. Guillen*, 537 U.S. 129, 144-46 (2003) (explaining that privileges are construed narrowly to avoid "suppress[ing] otherwise competent evidence").

In *Ackner v. PNC Bank, Nat'l Ass'n*, 2017 WL 1383950, at *2 (S.D. Fla. Apr. 12, 2017), the Court discussed the statutory and regulatory scheme giving rise to the SAR privilege. The Annunzio–Wylie Anti–Money Laundering Act of 1992 ("AML"), 31 U.S.C. § 5318(g), provides in relevant part:

> (g) Reporting of suspicious transactions.—
>
> (1) In general.—The [Treasury] Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation.
>
> (2) Notification prohibited.—A financial institution, and a director, officer, employee, or agent of any financial institution, who voluntarily reports a suspicious transaction, or that reports a suspicious transaction pursuant to this section or any other authority, may not notify any person involved in the transaction that the transaction has been reported.
>
> (3) Liability for disclosures.—Any financial institution that makes [i.] a disclosure of any possible violation of law or regulation or [ii.] a disclosure pursuant to this subsection or [iii.] any other authority, and any director, officer, employee, or agent of such institution, shall not be liable to any person under any law or regulation of the United States or any

---

[1] PNC is a "national bank" subject to the Bank Secrecy Act. As such, PNC is required to file a SAR to report certain suspicious activity to a person or agency designated by the Secretary of the Treasury. 31 U.S.C. § 5318(g); 12 C.F.R. § 21.11.

constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the person involved in the transaction or any other person of such disclosure.

The three safe harbors provided by § 5318(g)(3) supply an affirmative defense to claims against a financial institution for disclosing an individual's financial records or account-related activity. Financial institutions are granted immunity from liability for three different types of disclosures:

(i.) A disclosure of any possible violation of law or regulation,

(ii.) A disclosure pursuant to § 5318(g) itself, or

(iii.) A disclosure pursuant to any other authority.

*See* 31 U.S.C. § 5318(g)(3).

Additionally, "[a] separate Bank Secrecy Act regulation provides that a bank must file a Suspicious Activity Report (SAR) when it detects any known or suspected federal criminal violation, or pattern of criminal violations, aggregating $5,000 or more in funds or other assets if the bank believes that it was used 'to facilitate a criminal transaction, and the bank has a substantial basis for identifying a possible suspect or group of suspects.' " 12 C.F.R. § 21.11(c)(2). *Dusek v. JPMorgan Chase & Co.*, 132 F. Supp. 3d 1330, 1336 (M.D. Fla. 2015). No national bank "shall disclose a SAR or any information that would reveal the existence of a SAR." The SAR privilege is limited to a "SAR or any information that would reveal the existence of a SAR," but does not include "the underlying facts, transactions, and documents upon which a SAR is based ..." 12 C.F.R. § 21.11(k).

## **ANALYSIS**

Recent cases have noted that a strong public policy leans heavily in favor of applying SAR confidentiality not only to a SAR itself, but also in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not. *Fed. Trade Comm'n v. Marcus*, 2020 WL 1482250, at *3 (S.D. Fla. Mar. 27, 2020) (quoting regulatory language). To that end, documents which have been prepared as part of a national bank's process for complying with federal reporting requirements are covered by the SAR privilege. *Lesti v. Wells Fargo Bank, N.A.*, 2014 WL 12828854, at *1 (M.D. Fla. Mar. 4, 2014).

On the other hand, those same Courts have distinguished the underlying factual documents which prompt a bank to investigate further. These documents are typically records made in the ordinary course of business, rather than reports or evaluations produced to comply with federal regulations, and are, therefore, not protected by the SAR privilege. *Id*. To that end, a bank's general policies and procedures regarding fraud detection practices are generally not protected by the SAR privilege. *Ackner*, *supra*, at *2.

Following an *in camera* review of the documents at issue in this case, the Court has identified five categories of documents withheld by PNC:

1. Transaction monitoring alerts, which contain information concerning a decision whether to file a SAR;
2. Supporting documentation for a transaction monitoring alert;
3. Evaluative processes and algorithms used by PNC to detect suspicious activity and comply with AML and BSA regulations;

4

    4. Transaction monitoring "cases," which contain information concerning a decision whether to file a SAR;

    5. Evaluative reports created by PNC which concern a transaction monitoring case to comply with AML and BSA regulations;

Regarding categories one and three—transaction monitoring alerts and processes/algorithms used to detect suspicious transactions and comply with the BSA and AML— the Court finds that these documents are protected by the SAR privilege. In *Marcus*, *supra*, Judge Strauss specifically analyzed PNC's transaction monitoring "alerts" and "cases." *Id.* at *6. Reasoning that they consisted of "material of an evaluative nature" that was prepared for the specific purpose of complying with federal reporting requirements, Judge Strauss found that such documents were protected by the SAR privilege. *Id.* In his detailed Opinion, which this Court finds to be exceedingly persuasive, Judge Strauss distinguished those protected documents from those documents that were created in the ordinary course of business, which are not protected. *Id*. The Court has specifically reviewed the similar documents withheld by PNC in this case and finds that their complete withholding is not an over-application of the SAR privilege, but instead is necessary to protect the confidential information contained therein. Nothing less than the complete withholding of these documents will satisfy this objective.

By the same token, regarding the evaluative reports concerning the above-discussed alerts and "cases," (category five), the Court finds that these documents were also properly withheld by PNC here based upon application of the SAR privilege. *See Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214, 1218 (M.D. Fla. 2013) (internal reports or other evaluative documents are protected). These documents include evaluative content of the nature of the suspicious activity and whether the same is protected by the BSA and AML. In other words, these documents are

reports of an evaluative nature intended to comply with federal reporting requirements. Likewise, PNC's processes and algorithms used to detect suspicious activity (category three) are privileged. *See Marcus*, at *5 (shielding from disclosure "documents [which] reveal the processes and algorithms that are used to detect suspicious activity for federal reporting purposes"). The Court has specifically reviewed the documents and finds that their complete withholding is not an over-application of the SAR privilege, but instead is necessary to protect the confidential information contained therein. Nothing less than the complete withholding of these documents will satisfy this objective.

However, regarding category two—supporting documentation—the Court finds that these documents were improperly withheld. *See Wiand*, 981 F.Supp.2d at 1217 (underlying transactional documents generated in the ordinary course of business are not protected by the SAR privilege); *see also Marcus*, 2020 WL 1482250, at *4 ("The SAR Privilege does not include, however, the underlying facts, transactions, and documents upon which a SAR is based. Accordingly, courts have held that supporting documentation giving rise to a SAR that is generated or received in the ordinary course of business is discoverable.") (internal citations and quotation marks omitted). The Court has carefully analyzed all documents which fall into this category, and finds that none are protected by the SAR privilege.

The Court pauses to briefly note Plaintiffs' attempt to distinguish *Marcus*, which is the most persuasive and applicable case, as it deals with the same national bank, the same categories of documents, and is the most recent Opinion on the SAR privilege in this District. Plaintiffs attempt to distinguish *Marcus* by arguing that it was not a party in that case, but was rather a court-appointed receiver. The fact that PNC is a named party/Defendant in the present case is a distinction without a difference. A national bank's litigation position is irrelevant to an analysis

6

of whether documents are protected by the SAR privilege, as the privilege is unqualified not waivable by the national bank. *Wiand v. Wells Fargo Bank, N.A*., 2013 WL 12157564, at *1 (M.D. Fla. Dec. 11, 2013) ("The SAR privilege is "an unqualified discovery and evidentiary privilege ... that cannot be waived by financial institutions."). Accordingly, the Court rejects Plaintiffs' attempt to distinguish *Marcus*, and adopts its reasoning in full.

## CONCLUSION

In accordance with the foregoing, Plaintiffs' Motion to Compel Production of Redacted or Withheld Documents [DE 670] is **GRANTED in part** and **DENIED in part** to the extent specified herein. Specifically, all documents contained under the following privilege log entries shall be produced by PNC to the Plaintiffs: 11, 13-16, 26-28, 37, 38, 44, 48, 49, 87, 110, 191-218, 220, 221. Production shall be made within ten (10) days of this Order.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of October 2020.

_____
WILLIAM MATTHEWMAN
United States Magistrate Judge