IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE No.  9:16-cv-81871-MARRA/MATTHEWMAN

LAN LI, an individual, et al.,

      Plaintiffs,

vs.

JOSEPH WALSH, an individual, et al.,

      Defendants.

_____/

KK-PB Financial, LLC,

      Cross Claimant,

vs.

Leslie Robert Evans & Associates, PA, et al.,

      Cross Defendants.

_____/

## CROSS CLAIMANT, KK-PB FINANCIAL, LLC'S MOTION FOR SUMMARY JUDGMENT AGAINST CROSS DEFENDANTS LESLIE ROBERT EVANS & ASSOCIATES, PA; AND LESLIE ROBERT EVANS, INDIVIDUALLY

Pursuant to Rule 56 Fed. R. Civ. P. and Local Rule 56.1, Cross Claimant, KK-PB Financial, LLC ("KK-PB") moves the Court for an order granting Summary Judgment against Cross Defendants, Leslie Robert Evans & Associates, PA ("Evans PA"); and Leslie Robert Evans, individually ("Evans") individually; (collectively "Evans") with respect to all claims[1] asserted by KK-PB in its' First Amended Cross Claims against Evans (DE 317), and in support of this Motion states as follows.[2]

---

[1] Except Count IV which KK-PB intends to dismiss.
2 KK-PB has filed a Statement of Undisputed Material Facts in support of KK-PB's Motion for Summary Judgment concurrently filed with this Motion.  The "Undisputed Facts" upon which this Motion is based

## Introduction

1.      The KK-PB crossclaims against Evans are for negligence, breach of fiduciary duty, breach of contract, breach of quasi contract and civil conspiracy The crossclaims arise  out of Evans role as the Closing Agent for the August 30, 2013 closing of the sale of all of the limited liability company, Member Units of Glenn F. Straub, in 160 Royal Palm, LLC ("160"). The company 160  owned the real property referred to in this litigation as the Palm House Hotel ("PHH") located at 160 Royal Palm Way in the Town of Palm Beach.  KK-PB, which is owned by Glenn F. Straub, financed a significant portion of the sale and took back a Promissory Note for $27,768,750.00 secured by a first Mortgage ("Mortgage") granted by 160 to KK-PB on the PHH Property.   The Purchase and Sale Agreement ("PSA") for the transaction is attached to and explained in the Statement of Undisputed Material Facts filed contemporaneously herewith.

2.      Attorney Leslie Evans and Evans & Associates represented the Buyer of the Member Units in 160, and Evans prepared the August 30, 2013 Closing Statement detailing the closing receipts and disbursements and acted as Closing Agent.  Evans took possession of the closing proceeds necessary for recording the Mortgage granted to KK-PB by 160..  As the Closing Agent, Evans was charged with the responsibility for disbursement of funds pursuant to the Closing Statement and for the timely recording of the Mortgage.  Evans, as Closing Agent, also took possession of the closing proceeds to pay, pursuant to the PSA and Closing Statement, the Broker's commission of $1,831,250.00 due to H. Allen Welles Real Estate. The Brokers Commission is set forth on the Closing Statement under "Sellers Deductions" .Evans failed to record the

---

are cited as (Facts at _____).  The Exhibits attached to the Statement of Undisputed Material Facts are cited as (Exh. 1, number 1) (document description at 1, page number 1).

Mortgage he received on August 30, 2013 until March 28, 2014. Evans failed to pay the Broker's commission of $1,831,250.00 to H. Allen Welles Real Estate as required by the PSA and Closing Statement prepared by Evans. Pursuant to the Closing Statement, "Sellers Deductions" the Brokers commission was taken from the Sellers funds. Evans own financial records are an Exhibit in the August 6, 2019 deposition of Evans and are attached to the Statement of Undisputed Material Facts and establish that on May 23, 2014, Evans paid the $1,831,250.00 Broker's commission to Robert Matthews.

3.      On March 18, 2018, Robert Matthews and Leslie R. Evans were the subject of an Indictment ("Indictment") from the United States District Court, District of Connecticut, Case No. 3:18-CR-48. Counts 1 – 8 of the Indictment allege a wire fraud scheme between Evans and Matthews involving the PHH. Counts 9 and 10 of Indictment allege a bank fraud scheme between Evans and Matthews. Counts 11 – 16 allege illegal monetary transactions using wire fraud proceeds by Evans and Matthews. Evans is awaiting trial in the fall of 2021.

4.      The undisputed evidence will establish that Evans owed a fiduciary duty to KK-PB and breached his fiduciary and contractual duties to KK-PB while serving as Closing Agent for the sale of the Glenn F. Straub Member Units in 160 in which KK-PB financed the transaction. KK-PB has been damaged by, among other things the significant costs and expenses to defend itself against the underlying claims in this case involving late recording of the Mortgage. Further, Evans acted without the knowledge of Counsel of KK-PB, to pay his co-conspirator Matthews, the Broker's fees deducted from the Seller of $1,831,250.00, and not to H Allen Welles Real Estate as required by the PSA.

**Statement of Undisputed Material Facts (filed contemporaneous herewith)**

5.      Evans PA is a Florida law firm with its' principal office in Palm Beach County, Florida.  Evans' September 18, 2018 (DE 320) Answer to the KK-PB Amended Cross Claims (DE 317), page 1, para. 2. (Facts para. 1) and that Evans is an attorney licensed to practice law in the State of Florida, whose principal office in with Evans PA in Palm Beach County Florida (DE 320), page 1, para. 3.  (Facts para. 2).  In addition, at all times relevant, Evans PA has been a Florida law firm whose principal is Evans (DE 320), page 2, para. 6.  (Facts para. 3).

6.      Evans admits in the Answer that on March 14, 2018, Robert Mathews and Leslie R. Evans were named as Defendants, in a Criminal Indictment in the United States District Court of Connecticut, Criminal Case No. 3:18-CR-48 (the "Indictment") Appendix A to Cross Claims (DE 320), page 2, para. 12.  (Facts para. 4).

**The Undisputed Facts from the Evans' September 17, 2018**
**Response to KK-PB's First Requests for Admission**
**(Exhibit A to Statement of Undisputed Facts)**

7.      Evans admits that attached to the Request  as Exhibit 1, is a genuine, true and correct copy of a document entitled, Florida Real Estate Mortgage, Assignment of Lease and Rents, and Security Agreement executed by Leslie Robert Evans on August 31, 2013 by Power of Attorney for Ryan Black, Manager/Member of 160 Royal Palm, LLC in Palm Beach County, Florida, OR BK 26694, page 1420 Records 3/28/14 on page 1.  (Facts para. 5).  Evans admits that Evans was in possession of the original executed Mortgage on and after August 31, 2013 until March 28, 2014, when Evans recorded the Mortgage in the Palm Beach Public Records.  OR BK 26694, page 1420.  (Facts para. 6). Evans admits that as worded, that at no time between August 31, 2013 and March 28,

2014, did any person on behalf of KK-PB instruct Evans, orally or in writing, to not record the Mortgage in the Public Records of Palm Beach County, Florida. The Evans Response to Request 3 goes on to state, "except that Buyer and Seller knew that the Mortgage could not be recorded right away due to insufficient funds." (Facts para. 7).

8.      Evans admits that attached to the Request as Exhibit 2, is a genuine, true and correct copy of the document entitled, Closing Statement – August 30, 2013 ("Closing Statement") signed for the Buyer by Ryan Black, Manager, by Leslie Robert Evans, Power of Attorney. (Facts para. 8). Evans admits that the Closing Statement lists, under Buyer Credits, the sum of $151,078.13 – Credit Doc Stamp. (Facts para. 9).

**Evans' August 6, 2019 Deposition**
**taken by Counsel for KK-PB**
**(Exhibit B to Statement of Undisputed Facts)**

9.      Evans was deposed pursuant to Exhibit 1 of Evans' deposition, KK-PB's Notice to Take Deposition Duces Tecum. Evans was deposed personally and as the Rule 30(b)(6) Company Representative for Leslie Robert Evans & Associates. (Facts para. 10). As of August, 2019, the Evans PA Law Firm had been in existence approximately 23 years and the Evans PA Law Firm worked primarily in real estate, and doing that 23 years, Leslie Evans was the principal person at Evans PA, who oversaw the legal real estate work. (Evans' Depo. pg. 30, lines 2 – 20). (Facts para. 11). With regard to the real estate work that Evans PA did, Leslie Evans was involved in preparing purchase and sale contracts. (Facts para. 12). During his 23 years with Evans PA, Leslie Evans was involved in preparing closing statements for purchase and sale transactions. (Facts para. 13).

10.      Leslie Evans considers a closing statement as it relates to commercial

property, as a document which reflects the terms of the contract as far as purchase price, expenses, proration, financing. The closing statement reflects the business terms of the deal. (Facts para. 14). Leslie Evans agrees it is normal and customary for him to review the actual contract to determine what the terms are. Facts para. 15). The closing statement expenditures are such things as documentary stamps, brokerage fees and recording costs. (Facts para. 16).

11.     In terms of preparing a closing statement on behalf of Evans PA, you would calculate out what the documentary stamp fees would be. (Facts para. 17). Brokers fees are the commissions set forth in the contract. (Facts para. 18).[3]

### The Affidavit of Craig T. Galle
### (Exhibit C to Statement of Undisputed Facts)

12.     Mr. Galle is a lawyer who has continuously been licensed to practice law in the State of Florida since 1990. Mr. Galle's law practice includes commercial and residential real estate matters, including purchase and sale agreements, title matters and closing of real estate transactions. Mr. Galle estimates that over the past ten (10) years, he has been involved as counsel in over five hundred (500) real estate closings. (Facts para. 19). In August, 2013, Mr. Galle was legal counsel for 160 Royal Palm, LLC, and KK-PB Financial, LLC, in a transaction involving the sale of the Palm House Hotel property (the "Property") located at 160 Royal Palm Way, Town of Palm Beach, Florida. Attached to Mr. Galle's Affidavit as Exhibit 1, is a genuine, true and correct copy of the August 15, 2013 Purchase and Sale Agreement ("PSA") for the sale of the Property known as the Palm House Hotel. (Facts para. 19).

---

[3] After page 36 of Mr. Evans' deposition, Evans was instructed by his Counsel and invoked the 5th Amendment to refuse to answer approximately 150 separate questions asked thereafter by KK-PB's Counsel regarding the Closing, the Closing documents, Evans failure to timely record the Mortgage and

13.     On Friday, August 30, 2013, Mr. Galle was present at the Law Office of Leslie Robert Evans, Evans & Associates (collectively "Evans"), along with and representing Glenn F. Straub, the President/Manager/Sole Member of 160 Royal Palm, LLC; and, the President/Manager/Sole Member of KK-PB Financial, LLC.  Pursuant to the PSA, Mr. Straub was selling his membership interest (i.e., stock interest) in 160 Royal Palm, LLC, the record title owner of the Palm House Hotel Property and KK-PB Financial, LLC, acting as a lender, was financing a portion of the purchase price by acceptance of a Promissory Note in the amount of $27,768,750.00 secured by a first Mortgage ("Mortgage") on the Palm House Hotel Property.  (Facts para. 21).

14.     Mr. Galle's Affidavit states that Evans, who represented the Buyer, served as the Closing Agent and disbursing agent for the transaction.  Attached to Mr. Galle's Affidavit as Exhibit 2, is a genuine true and correct copy of the document prepared by Evans titled "Closing Statement August 30, 2013."  (Facts para. 22).  Mr. Galle's Affidavit states that as the Closing Agent for the transaction involving the Property, Evans was responsible for collecting the proceeds of sale and disbursing the proceeds of sale as itemized on the Closing Statement.  Further, because the transaction involved a Mortgage granted to KK-PB Financial, LLC, as the Closing Agent, Evans took possession of the funds listed on the Closing Statement as $96,140.63 for "Doc Stamps on Mortgage;" and, $54,937.50 for "Intangible tax on Note," along with the original executed Mortgage.  These fees were to be paid to the Clerk of Court simultaneously with the recording of the original Mortgage.  (Facts para. 23).  Mr. Galle's states in his Affidavit that August 30, 2013 was the Friday before Labor Day, September 2, 2013, and

---

Evans failure to pay, pursuant to the PSA the Brokers commission to the Realtor.  In addition, Evans refused, based upon the Fifth Amendment to respond to KK-PB's Second Request for Admission.

as Closing Agent, Evans took possession of and agreed to promptly record the Mortgage after the conclusion of the long weekend. (Facts para. 24).

15.     Mr. Galle states in his Affidavit that on March 21, 2014, on behalf of KK-PB Financial, LLC, the Mortgage holder, he did a title search, which is standard procedure, to determine whether there were any construction liens on the Property, and he then discovered that the Mortgage had not been recorded. (Facts para. 25).

16.     Mr. Galle states in his Affidavit that on March 21, 2014, he sent the following email to Evans: "Les:  Please pdf me a copy of the recorded Palm House mortgage." (Facts para. 26). Mr. Galle states in his Affidavit that on March 28, 2014, he sent the following email to Evans: "Les: I need you to email me a copy of the *recorded* Palm House Mortgage for the KK-PB Financial, LLC loan TODAY." (Facts para. 27). Mr. Galle states in his Affidavit that on March 28, 2014, Evan emailed me the following: "You will have it today along with the paid real estate tax bill.  Thanks for your patience." (Facts para. 28). Mr. Galle states in his Affidavit that on March 28, 2014, he sent the following email to Evans: "Les:  Please email me the recorded mortgage." (Facts para. 29).

17.     Mr. Galle states in his Affidavit that Evans failed to record the Mortgage during the week of September 2 - 6, 2013.  Evans failed to pay the Doc Stamps on the Mortgage and Intangible tax on Note, and further failed to record the Mortgage until March 28, 2014 and that a genuine true and correct copy of the recorded Mortgage is attached to his Affidavit. (Facts para. 30).  Mr. Galle states in his Affidavit that at no time did he, nor anyone on behalf of KK-PB Financial, LLC, instruct Evans to not record the Mortgage contemporaneously with the early September, 2013, closing. (Facts para. 31).

**The Affidavit of Glenn F. Straub**
**(Exhibit D to Statement of Undisputed Facts)**

18.      From September 16, 2009 to and including September 17, 2013, Mr. Straub was the Manager/Member/President of 160 Royal Palm, LLC, a Florida limited liability company.   From August 29, 2013 to the present, Mr. Straub has been the Manager/Member/President of KK-PB Financial, LLC, a Florida limited liability company. (Facts para. 32).

19.      On August 15, 2013, Mr. Straub did execute, on behalf of 160 Royal Palm, LLC, the "As Is" Agreement for Purchase and Sale ("PSA") for the sale of the Property located at 160 Royal Palm Way, Palm Beach, Florida, referred to as the Palm House Hotel ("PHH").   A true and correct copy of the PSA is attached as Exhibit 1. (Facts para. 33).[4]  The Purchaser on the PSA, page 14, is listed as Palm House PB, LLC, a Florida limited liability company, by Leslie Evans, its' Managing Member.    (Facts para. 34).  Section 12 of the PSA, dealing with Real Estate Brokers provides that should any transaction contemplated herein close Seller shall, at closing, pay Broker a real estate commission in the amount equal to 5% of the final gross Purchase Price, and "H. Allen Welles Real Estate" is listed as the Broker.   At no time was Section 12 of the PSA amended. (Facts para. 35).

20.      On Friday, August 30, 2013, Mr. Straub, on behalf of 160 Royal Palm, LLC and KK-PB Financial, LLC, met with Attorney Leslie Evans, at the Law Offices of Leslie R. Evans & Associates (collectively "Evans") located at 214 Brazilian Avenue, Town of Palm Beach, and executed certain documents pursuant to the PSA.  Also present

with Mr. Straub at Evans' office was Attorney Craig T. Galle, then Counsel for 160 Royal Palm, LLC until September 17, 2013, and Counsel for KK-PB Financial, LLC. (Facts para. 36).

21.     Evans agreed to be and was the Closing Agent for the parties to the PSA. As Closing Agent, Evans was responsible for receiving and disbursing the closing proceeds pursuant to the Closing Statement that had been prepared by Evans. Additionally, as Closing Agent, Evans was required to record the Mortgage in favor of the lender, to KK-PB Financial, LLC. (Facts para. 37).

22.     Attached to Mr. Straub's Affidavit as Exhibit 2, is a genuine, true and correct copy of a document entitled, CLOSING STATEMENT, August 30, 2013, which document was prepared by Evans. For reasons unknown, the "Seller" is erroneously listed as Palm House, LLC, and the Buyer is 160 Royal Palm, LLC, when in fact, as per the PSA, the Seller was 160 Royal Palm, LLC. (Fact para. 38). The Section of Exhibit 2 titled, Seller's Deductions, lists the Broker's Commission of $1,831,250.00 which, pursuant to the PSA, was to be paid by Evans from the Closing proceeds collected by Evans, to H. Allen Welles Realty, listed in Section 12 of the PSA. (Facts para. 39). Pursuant to the Closing Statement, Evans agreed to and collected the funds and was to disburse and pay the Clerk of Court the $96,140.63 identified as "Doc Stamps on Mortgage" and are $54,937.50 as "Intangible tax on Note." (Facts para. 40).

23.     On August 30, 2013, the Promissory Note ("Note') from 160 Royal Palm, LLC to KK-PB Financial, LLC was executed at Evans' office. A genuine true and correct copy of the Note is attached to Mr. Straub's Affidavit as Exhibit 3. (Facts para.

---

[4] The PSA was amended, prior to Closing, pursuant to an Amendment dated August, 2013. In this Amendment, the Buyer elected to close on the Property by acquiring 100% of the membership interests of 160 Royal Palm, were then owned by me.

41). In August 30, 2013, the Florida Real Estate Mortgage; Assignment of Lease and Rents and Security Agreement (the "Mortgage") was executed by 160 Royal Palm, LLC, as Mortgagor, and granted the Mortgage to KK-PB Financial, LLC, as Mortgagee. A genuine true and correct copy of the Mortgage is attached to Mr. Straub's Affidavit as Exhibit 4. (Facts para. 42).

24.     As Closing Agent, Evans took possession of the original executed Mortgage and agreed to and was responsible to KK-PB Financial, LLC to immediately record the Mortgage; pay the Doc Stamp on the Mortgage of $96,140.63 Intangible tax of $54,937.50, which were payable to the Clerk of Courts. August 30, 2013 was a Friday, and Monday, September 2, 2013 was Labor Day, and it was understood and agreed that Evans would promptly record the Mortgage and pay the recording fees due on Tuesday, September 3, 2013. (Facts para. 43).

25.     As the Closing Agent for the transaction, Evans agreed and was responsible to 160 Royal Palm, LLC and KK-PB to collect and disburse the funds in accordance with the Closing Statement, Exhibit 2. (Facts para. 44).

26.     In October, 2019, over 6-years after the transaction closed, Mr. Straub first became aware, through the deposition of H. Allen Welles taken in this case, that Evans did not pay any part of the $1,831.250.00 Broker's Commission to H. Allen Welles Real Estate, as required by Section 12 of the PSA. Section 12 of the PSA was never modified or amended to provide for the payment of the Broker's Commission to anyone other than H. Allen Welles Realty. (Facts para. 45).

**Evans refusal to answer deposition questions based on the 5th Amendment**

27.     The complete Evans deposition is attached as Exhibit B to the Statement of Undisputed Material Facts. Evans refusal to answer based upon the 5th directly impacts on all of the KK-PB crossclaims.  Polo has presented undisputed material facts to establish the elements of each of the KK-PB crossclaims.  Evans refused to answer questions regarding his involvement as Closing Agent in the PHH transaction and the adverse inference should apply against Evans.

28.     On the matter of Evans failure to pay the $1,831,250.00 Broker's Fee to H. Allen Welles, Evans asserted the 5th and refused to answer the deposition questions. (Facts – Evans Depo. Exh. B, Depo. pg. 38, lines 10 – 19).  Evans refused to answer and asserted the 5th when asked about the purpose of a Closing Statement.  (Facts – Evans Depo.  Exh. B, Depo. pg. 39, lines 15 – 20).  Evans refused to answer and asserted the 5th when asked about making disbursements other than what is shown on the Closing Statement.  (Facts – Evans Depo. Exh. B, Depo. pg. 40, lines 1 –23).  When asked about recording of document and a checklist of documents to record from a Closing, Evans refused to answer and asserted the 5th.  (Facts – Evans Depo. Exh. B, Depo. pg. 40, lines 24 and 25; pg. 41, lines 1 – 19).

29     Evans was asked whether he required written instruction from the client regarding disbursement and Evans refused to answer and asserted the 5th.  (Facts – Evans Depo. Exh. B, Depo. pg. 42, lines 5 – 16).  Evans asserted the 5th and refused to answer any questions regarding Evans account for receipt and disbursement of funds from real estate transaction.  (Facts – Evans Depo. Exh. B, Depo. pg. 44, lines 1 – 18).  Evans refused to answer and asserted the 5th with regard to the transfer of funds out of his account from real estate Closing.  (Facts – Evans Depo. Exh. B, Depo. pg. 56, lines 14 –

22; pg. 51, lines 6 – 18).

30.     Evans refused to answer and asserted the 5th on any question regarding the Palm House Hotel PSA. (Facts – Evans Depo. Exh. B, Depo. pg. 55, lines 7 – 25; pg. 56, lines 1 – 8). Evans refused to answer, based upon the 5th, any questions regarding the PSA which is Exhibit 3 to the Evans deposition. (Facts – Evans Depo. Exh. B, Depo. pg. 67, lines 8 – 23; pg. 68, lines 1 – 25; pg. 69, lines 1 – 25; pg. 70, lines 1 – 14). Evans was asked specifically regarding the PSA and para. 12 dealing with the real estate Broker's Commission. (Facts – Evans Depo. Exh. B, Depo. pg. 73, lines 10 – 25; pg. 74, lines 1 – 25). Evans refused to answer and asserted the 5th with regard to any questions inquiring whether there were any written modifications, amendments or changes to the PSA. (Facts – Evans Depo. Exh. B, Depo. pg. 75, lines 1 – 25; pg. 79, lines 1 – 6).

31.     Evans refused to answer and asserted the 5th as to all questions regarding the Promissory Note to KK-PB, which is Evans Exh. 5. (Facts – Evans Depo. Exh. B, Depo. pg. 95, lines 10 – 23;  pg. 96, lines 1 – 14). Evans refused to answer and asserted the 5th with regard to questions regarding the Mortgage granted to KK-PB – Evans Depo. Exh. 6. (Facts – Evans Depo. Exh. B, Depo. pg. 98, lines 1 – 8; pg. 99, lines 10 – 19). Evans was specifically asked about his taking possession of the Mortgage after it was executed and Evans failure to record the Mortgage and Evans refused to answer and asserted the 5th. (Facts – Evans Depo. Exh. B, Depo. pg. 100, lines 16 – 25; pg. 101, lines 1 – 25; pg. 102, lines 1 – 8).

32.     Evans refused to answer and asserted the 5th with regard to payments to H. Allen Welles. (Facts – Evans Depo. Exh. B, Depo. pg. 108, lines 8 – 25). Evans refused to answer and asserted the 5th with regard to the $96,140.00 of Doc Stamp funds and the $54,935.00 intangible tax on the Note. (Facts – Evans Depo. Exh. B, Depo. pg. 109,

lines 11 – 25).

33.    Evans objected and refused to answer, based upon the 5th Amendment, KK-PB's Second Request for Admission propounded on November 20, 2020. (Exhibit 1 attached hereto). The Requests dealt with Evans failure to timely record the Mortgage, various provisions of the PSA, the Closing Statement prepared by Evans and the payment of Broker's commission.

### The Motion

34.    The pleadings, Evans Reponses to Requests for Admission propounded by KK-PB, Evans August 6, 2019 deposition and the Affidavit and other documents referred to in the Evans Deposition and Affidavit demonstrate there are no genuine issues of material facts and that KK-PB is entitled to judgment as to matter of law, on all the claims set forth in the First Amended Crossclaims (DE 317) against Evans, excluding Count IV which KK-PB states it will dismiss.

### The application of the Adverse Inference against the Evans Defendants

35.    At Evans August 6, 2019 Deposition, Facts Exh. B, Deposition of Evans, Evans refused and failed to answer approximately 150 separate questions from KK-PB's Counsel. It is KK-PB's position that the undisputed evidence presented in support of this Motion each of the necessary elements to prove each of its causes of action.

36.    Because KK-PB has established each of the elements of each of KK-PB's crossclaims and   therefore an adverse interest may be drawn against a party in a civil action when he refuses to testify in responses to probative evidence against him. *Boxter vs. Palmigiona*, 425 US 308, 317 – 318 (1976). When a party seeking summary judgment produces additional direct evidence, above and beyond any negative inference to be drawn by invocation of the Fifth Amendment, entry of summary judgment is

approximate. *Temporary, Inc. vs. Biltres Staffing of Tampa Bay, Inc.*, 945 F.Supp. 1330, 1339 (MD Fla. 2013). On November 24, 2020, KK-PB propounded a Second Request for Admission to Evans, which is Exhibit 1, attached hereto. Evans response to each of the 14 Responses for Admission was that the Evans Defendant objected and refused to answer based on their Fifth Amendment privilege and therefore the adverse inference should apply to the matters addressed by the Second Requests for Admission.

## Standard of Review

37.     Summary judgment is appropriate when, "there is no genuine issue as to any material fact ," and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defense. *Pringle vs. Johnson & Johnson*, 2020 WL 4501834 (SD Fla. 2020). Citing to *Celotex vs. Cattrett*, 477 US 317, 323 – 24 (1986). The movant bears the initial responsibility of informing the District Court of the basis for the Motion and identifying portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material facts. *Pringle;* citing to *Celotex*, 477 US at 323. Once the moving party has met its' burden, the non-moving party bears the burden of coming forward with evidence. *Pringle*; Rule 56(c) requiring the non-moving party to go beyond the pleadings and by its own affidavit or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing there is genuine issue for trial. *Celotex;* 477 US 324. The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient, there must be evidence on which the jury could reasonably find for the non-movant. *Anderson* vs. Liberty Lobby, 473, US 242, 259 (1986).

## KK-PB's Count I Crossclaim for negligence against the Evans Defendants

38.     The elements of a claim of negligence are:

1)  the existence of a duty recognized by law requires the defendant to conform by a certain standard of conduct for protection of others including the plaintiff;

2)  failure on the part of the Defendant to perform that duty;

3)  an injury or damage proximately caused by such failure; and,

4)  an injury or damage to the plaintiff proximately caused by the failure of the Defendant.

*Victoria's Angels vs. Target Corporation*, 2021 WL1380161 ((SD Fla. 2021), citing to

*Venice vs. Miami Dade County*, 116 So.3d 461, 464 (Fla. 3rd DCA 2013).

39.     The Evans Defendants owe a duty to KK-PB, a party to the closing,

because the Evans Defendants are the Closing Agents for the sale of the PHH Property.

(Facts para. 22 and 23, Galle Affidavit, Exh. C, para. 7, 9 and 10).  (Facts para. 37, 43

and 44; Straub Affidavit, para. 7, 10, 13 and 14).  As Closing Agent, Evans owes a duty

to KK-PB to collect the proceeds of sale and disburse the proceeds of sale as itemized on

the Closing Statement, and to promptly record the Mortgage granted to KK-PB.  It is KK-

PB's position that the undisputed facts establish Evans negligence by setting forth the

duty Evans owed as Closing Agent and Evans breach of those duties by Evans actions.

Evans breached it's duties owing to KK-PB by failing to record the Mortgage until March

28, 2014.  (Facts para. 24, Galle Affidavit, pg. 15, lines 2 – 21; Fact para. 37, 43 and 45).

Further, Evans breached his duty owing to KK-PB by failing to pay and disburse the

Broker's Commission of $1,831,250.00 owing to H. Allen Welles.  (Fact para. 38, 39, 45,

46 and 47).  The negligence of Evans in serving as Closing Agent caused damages to

KK-PB.  (Facts para. 46).  Further, Evans refused to answer questions at his deposition

dealing with Evans obligations and role a Closing Agent in the sale of PHH as set forth in paragraphs 27-33 above.

## KK-PB's Count II claim for breach of fiduciary duty

40.    KK-PB has sued Evans breach of fiduciary duty arising from Evans serving as the Closing Agent for the sale of the PHH.  The elements of a cause of action for breach of fiduciary duty are:

      a)     the existence of a fiduciary duty;
      b)     breach of that duty; and,
      c)     damages proximately caused by the breach.

*Gracey vs. Baker*, 837 So.2d 348 (Fla. 2002).

41.    One acting as a closing agent in a real estate transaction, has the duty to supervise the closing in a "reasonably prudent manner." *Florida Southern Abstract & Title Co. vs. Bjello*, 346 So.2d 635 (Fla. 2nd DCA 1977).  The title company has the duty to prepare the closing documents in accordance with the contract of sale. *Ashew vs. Allstate Title and Abstract Co.*, 603 So.2d 29 (Fla. 2nd DCA 1992).  The real estate closing agent has a fiduciary duty to both buyer and seller. *Id.*

42.    The Court's holding in *Millettel vs. DEK Technologies, Inc.*, 2011 WL 5331708 (SD Fla. 2011 is instructive on the definition of fiduciary and the duty of the fiduciary.  *Millettel* involved a real estate closing agent who altered a settlement statement.  A closing agent owes a fiduciary duty to all of the principal parties involved in the closing.  Absent an express agreement, the law implies from the circumstances that an escrow agent (or closing agent) undertake the legal obligation to:

      1)     know the provisions and conditions of the principal agreement concerning the escrowed property; and,
      2)     to exercise reasonable skills and ordinary diligence in holding and delivering possession of the escrowed property. (i.e. disburse the escrow funds) in *strict* accordance with the principal's agreement.

(emphasis added).

The fiduciary duty of dealing honestly and with good faith toward a principal is breached where there is a showing of fraud, deceit or absence of good faith on the part of the agent.

43.     In the present case, the undisputed material facts clearly demonstrate that Evans, as the Closing Agent, breached his fiduciary duty to KK-PB when Evans took possession of  of the executed Mortgage and over $150,000.00 of Doc Stamp recording fees and failed to record the Mortgage for over 6 months and diverted to his co-conspirator, Robert Matthews, the $1,831,250.00 of the closing proceeds set aside as a "Sellers Deductions" from the Seller for the Broker's commission.   A review of the Plaintiff's Amended Complaint in this case demonstrates how Evans breach of fiduciary duty caused KK-PB to be named as a Defendant in this case, which resulted in KK-PB incurring substantial damages.

### **KK-PB's Count III claim for breach of contract**

44.     The elements of a breach of contract claim under Florida law are:

    1)     a valid contract;
    2)     material breach; and,
    3)     damages.

*Brosky vs. Miami Beach Healthcare  Group*, 238 F. Supp.3d 1359, 1366 (SD Fla. 2017).
*Friedman vs. NY Life Ins. Co.*, 985 So.2d 56, 59 (Fla. 4th DCA 2008).

45.     In the present case, the undisputed material facts establish that Evans agreed to:

    a)     be the Closing Agent;
    b)     receive and disburse the sale proceeds pursuant to the Closing Statement prepared by Evans; and,
    c)     agreed to timely record the Mortgage granted to KK-PB.   (Facts para. 21, 22, 24, 25, 37, 38, 39, 40, 43 and 44.

Further, Evans breached his contractual obligation by not timely recording the Mortgage

and by disbursing $1,831,250.00 of funds contrary to the PSA and Closing Statement. (Facts para. 37, 39 and 45). KK-PB's position is there is no record evidence to dispute these facts and the adverse inference applies as to Evans failure to perform his contractual obligations as Closing Agent.

### KK-PB's Count IV claim for breach of quasi contract

46.    KK-PB is not moving for summary judgment on this claim and will file a notice of voluntary dismissal of Count IV.

### KK-PB's Count V claim for civil conspiracy between Evans and Robert Matthews

47.    The essential elements of a civil conspiracy are the following:

    a)    a conspiracy between two or more parties;
    b)    to do an unlawful act or to do a lawful act by unlawful means;
    c)    the doing of some overt action in furtherance of the conspiracy; and,
    d)    damage to the Plaintiff as result of the acts done under the conspiracy.

*Primerica Financial Services, Inc. vs. Mitchell*, 48 F.Supp 1363, 1369 (SD Fla. 1999). Citing to *Florida Fern Grove Assn. vs. Concerned Citizens of Putnam County*, 616 So.2d 565 (Fla. 5th DCA 1993).

48.    Evans Answer admits the allegations of the Crossclaim that on March 14, 2013, Robert V. Matthews and Leslie R. Matthews were named, as Defendants, in a Criminal Indictment in the United States District Court of Connecticut, Criminal Case No. 3:18-CR-48, which indictment is attached to the KK-PB Crossclaims as Appendix A.

49.    At Evans deposition, he was specifically asked about Evans Deposition, Exhibit 8, which is a QuickBooks Report of Leslie Robert Evans & Assoc, P.A. IOTA Real Estate Account, which shows that on May 23, 2014, Evans transferred out of $1,831,250.00 to what is designated as "Matthews P/O Palm House $1375.15 account.

50.     At page 115, lines 12 – 25 of Evans deposition, Evans was asked:

**Question:**     And did Evans PA make that payment to H. Allen Welles Real Estate on May 23, 2014, in the amount of $1,831,250.00?

**Mr. Elder:**     Objection, Fifth.

**Mr. Zink:**     Do you refuse to answer based upon instruction of counsel?

**Answer:**     Yes.

**Question:**     As of May 23, 2014, has Evans PA, anyone at Evans PA, received any written instruction for anyone to pay the real estate commission of $1,831,250.00 to anyone other than H. Allen Welles Real Estate?

**Mr. Elder:**     Objection, Fifth.

At page 116, lines 1 – 25:

**Mr. Zink:**     Do you refuse to answer based upon instruction of counsel?

**Answer:**     Yes.

**Question:**     As of May 23, 2014, had Evans PA received any oral instructions from anyone to pay the real estate broker's fee due H. Allen Welles Real Estate to anyone other than H. Allen Welles Real Estate?

**Mr. Elder:**     Objection, Fifth.

**Mr. Zink:**     Do you refuse to answer based on instruction of counsel?

**Answer:**     Yes.

51.     At page 116, line 18:

**Question:**     And with regard to the accounting system that your office uses, did it use, was it a QuickBooks system?  Is that what it was?

**Answer:**     I believe so.

At page 116, line 22, Evans was asked:

**Question:**     And with regard to the QuickBooks system that your office used between August 30, 2013 and the end of May, 2014, did they, did your office use

that QuickBooks system for the accounting for the Palm House Hotel transaction?

At page 117, lines 2 – 6:

**Mr. Elder:**     Objection, Fifth.

**Mr. Zink:**     Do you refuse to answer that question based upon instruction of counsel?

**Answer:**     Yes.

52.     The undisputed facts establish that Section 12 of the PSA provides for payment of a Broker's Commission to H. Allen Welles Real Estate and that at no time was Section 12 Amended.  (Facts 35, 39 and 45). The undisputed evidence establishes that Evans at the closing  took possession of the executed Mortgage and monies necessary to record the Mortgage and failed to record the Mortgage until over 6 months after the closing.

**<u>Conclusion</u>**

For the reasons set forth above and the Statement of Undisputed Material Facts and Exhibits attached thereto, KK-PB requests the Court to enter Summary Judgment to KK-PB on Crossclaims Counts I, II, III and V, and to schedule a hearing to determine the dollar amount of damages to be awarded to KK-PB and to award KK-PB attorney's fees and costs when entitlement is established by KK-PB.

Respectfully submitted,

/s/ Larry A. Zink
Larry A. Zink, Esq.
Florida Bar No. 0109592

**ZINK, ZINK & ZINK CO., L.P.A.**
1198 Hillsboro Mile – Suite 244
Hillsboro Beach, FL  33062
Telephone:  (330) 492-2225
Facsimile:  (330) 492-3956
Cell Phone:  (330) 495-0171
Email:  zinklaw3711@yahoo.com
*Counsel for Cross Plaintiff*
*KK-PB Financial, LLC*

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, on this ___10Th___ day of May, 2021, and that the foregoing document is being served this day on all counsel of record identified on the Service List below, via transmission of Notices of Electronic Filing generated by CM/ECF.

Gregory R. Elder, Esq.
Law Offices of Gregory R. Elder, LLC
2300 NW Corporate Blvd – Suite 215
Boca Raton, FL 33431-7345
Telephone:  305-546-1061
Email:  gelderlaw@gmail.com
*Counsel for Cross Defendants:*
*Leslie Robert Evans; and*
*Leslie Robert Evans & Associates, P.A.*

/s/ Larry A. Zink
Larry A. Zink, Esq.
Florida Bar No. 0109592